FILED

2012 Oct-05  PM 03:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| GINA KAY RAY; KALUS K. JOHNSON; and DEUANTE T. JEWS, Individually and for a class of similarly situated persons or entities; | ) ) ) ) ) |
| Plaintiffs; | ) ) |
| v. | ) CASE NO. 2:12-cv-02819 ) |
| JUDICIAL CORRECTION SERVICES, INC., a corporation; CORRECTIONAL HEALTHCARE COMPANIES, INC., a Corporation; CHILDERSBURG, ALABAMA, a municipal corporation; and B.J. MEEKS, in his official capacity as Mayor of Childersburg, Alabama; | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## PLAINTIFFS' RESPONSIVE SUBMISSION TO MOTION TO DISMISS FILED BY JUDICIAL CORRECTION SERVICES, INC. AND CORRECTIONAL HEALTHCARE COMPANIES, INC.

G. Daniel Evans
Alexandria Parrish
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970
Fax: (205) 870-7763

William M. Dawson
2229 Morris Avenue
Birmingham, AL 35203
Telephone: (205) 323-6170
FAX: (205) 278-3430
Attorneys for the Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.     COUNT ONE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          1.    Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          2.    Fifth and Fourteenth Amendments . . . . . . . . . . . . . . . . . . . 11
          3.    Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          4.    Eighth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
          5.    Thirteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    B.     Denial of Equal Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    C.     Denial of Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    D.     Count Four - Illegal prosecution . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    E.     Count Five - False imprisonment . . . . . . . . . . . . . . . . . . . . . . . . . 19
    F.     Count Six - False Arrest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    G.     Count Seven - Malicious Prosecution . . . . . . . . . . . . . . . . . . . . . . 20
    H.     Count Eight - Abuse of Process . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    I.      Count Nine - Unconstitutional Application of
          15-18-62, Code of Alabama . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    J.     Count Ten - Illegal Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    K.     Count Eleven - Declaratory and Injunctive Relief . . . . . . . . . . . . . . . 22
    L.     Municipalities may contract with collection companies,
          but not to act as probation officers . . . . . . . . . . . . . . . . . . . . . . . 22
    M.    No Absolute Quasi-Judicial Immunity . . . . . . . . . . . . . . . . . . . . . . 23
    N.     No Fraud Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    O.     Plaintiffs Have Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

*Alabama v. Shelton,*
    535 U.S. 654 at 667, 122 S. Ct. 1764, 152 L. Ed. 2d 888 (2002) . . . . . . . . . . 13

*Ala. Power Co. v. Neighbors*,
    402 So. 2d at 966 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Am. United Life Ins. Co. v. Martinez,*
    480 F.3d 1043, 1057 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Antoine v. Byers & Anderson, Inc., U.S.,*
    113 S. Ct. 2167, 2172, 124 L. Ed. 2d 391 (1993) . . . . . . . . . . . . . . . . . . . . . 24

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937, 1950 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Atuahene v. City of Hartford,*
    10 Fed. Appx. 33, 34 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 554, 570 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bennett v. Hopper*,
    548, F.2d, 550, 554 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Brunette v. Humane Soc'y of Ventura County,*
    294 F.3d 1205, 1211 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Crutcher v. State,*
    439 So. 2d 725; (Ala. Crim. App. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4

*Dennis v. Sparks,*
    449 U.S. 24, 27, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980) . . . . . . . . . . . . . . . 14

*Dunaway v. New York*,
    442 U.S. 200, 207-208 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Estelle v. Gamble,*
    429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) . . . . . . . . . . . . . . . 15

*Filarsky v. Delia, __U.S.__,*
    132 S. Ct. 1657 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Griffin v. Illinois,*
    351 U.S. 12, 16-17, 76 S. Ct. 585, 100 L. Ed. 891 (1956) . . . . . . . . . . . . . 11,12

*Ingraham v. Wright,*
    430 U.S. 651,667 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In Re Nutrisystem, Inc. Sec. Litig.,*
    653 F. Supp. 2d 563 (E.D. Pa. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.,*
    652 F. Supp. 2d 576, 594 (E.D. Pa. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Marshall Cnty. Bd. of Ed. v. Marshall Cnty. Gas Dist.,*
    992 F.2d 1171, 1174 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pielage v. McConnell,*
    516 F.3d 1282, 1284 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Richardson v. McKnight*
    521 U.S. 399, 401-11 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24,25

*Roland v. Phillips,*
    19 F.3d 552, 555 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,24

*Speaker v. U.S. Dep't of Health & Human Servs.,*
    623 F.3d 1371, 1379–80 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*State v. Adams,*
    2010 Ala. Crim. App. LEXIS 104 (Ala. Crim. App. Nov. 5, 2010) . . . . 12,15,16,18

*State v. Esdale,*
    253 Ala. 550, 45 So.2d 865 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tate v. Short,*
    *401 U.S. 395 (1971)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Trop v. Dulles*
    356 U.S. 86, 100-01, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958) . . . . . . . . . . . . . 16

*Wilkins v. Dan Haggerty & Associates, Inc.,*
    672 So.2d 507 (Ala. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21,22

*Winer Family Trust v. Queen,*
    503 F.3 319 (3rd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

iv

*Young Apartments, Inc. v. Town of Jupiter, FL* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    529 F.3d 1027, 1038 (11th Cir. 2008)

**CONSTITUTIONAL PROVISIONS:**

U.S. Const. Amend IV  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

U.S. Const. Amend V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

U.S. Const. Amend VI  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

U.S. Const. Amend VIII  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

U.S. Const. Amend XIII  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

U.S. Const. Amend XIV  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

**FEDERAL RULES:**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5,17

**FEDERAL STATUTES**

42 U.S.C. § 1983  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23,24

**ALABAMA STATUTES:**

Ala. Code §12-14-13 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 21

Ala. Code *§* 13A-5-12(a)(3) (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Ala. Code §15-18-62 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 8,14,15,20,23

Ala. Code §15-20-22(a)(1) (1975)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Ala. Code § 15-22-50, et. seq. (1975)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Ala. Code *§* 15-22-54(a) (1975)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9,10,14

Article I, § 15, *Ala. Const*. 1901  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

**ALABAMA RULES:**

Rule 26.11 Alabama Rules of Criminal Procedure . . . . . . . . . . . . . . . . . . . . . . . . . .  3,15

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| GINA KAY RAY; KALUS K. JOHNSON; and DEUANTE T. JEWS, Individually and for a class of similarly situated persons or entities; | ) ) ) ) ) |
| Plaintiffs; | ) ) |
| v. | ) CASE NO. CV-12-02819 ) |
| JUDICIAL CORRECTION SERVICES, INC., a corporation; CORRECTIONAL HEALTHCARE COMPANIES, INC., a Corporation; CHILDERSBURG, ALABAMA, a municipal corporation; and B.J. MEEKS, in his official capacity as Mayor of Childersburg, Alabama; | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' RESPONSIVE SUBMISSION TO**
**MOTION TO DISMISS FILED BY**
**JUDICIAL CORRECTION SERVICES, INC. AND**
**CORRECTIONAL HEALTHCARE COMPANIES, INC.**

**INTRODUCTION**

In their motion, defendants Judicial Correction Services, Inc. and Correctional Healthcare Companies, Inc. (hereinafter JCS) pretend they cannot determine the allegations against them. These defendants uphold the pretense on one hand that their actions are perfectly legal, and alternatively, that they should be given absolute immunity if the actions are not. None of the positions of JCS support dismissal of the pleadings. Nor should this motion shield this Court's review of the rampant constitutional violations taking place under the relationship between JCS and Childersburg, Alabama.

1

As the plaintiffs' complaint described, JCS operates under contract with Childersburg.  Its employees are clothed with the appearance of authority and the title of "probation officers" who are then allowed carte blanche to intimidate persons who are brought before the municipal court and charged with simple traffic or misdemeanor offenses.  In their brief, these defendants suggest to the Court that the Alabama Supreme Court approved this type of activity by a private company in *Wilkins v. Dan Haggerty & Associates, Inc.*, 672 So.2d 507 (Ala. 1995).  However, that opinion deals with a more bona fide relationship between a city and an acknowledged collection agency rather than one clothed with the appearance of a probation officer.  Probation officers by statute are given police authority including the right to arrest among others.  *See Ala. Code §12-14-13*. Though JCS is "clothed" with these indicia of this office, it does not in any fashion meet the civil service requirements of a "probation officer" eligible for hire in the State of Alabama. *Real* probation officers employed in this state are required to meet a number of requirements, including a college education and the minimum standards of Alabama peace officers under the Alabama Peace Officers Standards and Training Act.  *See* Exhibit A - Probation Parole Officer Requirements, Alabama State Personnel Department.  The logical reason for these additional requirements is that the statutory authority of true probation officers gives them the right to arrest, but also has concomitant responsibility to make written reports, services  and investigations for the purpose of rehabilitating defendants before the court.  Contrary to the true nature of probation officers, JCS adopts only the name but provides no services to the defendants, makes no inquiry to the condition of the defendants before the court, shuns any responsibility to determine or investigate their indigency, all while marketing itself to the various municipalities as an offender-paid

2

service.  It is a collection agency given the title of probation officers to coerce collection of fines.  Essentially masquerading as a trained peace officer with the joint participation of the other defendants, JCS's primary goal is a for-profit business and the collection of money from the defendants regardless of the constitutional damage and prohibitions against their actions.  The system challenged here makes a mockery of the state law which prescribes the system of probation used in circuit and district courts.  *See Ala. Code* § 15-22-50, et. seq.  Under state law and constitutional precepts, there is no basis for probation where no jail sentence in involved.  With only a fine and no jail sentence, there is no sentence to suspend for probation to be involved.  However, with the system in Childersburg overseen by its mayor, if the persons before the court cannot immediately pay their fine, they are automatically placed on probation regardless of any jail sentence.  The sole purpose of the "probation" is to involve the threat of jail to collect fines.

