FILED
2012 Dec-20  PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GINA KAY RAY, KALUS K. JOHNSON, and DEUANTE T. JEWS individually and for a class of similarly situated persons or entities,** | ) ) ) ) ) | |
| **Plaintiffs;** | ) ) | **CIVIL ACTION NO.:** |
| **v.** | ) ) | **2:12-cv-02819-RDP** |
| **JUDICIAL CORRECTIONS SERVICES, INC., a corporation; CORRECTIONAL HEALTHCARE COMPANIES INC., a corporation; THE CITY OF CHILDERSBURG** | ) ) ) ) ) | |
| **Defendants.** | ) | |

### AMENDED AND RESTATED COMPLAINT

COME NOW,  Deuante T. Jews, Kalus K. Johnson and Gina Kay Ray (hereinafter "Plaintiffs"), individually and on behalf of those similarly situated, upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, by and through their undersigned counsel, and with leave of the Court, file their Amended and Restated complaint as follows:

### JURISDICTION

1.      The Court has jurisdiction over this matter because it concerns a controversy arising under the Constitution of the United States.  28 U.S.C. §1331.  This is a civil rights action brought under 42 U.S.C. §§ 1983 and 1988.

2.      This Court also has jurisdiction of this action by virtue of 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), authorizing jurisdiction of claims brought under 42 U.S.C. §

1983 to enforce civil rights guaranteed by the United States Constitution.

3.      This action also seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2022.

4.      Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES TO THE COMPLAINT

5.      The plaintiff Deuante T. Jews is an individual resident of Harpersville, Alabama.

6.      The plaintiff Kalus K. Johnson is an individual resident of Childersburg, Alabama.

7.      The plaintiff Gina Kay Ray is an individual resident of Vincent, Alabama.

8.      The class which the individual plaintiffs seek to represent consists of:

> All individuals who have in the past, or may in the future, receive only fines and no jail sentence for charges before the Alabama municipal courts which employ JCS and whose fines were, or may be in the future, converted to a probation under JCS.

> AND

> All individuals who, despite their indigency, were incarcerated, or may be subject to incarceration, without consideration of their indigency for failure to pay charges and fees for services allegedly rendered by JCS to Alabama governments with which it contracts.

9.      The defendant Judicial Corrections Services, Inc. (hereinafter "JCS") is a Delaware corporation, registered as a foreign corporation and doing business in the State of Alabama and in this district which markets itself as "not a social service agency," but a

2

"for profit"company which offers services to governmental entities "free of charge" to the cities as "an offender paid system."  At all times, JCS has operated under the color of state law.

10.    The defendant Correctional Healthcare Companies, Inc. (also hereinafter "JCS") is a Delaware corporation, maintaining its principal place of business in Greenwood Village, Colorado, but shares the same corporate officers at the same address as JCS.  It appears to be the successor of JCS, having purchased or otherwise acquired it, continuing to do business as JCS and operating the same.

11.    The City of Childersburg, Alabama, ("Childersburg") is a municipal corporation located within Shelby County, Alabama.  The City Council and Mayor B.J. Meeks control the policy making for Childersburg and also hire the municipal court judge.

## FACTS

12.    The Plaintiffs bring this action because of the operation of the municipal courts at Childersburg in tandem with JCS, by joint policy and practice, have violated and continue to violate the Plaintiffs' statutory and constitutional rights and those of persons similarly situated.

13.    JCS operates a "for profit" enterprise that markets its services to various municipal and county governments and has contracted with over 100 cities and towns throughout Alabama.  JCS's marketing approach to these cities emphasizes that its fees will be paid by the "offender" before the municipal court and that its efforts will improve collection of court fines and costs at no cost to the city.

14.    JCS routinely uses a form contract to establish its relationship with its

3

customer cities and similarly trains its employees using a training manual replete with forms for court use and for contacting the "offenders" from whom it is seeking collection. As a result, the JCS approach is highly systemized.

15.     Under the system established by JCS, its employees are not required to have criminal justice or legal training, nor are they required to have any social work education or meet any minimum law enforcement standards as is required of state probation officers. Instead, JCS requires only that its employees be 21 years old, a non felon, with two years of college who complete 40 hours of training by JCS on its processes.  On satisfying those requirements, JCS employees are then labeled "Probation Officers" and permitted to carry the JCS issued badge in collecting its fees, court fines and costs.

16.     Under this system and by agreement with Childersburg, many administrative and judicial functions of the municipal court have been unlawfully delegated to JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

17.     The agreement drafted by JCS and signed by the city mayor and JCS attests that its municipal "***court agrees that each court order shall provide*** for the following:

        a probation fee of $35.00 per month flat fee

        One time probationer set up fee of $10.00. . . . " (***emphasis added***).

18.     Childersburg, through its mayor and council, approved the agreement with JCS and approved the employment of Larry Ward as judge of its municipal court.  Ward, a bond salesman at Morgan Keegan, also serves as municipal judge for Harpersville and at other cities also under contract with JCS.

19.     The JCS system provides "Order of Probation" forms to the municipal court

4

with the printed requirement on each form that the "offender" pay JCS $35 per month plus $10 for a file set up charge.  *See* Exhibit A.  The monthly fee of $35 has since the agreement been increased to $45 per month for each "offender" at Childersburg.

20.    At the Childersburg Municipal Court operating under the JCS contract, a person unable to fully pay fines and costs when levied is automatically placed on probation using the JCS orders and forms even when there is no jail sentence adjudicated.  This is routinely done with no investigation into the indigency of the individual or the reasons for their inability to pay the fine and costs.  The orders supplied by JCS then require the individual to make payment to JCS of the fines, costs and additional monthly fees as required under its contract with Childersburg.

21.    The JCS system and its "Probation Tracker" software is highly systemized and focuses on collections of fines and its fees -- not traditional probation services.  That collection focus allows the "offenders" to mail in payments if they live 30 miles from the JCS office.  *See* Exhibit B.  In fact, the daily tasks of the JCS employees are heavily directed to collecting, counting and depositing the money collected.  *See* Exhibit C.

The training manual used by JCS instructs its employees on the use of its computer systems in tracking the payments made by the "offenders" and provides court forms to order probation and payment to JCS.  The payments to JCS are ordered under these forms even when adjudication is withheld.  *See* Exhibit D.

The JCS training system also provides sample letters for use after probation is ordered, threatening the "offender" that "a warrant will be issued for your arrest" and that their "court date cannot and will not be reset."  *See* Exhibits E and F.  Similar JCS forms

5

instruct the "offender" that they can avoid the court date if they pay an amount determined by JCS.  *See* Exhibit G.

Finally, the JCS manual instructs its employees on the issuance of warrants of arrest and provides forms for that purpose.  *See* Exhibit H.  After the arrest warrant is issued, JCS also provides forms for warrant dismissal if JCS determines that the "offender" is now in compliance.  *See* Exhibit I.  Once arrested, JCS monitors those "offenders" placed in jail.  *See* Exhibit J.