Under Alabama law, a fine can only be converted into jail time if the court makes findings under Section 15-18-62, *Ala. Code* (1975) that a defendant has willfully failed to pay the fines.  However, at Childersburg with its "probation system," no such inquiry is involved.  There are no reports, findings, or hearings before failure to pay a simple fine results in incarceration.  The facts surrounding the named plaintiffs show repeated jail time for nothing more than failure to pay a fine, with no findings or appointment of counsel, all while these plaintiffs were indigent.  These actions violate Rule 26.11 of the Alabama Rules of Criminal Procedure and are a clear affront to constitutional principles as old as our nation.   Over 20 years ago our state Court of Criminal Appeals had a very similar case before it in *Crutcher v. State,* 439 So. 2d 725; (Ala. Crim. App. 1983).  There Mr. Crutcher had a suspended sentence revoked and was in jail for 30 days when he failed to

3

pay a fine of $200.00 and court costs of $35.50 assessed to him when he pled guilty to a driving charge.   Mr. Crutcher was indigent like the plaintiffs in this case and, like in Childersburg, that fact did not matter to the municipal court.  The Court of Criminal Appeals held:

> It is clear as a matter of constitutional law that an indigent defendant cannot be required to serve jail time for nonpayment of fine and costs. *Tate v. Short, 401 U.S. 395 (1971); Lingle v. State, 51 Ala.App. 210, 283 So.2d 660 (1973); Smith v. State 51 Ala.App. 212, 283 So.2d 662 (1973)*. "To imprison an indigent when in the same circumstances an individual of financial means would remain free constitutes a denial of equal protection of the laws." *Barnett v. Hopper, 548 F.2d 550, 554 (5th Cir.1977)*. This is not a case of a defendant who, though capable of paying a fine, refuses or neglects to do so.
>
> Although *Section 15-22-52, Alabama Code 1975*, states that payment of fine and costs may be made a condition of suspension of sentence or probation, in *State v. Esdale, 253 Ala. 550, 45 So.2d 865 (1950)*, our Supreme Court indicated that such a condition was contrary to our constitution.
>
> "These benefits (probation and suspension of sentence) are not the subject of bargain and sale to be conditioned on the payment of costs and fees assessed as an incident to the prosecution and trial and to condition these benefits on the payment of such costs and fees violate the letter and spirit of Section 13 of the Constitution of 1901 which provides that 'justice shall be administered without sale, denial or delay.'" *Esdale, 253 Ala. at 553.*

*Crutcher* at 726.

Despite legal clarity on these issues, these defendants still attempt to circumvent constitutional protections of others to serve their own economic benefit.   Plaintiffs' complaint brings those facts to full light before this Court.[1]

## ARGUMENT

Initially JCS urges that the plaintiffs have not met the pleading requirements of the

---

[1] See *Proverbs* 31:9

rules as interpreted under *Ashcroft v. Iqbal* and *Twombly*.  Only by refusing to read the complaint in its entirety could such a conclusion be reached.

As this Court is well aware, a motion to dismiss tests the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6).  It does not delve into disputes over the proof of the facts alleged and such a determination is reserved for the summary judgment stage or trial. While a court typically keeps its motion to dismiss inquiry within the four corners of the complaint, the Court may nonetheless consider an outside document when it is undisputed and central to the plaintiff's claims.  *Speaker v. U.S. Dep't of Health & Human Servs.,* 623 F.3d 1371, 1379–80 (11th Cir. 2010).  The Court will only grant a motion to dismiss "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  *Marshall Cnty. Bd. of Ed. v. Marshall Cnty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).  Indeed, although a plaintiff's complaint generally need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the plaintiff must still allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007).  And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009).

Plaintiffs allege that JCS, a for-profit company, sells its "services" to governments like Childersburg as an "offender paid system."  *See* Complaint ¶ 5.  Under this system and its contract, JCS was then clothed with the appearance of state authority which allowed JCS employees to intimidate persons by referring to themselves as "probation officers,"

though none had the training prescribed by Alabama statutes. *See* Complaint ¶ 9. JCS employees were allowed to construct its documents as if they were court orders, even though they were not the lawful orders of probation. *See* Complaint ¶ 9. JCS threatened plaintiff class members with incarceration and then incarcerated people who did not pay fines. *See* Complaint ¶ 9. Virtually the entire plaintiff class was placed on probation by the defendants, even where there was no jail sentence for the purpose of coercing payment. *See* Complaint ¶ 9. Furthermore, JCS was allowed to determine how much each municipal defendant would be charged for its collection services and how much of the public money would be kept by JCS and how much would be rebated to Childersburg. *See* Complaint ¶ 10. Under this system, all fines must be paid to JCS, a private entity, which was then given control and access over the public funds. *See* Complaint ¶ 10.

The complaint identifies specific dates, amounts and incarceration periods for each of the plaintiffs. All of the named plaintiffs were indigent, all of them were incarcerated, all of them were charged exorbitant fees by JCS despite their inability to pay, and all were incarcerated without any formal probation revocation hearing, without determination of their indigency, ***and without counsel***. Several of the named plaintiffs have been jailed multiple times under this system. *See* Complaint ¶¶ 12 -18. Some of the named plaintiffs were charged for restitution though no restitution was involved. Others were charged for court costs though the charges had been dismissed. Those incarcerated were not given statutory credit of the $15.00 per day served as required by Alabama Code. The length of probation and the extent of the fines levied exceeded statutory limits on Alabama municipal courts, and all of these details are pled with great specificity while the defendant

"turns his head and pretend that he just doesn't see."[2]

In truth, JCS is told repeatedly of its actions being challenged.  Even the description of the putative classes specifically reference the actions of JCS.  *See* Complaint ¶ 19. Furthermore, after a robust statement of facts in the complaint, specific counts are included which incorporate the previously stated facts.  JCS nevertheless attempts to segregate the complaint and to ignore the previous statement of facts when reading the legal counts.

As explained in the complaint, these defendants have pointed the finger at each other.  The judge of the Childersburg municipal court has stated matters of indigency are left to the discretion of JCS, while JCS claims no responsibility for that determination, thus resulting in a system which has no consideration of a person's ability to pay and where alternative means of punishment, such as community service or other substitutes as required under Alabama law, are not used.  *See* Complaint ¶ 27.  JCS  has used its discretion to threaten revocation of probation, increase fines and costs – all for the purposes of collection.  *See* Complaint ¶ 28.  When individuals unable to pay have not satisfied the JCS clerk/"probation officer," the "probation" is revoked, fines and costs increased and individuals are repeatedly jailed without hearings or appropriate court findings and all for the purposes of collection efforts.  *See* Complaint ¶ 28.  These actions have exceeded the statutory ceiling for imprisonment by a municipal court, *see* Complaint ¶ 29, and they have violated constitutional law by converting a simple fine into an indefinite prison term, all directed by JCS.  *See* Complaint ¶ 30.  JCS has essentially admitted in its brief that it feels it has no responsibility to inquire into the indigency of the plaintiff class

---

[2]*Blowing in the Wind,* Bob Dylan.

despite clear indication of indigency from the individual's difficulty in meeting JCS's payment schedule.  *See* Complaint ¶ 31.

The system implemented by JCS and its confederates results in automatic probation even when there is only a fine -- unless the fine can be paid in full at the point of adjudication.  Under this contractual scheme, JCS then regularly converts the payment of a simple fine into an incarceration without finding violation of *Ala. Code* § 15-18-62.  More importantly, even though jail was not part of the previous sentence, it becomes a punishment after the "probation revocation" instituted by JCS.  The failure to then appoint legal counsel further exacerbates this violation.  *See* Complaint ¶ 32.

Through this system, the defendants have jointly acted.  Rather than a rule of law that determines punishment for misdemeanors, it becomes a discretionary judgment by a private contractor that decides to release or incarcerate, additional fines or costs, lengthy probation or discharge.  *See* Complaint ¶¶ 30 - 36.  This joint action of the defendants systematically uses the threat of imprisonment to collect fines with no determination of willfulness or consideration of the ability to pay.  *See* Complaint ¶ 37.  As a result of this systematic and joint action of the defendants, the defendants have established a debtor's prison.  *See* Complaint ¶ 38.[3]  The plaintiffs have plead factual allegations sufficient to satisfy the plausibility requirements of *Iqbal* and *Twombly*. [4]

---

[3]Judge Harrington's Order on July 11, 2012 in *Garrett v. Town of Harpersville*, Case No. CV 2010- 900183 attached as Exhibit B.  Harpersville and Childersburg both use the same municipal judge and same system with JSC.

[4]JCS cites three cases for the proposition that the plaintiffs must "identify the alleged facts and legal claims for each separate defendant." (Brief p.2)  *Winer Family Trust v. Queen*, 503 F.3 319 (3rd Cir. 2007), *In Re Nutrisystem, Inc. Sec. Litig.*, 653 F. Supp. 2d 563 (E.D. Pa. 2009), and *Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*, 652 F.