22.    The decision to use this JCS system was an administrative decision of Childersburg and not a decision of the municipal court judge.

23.    Childersburg, through its contract and operation, has clothed JCS with the appearances of state authority and has allowed JCS employees to carry badges.  The JCS employees attend each municipal court session and are referred to as "parole officers" in the operation of the municipal court and city clerk's office, though none have such authority under Alabama statutes.  Under this system, "offenders" are not permitted to pay fines at the city clerk's office, but are instead directed by Childersburg to make all payments including those for fines, restitution, probation fees and court cost to JCS at the JCS office.

24.    This public ruse is maintained by Childersburg and JCS in order to impose and collect fines and costs from citizens such as the plaintiffs, and is accomplished by allowing JCS to control the money, determine how much each municipal court "offender" must pay each month, how much will be credited for each payment to the collection "services" of JCS each month and how much of it will rebate to the towns such as

Childersburg toward the fines adjudged.

25.     This system, as a matter of routine, violates the rights of persons such as the plaintiffs by imposing fines and charging fees to indigent persons with no hearing or consideration of their indigency.

26.     Despite the lack of authority to do so JCS, at its discretion, uses threats of revoking probation, increased fines and cost and jail time for purposes of collection.  Under this system, should an individual fail to pay to the satisfaction of JCS, JCS will determine that the individual's "probation" should be revoked, or impose additional fines and costs. Under the system operated jointly by Childersburg and JCS, JCS's determination to incarcerate an individual and/or impose unreasonable bond requirements is routinely followed by Childersburg personnel without conducting delinquency or probation hearings and without making any findings, much less any determination of indigency or appointment of counsel before taking such punitive action.

27.     The collective actions of JCS and Childersburg routinely result in court costs and fines which exceed the statutory maximum of $500 for municipal courts, and impose additional "jail fees" determined by the city clerk for the costs of any incarceration. Similarly, the periods of "probation" imposed for purposes of collecting fines and fees for JCS routinely exceed the two-year statutory maximum, all of which results in JCS and Childersburg taking joint action to detain and otherwise incarcerate individuals without any jurisdiction to do so.

28.     After improperly imposing probation when no jail sentence is involved, incarceration then follows if the fine, together with the fees added by JCS, are not paid as

dictated by JCS.

29.     Despite directing the Childersburg court that incarceration of an individual "offender" is needed when payment is not made, JCS undertakes no determination of the reasons for nonpayment, and does not consider such things as the plaintiffs' disability, unemployment, assets, or conduct with regard to the nonpayment of the fines.

30.     JCS denies any responsibility and takes no action under its operations with Childersburg to determine indigency, and provides no instruction in its employee manual for the consideration of indigency.  The Municipal Court judge employed by Childersburg, however, contends that under its contract it is JCS that should determine if an "offender" is unable to pay due to indigency and if so, to abate any fees in the probation order.

31.     Under this system jointly implemented by JCS and Childersburg, after simple fines are converted to "probation" for payment, jail often results for the "offender" who does not meet the payment scheduled set by JCS.  This system uses JCS's conclusion of a "probation violation" or "failure to obey court order" and employs JCS forms for the issuance of warrants to incarcerate individuals whose original case had only been a fine.

**THE PLAINTIFFS**

32.     Plaintiffs and others similarly situated are individuals who have received or may receive in the future only fines and no jail sentence for charges before the Alabama municipal courts, but whose fines were converted or may be converted to probation under JCS, and those who are currently or were formerly indigent and, despite that indigency, were incarcerated, or may be incarcerated in the future, for failure to pay charges and fees for services allegedly rendered by JCS to the Alabama governments with which it

8

contracts.

**GINA KAY RAY**

33.     Gina Kay Ray is an individual resident of Vincent, Alabama, who was brought before the Childersburg Municipal Court on August 12, 2010 on charges of "no insurance" and "driving while license suspended." She was fined $548 and $598 for these charges with no jail sentence but was ordered, on the JCS form, to pay JCS an additional $45 per month and $10 charge to set up her file. Her monthly payment on these amounts was set by JCS at $145 per month.

34.     On July 14, 2011, Ms. Ray was charged at the Childersburg Municipal Court on charges of "expired tag" and "driving while license suspended." For these charges she was fined $248 and $598 respectively, but with no jail sentence and again ordered to pay JCS $45 per month and $10 file set fee. Her monthly payment on these amounts was also set by JCS at $145 per month. Though the "probation" period for her 2010 and 2011 cases overlap in time, JCS treated these as "consecutive cases" so that the period would then extend well beyond 24 months and result in monthly fees to JCS for both cases.

35.     Ms. Ray was and has been indigent and was not able to pay for her insurance, tag or license, much less the fines and fees for JCS, but neither the Childersburg Municipal Court nor JCS ever made any inquiry into her inability to pay at the time of levying the fine or thereafter.

36.     Due to her inability to pay, Ms. Ray was jailed at the request of JCS on its claim of her "failure to obey a court order" which was approved by Childersburg. Ms. Ray was placed in the Talladega County jail for a period of four days in 2010 and then an

additional 21 days in 2011, and further time in April and May of 2012.

37.     Due to her inability to pay and her indigency, she remained in jail throughout these periods of time.  On May 1, 2012, a friend of Ms. Ray was able to acquire $300.00 which was the amount determined and demanded by JCS to secure her release from jail.

38.     At the point of Ms. Ray's release, employees of JCS authorized the release on the previous charge of "failure to obey court order" and she was directed to appear in "Judicial Corrections Municipal Court."

39.     On June 14, 2012, Ms. Ray was again brought before the Municipal Court in Childersburg on charges of "attempt to evade," "expired tag" and "driving while revoked." Once again, she was fined $698, $218, $598 on these charges respectively with no jail sentence and once again ordered to pay JCS $45 per month for 24 months and $10 file set up fee.

40.      While Ms. Ray has made some small payments, she at all times has been indigent and unable to pay the full amounts and the additional probation fees charged by JCS and Childersburg.

41.     Throughout this period of time, JCS has provided no services to Ms. Ray and has acted merely as a collection agency charging additional fees and, despite knowledge that Ms. Ray was unable to pay these fines and indigent, JCS has sought to collect and take actions to incarcerate Ms. Ray without any due process.

42.     On each of her incarcerations, Ms. Ray was incarcerated without the benefit of legal counsel, without any formal probation revocation hearing, or any hearing on the issue of her indigency, but simply incarcerated and, on some occasions, later released

based upon the determination of JCS.  These actions were taken with the approval and participation of Childersburg pursuant to its policy and contract with JCS.

**KALUS K. JOHNSON**

43.     Kalus K. Johnson, as a result of being found guilty on certain tickets and traffic fines, was required by the Municipal Court of Childersburg to pay fines totaling $1,844 to JCS.  These fines did not include any jail sentence but Mr. Johnson, on October 13, 2005, was ordered to pay JCS a total of $3,203 plus $35 per month and a $10 file set up charge.  Even though these charges were made in 2005, the "probation" under JCS has and is still continuing with the approval and knowledge of Childersburg.