### A.    COUNT ONE

Each of the designated counts in the complaint incorporates the previous paragraphs and factual allegations.  Those allegations alert JCS that its actions under color of state law have violated a number of constitutional protections.  The large number of constitutional amendments violated, unfortunately, is due to the egregious actions of JCS and its confederates at the City of Childersburg -- not a shotgun pleading.  Those actions denied assistance of counsel, converted fines to incarceration, unlawfully arrested and repeatedly incarcerated individuals, extended probation and fines well beyond the statutory limitations of the court's authority -- all for lucre.

### 1.    Fourth Amendment

The defendant recognizes that under the Fourth Amendment, there are procedural protections at revocation hearings.  Alabama statutes concerning probation revocation at the circuit and district court levels give great guidance as to those protections.  For instance, under *Ala. Code,* § 15-22-54, the period of probation for a misdemeanor may never exceed two years, yet, as alleged in the plaintiffs' complaint, the actions of JCS and its confederates at Childersburg regularly extended the probation for payments of fines in

---

Supp. 2d 576, 594 (E.D. Pa. 2009).  All of those case are securities cases subject to heightened pleading requirements of The Private Securities Litigation Reform Act (PSLRA) of 1995 and not applicable to this case.

*Atuahene v. City of Hartford,* 10 Fed. Appx. 33, 34 (2d Cir. 2001) (unpublished op.) also cited by JCS in its "lump" pleading argument. There the district court gave a *pro se* litigant several opportunities to amend his complaint which alleged only a conclusory violation before dismissing the pleading.  Here, the plaintiff's complaint is filled with factual allegations that are properly plead.

order to improve their collections well beyond the statutory period.  *See* Complaint ¶13. Furthermore, under § 15-22-54, a revocation of probation may occur only after an arrest or information is provided to the probationer of the specific violations alleged.  If probation is revoked, the court is then only allowed to impose the sentence that had been suspended, not to increase the fine or expand the prison time.   Under the system challenged here, JCS and its confederate defendants used the system where virtually every person unable to immediately pay the adjudicated fine was placed on probation even when no jail sentence was involved.   Then, unless prompt payment was made to include all of JCS's extraneous charges, JCS would take steps to have the probation revoked for the purposes of incarcerating an individual who otherwise would never have seen jail under the original adjudication – all without the procedural protection under the Fourteenth Amendment.[5]  As the defendant in this case recognizes, such an arrest and detainment is a seizure under the Fourth Amendment.  See *Dunaway v. New York*, 442 U.S. 200, 207-208 (1979).  And, despite the defendants' conclusion to the contrary, the plaintiffs have alleged that JCS arrested and detained the plaintiffs -- all without probable cause. *See* Complaint ¶¶  9, 13, 28, 37, among others.

The defendant also argues that violation of the Fourth Amendment is superfluous since the plaintiff has also made a state claim of false arrest.  While the same facts may

---

[5] "Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied." (internal quotation marks and emphasis omitted)); *Oliver,* 510 U.S. at 274 (plurality opinion) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.").

support both claims, the nature of defenses and the relief allowed under each claim show that these are not redundant claims.

2.     **Fifth and Fourteenth Amendments.**

In this section of its brief, JCS cites the Court to authority for municipal courts to use probation officers but that is not in issue.  In issue here are the procedures used by the municipal court and the attendant constitutional limitations on that process.  In its brief, the defendant argues outside the scope of the complaint that JCS's primary task was to report probationers' compliance and that "JCS has neither the authority nor the duty to conduct judicial proceedings, to revoke probation, or to impose incarceration."  *See* Defendants' Brief, p.6.  The facts will show that this was not their task nor their purpose. Unquestionably, the plaintiffs agree that JCS should not have been given that authority. It has nonetheless been clothed with that power under the contractual system established with Childersburg, conducting nearly every aspect of the system, including issuing warrants, suggesting arrest, incarceration, and/or release of probationers.

The Alabama Court of Criminal Appeals recently reviewed similar equal protection violations when it found former Ala. Code §15-20-22(a)(1) to be unconstitutional:

> Concerns that indigents receive equal justice have frequently been addressed by all levels of courts, and the United States Supreme Court, in *Griffin v. Illinois,* 351 U.S. 12, 16-17, 76 S. Ct. 585, 100 L. Ed. 891 (1956), stated:
>
> > "Providing equal justice for poor and rich, weak and powerful alike is an age-old problem. People have never ceased to hope and strive to move closer to that goal. This hope, at least in part, brought about in 1215 the royal concessions of Magna Charta: 'To no one will we sell, to no one will we refuse, or delay, right or justice. ... No free man shall be taken or imprisoned, or disseised, or outlawed, or exiled, or anywise

11

destroyed; nor shall we go upon him nor send upon him, but by the lawful judgment of his peers or by the law of the land.' These pledges were unquestionably steps toward a fairer and more nearly equal application of criminal justice. In this tradition, our own constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons. Both equal protection and due process emphasize the central aim of our entire judicial system -- all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.' *Chambers v. Florida,* 309 U.S. 227, 241, 60 S.Ct. 472, 479, 84 L.Ed. 716 [(1940)]." (Footnote omitted.)

*State v. Adams,* 2010 Ala. Crim. App. LEXIS 104, *34 (Ala. Crim. App. Nov. 5, 2010)

The *Adams* Court went on to say "The statutory scheme at issue here produces the same type of discrimination condemned by the United States Supreme Court in *Griffin* and its progeny – discrimination resulting in a deprivation of a fundamental right that is based, in actuality, on poverty." *Id.* at *41.

JCS, along with the other defendants, has been oblivious to the requirements of notice, hearing and opportunity to be heard, which comprise the core of procedural due process under both the Fifth and Fourteenth Amendments.  To suggest there is no causal relationship between violation of these constitutional rights and JCS's alleged conduct simply ignores the allegations of the complaint.

3.   **Sixth Amendment.**

Plaintiffs allege Sixth Amendment violations, as defendants correctly point out, because the system of JCS at Childersburg wrongfully converts fines to probationary sentences which are then, at the whim of JCS, converted to jail time, all without the determination of willfulness, indigency, and without provision of counsel.  *See* Complaint

12

¶¶ 9, 28, 30, 31, 32, 36, 37.  As a result, individuals appearing before the Childersburg court who are unable to pay the fine adjudicated, are automatically placed on probation. Since no jail sentence is involved, there is none to suspend, so probation is used as a method to both fund JCS's operation and collect the fine.  If the fine is not paid as promptly as demanded by JCS, probation is revoked without hearing, written charges or determination by the court, and a jail sentence imposed that was never part of the original sentence, all without inquiry into indigency and all without the assistance of counsel.  While not all probation revocations require the appointment of counsel,  where a jail sentence not part of the original sentence becomes involved, right to counsel is necessary.  The United States Supreme Court addressed Sixth Amendment violations in Alabama's probation revocation hearings in 2002 when it stated:

> In Alabama, however, the character of the probation revocation hearing currently afforded is not in doubt. The proceeding is an "informal" one, *Buckelew v. State, 48 Ala. App. 418, 421, 265 So. 2d 202, 205 (Ala. Crim. App. 1972)*, at which the defendant has no right to counsel, and the court no obligation to observe customary rules of evidence, *Martin v. State, 46 Ala. App. 310, 311, 241 So. 2d 339, 340 (Ala. Crim. App. 1970)*...We think it plain that a hearing so timed and structured cannot compensate for the absence of trial counsel, for it does not even address the key Sixth Amendment inquiry: whether the adjudication of guilt corresponding to the prison sentence is sufficiently reliable to permit incarceration. Deprived of counsel when tried, convicted, and sentenced, and unable to challenge the original judgment at a subsequent probation revocation hearing, a defendant in Shelton's circumstances faces incarceration on a conviction that has never been subjected to "the crucible of meaningful adversarial testing," *United States v. Cronic,* 466 U.S. 648, 656, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984). The Sixth Amendment does not countenance this result.

*Alabama v. Shelton,* 535 U.S. 654 at 667, 122 S. Ct. 1764, 152 L. Ed. 2d 888 (2002)

The defendants' actions are in clear derogation of the Sixth Amendment right to counsel.

The defendants correctly point out that not only the Sixth Amendment, but also

Alabama Code, requires a municipality to provide indigent defense services.  Though it is the statutory duty of the municipality to provide defense services, it is the combined actions effort of all defendants, including JCS, which have denied these constitutional rights[6]. And, despite JCS's factual argument to the contrary, these plaintiffs were summarily incarcerated and released at the whim of JCS with no formal hearing on probation violations nor the provision of any charges.  *See* Complaint ¶¶ 9, 12, 13, 14, 15, 16, 17, 18.

    4.   **Eighth Amendment.**

In this argument, the defendants again make factual statements outside the parameters of the complaint.  In considering a motion to dismiss, "the Court accepts as true all well-pled factual allegations in the complaint, viewing them in the light most favorable to the plaintiff."  *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008); *Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1057 (11th Cir. 2007).  Under Alabama law, a municipal court has no authority to award a fine on any particular charge over $500.00.  *Ala. Code § * 13A-5-12(a)(3).  Similarly, probation for misdemeanors cannot, by statute, extend beyond a two-year period.  *See Ala. Code § * 15-22-54(a).  Furthermore, § 15-18-62 is the only statutory method in which a fine levied by a court on adjudication can be converted to imprisonment and that can legally occur only where the court finds willful nonpayment of the fine and cost.  Even if willful nonpayment is found, however, the

---

    [6] "Private actors can be considered state actors, in other words, if they were "willful participant[s] in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980); *see also Brunette v. Humane Soc'y of Ventura County,* 294 F.3d 1205, 1211 (9th Cir. 2002). A private party is liable under this theory if its actions are "inextricably intertwined" with those of the  government. *Id.* (citing *Mathis v. Pac. Gas & Elec. Co.,* 75 F.3d 498, 503 (9th Cir. 1996)).

conversion of fine to imprisonment has a specific ratio such that a fine not to exceed $500.00 shall result in no more than 20 days.  *See  Ala. Code* § 15-18-62(2).