44.     At all times Johnson has been indigent, but despite this indigency, has been jailed at least six times at the request of JCS and approved by Childersburg for his failure and inability to pay these charges.

45.     On none of these incarceration periods was Johnson given credit for $15 per day toward his fine as is required by the Alabama Code.

46.     Most recently Johnson was jailed approximately four months ago at the request of JCS and was only able to secure release when family members were able to acquire a total of $500 and pay the same to JCS.  At that time, "probation officers" from JCS promised that Johnson would stay in jail for at least a year if the $500 was not forthcoming.  Despite paying the $500, additional charges were thereafter levied by JCS for $317 because a warrant had been issued.   JCS has consistently charged probation fees for each month.

47.     While Johnson has made payments throughout the period of time, he has

been indigent and unable to pay the full amount of the probation fees imposed and other charges by JCS.

48.     Throughout this period of time, JCS has provided no services to Mr. Johnson and has acted merely as a collection agency charging additional fees, and despite knowledge that Johnson was unable to pay these fines and indigent, JCS has sought to collect and take actions to incarcerate Johnson without any due process.

49.     On each of his incarcerations, Mr. Johnson was incarcerated without the benefit of legal counsel, without any formal probation revocation hearing, or any hearing on the issue of his indigency, but simply incarcerated and, on some occasions, later released based upon the determination of JCS.   These actions were taken with the approval and participation of Childersburg pursuant to its policy and contract with JCS.

**DEUANTE T. JEWS**

50.     Deuante T. Jews is a resident of Harpersville, Alabama, and was charged in 2008 in the Childersburg Municipal Court on the charge of harassment.   Mr. Jews was never tried and the alleged victim placing this charge went to prison.   As a result, the charges against Mr. Jews were dismissed, but on October 22, 2009 he was nonetheless charged court costs of $166 and placed on probation with JCS for 24 months for payment with the additional requirement that he also pay JCS $45 per month and $10 file set up fee.   When Mr. Jews did not pay those amounts, an arrest warrant was issued at the request of JCS for failure to obey a court order.

51.     Mr. Jews was charged $166 in court costs on the case dismissed against him and, because a warrant to arrest him was issued, an additional $317 was added to his bill

with JCS listed as "restitution" on the JCS and court records, even though no restitution was ever involved.

52.    Though the "probation" ordered October 22, 2009 was for 24 months, it is still continuing with additional JCS charges accruing each month.  JCS shows a balance due from Mr. Jews in March 2012 of $358.

53.    Based on those unlawful charges, Mr. Jews was incarcerated in October 2009 at the request of JCS and was only able to secure his release by the payment of a "cash bond" of $582 paid by others on his behalf which prompted JCS to secure Mr. Jews' release though a release authorization signed by the Childersburg city clerk.

54.    While Mr. Jews has made payments throughout the period of time, he has been indigent and unable to pay the full amount of the probation fees imposed and other charges by JCS.

55.    Throughout this period of time, JCS has provided no services to Mr. Jews and has acted merely as a collection agency charging additional fees, and despite knowledge that Johnson was unable to pay these fines and indigent, JCS has sought to collect and take actions to incarcerate Mr. Jews without any due process.

56.    On each of his incarcerations, Mr. Jews was incarcerated without the benefit of legal counsel, without any formal probation revocation hearing, or any hearing on the issue of his indigency, but simply incarcerated and, on some occasions, later released based upon the determination of JCS.  These actions were taken with the approval and participation of Childersburg pursuant to its policy and contract with JCS.

## PLAINTIFFS' CLASS ALLEGATIONS

57.     The Class which the named Plaintiffs seek to represent consists of:

> All individuals who received only fines and no jail sentence for charges before Alabama municipal courts but whose fines were converted to a probation under JCS; and, those who are currently or were formerly indigent and despite that indigency were incarcerated without consideration of their indigency for failure to pay charges and fees for services allegedly rendered by JCS to Alabama governments with which it contracts.

58.     The members of the Class are so numerous that joinder of all members is impracticable.

59.     As of this time, the exact number in the Class is unknown but would be more than one thousand.

60.     Plaintiffs' treatment by the Defendants is typical of the members of the Class.

61.     Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel who are competent and experienced in class litigation.  Plaintiffs have no interests that are adverse or antagonistic to the Class.

62.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by many Class members may be small, the expense and burden of individual litigation makes it virtually impossible for the Class members individually to seek redress for the wrongful conduct alleged.

63.     Common questions of law and fact exist as to all members of the Class, and predominate over any questions affecting solely members of the Class. Among the questions of law and fact common to the Class are:

14

a.     Whether the Defendants' joint policy and practice of automatically placing on probation all offenders who cannot immediately pay fines and costs but who have no jail sentence is legal;

b.     Whether the Defendants' joint policy and practice of converting unpaid fines and costs to days of incarceration, without any determination concerning an individual's ability to pay, is legal;

c.     Whether the Defendants' joint policy and practice of requiring every order of the municipal court to require probation fees for JCS is legal;

d.     Whether the Defendants' joint policy and practice of incarcerating individuals for failure to pay fines and costs with no finding of willfulness is legal.

e.     Whether the Defendants' joint policy and practice of failing to appoint counsel for indigent defendants when a jail sentence is involved is legal;

f.     Whether the Defendants' joint policy and practice of failing to make any inquiry into indigency before imposing fines and costs is legal;

g.     Whether the Defendants' joint policy and practice of failing to give adequate notice of the charge and nature of a probation revocation hearing, failing to provide a probation revocation hearing, failing to make written findings concerning the reasons for revoking probation and the evidence relied upon, failing to hold a hearing to determine indigency before revoking probation and otherwise imposing incarceration, failing to make written findings concerning an individual's willful nonpayment of fines and costs

15

before imposing incarceration for nonpayment are legal;

h.     Whether Defendant JCS can raise its monthly probation fee charge to $45 without proper municipal action;

i.     Whether Defendants' joint policy and practice of charging incarcerated municipal defendants a daily fee for each day the person is incarcerated is legal;

j.     Whether the Defendants' joint policy and practice of imposing fines and court costs that exceed that statutory maximum for municipal is legal;

k.     Whether the Defendants' joint policy and practice of extending "probation" for municipal offenses beyond 24 months is legal;

l.     Whether the Defendants' joint policy and practice which fails to give any credit for time spent incarcerated is legal.

64.     The Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

65.     Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class Action.  The data concerning the Class members and the transaction details and amounts on each charge is largely computerized by the municipalities and by JCS.

66.     The names and addresses of the Class members are a matter of public record and are also kept by JCS and notice can be provided to the Class members via First Class U.S. Mail or other appropriate means as may be directed by the Court.