Finally, 26.11 of the Alabama Rules of Criminal Procedure provides the method for dealing with fines, restitution and the failure to pay under a variety of circumstances, none of which were followed by these defendants.   JCS and its confederates, the City of Childersburg, levied substantial fines on indigent persons and then increased their burden with monthly fees charged by JCS to the point that even partial payments could not be made. The result was incarceration.  These fines exceeded the statutory limits of the court and resulted in incarceration periods exceeding those in *Ala. Code* §15-18-62.  Finally, the defendants failed to give credit to the jailed plaintiffs for the time they served as required under statute at the rate of $15.00 per day against the fine.   The Alabama decision in *State v. Adams,* 2010 Ala. Crim. App. LEXIS 104 *51 (Ala. Crim. App. Nov. 5, 2010), shows the close relationship between equal protection issues and the Eighth Amendment:

> "Although we hold that the statute under which Adams was charged in this case violated equal-protection principles, we hold also that it violated the constitutional prohibitions against cruel and unusual punishment. The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Article I, § 15, *Ala. Const.* 1901, provides "[t]hat excessive fines shall not be imposed, nor cruel and unusual punishments inflicted."

The Cruel and Unusual Punishments Clause of the Eighth Amendment, and similarly of Article I, § 15, *Ala. Const*. 1901, "proscribes more than physically barbarous punishments," it embodies "'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)).  As the United

15

States Supreme Court recognized more than 50 years ago:

> The basic concept underlying the Eighth Amendment is nothing less than the dignity of man.  While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards. ... [T]he words of the Amendment are not precise, and ... their scope is not static. The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.

*Trop v. Dulles,* 356 U.S. 86, 100-01, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958).

> [T]he Cruel and Unusual Punishments Clause circumscribes the criminal process in three ways: First, it limits the kinds of punishment that can be imposed on those convicted of crimes,(citations omitted); second, it proscribes punishment grossly disproportionate to the severity of the crime*, e.g.*, *Weems v. United States,* [217 U.S. 349, 30 S. Ct. 544, 54 L. Ed. 793 (1910)]; and **third, it imposes substantive limits on what can be made criminal and punished as such**.(citations omitted)(**emphasis added**).

*Ingraham v. Wright,* 430 U.S. 651,667 (1977).

It is the third limitation under the eight amendment which prohibits applying criminal law to punish the status of poverty. See *State v. Adams,* 2010 Ala. Crim. App. LEXIS 104, *51-52 (Ala. Crim. App. Nov. 5, 2010), where the court found that a state statute could not be implemented to criminalize "acts that are an integral aspect of an individual's status," such as indigency.  When this restriction on government is blinded by profit motives, the poor become easy prey and the system dysfunctional.

5.    **Thirteenth Amendment.**

Here, JCS again attempts to ignore the plaintiffs' allegations.  Plaintiffs  allege that JCS not only intimidated the persons such as the plaintiffs in an effort to collect fines, but that these people were threatened with incarceration and, in fact, incarcerated and released on the payment of amounts determined by JCS, all under a contract and course of dealings with Childersburg that was focused on protecting money, not constitutional

rights.  "It has been the law of this country for many, many years that indigent defendants cannot be required to serve jail time for the nonpayment of fines and costs."  *Tate v. Short, 401 U.S. 395 (1971)*.  Such actions cut across many constitutional prohibitions, including the deprivation of due process, equal protection, as well as the Thirteenth Amendment.

## B.    DENIAL OF EQUAL PROTECTION.

In this part of their brief, the defendants write about levels of *proof*, even though its motion challenges sufficiency of pleading under Rule 12(b)(6).  Once again, the movants argue facts outside those in the complaint and attempt to limit its "responsibility."  The finger pointing between JCS and the other defendants does not negate their joint action, nor does it remedy the denial of equal protection to the plaintiffs.  Persons appearing before the municipal court in Childersburg who can immediately pay an adjudicated fine receive no probation, are under no threat of imprisonment and are not required to pay monthly fees to JCS for its "services."  On the other hand, individuals like the plaintiffs who are indigent are treated completely differently.  Once again, our law has been established for many years that "to imprison an indigent when in the same circumstances an individual of financial means would remain free, constitutes a denial of equal protection of the laws." *Bennett v. Hopper*, 548, F.2d, 550, 554 (5th Cir. 1977)  Furthermore, our Court of Criminal Appeals reached a similar conclusion:

> "We agree with the trial court that former §15-20-22(a)(1) is unconstitutional, and we address here two of the reasons:  first, the statute violates the guarantee to equal protection under the law as provided in the Fourteenth Amendment to the United States Constitution, and in Article I, §§ 1, 6, and 22, of the Alabama Constitution of 1901 because it resulted in an unreasonable and discriminatory classification based on wealth."

*State v. Adams,* 2010 Ala. Crim. App. LEXIS 104 (Ala. Crim. App. Nov. 5, 2010)[7]

## C.   **DENIAL OF DUE PROCESS**

In this argument, JCS ignores the many factual allegations in plaintiffs' complaint and points the finger at the municipal court, though the allegations show JCS often making the determination of incarceration and release and to be a joint participant.  *See* Complaint ¶ 12.  As mentioned above, the Municipal Court of Childersburg is a court of limited jurisdiction which hears and considers traffic offenses and some misdemeanors.  But all the constitutional protection for defendants should exist in that court.  Despite the limited jurisdiction of that court, the joint enterprise of the defendants has resulted in a probationary period far exceeding the two years and fines far exceeding the statutory maximum, and the conversion of fines to prison sentences, all while ignoring indigency, notice of the charges, right to hearing, and right to counsel.

## D.   **COUNT FOUR - ILLEGAL PROSECUTION.**

The plaintiffs, all of whom are indigent, have been charged fees for restitution where no restitution exists, court costs for cases that have been dismissed, monthly fees for non-existence services of JCS and then, when their indigency prevents further payment of any

---

[7].  Over 70 years ago the Alabama Supreme Court in *State v. Esdale*, *253 Ala. 550, 45 So.2d 865 (1950)*, also held that the Alabama Constitution was violated under such conditions.
> "These benefits (probation and suspension of sentence) are not the subject of bargain and sale to be conditioned on the payment of costs and fees assessed as an incident to the prosecution and trial and to condition these benefits on the payment of such costs and fees violate the letter and spirit of Section 13 of the Constitution of 1901 which provides that 'justice shall be administered without sale, denial or delay.'"

*Esdale, 253 Ala. at 553.*

kind, charged with "failure to obey a court order," imprisoned without hearing or counsel and released on the whim of these defendants.  The prosecution for the "failure to obey court order" and the additional court costs levied for such illegal claims results in the plaintiffs' claim for illegal prosecution.  The additional fines for such added charges, with the JCS monthly fees and even in certain cases, fees charged for the imprisonment of these individuals, often exceed the jurisdiction of the municipal court.  This is an illegal prosecution for charges levied to collect fines.

E.     **COUNT FIVE - FALSE IMPRISONMENT.**

In this argument, the defendants cite cases about proof requirements rather than the plaintiffs' pleadings.  The complaint provides specifics for the named plaintiffs. They were falsely imprisoned at the whim of JCS or released when family members could not provide funds demanded by JCS.  They were imprisoned on the pretense of probation violation or "failure to obey a court order," but no hearings were held, no findings were made, no charges presented to the defendants and no counsel provided for these indigent individuals.  The plaintiffs' complaint is replete with references to JCS's participation in this system, including its issuance of warrants, incarcerations and releases.  *See* Complaint ¶¶ 12, 13, 14, 15, 16, 17, 18.  The complaint gives JCS ample notice of the charges.

F.     **COUNT SIX - FALSE ARREST.**

Despite the defendants' statement, plaintiffs did allege that these defendants falsely arrested the plaintiffs *without probable cause* and illegally did so to coerce payment.  *See* Complaint ¶¶ 45, 46.  Each of these separate counts incorporates the previously stated facts in the complaint, rather than redundantly restating them in each count.

**G.      COUNT SEVEN - MALICIOUS PROSECUTION.**

In citing *Ala. Power Co. v. Neighbors*, 402 So. 2d at 966 (Ala. 1981), the defendants confuse proof requirements with pleading requirements and then attempt to argue facts denying their participation.  The plaintiffs' pleadings correctly alert these defendants that they have been illegally prosecuted without probable cause to coerce payments.  Facts argued outside the parameters of the complaint do not support the motion to dismiss.

**H.      COUNT EIGHT - ABUSE OF PROCESS.**

In this argument, the Court is once again treated to JCS's factual argument in its effort to point the finger at the municipal court.  This argument does not deny the adequacy of the plaintiffs' pleadings for abuse of process.