## COUNT ONE

## DENIAL OF DUE PROCESS

Plaintiffs incorporates by reference the previous paragraphs and make them a part hereof.

67.     The Plaintiffs aver that the Defendants, acting jointly under color of state law in violation of 42 U.S.C. § 1983, have denied their right to due process.  This is accomplished by the Defendants' contractual agreement and their policy and practice which automatically requires "probation" for any person who, despite having no jail sentence, is unable to fully pay the fine and costs when levied by the municipal court. That probation requirement, under agreement between the Defendants, is a required part of every printed order at the municipal court and further requires payment of monthly fees to JCS.

68.     The policy and practice of the Defendants, after requiring probation for those unable to pay and then requiring additional fees for JCS, also imposes incarceration for a failure to pay fines and costs without any determination of willfulness as required by *Ala. Code* §15-18-62.

69.     Both JCS and Childersburg deny any responsibility to determine indigency of "offenders" or to determine any reasons for an inability to pay the fine.  Therefore, the Defendants routinely cooperate with each other to issue arrest warrants initiated by JCS based upon claims of "failure to obey court order" which are then approved by administrative personnel at Childersburg without a hearing to determine indigency.

70.     Under the Defendants' joint policy and practice, unpaid fines and costs are

unlawfully converted to days in jail for which the "offenders" have been also charged Thirty-One Dollars per day ($31/day), but are given no credit for time spent in jail against the fines levied.

71.     In this process of converting fines to jail time, the Defendants do not give adequate notice of the nature of the charge, fail to conduct hearings, fail to make written findings concerning the reasons for revoking probation and the evidence relied upon, and fail to make written findings concerning any willful nonpayment of fines and costs before imposing incarceration for failure to pay fines and costs.   Under this joint policy and practice of these defendants, when a simple fine is transformed into a jail sentence of an undetermined time, the Defendants also fail to provide counsel for the "offenders."   These actions constitute a denial of rights secured by the Sixth Amendment.

72.     In addition to a denial of due process guaranteed the Plaintiffs under the Fourteenth Amendment, the arrest and detainment of the "offender" who cannot pay the fine imposed under this system constitutes a seizure in violation of the Fourth Amendment as well.

73.     After jailing, the Defendants have acted jointly to further violate the Plaintiffs' constitutional rights by arbitrarily granting early release to some individuals while denying it to others under similar circumstances without any rational basis based upon the whim of JCS and payments it has secured.   As a result, there is no consistent standard of review or logical system under which those incarcerated are granted release.

74.     Under the Defendants' practice and policy, after an adjudication under which a fine is levied, additional fees, costs, and other charges are added to the "offender" bill

18

with JCS for each new arrest, alleged probation violation, or contempt proceeding including, in some cases, those relating to charges years earlier.

75.     In some cases, under the Defendants' joint practice and policy,  even where there has been a deferred adjudication, the accused is nonetheless required to pay JCS fees.  *See* Exhibit D.

76.     Even in cases where a charge is dismissed as with the Plaintiff Deuante T. Jews, costs and fees for JCS can be levied and collection pursued through threats and repeated incarceration.

77.     The Defendants acting jointly, regularly impose fines, costs and fees which exceed the statutory maximum allowed for municipal charges and regularly exceed the "probation" statutory limit under *Ala. Code* §15-22-54 of 24 months, but nonetheless incarcerate Plaintiffs for failure to pay which exceeds the jurisdiction of the municipal court itself.

78.      As a proximate consequence of these Constitutional and other violations, the Plaintiffs suffered injuries.

**COUNT TWO**

**DENIAL OF EQUAL PROTECTION**

Plaintiffs incorporate by reference the previous paragraphs and make them a part hereof.

79.     The Plaintiffs aver that the Defendants, jointly acting under color of state law in violation of 42 U.S.C. § 1983, have denied their right to equal protection. This is accomplished by the Defendants' contractual agreement and their practice and policy

which automatically requires "probation" for any person who, despite having no jail sentence, is financially unable to fully pay the fine and costs when levied by the municipal court.  That probation requirement is part of the agreement between the Defendants and is part of every printed order at the municipal  court and requires payment of monthly fees to JCS.

80.    Persons who are financially able to fully pay the levied fine and costs at Childersburg are not placed on "probation."  As a result, those persons are not charged any fees for JCS and are not subjected to threats of arrest and incarceration in the collection process.

81.    Once on "probation" to pay the fines and costs, this joint policy and practice of the Defendants routinely imposes incarceration and additional costs on individuals who are unable to pay fines and costs, without any determination of willfulness.

82.    This disparate treatment based upon the wealth of the "offender" before the municipal court is a violation of equal protection and cannot be justified on any legitimate rational state interest basis.

83.    Furthermore, the practice and policy of the Defendants imposing jail time for inability to pay fines and cost, in addition to being a violation of equal protection, also violates the Eight Amendment prohibition against excessive fines and cruel and unusual punishment.

84.    As a proximate consequence of these Constitutional and other violations, the Plaintiffs suffered injuries.

## COUNT THREE

## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs incorporate by reference the previous paragraphs and make them a part hereof.

85.     Defendants' policies and practices prosecute persons such as the Plaintiffs where there is no jurisdiction or authority to do under Alabama law, doing so intentionally in an effort to coerce payment of fines and costs.  These efforts have resulted in the illegal prosecution and incarceration of Plaintiffs and their class beyond the limited jurisdiction of the municipal courts.

86.     Further, Defendants have added increased punishment, fines and costs after adjudication and even where there has been no adjudication of guilt, all without jurisdiction or authority for such under Alabama law.

87.     These Defendants, through their joint action, have systematically applied *Ala. Code* § 15-18-62 in an unconstitutional fashion denying the Plaintiffs and the Class they seek to represent constitutionally protected rights.

88.     Section 15-18-62 provides for the imprisonment for the failure to pay fines and costs in limited circumstances and only upon the finding of a willful nonpayment.[1]

---

[1]**Section 15-18-62**
 **Imprisonment for failure to pay fines and costs.**

In cases of willful nonpayment of the fine and costs, the defendant shall either be imprisoned in the county jail or, at the discretion of the court, sentenced to hard labor for the county as follows:

(1) If the fine and costs do not exceed two hundred fifty dollars ($250), no more than 10 days;

(2) If the fine and costs exceed two hundred fifty dollars ($250) but do not exceed five hundred dollars ($500), no more than 20 days;

89.     Under the Defendants' policies and practices, and through their joint and consistent action, "offenders" before the Childersburg Municipal Court such as the Plaintiffs and the Class they seek to represent are systematically imprisoned for nonpayment with no determination of willfulness and with no determination of the indigency or ability to pay.

90.     Furthermore, once imprisoned, the requirements of time to be served under § 15-18-62 are ignored by the Defendants' practice and policy.

91.     The result of this consistent systematic policy and practice of these Defendants is essentially a debtor's prison for fines and other charges levied by JCS under contract with the various municipalities for which it works.