**I.      COUNT NINE - UNCONSTITUTIONAL APPLICATION OF 15-18-62, CODE OF ALABAMA.**

Alabama Code Section 15-18-62 provides the only method for imprisonment when an individual fails to pay a fine.  That can only occur if the court finds a willful failure to pay. These defendants, however, have systematically refused to apply that limitation.  Instead, they have ignored the indigency of the defendants and then automatically placed all persons unable to pay fines on probation with added monthly costs.  When inability to pay persists, they are jailed despite their indigency, all without counsel.  This type of application of §15-18-62 violates due process and equal protection and is the gravamen of the plaintiffs' claim.  JCS attempts to blame the municipality as the source of the problem and to wash its hands of its joint culpability with Childersburg.  These types of arguments do not overcome the sufficiency of the pleadings.

20

J.      **COUNT TEN - ILLEGAL ENTERPRISE.**

In this count, plaintiffs alert defendants that their joint enterprise has resulted in a

debtor's prison which has violated  constitutional protections for criminal defendants.  The

response of JCS is to cite this Court to *Wilkins v. Dan Haggerty & Associates, Inc.*, 672

So.2d 507 (Ala. 1995).   That case approved the authority of a municipality to hire a

collection agency.   That  agency,  however,  was  not  a  pseudo  probation  company

masquerading as court officers for the purposes of collection.   Additionally, JCS cites the

Court to an Attorney General opinion issued in 1998 which is broader than *Wilkins.*   That

opinion opines that municipalities can also contract with private probationary companies.

That opinion has not been adopted by any decision of the Alabama courts.  This Court is

well aware, attorney general  opinions  are  not  binding  on  the  Court.   Additionally, that

opinion cited is not well reasoned because probation officers under Alabama statutes are

given the right of arrest concomitant with the duty a police officer.  *See Ala. Code* § 12-14-

13(e).   Peace officers in the State of Alabama must comply with the Alabama Peace

Officers Standards  and  Training  Commission  Administrative  Code  which  requires  a

minimum of 480 hours basic training at an approved academy.  *See* Chapter 650-X-1 -

Certification of Law Enforcement Officers attached as Exhibit C.  Therefore, *real* probation

officers under the State Civil Service Board are required to have the same training as

police officers.  *See* Exhibit A.  That training includes not only 480 hours of police officer

training under the Alabama Peace Officers Standards and Training Act, but also requires

a four-year college degree, among other factors.  Such assurances of proper training and

education, as well as supervision, are not present under any contractual relationship with

JCS.   For all these reasons, the Attorney General's opinion based on the ability of a municipality to contract overlooks crucial distinctions between a collection agency and that of a probation officer.  In fact, that crucial distinction is at the gravamen of the problem in the plaintiffs' case.   JCS is a for profit collection agency masquerading as providing "probation" services in order to wield the power of the court and threaten incarceration to produce private profit.  That was never countenanced under either the Attorney General's opinion or the *Wilkins'* decision and cannot be justified by either citation.

Finally in this argument, the movants urge that the requested declaratory and injunctive relief is improper based on the putative class definition.  The class has not yet been certified and the class parameters and definition are subject to amendment by the Court at any time and can certainly be defined to include those indigent persons fined for misdemeanors at the Childersburg Municipal Court in the future.

## K.   COUNT ELEVEN - DECLARATORY AND INJUNCTIVE RELIEF.

In this argument the defendants try to avoid declaratory and injunctive relief requests by suggesting that the plaintiffs' claim can only deal with previous injuries and past wrongs.  As referenced above, the plaintiffs' class has not yet been certified.  The parameters of that class will determine protection needed for the class members.  However, even the named plaintiffs are still in jeopardy from ongoing payment obligations (*see* Complaint ¶¶ 12, 13, 14, 15, 16, 17, 18) such that the very real threat of more jail time by JCS and its confederates will occur unless this Court grants this relief.

## L.   MUNICIPALITIES MAY CONTRACT WITH COLLECTION COMPANIES, BUT NOT AS PROBATION OFFICERS.

See argument above concerning the error in the Attorney General's opinion.  In this

area of its argument, the defendants complain that the plaintiffs in their complaint did not cite sufficient statutory or constitutional provisions.  Once again, JCS has chosen not to read the complaint which cites not only §15-18-62, but the 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, Eighth, Thirteenth and Fourteenth Amendments to the United States Constitution, as well as the Alabama Constitution.  Though not necessary in a complaint, this should be more than sufficient to let JCS know the nature of the claim against it.

**M.    NO ABSOLUTE QUASI-JUDICIAL IMMUNITY**.

JSC, after arguing it cannot determine the claims against it, asserts that its actions should be "absolutely" immune.   JCS is a private contracting party with the City of Childersburg.  Its employees are not civil service employees for the State of Alabama or Childersburg.  Those JCS employees acting on behalf of the City have been given the appearances of a probation officer, though none of them possess the training and qualifications required.  Only by virtue of this contract has JCS been allowed to run amuck over the constitutional protections of the people appearing in those municipal courts.  To now suggest that they, by virtue of this contract, have acquired absolute judicial immunity such as that afforded to judges, stretches the imagination.  Even the cases cited by JCS show that questions of absolute quasi-judicial immunity for a non-judicial officer is determined by functional analysis.  *See Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994).  That certainly is not a basis for a motion to dismiss and at best would have to wait discovery in a factual determination.

Defendant JCS cites *Roland v. Phillips,* 19 F.3d 552, 555 (11th Cir. 1994) for the proposition that JCS is cloaked with absolute quasi-judicial immunity, but, unlike the deputy

in *Roland,* JCS is not alleged to have acted pursuant to a valid judicial order.  Rather, the complaint plainly states that the defendants acted illegally and outside the scope of their authority.  Furthermore, "the absolute quasi-judicial immunity of a non-judicial official is determined by a functional analysis of the action taken by the official in relation to the judicial process" *Roland,* 19 F.3d at 555.  *Roland* was decided on a motion for summary judgment after discovery was conducted so that the court could factually determine if immunity was applicable. The touchstone of this narrowly restricted immunity concept is "the function of resolving disputes between parties, or of authoritatively adjudicating private rights."  *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 436*,* 113 S. Ct. 2167, 2172(1993). This is because "qualified immunity is presumed sufficient to protect law enforcement agents engaged in their official responsibilities." *Id.* at 435.  Collecting fines is not such a function.  Additionally, JCS bears the burden of proving absolute immunity which the Court would then analyze "by a functional analysis of the action taken by the official in relation to the judicial process" *Roland,* 19 F.3d at 555.  This requires **proof** that their official duties "have an integral relationship with the judicial process" **and** "**these officials must be acting within the scope of their authority**" *Id.* **(emphasis added)** A decision on absolute immunity prior to discovery is premature and not appropriate in light of allegations to the contrary.[8]

There is no public purpose support for shielding a private for-profit contractor like JCS

_____

[8] JCS cites *Richardson v. McKnight,* 521 U.S. 399, 401-11 (1997).  But that case found no qualified immunity for violations of *42 U.S.C. § 1983* by a for-profit company private prison management firm.   JCS also cited *Filarsky v. Delia,* __U.S.__, 132 S. Ct. 1657 (2012) in its absolute immunity argument but only qualified immunity was involved there.

when it systematically trounces personal constitutional rights for money.  Even qualified immunity allowed to police officers and other law enforcement officers is no bar to action when the action of the officer is in violation of known and established statutory and constitutional rights.  *Richardson v. McKnight,* 521 U.S. 399, 402 (1997)

**N.    NO FRAUD CLAIM.**

Plaintiffs have made no claim for fraud. Rule 9(b) is inapplicable.

**O.    PLAINTIFFS HAVE STANDING**

The movants' argument on contractual third party beneficiaries is inapposite to the facts pled and to plaintiffs' standing.  "At the initial pleading stage, a plaintiff may establish standing based on general factual allegations of injury."  *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1038 (11th Cir. 2008).  The Court must also presume that the plaintiffs' "allegations are sufficient to establish the facts alleged." *Id.*  Plaintiffs' allegations clearly meet the Article III requirements and have standing on these claims.

## CONCLUSION

WHEREFORE, based upon the above-cited authorities and reasons, the defendants, JCS's, Motion to Dismiss is due to be denied.

RESPECTFULLY SUBMITTED,


s/ G. Daniel Evans
G. Daniel Evans
ASB-1661-N76G
Attorney for the Plaintiffs
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970

Fax: (205) 870-7763
E-Mail: gdevans@evanslawpc.com

s/ Alexandria Parrish
Alexandria Parrish
ASB-2477-D66P
Attorney for the Plaintiffs
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970
Fax: (205) 870-7763
E-Mail: ap@evanslawpc.com

s/William M. Dawson
William M. Dawson
ASB-3976-S80W
Attorney for Plaintiffs
2229 Morris Avenue
Birmingham, AL 35203
Telephone: (205) 323-6170
Fax: (205) 278-3430
E-Mail: bill@billdawsonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of October 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Wayne Morse, Jr., Esquire
WALDREP STEWART & KENDRICK, LLC
2323 Second Avenue North
Birmingham, AL 35203

William P. Gray, Esquire
Douglas N. Robertson, Esquire
GRAY & ASSOCIATES, L.L.C.
3800 Colonnade Parkway
Suite 350
Birmingham, Alabama 35243

26

Timothy P. Donahue, Esquire
A. Donald Scott, Jr., Esquire
DONAHUE & ASSOCIATES, LLC
1020 22nd Street South
Birmingham, Alabama 35205

s/ G. Daniel Evans
G. Daniel Evans

**State of Alabama**
**Personnel Department**
**64 North Union Street**
**P. O. Box 304100**
**Montgomery, AL  36130-4100**
**Phone: (334) 242-3389**
**Fax: (334) 242-1110**
www.personnel.alabama.gov

EXHIBIT A

Continuous Announcement

# PROBATION AND PAROLE OFFICER - 60901

**Salary:** $31,488.00 - $53,995.20
*Entry salary begins at Step 4 - $33,902.40
**Announcement Date:** November 1, 2000
**Revised Date:** May 2, 2012

## JOB INFORMATION

Probation and Parole Officer is a permanent, full-time position with the Board of Pardons and Paroles.  Positions are located across the state.  Work includes conducting pre-parole investigations for a parole board and pre-sentence investigations for courts with probationary power.