92.     This form of application of § 15-18-62 results in an unconstitutional deprivation of civil rights guaranteed to the Plaintiffs and the class they seek to represent under the Fourteenth Amendment and 42 U.S.C. § 1983.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that the Court will take jurisdiction of this cause and upon the final hearing:

   a.     certify this matter as a proper class action maintainable under Rule 23 of the Federal Rules of Civil Procedure;

   b.     Award the Plaintiffs such actual damages as this Court shall find the Plaintiffs have sustained, together with punitive, or exemplary

---

(3) If the fine and costs exceed five hundred dollars ($500), but do not exceed one thousand dollars ($1,000), no more than 30 days; and

(4) For every additional one hundred dollars ($100) or fractional part thereof, 4 days.

22

damages as the law shall permit;

c.      Enter an injunction and other declaratory relief which prohibits the Defendants from engaging in the violations of law set forth hereinabove;

d.      Enter an injunction and other declaratory relief which prohibits the Defendants in the future from placing persons on probation for simple fines and declares that any current probation and fees for simple fines is void;

e.      Enter an injunction and other declaratory relief which prohibits the Defendants in the future from assessing fines in excess of $500 and extending probation periods beyond 24 months and declare that any previously assessed fines and probationary periods in excess of these limits are void;

f.      Enter an injunction and other declaratory relief which prohibits the Defendants in the future from imprisoning indigent persons for failure to pay fines and fees for JCS and ordering the release of any currently incarcerated indigent persons who were jailed for these reasons;

g.      Award to the Plaintiffs and Class members damages under 42 U.S.C. § 1983 equal to any amounts paid on fines and fees levied by Defendants that are found unconstitutional and/or unlawful (along with interest), and the annulment of any remaining unpaid fines that are found unconstitutional and/or unlawful;

h.     award to the Plaintiffs and Class the cost of this matter, including a

reasonable attorneys' fee;

i.     award to the Plaintiffs and the Class members such other, further and

more general relief as the Court may deem appropriate under these

circumstances.

RESPECTFULLY SUBMITTED,


s/ *G. Daniel Evans*
G. Daniel Evans
ASB-1661-N76G
Attorney for the Plaintiffs
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970
Fax: (205) 870-7763
E-Mail: gdevans@evanslawpc.com


s/ *Alexandria Parrish*
Alexandria Parrish
ASB-2477-D66P
Attorney for the Plaintiffs
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970
Fax: (205) 870-7763
E-Mail: ap@evanslawpc.com


s/ *William M. Dawson*
William M. Dawson
ASB-3976-S80W
Attorney for Plaintiffs
2229 Morris Avenue
Birmingham, AL 35203
Telephone: (205) 323-6170
Fax: (205) 278-3430
E-Mail: bill@billdawsonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 20th day of December, 2012, I electronically filed the foregoing Amended and Restated Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Wayne Morse, Jr., Esquire
WALDREP STEWART & KENDRICK, LLC
2323 Second Avenue North
Birmingham, AL 35203

William P. Gray, Esquire
Douglas N. Robertson, Esquire
GRAY & ASSOCIATES, L.L.C.
3800 Colonnade Parkway
Suite 350
Birmingham, Alabama 35243

Timothy P. Donahue, Esquire
A. Donald Scott, Jr., Esquire
DONAHUE & ASSOCIATES, LLC
1020 22nd Street South
Birmingham, Alabama 35205

s/ G. Daniel Evans
G. Daniel Evans

EXHIBIT A

## IN THE MUNICIPAL COURT OF THE CITY OF ARAB, AL

**CITY OF ARAB, AL**
**VS**

_____
**DEFENDANT**

### ORDER OF PROBATION

NOW ON THIS DAY, by virtue of the authority vested in me as a Municipal Court Judge pursuant to Section 12-14-13, Code of Alabama, 1975, as supplemented and amended, I hereby order the:

( X ) Imposition of sentence        (X) Payment of Fine /Restitution ·     (X) Payment of Court Costs
and that the Defendant be placed on probation for _____ months or until _____ day of _____ 20 ___,
upon the following conditions.

(1) You will make a full and truthful report to your Probation Officer as instructed.
(2) You will pay Judicial Correction Services, Inc. $35.00 for each month on probation. You will pay a one time $10.00 file/digital photo set up charge.
(3) You will not change your residence or employment without first notifying your Probation Officer.
(4) You will avoid injurious or vicious habits and not violate any law(s) during said term of probation.
(5) You will not use illegal intoxicants or alcohol; nor will you visit places where intoxicants, drugs, or other dangerous substances are sold, dispensed or used. ( ) Applicable if checked.
(6) You will work diligently at a lawful occupation, unless a full time student.
(7) You will promptly and truthfully answer all inquiries directed to you by the Court Referral Officer, Court Clerk, or Probation Officer and comply with all instruction he/she may give you.

(8) You will pay Fines & Costs totaling _____ at the rate of _____ per month.

| Case No. | Offense | Fine | Costs | Total | Jail Time (days) |
|----------|---------|------|-------|-------|------------------|
|          |         |      |       |       |                  |
|          |         |      |       |       |                  |
|          |         |      |       |       |                  |
|          |         |      |       |       |                  |

(9)  You will make reparation or restitution for damage or loss caused by this offense to the victim in the following sum:

Victim_____       Sum $_____
(10) You will complete Jail Time as ordered and noted above.  Jail time is hereby ordered:
    (   ) To Serve    (   ) Suspended upon successful completion of probation.
(11) You will complete the following education course(s) and/or programs:
    ( ) Court Referral Program    ( ) Domestic Violence Awareness    ( ) Obtain GED
    ( ) Other: _____

(12) ( ) Return to court on:_____ to show completion of: ( ) Driving School ( ) CRO Program
                                                    ( ) Other _____

    (13) Other _____

The Court may at any time modify any conditions of your probation, change or extend probation, discharge defendant or revoke probation.  You are subject to arrest for violation of any condition imposed by this order, and your probation may be revoked accordingly.
Signed this the _____ day of _____, 20 _____.       _____
                                                        HONORABLE ROBERT R. HEMBREE
                                                        ARAB, AL   MUNICIPAL COURT JUDGE

I have counsel or have waived my right to counsel for all proceedings to this date and have received a copy of this ORDER.
                                                        JCS (256) 586-0010

Signed_____       Date _____     Probation Officer_____
DOB _____     SSN _____     Race/Sex _____ Hgt _____ Wgt _____
Home Address _____
Home Phone _____                         _____
Employment/Sup'r _____                Work phone_____
Comments: _____              First Appointment _____

**1.10**

Last revision 5/23/2012

JCS Resp to 30(b)(5) 0000016

Garrett0217

EXHIBIT B



**Judicial Correction Services**
**121 West Valley Avenue**
**Homewood, AL 35209**
**PHONE: 205-942-9450,  FAX: 205-942-9454**

Your probation case has been approved for mail-in status. You are instructed to complete this form **and mail it back to the above address** by the 10ᵗʰ of each month, beginning on **5-1=09.** Failure to answer all questions honestly or failing to send forms by the above-mentioned date could result in a warrant or future Violation of Probation.