## MINIMUM REQUIREMENT

- Graduation from an accredited* four year college or university.  Applicants may apply for this positon during their last semester of college; however, applicants will be required to submit documentation verifying completion of the Bachelor's degree to the hiring agency prior to beginning work.

## NOTE

- On the reverse side of this announcement is a required questionnaire.  If you check No for any statement, you may wish to reconsider applying for this position.  Attach the completed questionnaire to your application and return it to State Personnel.  Applications without the questionnaire attached will not be accepted.

## ADDITIONAL REQUIREMENTS

**Applicants must meet all of the following special requirements to be hired by the appointing agency:**

- Applicants must possess a valid driver's license at the time of their appointment.
- Applicants must meet the minimum standards of the Alabama Peace Officers' Standards and Training Act during their probationary period.
- All applicants will be required to complete the Peace Officers Standards and Training Commission Physical Ability/Agility Test.

## BENEFITS

- Low-Cost Health/Dental Insurance (Single Coverage)
- Accrue Thirteen Annual Leave Days per Year
- Thirteen Paid Holidays per Year
- Flexible Employee Benefit Plans
- Optional Family Coverage (Health/Dental)
- Accrue Thirteen Sick Days per Year
- Retirement Plan
- Optional Deferred Compensation Plans

## EXAMINATION

- **Open-Competitive** to all applicants
- **Written Multiple Choice Exam**.

## HOW TO APPLY

- Complete an Application for Examination Form available at **www.personnel.alabama.gov**, the above address, or any Alabama Career Center Office.
- Apply by mail or by fax.  *Applications will be accepted until further notice.*

*Individuals currently on the register MUST reapply to remain eligible for employment.*

**THE STATE OF ALABAMA IS AN EQUAL OPPORTUNITY EMPLOYER**
Please refer to the State Personnel Department web site or call us at (334) 242-3389 for complete information on our policy for accepting post-secondary and advance degrees.

**Applicants hired by the State of Alabama on or after January 1, 2012 will be subject to the E-Verify process pursuant to Act No. 2011-535.**

**PROBATION AND PAROLE OFFICER - 60901**
**WILLINGNESS QUESTIONNAIRE**

**Are you willing and able to:**

|  |  | YES | NO |
|---|---|---|---|
| 1. | Attempt to successfully complete a pre-employment physical ability/agility test? | _____ | _____ |
| 2. | Have a complete physical examination as required by the Alabama Peace Officer's Standards and Training Commission? | _____ | _____ |
| 3. | Verify you do not have or have never had a conviction for a felony or misdemeanor involving force, violence, or moral turpitude? | _____ | _____ |
| 4. | Verify you obtained an honorable discharge if you served in the armed forces of the United States? | _____ | _____ |
| 5. | Work non-traditional hours (other than 8 a.m.-5 p.m.) including nights and weekends? | _____ | _____ |
| 6. | Have a listed telephone number? | _____ | _____ |
| 7. | Be certified in the use of chemical weapons such as OC spray? | _____ | _____ |
| 8. | Be certified in the use of firearms (handgun and shotgun)? | _____ | _____ |
| 9. | Attend and successfully complete mandatory firearm re-qualification with a handgun each year? | _____ | _____ |
| 10. | Receive mandatory officer training each year  (12 or more hours)? | _____ | _____ |
| 11. | Receive training and use computer automated systems for caseload management and investigations? | _____ | _____ |
| 12. | Furnish your own automobile for use on the job?  (Mileage will be reimbursed) | _____ | _____ |
| 13. | Consistently work under pressure in order to meet multiple deadlines to include investigations ordered by the Parole Board and Courts? | _____ | _____ |
| 14. | Make home visits and effect arrests in any area to which you are assigned to include low income housing projects and confirmed "crack houses"? | _____ | _____ |
| 15. | Transport offenders with various medical conditions in a state vehicle? | _____ | _____ |
| 16. | Maintain strict confidentiality of all offenders' medical information to which you have access? | _____ | _____ |
| 17. | Work with persons who live alternative lifestyles? | _____ | _____ |
| 18. | Work with persons who have been convicted of a wide range of criminal offenses? | _____ | _____ |
| 19. | Work with persons who have HIV infection (AIDS Virus)? | _____ | _____ |
| 20. | Work with persons who are substance abusers? | _____ | _____ |
| 21. | Take verbal abuse from offenders or third parties without retaliating physically or verbally? | _____ | _____ |
| 22. | Work in jail/prison settings? | _____ | _____ |
| 23. | Perform DNA testing by swabbing offenders' mouth? | _____ | _____ |
| 24. | Collect urine specimens in restrooms in accordance with proper procedure? | _____ | _____ |

_____
**Print your name**

_____          _____
**Signature**                                                                    **Social Security Number**





# STATE OF ALABAMA

**PERSONNEL DEPARTMENT**

300 Folsom Administrative Building

Montgomery, Alabama 36130-4100

Telephone:  (334) 242-3389 Fax:  (334) 242-1110

www.personnel.alabama.gov

Jackie Graham
**State Personnel Director**
Alice Ann Byrne
**Deputy Director**

April 9, 2012

# M E M O R A N D U M



TO:             **Persons Interested in Continuous Announcements**

FROM:         **State Personnel Director**

SUBJECT:    **Weekday Testing For:**

Effective immediately the State Personnel Department will administer the written test for the below job classifications each month on a selected Friday as follows:

| Second Friday of the Month | | Fourth Friday of the Month | |
|---|---|---|---|
| **Clerk** | **10121** | **Account Clerk** | **10601** |
| **ASA I** | **10196** | **Classification Specialist** | **50340** |
| **ASA II** | **10197** | **Health Services Admin I** | **40761** |
| **ASA III** | **10198** | **Financial Support Worker** | **50247** |
| **Retirement Counselor** | **10875** | **Planning and Economic** | **21230** |
| **State Capitol Police** | **60637** | **Development Specialist I/II** | |
| **Driver License Examiner I** | **60410** | | |
| **Probation & Parole Officer** | **60901** | | |

Individuals wishing to take the written test on a Friday must call the State Personnel Department at **(334) 353-3492** to receive instructions about the testing schedule. Candidates must have an accepted application on file prior to making a reservation.

**TEST CENTER SPACE FOR FRIDAY TESTING IS LIMITED SO APPLICANTS WILL BE SCHEDULED ON A FIRST CALL/FIRST SERVE BASIS. WE WILL STOP TAKING RESERVATIONS WHEN SEATING CAPACITY IS MET OR BY 11:00 A.M. SEVEN WORKING DAYS PRIOR TO TEST DATE.  CANDIDATES WILL BE SENT A CARD BY MAIL AND MUST PRESENT THIS NOTIFICATION CARD AND A PICTURE IDENTIFICATION TO BE ADMITTED TO THE TEST.**

Friday tests will be conducted **ONLY** in the office of the State Personnel Department located at the following address:

State Personnel Test Facility

3738 Atlanta Highway

Montgomery AL 36109

**NOTE:** Friday testing will be offered in addition to the regular statewide testing conducted throughout the year for these job classifications on Saturdays.



**State Personnel Department Test Center**
3738 Atlanta Highway
Montgomery, AL 36109
(334) 272-6245

Birmingham

Coliseum Blvd.

3/10 of a mile          Atlanta Hwy.

Parking

Fortis College    SPD Test Center

Parking

DALRAIDA CHURCH OF CHRIST

U TURN 2 US CHILDCARE

1.7 miles

SPD PARKING FOR TEST CANDIDATES

DEAD-END

I-65

Atlanta

I-85

Perry Hill Rd.    Exit #4

**From Birmingham/Mobile:**
Take I-85 North to the Perry Hill Rd. Exit.
Turn left onto Perry Hill Rd. & go  approximately
    1.7 miles to Atlanta Hwy/US Hwy 80.
Turn left onto Atlanta Hwy/US Hwy 80.
Go approx. 3/10 of a mile and turn left.
The building is just past the Dalraida Church of
    Christ and adjoins Fortis College.
SPD parking is on the right side of the entrance
    road just prior to the end of the road.

**From Atlanta:**
Take I-85 South to the Perry Hill Rd. Exit.
Turn right onto Perry Hill Rd. & go
        approximately .7 miles to Atlanta
        Hwy/US Hwy 80.
Turn left onto Atlanta Hwy/US Hwy 80.
Go approx. 3/10 of a mile and turn left.
The building is just past the Dalraida
    Church of Christ and adjoins Fortis
    College.
SPD parking is on the right side of the
    entrance road just prior to the end
    of the road.

N
W      E
S

Mobile

ELECTRONICALLY FILED
6/2012 3:26 PM
CV-2010-900183.00
CIRCUIT COURT OF
SHELBY COUNTY, ALABAMA
MARY HARRIS, CLERK

EXHIBIT B

IN THE CIRCUIT COURT OF SHELBY COUNTY, ALABAMA

| | |
|---|---|
| Dana Burdette, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION NO.: |
| | )   CV  2010-900183 |
| | ) |
| Town of Harpersville, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This cause had previously come before the court for hearing on Plaintiff's Motion for Preliminary Injunction which the court simply held in abeyance pursuant to its Order entered on June 26, 2012. At the time of the hearing the court had not had an opportunity to review the Plaintiff's supporting deposition submissions which had not been furnished to the court until e-filed the evening of June 25, 2012. Hence, the court's non-ruling the next day.