Date: _____     Probation Officer's Name: **Heather Thursby**

Your Name: **KINTE HOLLOWAY**     SS Number: ___-__-____

Home Address: **124 MANGROVE DR.**
              **ALABASTER, AL 35007**

Home Phone Number: **205-663-0921**     Work Phone Number: _____

Name of Employer: _____     Location: _____

Explain any employment changes since last report: _____
_____

Have you been arrested since last report? _____

If yes, when, where, and for what offense(s): _____

Have you completed the following Court Ordered Programs as instructed? _____
Court Referral Program (AL)

If not, please explain: _____

Are you current on fines, fees, and restitution? _____

If not, why: _____

Any changes or problems since last report? _____
_____

I know to report back by (date): _____

I certify that the above statements are true:

Signature: _____

Enclose your monthly payment in the form of a money order payable to: **JCS**

### Write Clearly!

**MAKE ENOUGH COPIES OF THIS FORM TO COMPLETE YOUR TERMS OF PROBATION**

**4.22**

JCS Resp to 30(b)(5) 0000086

Garrett0293

EXHIBIT C

## Daily Tasks

1. Sign on to Probation Tracker.
2. Open JCS email.
3. Sign in to Yahoo Instant Messenger.
4. Retrieve and return all phone messages.
5. Check the mail and post office boxes. Do all data entry from items received in the mail. (i.e. "O/M FTR letter returned undeliverable as address/unable to forward.") Next go to the "address/contact/employment" screen and click on the pencil next to the defendant's address and check the "bad address" box.
6. Print FTR list. Call defendants and advise them of missed appointment and schedule new appointments.
7. Run the appointment list for the day and see any appointments that report. If a defendant has not reported by the time scheduled, call the defendant and instruct him/her to report by the end of the day or they will be considered a no show. Also advise that after 3 no shows a court date will be set.
8. Check the "no appointments scheduled" report from the "Reports/Forms" screen. Call any defendants on the list and schedule him/her a new appointment date, unless the defendant has a status that reflects an automatic date, such as a hold, and enter the date appropriate.
9. At the end of each day, count all monies and balance monies to the "cash drawer". Complete a deposit slip for monies collected. Monies and paperwork should then be turned in to the office manager, appointed probation officer, or placed in the office safe.
10. Make a bank deposit that consists of the previous days monetary intake. (if the deposit cannot be made within 24 hours, an email stating that the deposit was unable to be made should be sent to the office manager/regional manager and Charlie Farrahar, cfarrahar@judicialservices.com)
11. Address any issues the court may have advised and ensure the matter is resolved in a timely manner. If a problem arises where the course of action is unclear, contact a supervisor immediately so that action can be taken to resolve the problem. Keeping courts happy is the primary goal!

Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

**6.1**

Last Revision May 23, 2012

JCS Resp to 30(b)(5) 0000162

Garrett0294

## Cash Drawer

Each day the amount of monies collected by each probation officer is tallied automatically. The "cash drawer" is located on the menu on the left in probation tracker. Enter the number of bills for each monetary amount in the "# bills added to drawer" column next to the corresponding bill amount (i.e. if you have 5 $5 bills, enter 5 into the 5's row under the "# bills added to drawer column"). Once all bills and coins have been entered, choose "update". Probation tracker will automatically calculate the amount of monies in the cash drawer. The "Systems Total" block will be green if the amount collected and the amount shown by the system match. If the block is red, the amounts do not match. In the case of a red block, re-count the bills and coins in the drawer and ensure the amounts were entered correctly. If a mistake was made, changes can be made and the "update" button chosen and the "system total" box will again indicate red or green. If the box is again red, seek the advice of a supervisor.

PO: **Morris, Dee Dee** 3/18/2009

[ Update ] (Acworth, GA Office) (Albertville, AL Office) (Alpharetta, GA Office) (Arab, AL Office) (Attalla, AL Office) (Bay County, FL Office) (Birmingham, AL Office) (Brewton, AL Office) (Childersburg, AL Office) (Citronelle, AL Office) (Columbiana, AL Office) (Daytona Beach, FL Office) (Dekalb, GA Office) (Douglasville, GA Office) (Enterprise, AL Office) (Evergreen, AL Office) (Fayette, GA Office) (Foley, AL Office) (Ft Payne, AL Office) (Fulton, GA Office) (Hartselle, AL Office) (Homewood, AL Office) (Hueytown, AL Office) (Monroeville, AL Office) (Osceola County, FL Office) (Ozark, AL Office) (Prattville, AL Office) (Russellville, AL Office) (Sandy Springs, GA Office) (Scottsboro, AL Office) (Selma, AL Office) (Talladega, AL Office) (Tallassee, AL Office) (Troup, GA Office) (Troy, AL Office) (Tuscaloosa, AL Office) (Wedowee, AL Office)
(Details) (Print Deposit Slip)

|  | +/- Change | | # Bills | Amount |
|---|---|---|---|---|
|  | # Bills Added to Drawer | Actual Bills in Drawer | | |
| Coins (Amount) | 0 | 0 | | 0.00 |
| 1's | 0 | 0 | | 0 |
| 5's | 0 | 0 | | 0 |
| 10's | 0 | 0 | | 0 |
| 20's | 0 | 0 | | 0 |
| 50's | 0 | 0 | | 0 |
| 100's | 0 | 0 | | 0 |
|  |  | Total Cash | | 0 |
| Money Orders | Name | Amount | | |
|  | MO Total | 0.00 | | |
|  | Drawer Total (MO+Cash) | 0.00 | | |
|  | System Total | 0.00 | | |
|  | Fines | 0.00 | | |
|  | Other | 0.00 | | |

Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000163

Garrett0295

### Deposit Policy

1. Deposit slips should be completed each day by each probation officer. The officer's initials should be written in the top right corner of the slip. Each money order collected should be specified individually on the slip, and the amount of bills vs. coins should be placed in the appropriate blanks. The slip should include a total on the bottom left of the slip.

2. All deposits per probation officer in each office should be sealed in a plastic bag with the probation officer's name, date monies were collected, and the amount of money inside the bag written in the appropriate spaces on the outside of the bag. The white copy of the deposit slip should be inside the bag along with the money.

3. All deposits should be turned in at the end of each day with a copy of the "cash drawer", the yellow copy of the deposit slip and the tab from the plastic bag with the date and amount of the deposit. The "cash drawer" print out, deposit slip and the deposit bag tab amounts should match.

4. Deposits must be taken to the bank by two JCS employees each day during business hours, when possible.

5. All paperwork from #2 should be stapled together and placed in the appropriate folder.

6. In the event a deposit is not handled as specified above, the office or regional manager must be notified before the close of business, preferably in person, with an email sent to confirm the message. The email should copy cfarrahar@judicialservices.com.



Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

**6.3**

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000164

EXHIBIT D

## Order to Withhold Adjudication

State of Alabama                                                        Case Number
Jefferson County
Municipality of _____                     _____

City of _____        vs.        _____
                                                        Defendant

It is HEREBY ORDERED, ADJUDGED AND DECREED, the Defendant having stipulated to a *prima facie case*, and after a full explanation of the defendant's rights, the defendant waives his/her right to a speedy trial, waives all rights to appeal, and upon motion of the City of _____, Alabama, *adjudication is withheld* for _____ month(s) _____ year(s) from the date hereof and shall thereafter be *nol prossed*, however, that the Defendant has complied with the following terms and conditions, to-wit:

( ) No arrest or convictions in any jurisdiction for D.U.I., any other serious traffic offense or any offense involving the use or abuse of drugs and/or alcohol.

( ) Completion of:
    ( ) Traffic safety program
    ( ) _____ Hours/_____ days of community service
    ( ) Substance abuse evaluation and recommended court referral program

( ) Other Court imposed conditions: _____
_____
_____

( ) Report to Judicial Correction Services monthly, as directed, for supervision of this order, and to pay Judicial Correction Services a $35 per month administrative fee.

ORDERED, ADJUDGED AND DECREED this
the _____ day of _____, 200____.                    _____
                                                          Prosecutor's initials

_____                       _____
MUNICIPAL JUDGE, for the City of _____Alabama        Officer's Initials

I acknowledge receipt of a copy of the foregoing Order.

_____        _____
Defendant                                          Date

Address: _____

Telephone: _____

~~Sample~~

**1.12**

Last revision 5/23/2012

JCS Resp to 30(b)(5) 0000018

EXHIBIT E

# Sample



## REPORTING FOR PROBATION

You have been placed on probation with Judicial Correction Services, Inc.
You are to report to our offices at the address below at your scheduled appointment time. Failure
to report as directed may result in a warrant being issued for your arrest.

**You are required by the Court to report as directed, NO EXCUSES!**

The following person will be your probation officer. All questions concerning your case should
be directed to him/her. ***Do not contact the Municipal Court***, they will be unable to help
you.

### Alicia Ford

You are to report to our offices on _____ at ____:____   PM  AM

For your first appointment please bring no less than $_____, to be applied to your fines
and fees. *Cash (exact change) or money order only.* **No checks.**

**Our Offices are located at:**

202 3rd Avenue East
Oneonta, AL  35121
(205) 274-7353

**\*\*Do Not Mail payments unless authorized by
your Probation Officer.**



**Office Hours** *(subject to change)*: Monday 9am – 3:30pm (closed 12pm – 1pm); Wednesday 9am –
noon; Friday 9am – 3:30 pm (closed 12pm – 1pm)

**1.18**

**Garrett0237**

EXHIBIT F



March 26, 2009

SEAN DEES
3109 WENONAH ROAD
BIRMINGHAM, AL 35023

SEAN DEES:

This letter is to inform you that you have violated the terms and conditions of your probation.  There has been a court date set for you on the 15 day of April, 2009 in the City of Mountain Brook Court at 4:00PM .

**Note that a failure to appear in court on the above date will result in a warrant being issued for your arrest.**

Enclosed is a copy of a petition letter to be signed by the judge. If there are any questions or problems call 205-942-9450, but keep **in mind that the court date can not and will not be reset or rescheduled.**  Thank you!

To avoid a warrant being issued for your arrest you must report either on or before the above date with no less than $250!!

Sincerely,

Heather Thursby

Probation Officer
Judicial Correction Services
121 West Valley Avenue
Homewood, AL 35209



JCSID:225736-566701-HTHURSBY

**Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.**

**4.39**

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000106





November 28, 2007

STANLEY ARMITAGE
409 EDGECREST DRIVE APT #2
HOMEWOOD, AL 35209

STANLEY ARMITAGE:

This letter is to inform you that you have violated the terms and conditions of your probation. There has been a court date set for you on the 18 day of December, 2007 in the City of Homewood Court at 6:00PM .

**Note that a failure to appear in court on the above date will result in a warrant being issued for your arrest.**

Enclosed is a copy of a petition letter to be signed by the judge. If there are any questions or problems call 205-942-9450, **but keep in mind that the court date can not and will not be reset or rescheduled.** Thank you!

You owe the City of Homewood $305 in fines and Judicial Correction Services $105 in probation supervision fees. To rescind the scheduled hearing report to the probation office with $200 minium payment, otherwise, attend the scheduled hearing and be prepared to explain why you have failed to comply with the terms of your probation.

Sincerely,

Shanika Lawson

Probation Officer
Judicial Correction Services
121 West Valley Avenue
Homewood, AL 35209

*This is the personalized note that was typed in the "message" box.*

JCSTD:144680-164536-SLAWSON

**4.40**

Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

Garrett0249

**EXHIBIT H**

### Warrants

**This should be done on the day of court, not before.
  1. Choose "Reports/Forms" from the menu to the left.
  2. Choose "Warrant For Arrest" from the "Court Specific" section of the Forms box.

## REPORTS

| Case Management | Financial |
|---|---|
| ✳ Case Activity Totals | ➤ Financial Activity by Court by Probationer |
| ➤ Status Changes | ➤ Financial Activity by Office |
| ➤ Case Load by PO | ➤ Financial Activity by Court |
| ➤ Case Load by Judge | ➤ Financial Activity by Day |
| ➤ Expiration Listing | ➤ Financial Activity by PO |
| ➤ COP Expiring Listing | ➤ Financial Activity by PO – Revised (NEW) |
| ✳ Sentence Dates | ➤ Financial Activity by Received By |
| ➤ Cases by Charge | ➤ Financial Activity by Other Category |
| ➤ No Financial Activity 40+ Video | ➤ Write Check |
| ➤ No Activity | ➤ Court Financial EMail |
| ➤ Failure to Report Video | ➤ Court Financials |
| ➤ Appointments Scheduled Video | ➤ Court Financials Restitution |
| ➤ No Appointments Scheduled | ➤ Todays Payments |
| ✳ Hearings Scheduled | |
| ➤ Probationers Started | |
| ➤ Jail Incarcerations | |
| ➤ Court Field Report | |
| ➤ Case File Report | |
| ➤ FTR Hit Report | |
| ➤ Termed Cases Report | |
| ✳ GA/FL Qtr Rpt | |
| ➤ Where They Live | |

## FORMS



| All Offices | Court Specific |
|---|---|
| ➤ Administration Forms | ➤ VOP |
| ➤ Authorization to Release Information | ➤ Petition For Revocation Letter |
| ➤ Community Service Forms | ➤ Revocation Letter |
| ➤ Company Forms | ➤ Order of Modification |
| ➤ Court Hearings Forms | ➤ Tolling Order Affidavit |
| ➤ Logs | ➤ Successful Termination |
| ✳ Mail-In Paperwork | ➤ Successful Termination PT |
| ➤ Office Tools | ➤ Unsuccessful Termination |
| ➤ Probationer Correspondence | ➤ Warrant Dismissal |
| ➤ PTI Recommendation Letter | ➤ Warrant For Arrest |
| ✳ Victim Correspondence | ➤ JOBS Letter |
| | ➤ Termination Modified |
| | ➤ Mail-In Violation |

## LISTS

| | |
|---|---|
| ➤ Office List | ➤ Court List |
| | ➤ COP Referrals |

  3. Read the information in the "Warrant for Arrest" box and make any corrections needed.
  4. Enter the Hearing date.
  5. Choose "generate form".

Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

**4.53**

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000120

Garrett0250

HOLLOWAY, KINTE ID: 128905 Started: 4/13/2009 Expires: 1/28/2011 Current Date 4/15/2009



### Warrant for Arrest

The defendant violated CONDITION failed to report as directed on 6/3/2008, 6/6/2008, 7/25/2008, 8/5/2008, 9/8/2008, 8/13/2008, or since. In addition, the defendant has a fine balance of $100.00 and a court cost balance of $205.00, as well as outstanding fees of $245.00 for a total due of $550.00

Case Nums |MC07-1165,

Hearing Date

Generate Form

Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000121

Garrett0251

# Warrant for Arrest of Probationer
# City of Mountain Brook Court

City of Mountain Brook Court

vs.

**KINTE HOLLOWAY**

**Offense** DV 3rd Degree

**Case #** MC07-1165,

**Warrant #** _____

To any Sheriff, Deputy Sheriff, Constable, Coroner, Marshall or other Law Enforcement Officer of Said State
GREETINGS:

    Whereas, on the 26th day of June, 2007 the City of Mountain Brook Court sentenced
**KINTE HOLLOWAY** of the following address

**124 MANGROVE DR.**
**ALABASTER, AL 35007**

to a sentence of probation, and;

Whereas, said Defendant is charged with violating his/her probation, in willful disregard of a Court Order,
specifically as follows:

The defendant violated CONDITION failed to report as directed on 6/3/2008, 6/6/2008, 7/25/2008, 8/5/2008,
9/8/2008, 8/13/2008, or since. In addition, the defendant has a fine balance of $100.00 and a court cost balance of
$205.00, as well as outstanding fees of $245.00 for a total due of $550.00

| DOB: _____ | Height: ___ | Weight: ___ | Hair Color: ___ |
| SSN: ___-__-____ | Sex: _ | Race: ___ | Eye Color: ___ |

    You are therefore commanded in the name of the City of Mountain Brook Court to arrest said defendant and
to commit him/her to the common jail of said City, and safely keep him/her until he/she may be returned to this
Court, there to answer a charge of violating the Conditions of Probation as specified above. However, the
defendant may purge himself/herself from custody upon remittance of the 'Total Due' as shown above plus any
applicable jail time, plus any applicable jail cost due to the Sheriff of said county or Chief of Police of said city.
Pursuant to Alabama Code Section 15-22-54

Issued this 15th day of April, 2009.

_____
Judge Turner Williams

**Sample**

_____
Probation Officer

**CERTIFICATE OF EXECUTION**

I executed this warrant by arresting the defendant:
**KINTE HOLLOWAY**
on this date _____ at _____ o'clock ___ a.m. ___ p.m., and as
directed, took him immediately before the Court.

Remarks _____

_____

CLEARED ___ ON _____ BY _____

_____
Date

_____
Officer's Signature

JCS ID:138905-524531-AERWIN

Information contained in this document is confidential and not for distribution outside of Judicial Correction
Services.

**4.55**

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000122

Garrett0259

EXHIBIT I

4. Make sure the defendant's physical address is included, complete with zip code. (No po boxes)
5. Make sure to indicate if the defendant had a prior revocation hearing. Check the petition as the conditions may have been altered at the hearing.
6. If fines were converted to community service, make sure to enter the information in probation tracker so it will print out on the tolling order.
7. Make sure the "sentence imposed" date on the tolling order is the same as the date the defendant was physically in court. Verify this date on the court's sentence sheet.
8. Make sure the warrant and tolling order are signed.

Note: Errors in warrants will result in the warrant being returned for corrections, which wastes time and money. Take the extra time on the front end so that time isn't wasted on the back end.

Notes should be made in the appointment notes each time a step of the warrant process is made. Also enter notes as to the whereabouts of the warrant so that it is not lost in the shuffle.

**Warrant Dismissal**
This form is required to have a warrant dismissed. In the event a warrant should be lifted, generate this form and state why the warrant is being lifted (i.e. the defendant appeared in court for a revocation hearing, the defendant has come into compliance with the terms of probation, the defendant has been incarcerated for _____ length of time, etc.) **Warrant dismissals are to be created, signed by a Judge, filed with the court clerk within 48 business hours.** This is extremely important because until the warrant dismissal is filed with the clerk and distributed to the appropriate agencies, the defendant can still be picked up on the warrant, causing a huge potential liability for JCS.

If a defendant is in the office when the determination is made to lift the warrant, give the defendant a copy of the dismissal so that if he/she is stopped by the authorities before the dismissal is complete they will have proof of the dismissal. Make sure to stamp the defendant's copy with the "copy" stamp.

In the event the warrant dismissal is the last action taken on a defendant's case, it is possible to have the case closed within the warrant dismissal. Ask for the case to be closed and specify how it is to be closed, i.e. administratively (terminated modified) or successfully.

If it is determined that a warrant is to be dismissed, be aware that any tolled time in the case instantly goes away. Any case that should remain opened upon the dismissal of a warrant with the tolled time preserved should be reinstated with the approval of the Judge at a revocation hearing.

Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

**4.63**

EXHIBIT J

## Case Management Reports

**FTR (Fail to Report):** This report shows the defendant's who failed to report for their last scheduled appointment. This report should be run everyday and defendant's called to set another appointment. These numbers should always be kept under 10%.

**No Financial Activity 40+:** This report lists defendant's who have not made a payment for 40+ days. This report is to help P.O.'s stay on top of defendants, so they do not get too far behind on their scheduled payments. This report should be run twice per month, on the 1st and 15th.

**Expiration Listing:** This report tells which defendant's cases will be expiring and when. This report is to help a P.O. keep on top of their defendant's so their case does not expire without meeting the court ordered conditions. This report should be run monthly, on the 1st of each month (using a calendar year).

**No Appointment Scheduled:** This report is used to help P.O.'s who might have accidentally forgotten to place a defendant's next appointment in the scheduled appointment slot. This report should be run daily, no less than weekly.

**Jail Incarcerations:** This report is used to check jail statuses and should be run monthly. ALL jail/jail hold, medical holds and mail in's should be done once a month on the $15^{th}/20^{th}$.

**4.2**