The court was not able to review the deposition testimony and the exhibits attached thereto until the 4th of July holiday. At a time when the entire country was celebrating an individuals' "unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness," which were ultimately enshrined in the Bill of Rights, this court was appalled to discover that these unalienable rights have for some time been routinely denied by the City of Harpersville.

When viewed in a light most favorable to Defendants, their testimony concerning the City's court system could reasonably be characterized as the operation of a debtors prison. The court notes that these generally fell into disfavor by the early 1800's, though the practice appears to have remained common place in Harpersville. From a fair reading of the defendants' testimony one might ascertain that a more apt description of the Harpersville Municipal Court practices is that of a judicially sanctioned extortion racket. Most distressing is that these abuses have been perpetrated by what is supposed to be a court of law. Disgraceful.

Defendants' depositions present virtually undisputed evidence that criminal defendants appearing before the Harpersville Municipal Court have been subjected to repeated and ongoing violations of almost every safeguard afforded by the Unites States Constitution, the laws of the State of Alabama, and the Rules of Criminal Procedure. The admitted violations are so numerous as to defy a detailed chronicling in this short space. The court will, therefore, attempt to enumerate only the most egregious abuses committed by the Harpersville Municipal Court and its agent for probation services, JCS:

1.      Defendants placed on "probation" without an adjudication or sentencing order and/or without receiving a suspended sentence;

2.      Defendants placed on "probation" with JCS only when unable to pay the entire amount of assessed fines and court costs on the day of trial;

3.      Defendants incarcerated for a probation violation (failure to pay, failure to appear, contempt of court…) without an adjudication or sentencing Order;

4.      Defendants incarcerated for failure to appear in court, though only "ordered" to do so by JCS;

5.      A defendants' failure to appear or failure to pay often results in a new criminal charge with incarceration and additional fines and fees for contempt of court with no valid court order or adjudication;

6.      Defendants not afforded a hearing as required by Rule 26.11 of the Alabama Rules of Criminal Procedure;

7.      Defendants placed on "extended" probation for many years beyond the two year maximum;

8.      Defendants interminably held in the county work release program until all fines and fees are paid in full;

9.      Defendants charged unconscionable fines and fees.

10.      Defendants placed on "probation" are charged an initial "set up fee" of $10.00 and a monthly "probation fee" of $35.00 (arbitrarily raised to $45.00 per month at some point in time, though the Harpersville/JCS contract allows for only $35.00 per month) which is charged as long as the defendant is on probation. For example, under the Harpersville/JCS contract a defendant who is unable to pay a fine of $200.00 on the day of trial is placed on probation. If that defendant paid $50.00 per month to the

JCS probation office, the defendant will not have satisfied his probation for 14 months at a total cost of $700.00. (JCS probation fees would be one month at $10.00 + $35.00 and 13 months at $35.00-unless the defendant was charged $45.00 per month in which case the first two monthly payments would only cover JCS charges, requiring an additional 40 months of payments totaling $2,100.00.)

11.   Multiple incarcerations were imposed upon the plaintiffs in the case at bar with no adjudication or imposition of sentence and for probation violations over which the court had absolutely no jurisdiction.

12.   Fines and fees charged to the plaintiffs in the case at bar reached into the thousands upon thousands of dollars.

For some time Defendants' counsel have acknowledged to the court that some "mistakes" have been made. Many months ago the City represented to the court that an immediate review would be undertaken to correct these "mistakes." The City was to provide for the court's approval a proposed policies and procedures manual; the purpose of which was to establish and implement municipal court procedures for the City of Harpersville which simply complied with existing state laws, the Rules of Criminal Procedure, and Constitutional mandates. The court has repeatedly inquired as to the status of the City's submission of its proposed procedures. None have been forthcoming.

Through the recently filed depositions the court has now learned of the scope of the City's "mistakes." The process of establishing the policies and procedures for the Harpersville Municipal Court shall henceforth rest within the sole province of this court. Because of the Harpersville court's institutional, egregious and undisputed pattern and practice of Constitutional and statutory violations, the gravity of past abuses, and the exigent circumstances faced by criminal defendants who have been placed on "probation" by that court or who may come before that court in the near future, it is hereby ORDERED that:

3

1.     Plaintiffs' motion to set this case for Preliminary Injunction hearing is GRANTED. This case is set for such hearing at 9:00 a.m. on August 20, 2012, at which time Plaintiffs shall be permitted to proffer additional evidence as they see fit, and Defendants shall have the opportunity to provide the court with any evidence by way of explanation or in mitigation of their deposition testimony.

2.     The mayor and every member of the Harpersville City Council shall be present in person for the hearing of August 20, 2012, and shall appear at any and all subsequent hearings in this case until final resolution, or until further Order of the court. These individuals, who are the officials ultimately responsible for the operation of the City, may wish to consult with Mr. Ward regarding the consequences of one's failure to appear, especially when actually ordered by a court to do so.

Prior to the hearing, the mayor and every member of the city council shall have certified to this court in writing and under oath that he/she has read this Order and the depositions of Ward, Hall and Egan.

3.     Effective immediately, and until further Order of this court, the City of Harpersville is temporarily enjoined from incarcerating any individual in either the Shelby County jail or the Shelby County Community Corrections facility without having first obtained written authorization from this court. This requirement applies only to individuals who are either subject to post-conviction proceedings, have received a suspended sentence, or have been placed on "probation."

4.     Effectively immediately, no individual shall be incarcerated, nor shall an arrest warrant issue, until said individual is afforded a hearing in accordance with Rule 26.11 of the Alabama Rules of Criminal Procedure. The municipal court shall make written findings of fact from that hearing. Should the municipal court then seek authorization from this court to incarcerate the defendant, the written findings of fact shall be submitted with such request.

5.     Effective immediately, an individual convicted in Harpersville Municipal Court shall have a minimum 30 days from the date of adjudication within which to remit assessed fines and court costs without incurring additional fees, penalties or other charges.

4

6.     Should an individual be convicted in Harpersville Municipal Court and sentenced to serve any type of incarceration, the City shall so notify this court contemporaneously with the entry of such adjudication by forwarding a copy of the adjudication and sentencing Order via fax to (205) 669-8553.

7.     Within 48 hours of the entry of this Order the City of Harpersville shall provide this court with a complete listing of all individuals who are currently being held by the City in any facility, providing a copy of the related incarceration Order(s).  For post-conviction incarcerations as a result of alleged probation violations, failure to appear, contempt of court, and the like, the City shall also provide copies of the adjudication and sentencing Order(s) for the original underlying case(s).

8.     The Clerk of Court is directed to forward a copy of this Order to the Sheriff of Shelby County, and to the Chairperson of the Board and the Executive Director of the Shelby County Community Corrections Corporation.

9.     This Order shall remain in full force and effect pending further Order of this court.

**DONE** and **ORDERED** this 11th day of July, 2012.

Hub Harrington, Circuit Judge

EXHIBIT C

**ALABAMA PEACE OFFICERS STANDARDS AND TRAINING COMMISSION**
**ADMINISTRATIVE CODE**

**CHAPTER 650-X-4**
**CERTIFICATION OF LAW ENFORCEMENT OFFICERS**
TABLE OF CONTENTS

650-X-4-.01     Education Requirements
650-X-4-.02     Employment Requirements
650-X-4-.03     Waiver for Lateral Entry Equivalency Training
650-X-4-.04     Failure to Complete Training
650-X-4-.05     Withdrawal from School
650-X-4-.06     Repealed
650-X-4-.07     Repealed
650-X-4-.08     Repealed

**RULE 650-X-4-.01 Education Requirements.**

(1)   The trainee must successfully complete 480 hours of basic training at an approved academy.

(2)   The trainee must satisfactorily complete the law enforcement training course within the time set forth in the statutory requirement of the Code of Alabama, Title 36-21-46.

(3)   In order to successfully complete the law enforcement training course and be certified by the Commission, the trainee must achieve the following:

(a)   An overall score of not less than 70% on written exams,

(b)   Pass the first aid exam with a score of not less than 70% (Any re-test, if necessary, shall be administered within 72 hours.),

(c)   Pass the legal issues exam with a score of not less than 70% (Any re-test, if necessary, shall be administered within 72 hours.),

(d)   Pass the physical agility/ability test (Any re-test, if necessary, shall be administered within 48 to 72 hours.),

(e)   Pass 43 hours of firearms training and qualify two of three attempts on the firearms course. A minimum score of seventy (70) is required to pass each attempt

(1)   If a trainee does not pass ANY of the three (3) qualification attempts then the trainee is deemed to have failed the Academy and is barred from employment and certification as a law enforcement officer for two years.

(2)   Any trainee who passes one of the three attempts, but fails to pass twice, will be allowed, at the written request of the employing Agency, to attend the next available academy to re-take the forty three (43) hours of firearms training and qualification (provided the trainee passes all other phases of the academy session and does not exceed the statutory six (6) month provisional appointment time). If the trainee fails to pass firearms training at this point, the trainee is deemed to have failed the Academy and is barred from employment and certification as a law enforcement officer for two years.

(f)   Trainees shall not be absent more than 5% of the required training hours.

APOSTC 06/07

(4)  The trainee shall comply with all rules and regulations promulgated by the Commission.

(5)  The trainee in addition to complying with the Commission's rules and regulations shall comply with all rules and regulations promulgated by the academy.

Authority: Code of Alabama 1975, §36-21-40, §36-21-51.

Effective Date: September 29, 1983. Amended: June 12, 1995. Amended: May 9, 1997. Amended: February 4, 1999. Amended:  January 1, 2006.

**RULE 650-X-4-.02 Employment Requirements**. The applicant must be gainfully employed as a law enforcement officer by a law enforcement agency at the time of his/her application to the academy. Prior to certification, the applicant shall complete the required course of training established by the commission. An applicant may be provisionally appointed for a period of six months. No individual may be employed for an additional period until that individual is certified by the commission.

Authority: Code of Alabama 1975, §36-21-40, §36-21-51.

Effective Date: September 29, 1983. Amended: June 12, 1995. Amended: May 9, 1997.

**RULE 650-X-4-.03 Waiver for Lateral Entry Equivalency Training**.

(1)  The Commission may waiver the completion of any course required by Rule 650-X-4-.01 of the regulations upon presentation of documentary evidence by a department that a gainfully employed (full-time or part-time) officer has received equivalent training in another jurisdiction or through federal, or department of defense law enforcement experience.

(a)  If a law enforcement agency has a properly established and bonafide law enforcement reserve program, and if a duly appointed reserve officer is qualified and commissioned with the power of arrest, then the Chief Law Enforcement Officer may submit a letter of request to the Commission requesting the reserve officer be considered for Waiver of Lateral Entry Equivalence training. Reserve law enforcement officers who are approved for this training will be admitted to the refresher training program on a space available status only and may not occupy a position in the class if participation prevents a gainfully employed law enforcement officer from attending.

(b)  Any reserve law enforcement officer who attends this program must be covered by Workers Compensation Insurance.

(2)  The Commission will review the documentation of equivalent training presented by the department and use a point system, as described later in this rule, to determine if comparative compliance is achieved.

(3)  If equivalency training is approved, the officer will qualify to attend an 80 hour Law Enforcement Officer Refresher Course to equate previous training with current standards.

(4)  Equivalency of Training Point System. For the purpose of determining equivalency of training, the terms listed below shall have the following meaning and values:

(a)  Experience:  The total; number of years the applicant has been employed full time as a law enforcement officer since completing an entry level basic police training course.

(b)  Education: An academic title awarded by a post-secondary institution which is accredited by a state certification board or commission and authorized to award such degrees.

(c)  Equivalency:  Achieved by:

(1)   An applicant being Certified or licensed as a law enforcement officer in another State, by the Peace Officers Standards and Training Commission of that State, and whose Certification is valid and in good standing, and who meets all other requirements for lateral entry equivalency training as outlined in these Rules. Applicant must have a minimum of one (1) year experience as a gainfully employed, full time law enforcement officer and must not have a break in service of more than two (2) years following separation of employment as a law enforcement officer in said state. Or;

(2)   By an applicant obtaining a total of ten or more points based on the following schedule; of which, each applicant will be awarded the maximum number of points that he/she qualifies for in each of the three categories:

Years of full-time Law Enforcement Experience:

| | |
|---|---|
| Less than one (1) | 0 |
| One (1) to five (5) years | 5 |
| Five years, 1 day, to 10 years | 6 |
| Ten years, 1 day, to 15 years | 7 |
| Fifteen years, 1 day, to 20 years | 8 |
| Twenty years and one day or more | 9 |

Basic Police Training

| | |
|---|---|
| less than 280 hours | 0 |
| 280 hours - 319 hours | 1 |
| 320 hours - 479 hours | 2 |
| 480 hours - 639 hours | 3 |
| 640 hours - 800 hours | 4 |
| 801 hours - 959 hours | 5 |
| 960 hours or more | 6 |

Post-secondary Degrees

| | |
|---|---|
| Associate Degree | 1 |
| Bachelor Degree | 2 |
| Masters Degree or above | 3 |
| (correspondence courses not accepted) | |

(5)   Eligibility. An applicant who is Certified in another State and who meets the requirements of Equivalency as outlined in section (4)(c)(1) of this Rule is deemed eligible. All other applicant's requesting lateral entry to the law enforcement field in Alabama must meet the following requirements:

(a)   Military Police Applicant. Be a graduate of a formal Military Police "Law Enforcement" Basic Police Training Course. Must have been performing duties in a law enforcement function the last four years prior to separation and must not have a break in service in excess of two (2) years following military separation.

(b)   Federal Law Enforcement Applicant. Be a graduate of a formal Federal Law Enforcement

APOSTC 06/07

Basic Police Training Course. Must have been performing duties in a law enforcement function the last four years prior to separation from Federal Service and must not have a break in service in excess of two (2) years following Federal Service separation.

(c) The following applicants will not be considered for eligibility:

(1) Applicants who do not meet APOSTC standards for certification.

(2) Applicants who have been "Grandfathered" or "exempted" from training.

(3) Applicants whose certification has been suspended or revoked.

(4) Applicants who have a primary Security Police occupational code.

(6) Refresher Course. Those applicants who have received an acceptable evaluation of their experience, education, and training are required to attend an eighty (80) hour refresher training course to be conducted at an assigned regional academy. The general curriculum will be developed and updated as needed by a committee of Academy Directors and approved by the Alabama Peace Officers Standards and Training Commission. This training course will be rotated among the regional academies. A minimum of one course (if there is a sufficient number of applicants) will be conducted each calendar year. No credit will be given for a partially completed training course. Trainees shall not be absent more than 5% of the required training hours. The following mandated subjects must be passed. Any trainee who fails to pass (a), (b), (c) or (d) shall be required to attend the 480 hour basic Academy.

(a) An overall academic average of not less than 70%.

(b) Pass the legal issues exam with a score of not less than 70%.

(c) Pass the defensive driving course with a score of not less than 70%.

(d) Pass the physical agility test.

(e) Pass two of three attempts on the firearms course. A minimum score of seventy (70) is required to pass each attempt.

(1) If a trainee does not pass ANY of the three (3) qualification attempts then the trainee is deemed to have failed the Academy and is barred from employment and certification as a law enforcement officer for two years.

(2) Any trainee who passes one of the three attempts, but fails to pass twice, will be allowed, at the written request of the employing Agency, to attend the next available academy to take the forty three (43) hours of firearms training and qualification (provided the trainee passes all other phases of the academy session and does not exceed the statutory six (6) month provisional appointment time). If the trainee fails to pass firearms training at this point, the trainee is deemed to have failed the Academy and is barred from employment and certification as a law enforcement officer for two years.

(f) Applicant must present proof of CPR Training prior to admission to the course.

(7) Definitions:

(a) Law Enforcement Officer: One who is responsible for the prevention and detection of crime and the enforcement of the criminal, traffic, or highway laws of the State of Alabama. A full-time federal or military law enforcement officer who has powers of arrest, authority to carry a firearm, and is classified by their agency in a law enforcement position.

(b) Basic Police Training Course: A basic course recognized by a state commission, state board, or agency which leads to licensing or certification as a law enforcement officer; or a basic course sponsored by the federal government for its law enforcement officers; or a basic course

APOSTC 06/07

conducted by the Department of Defense for personnel classified as law enforcement personnel under their military specialty codes, i.e., Military Occupation Code (MOS), Air Force Specialty Code (AFSC).

(8)  Procedures:

(a)  All commission procedures applicable to certification of newly employed officers must be followed when applying for Lateral Entry.

(b)  The employer must complete the required application forms in duplicate, and provide certified true copies of law enforcement training and training curriculums provided in the training of the applicant.

(c)  The applicant will arrange for the post-secondary schools, colleges, and universities to forward a certified true copy of post-secondary degrees earned, to the Peace Officers Standards and Training Commission.

Authority: Code of Alabama 1975, §36-21-40, §36-21-51.

Effective Date: September 29, 1983. Amended: June 12, 1995. Amended: May 9, 1997. Amended: May 5, 1999. Amended: September 5, 2000. Amended: September 13, 2000. Amended: July 18, 2001. Amended: January 1, 2006. Amended: June 28, 2007.

**RULE 650-X-4-.04 Failure to Complete Training**. Should a trainee fail academically or physically, the hiring agency may request that the trainee be allowed to attend another session. An applicant is eligible for two attempts of completion of the academy. If an applicant fails the academy twice, the applicant is ineligible to attend an academy for a period of two years from the date of failure of the second academy attempt. If, after two years, the applicant is again employed as a law enforcement officer, a new application package is required. This does not exempt the applicant from Rule 650-X-2-.01.

Authority: Code of Alabama 1975, §36-21-40, §36-21-51.

Effective Date: September 29, 1983. Amended June 12, 1995. Amended: February 4, 1999.

**RULE 650-X-4-.05 Withdrawal from School**. A trainee who is failing the course of study may withdraw and re-enter school only in hardship or emergency situations.

Authority: Code of Alabama 1975, §36-21-40, §36-21-51.

Effective Date: September 29, 1983.

**RULE 650-X-4-.06 Repealed.**

**RULE 650-X-4-.07 Repealed.**

**RULE 650-X-4-.08 Repealed.**

Authority: Code of Alabama 1975, §36-21-40, §36-21-51.

Effective Date: October 29, 1980. Amended: June 12, 1995. Amended: May 9, 1997. Repealed: April 4, 2005.