FILED

2013 Apr-26  PM 05:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| **GINA KAY RAY, KRISTY FUGATT,** | ) | |
| **TIMOTHY FUGATT and DEUNATE T. JEWS,** | ) | |
| **Individually and for a class of similarly** | ) | |
| **situated persons or entities,** | ) | |
| | ) | |
| **Plaintiffs;** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **v.** | ) | **2:12-cv-02819-RDP** |
| | ) | |
| **JUDICIAL CORRECTIONS SERVICES, INC.,** | ) | |
| **a corporation; CORRECTIONAL** | ) | |
| **HEALTHCARE COMPANIES INC., a** | ) | |
| **corporation; THE CITY OF CHILDERSBURG** | ) | |
| | ) | |
| **Defendants.** | ) | |

## SECOND AMENDED AND RESTATED COMPLAINT

COME NOW, Gina Kay Ray, Kristy Fugatt, Timothy Fugatt, and Deunate T. Jews, (hereinafter "Plaintiffs"), individually and on behalf of those similarly situated, upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, by and through their undersigned counsel, and with leave of the Court, file this Second Amended and Restated complaint as follows:

## JURISDICTION

1.     The Court has jurisdiction over this matter because it concerns a controversy arising under the Constitution of the United States. 28 U.S.C. §1331. This is a civil rights action brought under 42 U.S.C. §§ 1983 and 1988.

2.     This Court also has jurisdiction of this action by virtue of 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), authorizing jurisdiction of claims brought under 42 U.S.C. §

1983 to enforce civil rights guaranteed by the United States Constitution.

3.     This action also seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2022.

4.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES TO THE COMPLAINT

5.     The plaintiff Deunate T. Jews is an individual resident of Harpersville, Alabama.

6.     The plaintiff Gina Kay Ray is an individual resident of Vincent, Alabama.

7.     The plaintiff Kristy Fugatt is an individual resident of Sylacauga, Alabama.

8.     The plaintiff Timothy Fugatt is an individual resident of Sylacauga, Alabama.

9.     The classes which the individual Plaintiffs seek to represent consist of:

> All individuals who have in the past, or may in the future, receive only fines and no jail sentence for charges before the Alabama municipal courts which employ JCS and whose fines were, or may be in the future, converted to a probation under JCS; a subclass of this class which would include those individuals within the above class who received, or may receive in the future, such treatment before the Childersburg Municipal Court.

> AND

> All individuals who, despite their indigency, were incarcerated, or may be subject to incarceration, without consideration of their indigency for failure to pay charges and fees for services allegedly rendered by JCS to Alabama governments with which it contracts; a subclass of this class which would include those individuals within the above class who received, or may receive in the future, such treatment before the Childersburg Municipal Court.

2

10.    The defendant Judicial Corrections Services, Inc. (hereinafter "JCS") is a Delaware corporation, registered as a foreign corporation and doing business in the State of Alabama and in this District which markets itself as "not a social service agency," but a "for profit" company which offers services to governmental entities "free of charge" to the cities as "an offender paid system."  At all times, JCS has operated under the color of state law.

11.    The defendant Correctional Healthcare Companies, Inc. (also hereinafter "JCS") is a Delaware corporation, maintaining its principal place of business in Greenwood Village, Colorado, but shares the same corporate officers at the same address as JCS. It appears to be the successor of JCS, having purchased or otherwise acquired it, continuing to do business as JCS and operating the same.

12.    The City of Childersburg, Alabama, ("Childersburg") is a municipal corporation located within Shelby County, Alabama.  The City Council and Mayor B.J. Meeks control the policy making for Childersburg and also hire the municipal court judge and contracted for services of JCS at the municipal court.

## FACTS

13.    The Plaintiffs bring this action because the operations at Alabama municipalities such as Childersburg which use JCS, by a joint policy and practice, have violated and continue to violate the Plaintiffs' statutory and constitutional rights and those of persons similarly situated.

14.    JCS operates a "for profit" enterprise that markets its services to various

3

municipal and county governments and has contracted with over 100 cities and towns throughout Alabama. JCS's marketing approach to these cities emphasizes that its fees will be paid by the "offender" before the municipal court and that its efforts will improve collection of court fines and costs at no cost to the city.

15.     JCS routinely uses a form contract to establish its relationship with its customer cities and similarly trains its employees using a training manual replete with forms for court use and for contacting the "offenders" from whom it is seeking collection. As a result, the JCS approach is highly systemized and uniform.

16.     Under the system established by JCS, its employees are not required to have criminal justice or legal training, nor are they required to have any social work education or meet any minimum law enforcement standards as is required of state probation officers. Instead, JCS requires only that its employees be 21 years old, a non felon, with two years of college who complete 40 hours of training by JCS on its processes. On satisfying those requirements, JCS employees are then labeled "Probation Officers"[1] and permitted to carry the JCS issued badge in collecting its fees, court fines and costs.

17.     Under this system and by agreement with municipalities such as Childersburg, many administrative and judicial functions of the municipal court have been unlawfully delegated to JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

18.     The agreement drafted by JCS and signed by the city mayor and JCS attests

---

[1] In contrast, even a judicial volunteer is required to meet greater and more specific qualifications, careful screening, specific training and continual oversight established by the Administrative Office of Courts ('AOC'). See Ala. Rule of Judicial Administration Rule 42.

that its municipal "***court agrees that each court order shall provide*** for the following:

       a probation fee of $35.00 per month flat fee

       One time probationer set up fee of $10.00. . . . " (***emphasis added***).

19.     Childersburg, through its mayor and council, approved the agreement with JCS and approved the employment of Larry Ward as judge of its municipal court.  Ward, a bond salesman at Morgan Keegan, also serves as municipal judge for Harpersville and at other cities also under contract with JCS.

20.     The JCS system provides "Order of Probation" forms to the municipal court with the printed requirement on each form that the "offender" pay JCS $35 per month plus $10 for a file set up charge.  *See* Exhibit A.  The monthly fee of $35 has since the agreement been increased to $45 per month for each "offender" at Childersburg.

21.     At the Childersburg Municipal Court operating under the JCS contract, a person unable to fully pay fines and costs when levied is automatically placed on probation using the JCS orders and forms, even when there is no jail sentence adjudicated.  This is routinely done with no investigation into the indigency of the individual or the reasons for their inability to pay the fine and costs.  The orders supplied by JCS then require the individual to make payment to JCS of the fines, costs and additional monthly fees as required under its contract with Childersburg.

22.     The JCS system and its "Probation Tracker" software is highly systemized and focuses on collections of fines and its fees -- not traditional probation services.  That collection focus allows the "offenders" to mail in payments if they live 30 miles from the JCS office.  *See* Exhibit B.  In fact, the daily tasks of the JCS employees are heavily

directed to collecting, counting and depositing the money collected.  *See* Exhibit C.

The training manual used by JCS instructs its employees on the use of its computer systems in tracking the payments made by the "offenders" and provides court forms to order probation and payment to JCS.  The payments to JCS are ordered under these forms even when adjudication is withheld.  *See* Exhibit D.

The JCS training system also provides sample letters for use after probation is ordered, threatening the "offender" that "a warrant will be issued for your arrest" and that their "court date cannot and will not be reset."  *See* Exhibits E and F.  Similar JCS forms instruct the "offender" that they can avoid the court date if they pay an amount determined by JCS.  *See* Exhibit G.

Finally, the JCS manual instructs its employees on the issuance of warrants of arrest and provides forms for that purpose.  *See* Exhibit H.  After the arrest warrant is issued, JCS also provides forms for warrant dismissal if JCS determines that the "offender" is now in compliance.  *See* Exhibit I.  Once arrested, JCS monitors those "offenders" placed in jail.  *See* Exhibit J.

23.    The City Council and Mayor B.J. Meeks control the policy making for Childersburg and also hire the municipal court judge and contracted for services of JCS at the municipal court.  The decision to use this JCS system was an administrative decision of Childersburg, by and through its mayor, and not a decision of the municipal court judge or the Chief Justice, or any other employee of the Administrative Office of Courts ('AOC').

24.    Childersburg, through its contract and operation, has clothed JCS with the

6

appearances of state authority and has allowed JCS employees to carry badges.  The JCS employees attend each municipal court session and are referred to as "parole officers" in the operation of the municipal court and city clerk's office, though none have such authority under Alabama statutes.  Under this system, "offenders" are not permitted to pay fines at the city clerk's office, but are instead required by Childersburg to make all payments, including those for fines, restitution, probation fees and court costs, to JCS at the JCS office.

25.    This public ruse is maintained by Childersburg and JCS in order to impose and collect fines and costs from citizens such as the Plaintiffs, and is accomplished by allowing JCS to control the money, determine how much each municipal court "offender" must pay each month, how much will be credited for each payment to the collection "services" of JCS each month and how much of it will rebate to the towns such as Childersburg toward the fines adjudged.

26.    This system, as a matter of routine, violates the rights of persons such as the Plaintiffs and the classes they seek to represent by imposing fines and charging fees to indigent persons with no hearing or consideration of their indigency.

27.    Despite the lack of authority to do so, JCS, at its discretion, uses threats of revoking probation, increased fines and costs and jail time for purposes of collection. Under this system, should an individual fail to pay to the satisfaction of JCS, JCS will determine that the individual's "probation" should be revoked, or impose additional fines and costs.   Under the system operated jointly by Childersburg and JCS, JCS's determination to incarcerate an individual and/or impose unreasonable bond requirements

7

is routinely accepted by Childersburg personnel without conducting delinquency or probation hearings and without making any findings, much less any determination of indigency or appointment of counsel before taking such punitive action.

28.     The collective actions of JCS and Childersburg are inextricably interwoven with each other and routinely result in court costs and fines which exceed the statutory maximum of $500 for municipal courts, and impose additional "jail fees" determined by the city clerk for the costs of any incarceration.  Similarly, the periods of "probation" imposed for purposes of collecting fines and fees for JCS routinely exceed the two-year statutory maximum, all of which results in JCS and the municipalities such as Childersburg taking joint action to detain and otherwise incarcerate individuals without any jurisdiction to do so.

29.     After improperly imposing probation when no jail sentence is involved, incarceration then follows if the fine, together with the fees added by JCS, are not paid as dictated by JCS.

30.     Despite directing the municipal courts such as Childersburg that incarceration of an individual "offender" is needed when payment is not made, JCS undertakes no determination of the reasons for nonpayment, and does not consider such things as the Plaintiffs' disability, unemployment, or assets, in regard to the nonpayment of the fines.

31.     JCS denies any responsibility and takes no action under its operations with Childersburg to determine indigency, and provides no instruction in its employee manual for the consideration of indigency.  The municipal court judge employed by Childersburg,

8

however, contends that under its contract it is JCS that should determine if an "offender" is unable to pay due to indigency and if so, to abate any fees in the probation order.

32.     Under this system jointly implemented by JCS and municipalities such as Childersburg, after simple fines are converted to "probation" for payment, jail often results for the "offender" who does not meet the payment scheduled set by JCS.  This system uses JCS's conclusion of a "probation violation" or "failure to obey court order" and employs JCS forms for the issuance of warrants to incarcerate individuals whose original penalty had only been a fine.


**THE PLAINTIFFS**

33.     Plaintiffs and others similarly situated are individuals who have received or may receive in the future only fines with no jail sentence for charges before the Alabama municipal courts which employ JCS, but whose fines were converted or may be converted to probation under JCS, and those who are currently or were formerly indigent and, despite that indigency, were incarcerated, or may be incarcerated in the future, for failure to pay charges and fees for services allegedly rendered by JCS to the Alabama municipalities with which it contracts. Subclasses would include those individuals within the above class who received, or may receive in the future, such treatment before the Childersburg Municipal Court.

**GINA KAY RAY**

34.     Gina Kay Ray is an individual resident of Vincent, Alabama, who was brought before the Childersburg Municipal Court on August 12, 2010 on charges of "no insurance"

9

and "driving while license suspended."  She was fined $548 and $598 for these charges with no jail sentence.  Ms. Ray was not financially able to pay the fines when levied and was ordered to be on probation with JCS on the JCS form, to pay JCS an additional $45 per month and $10 charge to set up her file.  Her monthly payment on these amounts was set by JCS at $145 per month.

35.     On July 14, 2011, Ms. Ray was charged at the Childersburg Municipal Court on charges of "expired tag" and "driving while license suspended."  For these charges she was fined $248 and $598 respectively, but with no jail sentence.  Since she could not pay these fines either she was again placed on "probation' with JCS and  ordered to pay JCS $45 per month and $10 file set fee.  Her monthly payment on these amounts was also set by JCS at $145 per month.  Though the "probation" period for her 2010 and 2011 cases overlap in time, JCS treated these as "consecutive cases" so that the period would then extend well beyond 24 months and result in monthly fees to JCS for both cases.

36.     Ms. Ray was and has been indigent and was not able to pay for her insurance, tag or license, much less the fines and fees for JCS, but, in accordance with the policy and practice of Childersburg which was established in its contract with JCS, neither the Childersburg Municipal Court nor JCS ever made any inquiry into her inability to pay at the time of levying the fine or thereafter.

37.     Due to her inability to pay as directed by JCS, Ms. Ray was jailed at the request of JCS on its claim of her "failure to obey a court order" which was approved by Childersburg.  Ms. Ray was placed in the Talladega County jail for a period of four days in 2010 and then an additional 21 days in 2011, and further time in April and May of 2012.

38.     Due to her inability to pay and her indigency, she remained in jail throughout these periods of time.  On May 1, 2012, a friend of Ms. Ray was able to acquire $300.00 which was the amount determined and demanded by JCS to secure her release from jail.

39.     At the point of Ms. Ray's release in May 2012, employees of JCS authorized the release on the previous charge of "failure to obey court order" and she was directed to appear in "Judicial Corrections Municipal Court."

40.     On June 14, 2012, Ms. Ray was again brought before the Municipal Court in Childersburg on charges of "attempt to evade," "expired tag" and "driving while revoked." Once again, she was fined $698, $218, $598 on these charges respectively with no jail sentence.  She could not pay these fines and once again placed on "probation" with JCS and ordered to pay JCS $45 per month for 24 months and $10 file set up fee.

41.      While Ms. Ray has made some small payments, she at all times has been indigent and unable to pay the full amounts and the additional probation fees charged by JCS and Childersburg.   The remaining balances are still demanded by JCS and Childersburg.

42.     Throughout this period of time, JCS has provided no services to Ms. Ray and has acted merely as a collection agency charging additional fees and, despite knowledge that Ms. Ray was unable to pay these fines and indigent, JCS has sought to collect and has taken actions to incarcerate Ms. Ray without any due process.

43.     On each of her incarcerations, Ms. Ray was incarcerated without the benefit of legal counsel, without any formal probation revocation hearing, or any hearing on the issue of her indigency, but simply incarcerated and, on some occasions, later released

11

based upon the determination of JCS.  These actions were taken with the approval and participation of Childersburg pursuant to its policy and contract with JCS.

**KRISTY AND TIMOTHY FUGATT**

44.    The Fugatts have  twin children and had a third child who was born with serious medical conditions which required constant medical care in Birmingham for two years until his death in June, 2011.   As a result, both parents had extended stays at the hospital with their child and made numerous trips to and from Birmingham to their home in Sylacauga.

45.    On one trip on November 13, 2010, Kristy Fugatt was stopped and ticketed by the Childersburg Police Department for having an expired license tag and an expired driver's license.

46.    Timothy Fugatt was stopped and ticketed on or about December 3, 2010 by Childersburg Police for having an expired license tag on the same vehicle.  Both of the Fugatts were set for court on January 13, 2011 at the Childersburg Municipal Court.

47.    The Childersburg court records reflect the Fugatt cases were *nol prossed* upon payment of the court costs of $198.00 for the expired license and $148.00 each for the expired tag charges.

48.    Due to these financial burdens, the Fugatts were unable to immediately pay the traffic fines and were placed on "probation" under JCS.  Under the mandated terms of the probation, they were each charged an additional $45.00 per month for JCS's probation "service."

49.    The Fugatts paid as best they could, but when they were unable to make

12

payments as were ordered by JCS employees, they were required to drive to Childersburg and explain why they could not pay.  JCS set the dates upon which the Fugatts were to report to the JCS office and were told that they would be jailed if they did not come.  Many times the Fugatts were not able to make phone contact due to limited phone access to JCS.  Nevertheless, they were repeatedly threatened with jail for any non-appearance at the JCS office.

50.     The Fugatts told JCS employees about their inability to pay as demanded and even provided medical records.  Instead of assistance from JCS, the Fugatts were called liars and continually threatened with arrest and incarceration for non-payment.

51.     Each of the Fugatts was also charged $317.00 for "Failure to Obey Court Order" on September 26, 2011.

52.     Despite their inability to pay the initial fine, the amounts JCS claimed the Fugatts owed kept increasing, with added as "fines," "restitution," "other" and "probation fees."

53.     When the Fugatts could not appear at the JCS offices as commanded, a warrant of arrest was issued.

54.     On Sunday afternoon February 26, 2012, a Childersburg officer came to their home in Sylacauga, threatened them with a taser and arrested them, taking them from their young children to the jail at Childersburg and instructing them that DHR would be called for care of their kids. This was avoided only by relatives arriving in time to take care of the young children.

55.      Only after relatives collectively brought $900.00 to the Childersburg jail were

13

the Fugatts released from jail.

56.    JCS claims the Fugatts still owe well over $1,000.00 and, as a result, the Fugatts face further persecution and incarceration unless relief is granted.   The receipts attached as Exhibit K show amounts in arrears as $512 and $427 on July 13, 2012.  Each plaintiff paid $50 on that date, with one getting $25 credit toward the fine and the other getting only $23, whereas JCS kept the remaining $25 for one and $27 for the other.  The amount owed has been increased by $90 each month since July, 2012 by JCS.

57.    On February 26, 2012, the date of their arrest, each of the Fugatts was charged an additional $317 for "Failure to Appear," though there was no judge present that Sunday and no judicial order was signed.  These additional charges totaled $1,268, plus the $90 monthly JCS fee, all resulting from the expired tag and expired driver's license.

58.    While plaintiff Timothy Fugatt has maintained some employment, the hours he was able to work were quite limited by these serious medical issues and family responsibilities.  As a result, the Fugatts have been and are indigent.

59.    Though the Fugatts had repeatedly informed JCS of their situation, no relief was granted.  The Fugatts were not afforded due process of law, in that they were continually punished with increased amounts due and owing, threats of incarceration for not paying, and ultimate incarceration.

60.    In addition, the Fugatts, as with all the plaintiffs,  were treated differently than persons able to pay the court costs when first imposed, merely because of their economic status.

61.    Throughout this period of time, JCS has provided no services to the Fugatts

14

and has acted merely as a collection agency charging additional fees, and despite knowledge that the Fugatts were unable to pay these fines and indigent, JCS has sought to collect and take actions to incarcerate the Fugatts without any due process. The remaining balances are still demanded by JCS and Childersburg.

62.     On their incarcerations, the Fugatts were jailed without the benefit of legal counsel, without any notice of charges, without formal probation revocation hearing, and without any hearing on the issue of their indigency, but simply incarcerated and, later released based upon the determination of JCS. These actions were taken with the approval and participation of Childersburg personnel and pursuant to its policy and contract with JCS.

63.     On October 11, 2012 the Fugatts were again required to appear at Childersburg Municipal Court. While there, a JCS employee told the Fugatts that they now owed over $1,000 in court costs, fines and probation fees with Kristy owing $557 and Tim owing $517.

**DEUNATE T. JEWS**

64.     Deunate T. Jews is a resident of Harpersville, Alabama, and was charged in 2008 in the Childersburg Municipal Court on the charge of harassment. Mr. Jews was never tried and the alleged victim placing this charge went to prison. As a result, the charges against Mr. Jews were dismissed, but on October 22, 2009 he was nonetheless charged court costs of $166 and since he could not pay this amount, he was placed on probation with JCS for 24 months for payment with the additional requirement that he also pay JCS $45 per month and $10 file set up fee. When Mr. Jews did not pay those

amounts, an arrest warrant was issued at the request of JCS for "failure to obey a court order."

65.    Because this warrant to arrest Mr. Jews him was issued, an additional $317 was added to his bill with JCS listed as "restitution" on the JCS and court records, even though no restitution was ever involved.

66.    On September 22, 2009 Mr. Jews was arrested and placed in the Childersburg jail for thirty (30) days for "failure to appear."

67.    Based on these unlawful charges, Mr. Jews was incarcerated in October 2009 at the request of JCS and was only able to secure his release by the payment of a "cash bond" of $582 paid by others on his behalf which prompted JCS to secure Mr. Jews' release though a release authorization signed by the Childersburg city clerk.  At his release, he was ordered to appear in "Judicial Corrections" Municipal Court.

68.    When Mr. Jews was unable to pay the ever growing JCS fees, JCS issued another warrant for his arrest and Mr. Jews was jailed for thirty (30) days in May 2010.

69.    JCS has and is continuing to charge Mr. Jews "restitution," "probation fees," and "court money" fees, which, because of his indigency, he is and was unable to pay.  In February 2011 Mr. Jews was able to pay JCS $500 which JCS took in exchange for avoiding jail.

70.    When Mr. Jews was again unable to pay the continuing, escalating JCS fees, JCS issued another warrant for his arrest and Mr. Jews was jailed for thirty (30) days in February 2012.

71.    On May 25, 2012 Mr. Jews paid JCS $25; JCS applied $15 to "restitution"

16

though there was none, and $10 to "Probation Fee."  JCS gave Mr. Jews a receipt acknowledging his payment in which it listed: Fees in arrears = $295.00; Pay off not including Probation fees: $343.00; Monthly Probation Fees: $45: Court Money Due from other Probations: Fines: $1,807.  This JCS receipt stated a probation start date of March 9, 2012, which was the date Mr. Jews was released from his most recent incarceration, and a probation end date of March 9, 2014 which is nearly six years after the charges against him were dismissed.  *See* Exhibit L.

72.    Mr. Jews was again arrested in September 2012 for another thirty (30) days in jail when he was unable to pay any of the JCS fees.

73.    Though the "probation" originally ordered on October 22, 2009 was for 24 months, it is still continuing with additional JCS charges accruing each month.

74.    While Mr. Jews has made payments throughout the period of time, he has been indigent and unable to pay the full amount of the probation fees and other charges imposed by JCS.  JCS shows a balance due from Mr. Jews in March 2012 of $358.

75.    While Mr. Jews has made payments throughout the period of time, he has been indigent and unable to pay the full amount of the probation fees imposed and other charges by JCS.

76.    Throughout this period of time, JCS has provided no services to Mr. Jews and has acted merely as a collection agency charging additional fees, and despite knowledge that Mr. Jews was unable to pay these fines and indigent, JCS has sought to collect and take actions to incarcerate Mr. Jews without any due process.

77.    On each of his incarcerations, Mr. Jews was incarcerated without the benefit

of legal counsel, without notice of charges, and without any formal probation revocation hearing, or any hearing on the issue of his indigency, but simply incarcerated and, on some occasions, later released based upon the determination of JCS. These actions were taken with the approval and participation of Childersburg pursuant to its policy and contract with JCS.

## PLAINTIFFS' CLASS ALLEGATIONS

78.    The Classes which the named Plaintiffs seek to represent consists of:

> All individuals who have in the past, or may in the future, receive only fines and no jail sentence for charges before the Alabama municipal courts which employ JCS and whose fines were, or may be in the future, converted to a probation under JCS; a subclass of this class which would include those individuals within the above class who received, or may receive in the future, such treatment before the Childersburg Municipal Court.

> AND

> All individuals who, despite their indigency, were incarcerated, or may be subject to incarceration, without consideration of their indigency for failure to pay charges and fees for services allegedly rendered by JCS to Alabama governments with which it contracts; a subclass of this class which would include those individuals within the above class who received, or may receive in the future, such treatment before the Childersburg Municipal Court.

79.    The members of the Classes and subclasses are so numerous that joinder of all members is impracticable.

80.    As of this time, the exact number in the Classes is unknown but would be more than one thousand.

81.    Plaintiffs' treatment by the Defendants is typical of the members of the

Classes and subclasses and is ongoing.

82.    Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel who are competent and experienced in class litigation.  Plaintiffs have no interests that are adverse or antagonistic to the Classes.

83.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by many Class members may be small, the expense and burden of individual litigation makes it virtually impossible for the Class members individually to seek redress for the wrongful conduct alleged.

84.    Common questions of law and fact exist as to all members of the Class, and predominate over any questions affecting solely members of the Class. Among the questions of law and fact common to the Class are:

      a.    Whether policy and practice of automatically placing on probation all municipal offenders who cannot immediately pay fines and costs but who have no jail sentence is legal;

      b.    Whether the policy and practice of converting unpaid fines and costs to days of incarceration, without any determination concerning an individual's ability to pay, is legal;

      c.    Whether the policy and practice of requiring every order of the municipal court to require probation fees for JCS is legal;

      d.    Whether the policy and practice of incarcerating individuals for failure to pay fines and costs with no finding of willfulness is legal.

e.     Whether the policy and practice of failing to appoint counsel for indigent defendants when a jail sentence is involved is legal;

f.     Whether the policy and practice of failing to make any inquiry into indigency before imposing fines and costs is legal;

g.     Whether the policy and practice of failing to give adequate notice of the charge and nature of a probation revocation hearing, failing to provide a probation revocation hearing, failing to make written findings concerning the reasons for revoking probation and the evidence relied upon, failing to hold a hearing to determine indigency before revoking probation and otherwise imposing incarceration, failing to make written findings concerning an individual's willful nonpayment of fines and costs before imposing incarceration for nonpayment are legal;

h.     Whether JCS can raise its monthly probation fee charge to $45 without proper municipal action;

i.     Whether the policy and practice of charging incarcerated municipal defendants a daily fee for each day the person is incarcerated is legal;

j.     Whether the policy and practice of imposing fines and court costs that exceed that statutory maximum for municipal is legal;

k.     Whether the policy and practice of extending "probation" for municipal offenses beyond 24 months is legal;

l.     Whether the policy and practice which fails to give any credit for time spent incarcerated is legal.

20

m.     Whether a municipality can legally enter a contract binding upon its municipal court.

85.     JCS and Childersburg have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

86.     Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class Action.  The data concerning the Class members and the transaction details and amounts on each charge is largely computerized by the municipalities and by JCS.

87.     The names and addresses of the Class members are a matter of public record and are also kept by JCS and notice can be provided to the Class members via First Class U.S. Mail or other appropriate means as may be directed by the Court.

## COUNT ONE

## DENIAL OF DUE PROCESS BY JCS

Plaintiffs incorporate by reference the previous paragraphs and make them a part hereof.

88.     The Plaintiffs aver that JCS, acting under color of state law in violation of 42 U.S.C. § 1983, has denied their right to due process and has denied those rights of the class members.

89.     JCS operates a "for profit" enterprise that markets its services to various municipal and county governments and has contracted with over 100 cities and towns throughout Alabama including Childersbrug.  JCS' marketing approach to these cities

emphasizes that its fees will be paid by the "offender" before the municipal court and that its efforts will improve collection of court fines and costs at no cost to the city.

90.     JCS routinely uses a form contract to establish its relationship with its customer cities and similarly trains its employees using a training manual replete with forms for court use and for contacting the "offenders" from whom it is seeking collection. As a result, the JCS approach is highly systemized and uniform.

91.     Under the system established by JCS, its employees are not required to have criminal justice or legal training, nor are they required to have any social work education or meet any minimum law enforcement standards as is required of state probation officers. Instead, JCS requires only that its employees be 21 years old, a non felon, with two years of college who complete 40 hours of training by JCS on its processes.  On satisfying those requirements, JCS employees are then labeled "Probation Officers" and permitted to carry the JCS issued badge in collecting its fees, court fines and costs.

92.     Under this system and by agreement with cities such as Childersburg, many administrative and judicial functions of the municipal court are unlawfully delegated to JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

93.     The agreement drafted by JCS and signed by the city mayor and JCS attests that its municipal "*court agrees that each court order shall provide* for the following:

> a probation fee of $35.00 per month flat fee
>
> One time probationer set up fee of $10.00. . . . " (*emphasis added*).

94.     JCS is, by virtue of this contract with municipalities such as Childersburg, clothed with the appearance of a state actor and its actions are inextricably interwoven

with those of the municipalities such as Childersburg.   Under its contract and its operations, JCS employees were and are represented to the plaintiffs and class members to be "probation officers" acting "on behalf of City of Childersburg."  Exhibit M.

95.   The JCS system provides "Order of Probation" forms to the municipal court with the printed requirement on each form that the "offender" pay JCS $35 per month plus $10 for a file set up charge.  *See* Exhibit A.  The monthly fee of $35 has since the agreement been increased to $45 per month for each "offender" at Childersburg. The orders supplied by JCS  require the individual to make payment to JCS of the fines, costs and additional monthly fees as required under its contract.

96.   Under the JCS contract and procedures, the resulting policy and practice at the municipal courts such as Childersburg automatically requires "probation" for any person who, despite having no jail sentence, is unable to fully pay the fine and costs when levied by the municipal court.

97.   Each of the named Plaintiffs was initially placed on "probation" with JCS under this practice though none had been sentenced to any jail time.

98.   That "probation" requirement, under agreement  between JCS and Childersburg, is required to be part of every printed order at the municipal courts such as Childersburg which also requires payment of monthly fees to JCS.

99.   The policy and practice method of JCS, after requiring probation orders for those unable to pay with additional fees for JCS, also imposes incarceration for a failure to pay fines, fees and costs.

100.   Incarceration of individuals who cannot pay their fines and added fees, such

23

as the Plaintiffs and class members, is accomplished by JCS leveling charges against them for "failure to obey court order," though there is no such state statute or city ordinance which defines this as a criminal act.

101.   Though a determination of willful refusal to obey a court order as required by *Ala. Code* §15-18-62 can lawfully lead to incarceration, no such determinations are made under the JCS system and methods.

102.   JCS expressly denies any responsibility to determine indigency of the "offenders" such as the Plaintiffs or to determine any reasons for an inability to pay the fine.  Therefore, when an "offender" is unable to pay the fine and additional fees required by JCS, JCS and the municipalities such as Childersburg cooperate with each other to issue arrest warrants initiated by JCS based upon claims of "failure to obey court order."

103.   All of the named Plaintiffs were indigent at the time of the charges levied against them in Childersburg and at the times of their incarcerations.  Each was unable to pay the fines and fees demanded by JCS due to their indigency and each was incarcerated as stated in detail in the above facts after recommendation by JCS.

104.   The incarceration process used by JCS includes the use of JCS drafted forms to be implemented by the municipalities such as Childersburg which are then approved by administrative personnel at Childersburg without a hearing to determine indigency.

105.   Under the policy and practice of JCS at Childersburg, unpaid fines and costs are unlawfully converted to undetermined days in jail for which the "offenders" have been also charged Thirty-One Dollars per day ($31/day), but are given no credit for time spent

in jail against the fines levied.

106.    The JCS system and its "Probation Tracker" software is highly systemized and focuses on collections of fines and its fees -- not traditional probation services.  That collection focus allows the "offenders" to mail in payments if they live 30 miles from the JCS office.  *See* Exhibit B.  In fact, the daily tasks of the JCS employees are heavily directed to collecting, counting and depositing the money collected.  *See* Exhibit C.

The training manual used by JCS instructs its employees on the use of its computer systems in tracking the payments made by the "offenders" and provides court forms to order probation and payment to JCS.  The payments to JCS are ordered under these forms even when adjudication is withheld.  *See* Exhibit D.

The JCS training system also provides sample letters for use after probation is ordered, threatening the "offender" that "a warrant will be issued for your arrest" and that their "court date cannot and will not be reset."  *See* Exhibits E and F.  Similar JCS forms instruct the "offender" that they can avoid the court date if they pay an amount determined by JCS.  *See* Exhibit G.

Finally, the JCS manual instructs its employees on the issuance of warrants of arrest and provides forms for that purpose.  *See* Exhibit H.  After the arrest warrant is issued, JCS also provides forms for warrant dismissal if JCS determines that the "offender" is now in compliance.  *See* Exhibit I.  Once arrested, JCS monitors those "offenders" placed in jail.  *See* Exhibit J.

107.    The agreement and forms drafted by JCS are uniformly used by it.

108.    Clothing JCS with the color of state law and authority is purposely structured

under the JCS system for it to impose and collect its fees, fines and costs from citizens such as the Plaintiffs, and is accomplished by providing JCS control over the money collected, the payment amount and schedule, the location where the money must be paid and control over how much will be credited for each payment to the collection "services" of JCS each month as opposed to how much of it will be rebated to the towns such as Childersburg toward the fines adjudged.

109.    Despite the lack of authority to do so, JCS, at its discretion, uses threats of revoking probation, increased fines and costs and jail time for purposes of collection. Under this system, should an individual fail to pay to the satisfaction of JCS, JCS will determine that the individual's "probation" should be revoked, or impose additional fines and costs.  Under the system operated jointly by cities such as Childersburg and JCS, JCS' determination to   incarcerate an individual and/or impose unreasonable bond requirements is routinely accepted without conducting delinquency or probation hearings and without making any findings, much less any determination of indigency or appointment of counsel before taking such punitive action.

110.    The actions and efforts of JCS routinely result in court costs, fines and fees which exceed the jurisdictional maximum of $500 for municipal courts.  Similarly, the periods of "probation" imposed for purposes of collecting fines and fees for JCS routinely exceed the two-year statutory maximum, all of which results in JCS taking action to detain and otherwise incarcerate individuals without any jurisdiction to do so.

111.    This system uses JCS' conclusion of a "probation violation" or "failure to obey court order" and employs JCS forms for the issuance of warrants to incarcerate

individuals whose original case had only been a fine.

112.   In this process of converting fines to jail time, JCS and Childersburg do not give adequate notice of the nature of any lawful charge, fail to conduct hearings, fail to make written findings concerning the reasons for revoking probation or the evidence relied upon, and fail to make written findings concerning any willful nonpayment of fines and costs before imposing incarceration for failure to pay fines and costs.

113.   Under this joint policy and practice of JCS when a simple fine is transformed into a jail sentence of an undetermined time, JCS and Childersburg also fail to provide counsel for the "offenders."

114.   After jailing an "offender," JCS acts to further violate the Plaintiffs' constitutional rights by arbitrarily granting early release to some individuals while denying it to others under similar circumstances without any rational basis based upon the whim of JCS and payments it has secured.  As a result, there is no consistent standard of review or logical system under which those incarcerated are granted release.

115.   Under the practice and policy of JCS used at Childersburg, after an adjudication under which a fine is levied, additional fees, costs and other charges are added to the "offender" bill with JCS for each new arrest, alleged probation violation, or contempt proceeding including, in some cases, those relating to charges years earlier.

116.   In some cases, under the practice and policy of JCS,  even where there has been a deferred adjudication, the accused is nonetheless required to pay JCS fees. *See* Exhibit D.

117.   Even in cases where a charge is dismissed as with the Plaintiff Deunate T.

Jews discussed above, costs and fees for JCS can be levied and collection pursued through threats and repeated incarceration.

118.    As a proximate consequence of this deprivation of due process, the Plaintiffs and class members suffered injuries including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity, by having fines in excess of statutory limits levied against them and by having other illegal charges for JCS fees, costs and restitution levied all while being indigent.

## COUNT TWO

## DENIAL OF DUE PROCESS BY CHILDERSBURG

Plaintiffs incorporate by reference the previous paragraphs and make them a part hereof.

119.    The Plaintiffs aver that Childersburg, acting under color of state law in violation of 42 U.S.C. § 1983, has denied their right to due process and the rights of the class members.

120.    By contract, Childersburg has delegated many administrative and judicial functions of its municipal court to JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

121.    That agreement was signed by the city mayor and binds Childersburg in specific municipal court areas requiring that its municipal "*court agrees that each court order shall provide* for the following:

a probation fee of $35.00 per month flat fee

One time probationer set up fee of $10.00. . . . " (*emphasis added*).

122.   Childersburg, through its mayor and council, approved the agreement with JCS.

123.   Childersburg, through its mayor and council, also approved the employment of Larry Ward as judge of its municipal court.  Ward, a bond salesman at Morgan Keegan, also serves as municipal judge for Harpersville and at other cities which have agreed to similar contracts.

124.   Municipalities are prohibited from laws, ordinances and policies which are in conflict with state law.  *See Ala Code* Section 11-45-1.  *Also see, Ala. Const.* Article 4 Section 89.

125.   State law also dictates a separation of the branches of government.  *Ala Const.* Article 3, Section 43.[2]  Under that doctrine, legislative powers granted to cities and towns are exercised by the city council, *Ala. Code,* Section 11-43-43, while the mayor of the city is responsible for executive duties.  *Ala. Code,* Section 11-43-83.  If the town establishes a municipal court, its administration is supervised by The Chief Justice of Alabama.  *Ala. Code,* Section 12-2-7 *et. seq.*; *Ala Const.,* Art 6, Section 139.

126.   Childersburg's mayor has the executive power to execute and enforce contracts[3] and the Childersburg City Council has the legislative power to enact regulations

---

[2]Ala. Const. Art. III, Section 43 states:
In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.

[3]Ala. Code Section 11-43-83 - The mayor shall see that all contracts with the town or city are faithfully kept or performed. He shall execute all deeds and contracts and bonds required in judicial proceedings for and on behalf or performed. He shall execute all deeds and contracts and bonds required

29

and ordinances[4], but neither the Mayor nor the Council has the power to invade the administration of its judiciary.

127.    Childersburg exceeded its statutory authority and acted in conflict with state statute and constitutional limitations when, acting through its mayor, it agreed with JCS to bind its municipal court to include probation and fees for JCS in every court order entered by its hired judge.  That action essentially sold the court process for purposes of increasing income to the city.

128.    The illegal agreement and policy of Childersburg invades and overrides the judicial authority and court administration reserved to the municipal judge and The Chief Justice.

129.    Probation is only appropriate when an individual has been sentenced to jail time and not when only a fine has been assessed as is the case with the Plaintiffs and class members.  As a result, the Childersburg policy and contract to include probation in every court order mandates a judicial practice that continually deprives indigent misdemeanants of their constitutional rights.

130.    The policy and contract of Childersburg is also in violation of the Alabama Constitution.  Article I, Section 20 *Ala. Const.* specifically prohibits imprisonment for the payment of debts, yet the policy enforced at Childersburg regularly jails misdemeanants upon the recommendation of JCS for failure to pay fines, fees and costs.  Article I, Section

---

in judicial proceedings for and on behalf of the city or town and no sureties shall be required on such bond. He shall perform such other executive duties, in addition to those prescribed in this article, as may be required of him by the council.

[4]Ala. Code Section 11-43-43 - All legislative powers and other powers granted to cities and towns shall be exercised by the council, except those powers conferred on some officers by law or ordinance. The council shall perform the duties required by this title and other applicable provisions of law.

16 *Ala. Const.* requires that all persons shall before conviction be bailable by sufficient surety, but despite this prohibition, misdemeanants are regularly jailed without lawful conviction under any contempt proceedings or probation violation and with no bail being set.

131.    Each of the Plaintiffs was imprisoned, and some repeatedly, under these policies of Childersburg for their failure to pay fines, costs and the added fees mandated by the illegal contract between Childersburg and JCS.   None of the Plaintiffs were accorded any hearing or consideration of their indigency before being jailed nor were any provided notice of charges, a hearing on charges levied that might result in imprisonment, or provided assistance of counsel before being imprisoned.

132.    At the Childersburg Municipal Court operating under the contract and policy adopted by the City, a person unable to fully pay fines and costs when levied is automatically placed on probation.   This process uses the JCS orders and forms even when there is no jail sentence adjudicated.   This is routinely done with no investigation into the indigency of the individual or the reasons for their inability to pay the fine and costs. The orders supplied by JCS under the agreement with Childersburg then require the individual to make payments to JCS, rather than the city clerk, of the fines, costs and additional monthly fees.

133.    The Childersburg City Clerk actively enforces these requirements as part of the policy and procedures established under this contract and refuses to accept payments of fines and costs referring those payers such as the Plaintiffs instead to the JCS offices.

134.    Childersburg, through its contract and operation, has clothed JCS with the

appearances of state authority and has allowed JCS employees to carry badges. Childersburg, as a matter of its agreement and policy, allows the JCS employees to attend each municipal court session and refers to JCS employees as "parole officers" in the operation of the municipal court and city clerk's office, though none have such authority under Alabama statutes.

135.    Under this system implemented by Childersburg, "offenders" are not permitted to pay fines at the city clerk's office, but are instead directed by Childersburg to make all payments including those for fines, restitution, probation fees and court costs to JCS at the JCS office at hours and locations set by JCS.

136.    The policy adopted and implemented by Childersburg is to comply with its contract with JCS.

137.    Childersburg allows JCS to control the money collected from persons such as Plaintiffs, and to determine how much each such municipal court "offender" must pay each month.

138.    Childersburg also allows JCS to determine how much of the collected sums will be credited to the collection "services" of JCS each month and how much of it will rebate to the towns such as Childersburg toward the municipal court fines adjudged.

139.    This system, as a matter of routine, violates the rights of persons such as the Plaintiffs and the classes they seek to represent by imposing fines and charging fees to indigent persons with no hearing or consideration of their indigency.

140.    Despite the lack of authority to do so, Childersburg permits JCS, at its discretion, to use threats of revoking probation, increased fines and costs and jail time for

purposes of collection.

141.    Under this system, should an individual fail to pay to the satisfaction of JCS, Childersburg permits JCS to determine that the individual's "probation" should be revoked, or impose additional fines and costs.

142.    Under the system operated at Childersburg, JCS' determination to incarcerate an individual and/or impose unreasonable release requirements is routinely accepted by Childersburg personnel without conducting delinquency or probation hearings and without making any findings, much less any determination of indigency or appointment of counsel before taking such punitive action.

143.    Childersburg permits JCS to control and dictate these functions and, as a consequence, this routinely results in court costs and fines which exceed the statutory maximum of $500 for municipal courts and impose additional "jail fees" determined by the city clerk for the costs of any incarceration.  Similarly, the periods of "probation" imposed for purposes of collecting fines and fees at Childersburg routinely exceed the two-year statutory maximum, all of which results in action to detain and otherwise incarcerate individuals without any jurisdiction to do so.

144.    The municipal court judge employed by Childersburg contends that under the Childersburg  contract, it is JCS that should determine if an "offender" is unable to pay due to indigency and if so, to abate any fees in the probation order and therefore no investigation of indigency is undertaken by Childersburg as a matter of policy.

145.    Under this system implemented at Childersburg, after simple fines are illegally converted to "probation" for payment, jail often results for the "offender" who does

not meet the payment scheduled set by JCS and enforced by Childersburg.  This system uses and accepts JCS' conclusion of a "probation violation" or "failure to obey court order" and employs JCS forms for the issuance of warrants to incarcerate individuals whose original case had only been a fine.

146.    Under this system at Childersburg, each of the Plaintiffs was first only fined, but then automatically placed on "probation" though no jail sentence was adjudicated. Though each of the Plaintiffs was indigent, Childersburg made no investigation of that matter.  When the Plaintiffs were unable to pay the fines, costs and additional JCS fees that Childersburg agreed to levy, recommendations from JCS were made and followed by Childersburg to incarcerate each of them for undetermined times.

147.    Incarceration of individuals who cannot pay their fines and added fees, such as the Plaintiffs and class members, is also accomplished by bringing charges against them for "failure to obey court order," though there is no such state statute or city ordinance which defines this as a criminal act.

148.    Though a determination of willful refusal to obey a court order as required by *Ala. Code* §15-18-62 can lawfully lead to incarceration, no such determinations are made under the system at Childersburg.

149.    Childersburg adopts implements JCS' conclusion of a "probation violation" or "failure to obey court order" and employs JCS forms for the issuance of warrants to incarcerate  individuals whose original case had only been a fine.

150.    In this process of converting fines to jail time, Childersburg does not give adequate notice to the "offender" of the nature of any lawful charge, its fails to conduct

34

hearings, fails to make written findings concerning the reasons for any probation revocation or the evidence relied upon, and fails to make written findings concerning any willful nonpayment of fines and costs before imposing incarceration for failure to pay fines and costs.

151.   Under this policy and practice at Childersburg when a simple fine is transformed into a jail sentence of an undetermined time, Childersburg also fails to provide counsel for the "offenders."

152.   After jailing an "offender," Childersburg acts to further violate the Plaintiffs' constitutional rights by arbitrarily granting early release to some individuals while denying it to others under similar circumstances without any rational basis based upon the whim of JCS and payments it has secured.  As a result, there is no consistent standard of review or logical system under which those incarcerated are granted release.

153.   Under the practice and policy used at Childersburg, after an adjudication under which a fine is levied, additional fees, costs, and other charges are added to the "offender" bill for each new arrest, alleged probation violation, or contempt proceeding including, in some cases, those relating to charges years earlier.

154.   In some cases, under the practice and policy adopted and implemented at Childersburg, even where there has been a deferred adjudication, the accused is nonetheless required to pay JCS fees.  *See* Exhibit D.

155.   Even in cases where a charge is dismissed as with the Plaintiff Deunate T. Jews, whose specific facts are included above, the costs and fees at Childersburg can be levied and collection pursued through threats and repeated incarceration all with the

knowledge and participation of Childersburg.

156.    As a proximate consequence of this deprivation of due process, the Plaintiffs and class members suffered injuries including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity, by having fines in excess of statutory limits levied against them and by having other illegal charges for JCS fees, costs and restitution levied all while being indigent.

## COUNT THREE

## VIOLATION OF THE FOURTH AMENDMENT BY JCS

Plaintiffs incorporate by reference the previous paragraphs and make them a part hereof.

157.    The Plaintiffs aver that JCS acting under color of state law in violation of 42 U.S.C. § 1983, has violated their Fourth Amendment rights and the rights of the class members to be free from unreasonable seizure.

158.    By contract as discussed in detail above, Childersburg has illegally delegated many administrative and judicial functions of its municipal court to JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

159.    In addition to a denial of due process guaranteed the Plaintiffs under the Fourteenth Amendment, the arrest and detainment of these "offenders" who cannot pay the fines imposed under this system constitutes a "seizure" in violation of the Fourth Amendment as well.

160.    Under Alabama law, a fine can only be converted into jail time if the court

makes findings under *Ala. Code* Section 15-18-62 (1975) that a defendant has willfully failed to pay the fines. Even there, the statute provides specifics as to potential jail time.

161.   Under the system created and implemented by JCS, there is no hearing to determine if an "offender" had willfully refused to pay nor any consideration of indigency and factors preventing payment.

162.   Under the system created and implemented by JCS at Childersburg, every person who is unable to pay a simple fine and costs in full is placed on "probation." Though their inability to pay the fine gives immediate notice of the "offenders'" financial limitations, the JCS system adds further costs and fees each month to these "offenders" who were already unable to pay the fines levied. The result increases the financial burden of persons who are accused of no more than traffic violations or misdemeanors.

163.   Under Alabama case law, the Alabama Constitution and the U.S. Constitution, an indigent defendant cannot be required to serve jail time for nonpayment of fines and costs.[5]

---

[5]Ala. Const. Art. I, Section 20 provides: "That no person shall be imprisoned for debt."
It is clear as a matter of constitutional law that an indigent defendant cannot be required to serve jail time for nonpayment of fine and costs. *Tate v. Short*, 401 U.S. 395 (1971); *Lingle v. State*, 51 Ala.App. 210, 283 So.2d 660 (1973); *Smith v. State*, 51 Ala.App. 212, 283 So.2d 662 (1973). "To imprison an indigent when in the same circumstances an individual of financial means would remain free constitutes a denial of equal protection of the laws." *Barnett v. Hopper*, 548 F.2d 550, 554 (5th Cir.1977). This is not a case of a defendant who, though capable of paying a fine, refuses or neglects to do so.

Although Section 15-22-52, Alabama Code 1975, states that payment of fine and costs may be made a condition of suspension of sentence or probation, in *State v. Esdale*, 253 Ala. 550, 45 So.2d 865 (1950), our Supreme Court indicated that such a condition was contrary to our constitution.
"These benefits (probation and suspension of sentence) are not the subject of bargain and sale to be conditioned on the payment of costs and fees assessed as an incident to the prosecution and trial and to condition these benefits on the payment of such costs and fees violate the letter and spirit of Section 13 of the Constitution of 1901 which provides that 'justice shall be administered without sale, denial or delay.'" *Esdale*, 253 Ala. at 553.

*Crutcher v. State*, 439 So. 2d 725; 726 (Ala. Crim. App. 1983)

164.    Despite the longstanding law prohibiting incarceration for one's inability to pay a fine/debt, JCS instituted arrest warrants for Ms. Ray, Mr. Jews, Ms. Fugatt, and Mr. Fugatt when JCS knew these plaintiffs could not pay the fines and fees JCS ordered and despite the fact that none had been initially given any jail time whatsoever.

165.    Unless prompt payment of its fees and fines is made as determined by JCS, JCS takes steps to have the "probation" revoked or initiates charges  for "failure to obey court order" beginning the process of incarcerating an individual who otherwise would never have seen jail under the original adjudication.[6]

166.    Each of the named Plaintiffs was unlawfully jailed under the JCS process as described and under the specific facts as stated above all of which constitute unlawful seizures in violation of the Fourth Amendment.

167.    As a proximate consequence of this unlawful seizure, the Plaintiffs and class members suffered injuries including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity all while being indigent.

## COUNT FOUR

## VIOLATION OF THE FOURTH AMENDMENT BY CHILDERSBURG

Plaintiffs incorporate by reference the previous paragraphs and make them a part hereof.

---

[6] "Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied." (internal quotation marks and emphasis omitted)); *Oliver*, 510 U.S. at 274 (plurality opinion) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.").

168.    The Plaintiffs aver that Childersburg acting under color of state law in violation of 42 U.S.C. § 1983, has violated their Fourth Amendment rights and the rights of the class members to be free from unreasonable seizure.

169.    By contract as discussed in detail above, Childersburg, has illegally delegated many administrative and judicial functions of its municipal court to JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

170.    In addition to a denial of due process guaranteed the Plaintiffs under the Fourteenth Amendment, the arrest and detainment of these "offenders" who cannot pay the fine imposed under this system constitutes a "seizure" in violation of the Fourth Amendment as well.

171.    Under Alabama law, a simple fine can only be converted into jail time if the court makes findings under *Ala. Code,* Section 15-18-62 (1975) that a defendant has willfully failed to pay the fines.

172.    Childersburg's policy of including probation with JCS in every municipal court order created the process by which misdemeanants were incarcerated without a willfulness hearing as required by *Ala. Code,* Section 15-18-62 and in violation of Alabama case law, the Alabama Constitution and the U.S. Constitution.

173.    Under Alabama case law, the Alabama Constitution and the U.S. Constitution, an indigent defendant cannot be required to serve jail time for nonpayment of fines or costs.[7]

---

[7]

It is clear as a matter of constitutional law that an indigent defendant cannot be required to serve jail time for nonpayment of fine and costs. *Tate v. Short*, 401 U.S. 395 (1971); *Lingle v. State*, 51 Ala.App. 210, 283 So.2d 660 (1973); Smith v. State 51 Ala.App. 212, 283 So.2d 662 (1973). "To imprison an indigent when in the same circumstances an individual of financial means would remain free constitutes a denial of

174.     Despite longstanding legal precedent prohibiting incarceration for one's inability to pay a fine/debt, Childersburg's policy and personnel working in conjunction with JCS unlawfully arrested and jailed Ms. Ray, Mr. Jews, Ms. Fugatt, and Mr. Fugatt for their inability to pay simple fines and the added fees and costs dictated by the Childersburg contract with JCS.

175.     Childersburg police, municipal court processes and jail all became tools of collection under forms and processes issued by JCS and which were routinely followed by Childersburg.  Childersburg's policy and practice after clothing JCS with the appearance of a state actor acting on its behalf, allowed JCS to threaten arrest or revocation of probation and/or incarceration in order to coerce these indigents to pay Childersburg fines and JCS fees for misdemeanor offenses not otherwise subject to jail time under the original adjudication.

176.     When these threats failed to produce sufficiently, Childersburg police, clerks and other personnel cooperated with JCS to arrest and jail the Plaintiffs.

177.     Each of the named Plaintiffs was unlawfully jailed by Childersburg under the

─────────────────────────

equal protection of the laws." *Barnett v. Hopper*, 548 F.2d 550, 554 (5th Cir.1977). This is not a case of a defendant who, though capable of paying a fine, refuses or neglects to do so.

   Although Section 15-22-52, *Alabama Code* 1975, states that payment of fine and costs may be made a condition of suspension of sentence or probation, in *State v. Esdale*, 253 Ala. 550, 45 So.2d 865 (1950), our Supreme Court indicated that such a condition was contrary to our constitution.
   "These benefits (probation and suspension of sentence) are not the subject of bargain and sale to be conditioned on the payment of costs and fees assessed as an incident to the prosecution and trial and to condition these benefits on the payment of such costs and fees violate the letter and spirit of Section 13 of the Constitution of 1901 which provides that 'justice shall be administered without sale, denial or delay.'" *Esdale*, 253 Ala. at 553.

*Crutcher v. State,* 439 So. 2d 725; 726 (Ala. Crim. App. 1983)

JCS process as described and under the specific facts stated above all of which constitute unlawful seizures in violation of the Fourth Amendment.[8]

178.    As a proximate consequence of this unlawful seizure, the Plaintiffs and class members suffered injuries including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity all while being indigent.

## COUNT FIVE

## VIOLATION OF THE SIXTH AMENDMENT BY JCS

Plaintiffs incorporate by reference the previous paragraphs and make them a part hereof.

179.    The Plaintiffs aver that JCS acting under color of state law in violation of 42 U.S.C. § 1983, has violated their Sixth Amendment rights and the rights of the class members.

180.    By contract as discussed in detail above, Childersburg has illegally delegated many administrative and judicial functions of its municipal court to JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

181.    Under this joint policy and practice of JCS at Childersburg when a simple fine is transformed into a jail sentence of an undetermined time, counsel is not provided for the indigent "offenders."

182.    Each of the named Plaintiffs was initially ordered to pay only a fine at the

---

[8] "Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied." (internal quotation marks and emphasis omitted)); *Oliver*, 510 U.S. at 274 (plurality opinion) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.").

Childersburg municipal court, but due to their inability to pay, each was placed on "probation" under JCS pursuant to JCS form orders and its contract with the city.

183.   The "probation" process at JCS is essentially a collection vehicle for the city customer which adds monthly fees to the "offender" who has already disclosed an inability to pay the fine.  JCS provided no services to the Plaintiffs, but represents itself as acting on behalf of the city which clothes it with that appearance.  *See* Exhibit M.

184.   JCS denies any responsibility to investigate the indigency of the "offenders" and thus takes no action to determine or consider disabilities, employment status or other reasons justifying non payment.

185.   Simple fines without jail sentences are automatically and illegally converted to "probation" under the JCS system used at Childersburg if the offender cannot promptly pay the entire fine and costs.

186.   After this conversion from a fine to probation, threats of jail and actual incarceration take place if the fines, fees and costs are not paid as scheduled by JCS.

187.   The jeopardy of jail time was not present when the simple fines were adjudicated against the Plaintiffs and would not have been present but for the JCS collection system  illegally requiring "probation" for simple fines.

188.   With the Plaintiffs' inability to pay and the JCS focus on collections, charges of "probation violation" or "failure to obey court order" are initiated by JCS under its system.

189.   At that point, jail sentences become potential jeopardy for the "offenders" such as the Plaintiffs on charges that have never before been subjected to meaningful

adversarial testing.  Nevertheless, neither JCS nor its city customer like Childersburg provide counsel for those "offenders."

190.    At the point jail sentences are potential, the JCS system used at Childersburg uses a charge of "probation violation," but does not provide notice of charges, findings required for conviction.  Similarly, JCS also uses a charge of "failure to obey court order," though that is not a valid charge.  If willful failure to pay under state statutes such as *Ala. Code* Section 15-18-62 is the basis, under the JCS system there is no finding or hearing on the issue of willfulness.

191.    Each of the named Plaintiffs while indigent was unlawfully jailed under this JCS system at Childersburg and without any assistance of counsel.

192.    These actions constitute a denial of the Plaintiffs' rights secured by the Sixth Amendment.

193.    As a proximate consequence of this violation of their sixth amendment rights, the Plaintiffs and class members suffered injuries including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity, by having fines in excess of statutory limits levied against them and by having other illegal charges for JCS fees, costs and restitution levied all while being indigent.

## COUNT SIX

## VIOLATION OF THE SIXTH AMENDMENT BY CHILDERSBURG

Plaintiffs incorporate by reference the previous paragraphs and make them a part hereof.

43

194.   The Plaintiffs aver that Childersburg acting under color of state law in violation of 42 U.S.C. § 1983, has violated their Sixth Amendment rights and the rights of the class members.

195.   By contract as discussed in detail above, Childersburg has illegally delegated many administrative and judicial functions of its municipal court to JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

196.   Under this joint policy and practice of JCS at Childersburg, when a simple fine is transformed into a jail sentence of an undetermined time, counsel is not provided for the indigent "offenders."

197.   Each of the named Plaintiffs was initially ordered to pay only a fine at the Childersburg municipal court, but due to their inability to pay, each was placed on "probation" under JCS pursuant to JCS form orders and the contract approved by Childersburg.

198.   The contract signed by Childersburg approved a "probation" process as essentially a collection vehicle for the city to collect its fines. That agreement, as discussed above, conflicts with state statutes, violates state constitutional requirements for separation of power in the branches of government and exceeds the authority of the mayor and council.

199.   Under that agreement, Childersburg allows JCS to add monthly fees to the "offender" who has already disclosed an inability to pay the fine when adjudicated even though JCS provides no services to them.

200.   Under the agreement and with the knowledge and approval of Childersburg,

44

JCS represents itself as acting on behalf of the city which clothes it with that appearance. *See* Exhibit M.

201. Under this agreement, Childersburg has unlawfully invaded the province of the municipal court and mandated that each order there contain provisions for fees to JCS.

202. By its agreement, at Childersburg, simple fines without jail sentences are automatically and illegally converted to probation under the JCS system used at Childersburg if the offender cannot promptly pay the entire fine and costs.

203. After this conversion from a fine to probation, threats of jail are used by JCS with the approval of Childersburg and actual incarceration then takes place by police and other city personnel at Childersburg if the fines, fees and costs are not paid as scheduled by JCS.

204. The jeopardy of jail time was not present when the simple fines were adjudicated against the Plaintiffs and would not have been present but for the Childersburg agreement to adopt and use the JCS collection system in the administration of its court system illegally requiring "probation" for simple fines.

205. With the Plaintiffs' inability to pay and the JCS focus on collections, charges are routinely initiated claiming "probation violation" or "failure to obey court order." These are initiated by JCS under its system and then approved by Childersburg personnel.

206. At that point, jail sentences become potential jeopardy for the "offenders" such as the Plaintiffs on charges that have never before been subjected to meaningful adversarial testing. Nevertheless, neither JCS nor Childersburg provide counsel for those "offenders."

45

207.     At the point when jail sentences become potential, Childersburg presents charges of alleged "probation violation," but does not provide notice of charges, nor are findings made as required for conviction.  Similarly, though JCS also regularly proposes a charge of "failure to obey court order" which Childersburg then pursues, that is not a valid charge.  If willful failure to pay under state statutes such as *Ala. Code* Section 15-18-62 is used as the basis, under the Childersburg system with JCS there is no finding or hearing on the issue of willfulness.

208.     Each of the named Plaintiffs while indigent was unlawfully jailed by Childersburg under this JCS system and none were provided any assistance of counsel in the process leading to their incarceration.

209.     These actions constitute a denial of the Plaintiffs' rights secured by the Sixth Amendment.

210.     As a proximate consequence of this violation of their Sixth Amendment rights, the Plaintiffs and class members suffered injuries including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity, by having fines in excess of statutory limits levied against them and by having other illegal charges for JCS fees, costs and restitution levied all while being indigent.

**COUNT SEVEN**

**VIOLATION OF THE EIGHTH AMENDMENT BY JCS**

Plaintiffs incorporate by reference the previous paragraphs and make them a part hereof.

46

211.   The Plaintiffs aver that JCS acting under color of state law in violation of 42 U.S.C. § 1983, has violated the Eighth Amendment prohibition against excessive fines and cruel and unusual punishment in its actions with the Plaintiffs and class members.

212.   By contract as discussed in detail above, Childersburg has illegally delegated many administrative and judicial functions of its municipal court to JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

213.   The Eighth Amendment prohibits cruel and unusual punishment and as such limits the kinds of punishment that can be imposed on those convicted of crimes, proscribes punishment grossly disproportionate to the severity of the crime and imposes substantive limits on what can be made criminal and punished as such.

214.   Under Alabama law, a municipal court has no authority to award a fine on any particular charge over $500.00, *Ala. Code §* 13A-5-12(a)(3), and even lawful probation for misdemeanors cannot, by statute, extend beyond a two-year period. *See Ala. Code §* 15-22-54(a).

215.   As mentioned above, § 15-18-62 is the only statutory method under which a fine levied by a court on adjudication can be converted to imprisonment but that can legally occur **only** where the court finds willful nonpayment of the fine and cost.

216.   Even upon proper notice and a finding of willful nonpayment under § 15-18-62, the conversion of fine to imprisonment has a specific ratio such that a fine not to exceed $500.00 shall result in no more than 20 days. *See Ala. Code §* 15-18-62(2).

217.   Rule 26.11 of the Alabama Rules of Criminal Procedure provides the method for dealing with fines, restitution and the failure to pay under a variety of circumstances,

47

none of which were followed by JCS.

218.   Under these facts, after substantial fines were levied against indigent persons such as the Plaintiffs, JCS, operating under an illegal contract with Childersburg, then increased that burden with additional monthly fees and costs charged by JCS.  For the named Plaintiffs, the total amounts demanded by JCS exceeded the $500 limitation on the municipal court authority.

219.   Under the JCS system at Childersburg, though JCS made no inquiry into the indigency of the "offenders" in the system or the reason for their failure to make payments, JCS increased the amount demanded from the Plaintiffs to the point that even partial payments could not be made.

For example, Timothy Fugatt was fined $148, has currently paid over $450, and is told that he still owes over $500, all from an initial $148 fine for an expired tag.  Charging over six times the initial fine is excessive, disproportionate to the violation and violates the excessive fines clause of the Eighth Amendment.

Deunate Jews was fined $166 for a dismissed charge, has paid over $800, and is told that he still owes over $1,807, all from an initial $166 fine for a dismissed charge. Charging over fifteen times the initial fine is excessive and violates the excessive fines clause of the Eighth Amendment.

220.   The Plaintiffs were all indigent and their failure to pay JCS as demanded resulted in threats of arrests and ultimately incarceration based upon JCS' recommendation that the offender had "failed to obey a court order" or had violated "probation."

48

221.    These fines and fees levied against the Plaintiffs exceeded the statutory limits of the court and the incarceration periods imposed for the failure to pay exceeded those in *Ala. Code* §15-18-62.

222.    JCS also  failed to give credit to the jailed Plaintiffs for the time they served as required under statute at the rate of $15 per day against the fine.

223.    The practice and policy of JCS in instituting charges resulting in jail time for inability to pay its fees, fines and costs violates the Eight Amendment prohibition against excessive fines and cruel and unusual punishment.

224.    Each of the named Plaintiffs was, at all pertinent times, indigent and each was incarcerated at the behest of JCS for their inability to pay fines, fees and costs on the schedule determined by JCS, though all had initially only received fines by the Childersburg Municipal Court.

225.    As a result of the violation of the Eighth Amendment, each of the Plaintiffs was subjected to excessive fines, fees, and costs beyond the jurisdictional limits of the municipality and violation of the prohibition against excessive fines and cruel and unusual punishment.

226.    As a proximate consequence of this violation of their Eighth Amendment rights, the Plaintiffs and class members suffered injuries including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity, by having fines in excess of statutory limits levied against them and by having other illegal charges for JCS fees, costs and restitution levied all while being indigent.

49

## COUNT EIGHT

## VIOLATION OF THE EIGHTH AMENDMENT BY CHILDERSBURG

Plaintiffs incorporate by reference the previous paragraphs and make them a part hereof.

227.   The Plaintiffs aver that Childersburg acting under color of state law in violation of 42 U.S.C. § 1983, has violated the Eighth Amendment prohibition against excessive fines and cruel and unusual punishment in its actions with the Plaintiffs and class members.

228.   By contract as discussed in detail above, Childersburg has illegally delegated many administrative and judicial functions of its municipal court to JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

229.   The Eighth Amendment prohibits cruel and unusual punishment and, as such, limits the kinds of punishment that can be imposed on those convicted of crimes, proscribes punishment grossly disproportionate to the severity of the crime and imposes substantive limits on what can be made criminal and punished as such.

230.   Under Alabama law, a municipal court has no authority to award a fine on any particular charge over $500.00, *Ala. Code § 13A-5-12(a)(3)*, and even lawful probation for misdemeanors cannot, by statute, extend beyond a two-year period.  *See Ala. Code § 15-22-54(a)*.

231.   As mentioned above, *Ala. Code, § 15-18-62* is the only statutory method under which a fine levied by a court on adjudication can be converted to imprisonment, but that can legally occur **only** where the court finds willful nonpayment of the fine and cost.

232.    Even upon proper notice and a finding of willful nonpayment under § 15-18-62, the conversion of fine to imprisonment has a specific ratio such that a fine not to exceed $500.00 shall result in no more than 20 days.  *See  Ala. Code* § 15-18-62(2).

233.    Rule 26.11 of the Alabama Rules of Criminal Procedure provides the method for dealing with fines, restitution and the failure to pay under a variety of circumstances, none of which were followed by JCS nor required by Childersburg.

234.    Under these facts, Childersburg illegally contracted with JCS to add monthly fees and costs to each municipal court order.  This agreement increased the substantial fines levied against indigent persons such as the Plaintiffs.

235.    Neither Childersburg nor JCS made inquiry into the indigency of the "offenders" in the system.  As a result, only the Plaintiffs' failure to make payments as dictated by JCS under the agreement with Childersburg resulted in threats of arrests.  If threats failed to produce the demanded payments, arrest and incarceration follows under process at Childersburg based upon JCS' recommendation that the offender had "failed to obey a court order" or had violated "probation."

236.    These fines exceeded the statutory limits of the municipal court and the incarceration periods imposed for the failure to pay exceeded those in *Ala. Code* §15-18-62.

237.    Once in jail, Childersburg failed to give credit to the jailed Plaintiffs for the time they served as required under statute at the rate of $15 per day against the fine.

238.    The practice and policy at Childersburg of imposing jail time for inability to pay its fees, fines and costs violates the Eight Amendment prohibition against excessive

fines and cruel and unusual punishment.

239.    Each of the named Plaintiffs was at all pertinent times indigent and each was incarcerated by Childersburg personnel at the behest of JCS for their inability to pay fines, fees and costs on the schedule determined by JCS.

240.    As a result of the violation of the Eighth Amendment, each of the Plaintiffs was subjected to excessive fines, fees, and costs beyond the jurisdictional limits of the municipality and violation of the prohibition against excessive fines and cruel and unusual punishment.

241.    As a proximate consequence of this violation of their Eighth Amendment rights, the Plaintiffs suffered injuries including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity, by having fines in excess of statutory limits levied against them and by having other illegal charges for JCS fees, costs and restitution levied all while being indigent.

## COUNT NINE

## DENIAL OF EQUAL PROTECTION BY JCS

Plaintiffs incorporate by reference the previous paragraphs and make them a part hereof.

242.    JCS and Childersburg have acted jointly under color of state law in violation of 42 U.S.C. § 1983, to deny the Plaintiffs' and class members' rights to equal protection secured by the Fourteenth Amendment.

243.    JCS, though a private company, has been clothed with the color of state law

by the specific actions of Childersburg all pursuant to an agreement between these parties.

244.    As referenced above, by agreement, JCS employees attend all municipal court sessions, collect city fines and costs, are labeled as "probation officers," carry badges and regularly represent themselves as acting "on behalf of the City of Childersburg." Additionally, the JCS forms are used at the municipal court and fees for JCS are included in every court order there.

245.    In the system established by an illegal agreement between JCS and Childersburg, the actions of JCS are inextricably intertwined with those of the government.

246.    The practice and policy under this agreement automatically requires "probation" for any person who, despite having no jail sentence, is financially unable to fully pay the fine and costs when levied by the municipal court.   That probation requirement is part of the agreement between JCS and Childersburg and is a required part of every printed order at the municipal court and requires payment of monthly fees to JCS.

247.    Persons who are financially able to fully pay the levied fine and costs at Childersburg are not placed on "probation."   As a result, those persons are not charged any fees for JCS and are not subjected to threats of arrest and incarceration in the collection process.

248.    For those such as the Plaintiffs who are unable to fully pay the fine and costs when levied by the municipal court, "probation" under JCS is required on every court order.

249.    This requirement on its municipal court is part of the city contract with JCS. That contract, as discussed above, exceeds the statutory and constitutional authority of municipalities and imposes on the municipal court an agreement in violation of the

separation of powers doctrine between the branches of government as embodied in the Alabama Constitution.  *Ala. Const,* Article 3, Section 43.

250.    Once on "probation" for purposes of paying a fines and costs, this policy and practice at Childersburg routinely imposes incarceration and additional costs on individuals who are unable to pay fines and costs, without any determination of willfulness as lawfully required under Alabama statutes.  See *Ala Code,* Section 15-18-62.

251.    This disparate treatment based upon the wealth of the "offender" before the municipal court is a violation of equal protection and cannot be justified on any legitimate rational state interest basis.

252.    This inequality of treatment is also beyond the authority of the municipal court which is required by Alabama statute to uniformly process traffic infractions and penalties for misdemeanors in accordance with specified maximum fines.  *See Ala. Code* Section 12-14-8.  The JCS policy at Childersburg is not uniform with the procedures established by the Alabama Administrative Office of Courts because it adds fees only to "offenders" cannot pay immediately and creates its own "rules" for penalizing individuals who cannot pay as directed.

253.    These additional JCS fines result in disparate treatment between those who can immediately pay the fine from those who are unable to immediately pay the fine. Furthermore, those "offenders" within the Childersburg/JCS arrangement are processed and fined differently than "offenders" in jurisdictions that have not allowed JCS to charge additional fees to those who cannot pay. There is no state authority for such disparate treatment.

254.    Each of the Plaintiffs was required to pay the additional costs and fees under this disparate system and each of the named Plaintiffs was unlawfully jailed for their inability to pay as demanded.

255.    As a proximate consequence of this denial of the right to Equal Protection under the Fourteenth Amendment, the Plaintiffs and class members suffered injuries including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity, by having fines in excess of statutory limits levied against them and by having other illegal charges for JCS fees, costs and restitution levied all while being indigent.

## COUNT TEN

## DENIAL OF EQUAL PROTECTION BY CHILDERSBURG

Plaintiffs incorporate by reference the previous paragraphs and make them a part hereof.

256.    JCS and Childersburg have acted jointly under color of state law in violation of 42 U.S.C. § 1983 to deny the Plaintiffs' and class members' rights to equal protection secured by the Fourteenth Amendment.

257.    This is accomplished by the illegal contractual agreement between JCS and Childersburg whereby their actions are inextricably intertwined in a practice and policy which automatically requires "probation" for any person who, despite having no jail sentence, is financially unable to fully pay the fine and costs when levied by the municipal court.  That probation requirement is part of the agreement between JCS and Childersburg

55

and is part of every printed order at the municipal court and requires payment of monthly fees to JCS.

258.    Persons who are financially able to fully pay the levied fine and costs at Childersburg are not placed on "probation."  As a result, those persons are not charged any fees for JCS and are not subjected to threats of arrest and incarceration in the collection process.

259.    For those such as the Plaintiffs who are unable to fully pay the fine and costs when levied by the municipal court, "probation" with JCS is required on every order.

260.    This requirement is part of the city contract with JCS.  That contract, as mentioned, above exceeds the statutory and constitutional authority of municipalities and imposes on the municipal court an agreement in violation of the separation of powers doctrine between the branches of government.

261.    Once on "probation" for purposes of paying a fines and costs, this policy and practice at Childersburg routinely imposes incarceration and additional costs on individuals who are unable to pay fines and costs, without any determination of willfulness as would lawfully be required under Alabama statutes.  See *Ala Code* Section 15-18-62.

262.    This disparate treatment based upon the wealth of the "offender" before the municipal court is a violation of equal protection and cannot be justified on any legitimate rational state interest basis.

263.    This inequality of treatment is also beyond the authority of the municipal court which is required by Alabama statute to uniformly process traffic infractions and penalties for misdemeanors in accordance with specified maximum fines.  *See Ala. Code*

Section 12-14-8.  The JCS policy at Childersburg is not uniform with the procedures established by the Alabama Administrative Office of Courts because it adds fees only to "offenders" who cannot pay immediately and creates its own "rules" for penalizing individuals who cannot pay as directed.

264.    These additional JCS fines result in disparate treatment between those who can immediately pay the fine from those who are unable to immediately pay the fine. Furthermore, those "offenders" within the Childersburg/JCS arrangement are processed and fined differently than "offenders" in jurisdictions that have not allowed JCS to charge additional fees to those who cannot pay.  There is no state authority for such disparate treatment.

265.    Each of the Plaintiffs was required to pay the additional costs and fees under this disparate system and each of the named Plaintiffs was unlawfully jailed for their inability to pay as demanded.

266.    As a proximate consequence of this denial of the right to Equal Protection under the Fourteenth Amendment, the Plaintiffs and class members suffered injuries including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity, by having fines in excess of statutory limits levied against them and by having other illegal charges for JCS fees, costs and restitution levied all while being indigent.

## COUNT ELEVEN

## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs incorporate by reference the previous paragraphs and make them a part

hereof.

267.   A real controversy exists between these parties concerning several issues including the validity of the JCS contract with Childersburg and the legality of the actions taken under that contract such that declaratory relief is appropriate.

268.   Plaintiffs request the Court to declare that the JCS contract with Childersburg was void *ab initio* because Childersburg had no authority to contractually bind its municipal court.

269.   Childersburg entered into an agreement with JCS that exceeded both statutory and constitutional limitations on municipalities.  Furthermore, that agreement violated the separation of powers doctrine embodied in the Alabama Constitution.  See *Ala. Const.,* Article 3, Section 43.   As a result, that agreement is void and due to be declared a nullity.

270.   Alabama state law also dictates a separation of the branches of government. *Ala. Const.,* Article 3, Section 43.   Under that doctrine, legislative powers granted to cities and towns are exercised by the city council, *Ala. Code,* Section 11-43-43, while the mayor of the city is responsible for executive duties.  *Ala. Code,* Section 11-43-83.  If the town establishes a municipal court, its administration is supervised by The Chief Justice of Alabama. *Ala. Code,* Section 12-2-7 *et. seq.*; *Ala. Const.,* Art 6, Section 139

271.   Childersburg's mayor has the executive power to execute and enforce contracts and the Childersburg City Council has the legislative power to enact regulations and ordinances, but neither the Mayor nor the Council has the power to invade the administration of its judiciary.

272.    Childersburg exceeded its statutory authority and acted in conflict with state statute and constitutional limitations when, acting through its mayor, it agreed with JCS to bind its municipal court to include probation and fees for JCS in every court order entered by its hired judge.  That action essentially sold the court process for purposes of increasing income to the city.

273.    That agreement also violates the uniformity required by statute for processing traffic infractions and penalties for misdemeanors in accordance with specified maximum fines.  *See Ala. Code* Section 12-14-8.

274.    The process Childersburg under JCS is not uniform with the procedures established by the Alabama Administrative Office of Courts because it adds fees only to "offenders" who cannot pay immediately and creates other "rules" for further penalizing individuals who cannot pay as directed.   "Offenders" who are able to immediately pay the fine are charged one rate, but those that are unable to immediately pay for the same offense are charged the fine and required to pay JCS monthly fees that accumulate each month that passes.

275.    The "offenders" within the Childersburg/JCS arrangement are processed and fined differently than "offenders" in municipal jurisdictions that have not contracted for JCS to charge its fees to those who cannot pay and as a result violates uniformity requirements of *Ala. Code* Section 12-14-8.

276.    The illegal agreement and policy of Childersburg invades and overrides the judicial authority and court administration reserved to the municipal judge and The Chief Justice.

277.    Plaintiffs also request the Court to declare the actions of JCS and Childersburg under this contract to be unconstitutional under the premises discussed above.  Under this void agreement, JCS and Childersburg have implemented joint policies and practices to prosecute persons such as the Plaintiffs where there is no jurisdiction or authority to do so under Alabama law, doing so intentionally in an effort to coerce payment of fines and costs from indigent people.   These efforts have resulted in the illegal prosecution and incarceration of Plaintiffs and their class beyond the limited jurisdiction of the municipal courts.

278.    Further, JCS and Childersburg have added increased punishment, fines and costs after adjudication and even where there has been no adjudication of guilt, all without jurisdiction or authority for such under Alabama law.

279.    JCS and Childersburg, through their joint action, have systematically applied *Ala. Code* § 15-18-62 in an unconstitutional fashion denying the Plaintiffs and the Class they seek to represent constitutionally protected rights.

280.    Section 15-18-62 provides for the imprisonment for the failure to pay fines and costs in limited circumstances and only upon the finding of a willful nonpayment.[9]

---

[9]**Section 15-18-62**
 **Imprisonment for failure to pay fines and costs.**

In cases of willful nonpayment of the fine and costs, the defendant shall either be imprisoned in the county jail or, at the discretion of the court, sentenced to hard labor for the county as follows:

(1) If the fine and costs do not exceed two hundred fifty dollars ($250), no more than 10 days;

(2) If the fine and costs exceed two hundred fifty dollars ($250) but do not exceed five hundred dollars ($500), no more than 20 days;

(3) If the fine and costs exceed five hundred dollars ($500), but do not exceed one thousand dollars ($1,000), no more than 30 days; and

281.    Under JCS and Childersburg policies and practices, and through their joint and consistent action, "offenders" before the Childersburg Municipal Court such as the Plaintiffs and the Class they seek to represent are systematically imprisoned for nonpayment with no determination of willfulness and with no consideration of their indigency or ability to pay.

282.    Furthermore, once imprisoned, the requirements of time to be served under § 15-18-62 are ignored by the practice and policy of JCS and Childersburg.

283.    The result of this consistent systematic policy and practice of JCS and Childersburg is essentially a debtor's prison for fines and charges levied by JCS under a void contract with the various municipalities for which it works.

284.    Plaintiffs request the Court to enjoin the actions of JCS and Childersburg identified herein to prevent the continuation of these violations of statutory and constitutional prohibitions.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that the Court will take jurisdiction of this cause and upon the final hearing:

      a.    Certify this matter as a proper class action maintainable under Rule 23 of the Federal Rules of Civil Procedure;

      b.    Award the Plaintiffs such damages as this Court shall find the Plaintiffs have sustained, together with punitive, or exemplary damages as the law shall permit;

      c.    Enter an injunction and other declaratory relief which declares the

---

(4) For every additional one hundred dollars ($100) or fractional part thereof, 4 days.

JCS contract with municipalities such as Childersburg to be void and in violation of the statutory and constitutional limitations on municipalities;

d.      Enter an injunction and other declaratory relief which enjoins JCS and Childersburg from engaging in the violations of law set forth hereinabove;

e.      Enter an injunction and other declaratory relief which prohibits the JCS and Childersburg in the future from placing persons on probation for simple fines and declares that any current probation and fees for simple fines is void;

f.      Enter an injunction and other declaratory relief which prohibits JCS and Childersburg in the future from assessing fines in excess of $500 and extending probation periods beyond 24 months and declare that any previously assessed fines and probationary periods in excess of these limits to be void;

g.      Enter an injunction and other declaratory relief which prohibits the JCS and Childersburg in the future from imprisoning indigent persons for failure to pay fines and fees and ordering the release of any currently incarcerated indigent persons who were jailed for these reasons;

h.      Award to the Plaintiffs and Class members damages under 42 U.S.C. § 1983 equal to any amounts paid on fines and all fees levied by JCS

and Childersburg that are found unconstitutional and/or unlawful (along with interest), and the annulment of any remaining unpaid fines that are found unconstitutional and/or unlawful;

i.      Award to the Plaintiffs and Class the cost of this matter, including a reasonable attorneys' fee;

j.      Award to the Plaintiffs and the Class members such other, further and more general relief as the Court may deem appropriate under these circumstances including cost of these proceedings.

RESPECTFULLY SUBMITTED,


s/ *G. Daniel Evans*
G. Daniel Evans
ASB-1661-N76G
Attorney for the Plaintiffs
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970
Fax: (205) 870-7763
E-Mail: gdevans@evanslawpc.com

s/ *Alexandria Parrish*
Alexandria Parrish
ASB-2477-D66P
Attorney for the Plaintiffs
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970
Fax: (205) 870-7763
E-Mail: ap@evanslawpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 26th day of April, 2013, I electronically filed the foregoing Second Amended and Restated Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jay M. Ezelle, Esquire
STARNES DAVIS FLORIE LLP
Seventh Floor, 100 Brookwood Place
P.O. Box 598512
Birmingham, Alabama 35259-8512

Timothy P. Donahue, Esquire
A. Donald Scott, Jr., Esquire
DONAHUE & ASSOCIATES, LLC
1020 22nd Street South
Birmingham, Alabama 35205

_____ s/ G. Daniel Evans _____
_____ G. Daniel Evans

EXHIBIT A

### IN THE MUNICIPAL COURT OF THE CITY OF ARAB, AL

**CITY OF ARAB, AL**
**VS**

_____
**DEFENDANT**

### ORDER OF PROBATION

NOW ON THIS DAY, by virtue of the authority vested in me as a Municipal Court Judge pursuant to Section 12-14-13, Code of Alabama, 1975, as supplemented and amended, I hereby order the:

( X ) Imposition of sentence       (X) Payment of Fine /Restitution       (X) Payment of Court Costs
and that the  Defendant be placed on probation for _____ months or until _____ day of _____ 20 ____,
upon the following conditions.

(1)  You will make a full and truthful report to your Probation Officer as instructed.
(2)  You will pay Judicial Correction Services, Inc. $35.00 for each month on probation. You will pay a one time $10.00 file/digital photo set up charge.
(3)  You will not change your residence or employment without first notifying your Probation Officer.
(4)  You will avoid injurious or vicious habits and not violate any law(s) during said term of probation.
(5)  You will not use illegal intoxicants or alcohol; nor will you visit places where intoxicants, drugs, or other dangerous substances are sold, dispensed or used.  ( ) Applicable if checked.
(6)  You will work diligently at a lawful occupation, unless a full time student.
(7)  You will promptly and truthfully answer all inquiries directed to you by the Court Referral Officer, Court Clerk, or Probation Officer and comply with all instruction he/she may give you.

(8)  You will pay Fines & Costs totaling _____ at the rate of _____ per month.

| Case No. | Offense | Fine | Costs | Total | Jail Time (days) |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

(9)  You will make reparation or restitution for damage or loss caused by this offense to the victim in the following sum:

Victim_____       Sum $_____
(10) You will complete Jail Time as ordered and noted above.  Jail time is hereby ordered:
    (   ) To Serve    (   ) Suspended upon successful completion of probation.
(11) You will complete the following education course(s) and/or programs:
    ( ) Court Referral Program    ( ) Domestic Violence Awareness   ( ) Obtain GED
    ( ) Other: _____

(12) ( ) Return to court on:_____ to show completion of: ( ) Driving School ( ) CRO Program
                                                    ( ) Other _____

    (13) Other _____

The Court may at any time modify any conditions of your probation, change or extend probation, discharge defendant or revoke probation.  You are subject to arrest for violation of any condition imposed by this order, and your probation may be revoked accordingly.
Signed this the _____ day of _____, 20 _____.    _____
                                                HONORABLE ROBERT R. HEMBREE
                                                ARAB, AL  MUNICIPAL COURT JUDGE

_____
I have counsel or have waived my right to counsel for all proceedings to this date and have received a copy of this ORDER.
                                                JCS (256) 586-0010

Signed_____   Date _____   Probation Officer_____
DOB _____ SSN _____   Race/Sex _____ Hgt _____ Wgt _____
Home Address _____
Home Phone _____   _____
Employment/Sup'r _____   Work phone _____
Comments: _____   First Appointment _____

**1.10**

Last revision 5/23/2012

Garrett0217

EXHIBIT B



**Judicial Correction Services**
**121 West Valley Avenue**
**Homewood, AL 35209**
**PHONE: 205-942-9450,   FAX: 205-942-9454**

Your probation case has been approved for mail-in status. You are instructed to complete this form
**and mail it back to the above address** by the 10th of each month, beginning on
**5-1=09.** Failure to answer all questions honestly or failing to send forms by the
above-mentioned date could result in a warrant or future Violation of Probation.

Date: _____                    Probation Officer's Name: **Heather Thursby**

Your Name: **KINTE HOLLOWAY**            SS Number: ___-__-____

Home Address: **124 MANGROVE DR.**
          **ALABASTER, AL 35007**

Home Phone Number: **205-663-0921**      Work Phone Number: _____

Name of Employer: _____        Location: _____

Explain any employment changes since last report: _____
_____

Have you been arrested since last report? _____

If yes, when, where, and for what offense(s): _____

Have you completed the following Court Ordered Programs as instructed? _____
   Court Referral Program (AL)

If not, please explain: _____

Are you current on fines, fees, and restitution? _____

If not, why: _____

Any changes or problems since last report? _____
_____

I know to report back by (date): _____

I certify that the above statements are true:

Signature: _____

Enclose your monthly payment in the form of a money order payable to: **JCS**

**Write Clearly!**

**MAKE ENOUGH COPIES OF THIS FORM TO COMPLETE YOUR TERMS OF PROBATION**

4.22

Last revision 5/23/2012

JCS Resp to 30(b)(5) 0000086

Garrett0293

EXHIBIT C

## Daily Tasks

1. Sign on to Probation Tracker.
2. Open JCS email.
3. Sign in to Yahoo Instant Messenger.
4. Retrieve and return all phone messages.
5. Check the mail and post office boxes. Do all data entry from items received in the mail. (i.e. "O/M FTR letter returned undeliverable as address/unable to forward.") Next go to the "address/contact/employment" screen and click on the pencil next to the defendant's address and check the "bad address" box.
6. Print FTR list. Call defendants and advise them of missed appointment and schedule new appointments.
7. Run the appointment list for the day and see any appointments that report. If a defendant has not reported by the time scheduled, call the defendant and instruct him/her to report by the end of the day or they will be considered a no show. Also advise that after 3 no shows a court date will be set.
8. Check the "no appointments scheduled" report from the "Reports/Forms" screen. Call any defendants on the list and schedule him/her a new appointment date, unless the defendant has a status that reflects an automatic date, such as a hold, and enter the date appropriate.
9. At the end of each day, count all monies and balance monies to the "cash drawer". Complete a deposit slip for monies collected. Monies and paperwork should then be turned in to the office manager, appointed probation officer, or placed in the office safe.
10. Make a bank deposit that consists of the previous days monetary intake. (if the deposit cannot be made within 24 hours, an email stating that the deposit was unable to be made should be sent to the office manager/regional manager and Charlie Farrahar, cfarrahar@judicialservices.com)
11. Address any issues the court may have advised and ensure the matter is resolved in a timely manner. If a problem arises where the course of action is unclear, contact a supervisor immediately so that action can be taken to resolve the problem. Keeping courts happy is the primary goal!

6.1

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000162

## Cash Drawer

Each day the amount of monies collected by each probation officer is tallied automatically. The "cash drawer" is located on the menu on the left in probation tracker. Enter the number of bills for each monetary amount in the "# bills added to drawer" column next to the corresponding bill amount (i.e. if you have 5 $5 bills, enter 5 into the 5's row under the "# bills added to drawer column"). Once all bills and coins have been entered, choose "update". Probation tracker will automatically calculate the amount of monies in the cash drawer. The "Systems Total" block will be green if the amount collected and the amount shown by the system match. If the block is red, the amounts do not match. In the case of a red block, re-count the bills and coins in the drawer and ensure the amounts were entered correctly. If a mistake was made, changes can be made and the "update" button chosen and the "system total" box will again indicate red or green. If the box is again red, seek the advice of a supervisor.

PO: **Morris, Dee Dee** 3/18/2009

[ Update ]  (Acworth, GA Office) (Albertville, AL Office) (Alpharetta, GA Office) (Arab, AL Office) (Attalla, AL Office) (Bay County, FL Office) (Birmingham, AL Office) (Brewton, AL Office) (Childersburg, AL Office) (Citronelle, AL Office) (Columbiana, AL Office) (Daytona Beach, FL Office) (Dekalb, GA Office) (Douglasville, GA Office) (Enterprise, AL Office) (Evergreen, AL Office) (Fayette, GA Office) (Foley, AL Office) (Ft Payne, AL Office) (Fulton, GA Office) (Hartselle, AL Office) (Homewood, AL Office) (Hueytown, AL Office) (Monroeville, AL Office) (Osceola County, FL Office) (Ozark, AL Office) (Prattville, AL Office) (Russellville, AL Office) (Sandy Springs, GA Office) (Scottsboro, AL Office) (Selma, AL Office) (Talladega, AL Office) (Tallassee, AL Office) (Troup, GA Office) (Troy, AL Office) (Tuscaloosa, AL Office) (Wedowee, AL Office)
(Details) (Print Deposit Slip)

|  | +/- Change | | # Bills | Amount |
|---|---|---|---|---|
|  | # Bills Added to Drawer | Actual Bills in Drawer | | |
| Coins (Amount) | 0 | 0 | | 0.00 |
| 1's | 0 | 0 | | 0 |
| 5's | 0 | 0 | | 0 |
| 10's | 0 | 0 | | 0 |
| 20's | 0 | 0 | | 0 |
| 50's | 0 | 0 | | 0 |
| 100's | 0 | 0 | | 0 |
|  |  | Total Cash | | 0 |
| Money Orders | Name | Amount | | |
|  | MO Total | 0.00 | | |
|  | Drawer Total (MO+Cash) | 0.00 | | |
|  | System Total | 0.00 | | |
|  | Fines | 0.00 | | |
|  | Other | 0.00 | | |

Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000163

Garrett0295

## Deposit Policy

1. Deposit slips should be completed each day by each probation officer. The officer's initials should be written in the top right corner of the slip. Each money order collected should be specified individually on the slip, and the amount of bills vs. coins should be placed in the appropriate blanks. The slip should include a total on the bottom left of the slip.

2. All deposits per probation officer in each office should be sealed in a plastic bag with the probation officer's name, date monies were collected, and the amount of money inside the bag written in the appropriate spaces on the outside of the bag. The white copy of the deposit slip should be inside the bag along with the money.

3. All deposits should be turned in at the end of each day with a copy of the "cash drawer", the yellow copy of the deposit slip and the tab from the plastic bag with the date and amount of the deposit. The "cash drawer" print out, deposit slip and the deposit bag tab amounts should match.

4. Deposits must be taken to the bank by two JCS employees each day during business hours, when possible.

5. All paperwork from #2 should be stapled together and placed in the appropriate folder.

6. In the event a deposit is not handled as specified above, the office or regional manager must be notified before the close of business, preferably in person, with an email sent to confirm the message. The email should copy cfarrahar@judicialservices.com.



Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

**6.3**

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000164

EXHIBIT D

## Order to Withhold Adjudication

State of Alabama                                                                    Case Number
Jefferson County
Municipality of _____                                    _____

City of _____           vs.      _____
                                                        Defendant

It is HEREBY ORDERED, ADJUDGED AND DECREED, the Defendant having stipulated to a *prima facie case*, and after a full explanation of the defendant's rights, the defendant waives his/her right to a speedy trial, waives all rights to appeal, and upon motion of the City of _____, Alabama, *adjudication is withheld* for _____ month(s) _____ year(s) from the date hereof and shall thereafter be *nol prossed*, however, that the Defendant has complied with the following terms and conditions, to-wit:

( ) No arrest or convictions in any jurisdiction for D.U.I., any other serious traffic offense or any offense involving the use or abuse of drugs and/or alcohol.

( ) Completion of:
    ( ) Traffic safety program
    ( ) _____ Hours/_____ days of community service
    ( ) Substance abuse evaluation and recommended court referral program

( ) Other Court imposed conditions: _____

_____

_____

( ) Report to Judicial Correction Services monthly, as directed, for supervision of this order, and to pay Judicial Correction Services a $35 per month administrative fee.

ORDERED, ADJUDGED AND DECREED this                              _____
the _____ day of _____, 200____.                        Prosecutor's initials


_____
MUNICIPAL JUDGE, for the City of _____ Alabama        Officer's Initials


I acknowledge receipt of a copy of the foregoing Order.

_____                                   _____
Defendant                                              Date

Address: _____

Telephone: _____

Sample

**1.12**

Last revision 5/23/2012

Sample

EXHIBIT E



## REPORTING FOR PROBATION

You have been placed on probation with Judicial Correction Services, Inc.
You are to report to our offices at the address below at your scheduled appointment time. Failure to report as directed may result in a warrant being issued for your arrest.

**You are required by the Court to report as directed, NO EXCUSES!**

The following person will be your probation officer. All questions concerning your case should be directed to him/her. ***Do not contact the Municipal Court***, they will be unable to help you.

### Alicia Ford

You are to report to our offices on _____ at ___:___ PM AM

For your first appointment please bring no less than $_____, to be applied to your fines and fees. *Cash (exact change) or money order only.* **No checks**.

**Our Offices are located at:**

202 3rd Avenue East
Oneonta, AL  35121
(205) 274-7353

**\*\*Do Not Mail payments unless authorized by
your Probation Officer.**



**Office Hours** *(subject to change)*: Monday 9am – 3:30pm (closed 12pm – 1pm); Wednesday 9am – noon; Friday 9am – 3:30 pm (closed 12pm – 1pm)

1.18

JCS Resp to 30(b)(5) 0000024

Garrett0237

EXHIBIT F



March 26, 2009

SEAN DEES
3109 WENONAH ROAD
BIRMINGHAM, AL 35023

SEAN DEES:

This letter is to inform you that you have violated the terms and conditions of your probation.  There has been a court date set for you on the 15 day of April, 2009 in the City of Mountain Brook Court at 4:00PM .

**Note that a failure to appear in court on the above date will result in a warrant being issued for your arrest.**

Enclosed is a copy of a petition letter to be signed by the judge. If there are any questions or problems call 205-942-9450, **but keep in mind that the court date can not and will not be reset or rescheduled.**  Thank you!

To avoid a warrant being issued for your arrest you must report either on or before the above date with no less than $250!!

Sincerely,

Heather Thursby

Probation Officer
Judicial Correction Services
121 West Valley Avenue
Homewood, AL 35209



JCS ID:225736-566701-HTHURSBY

Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

4.39

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000106

Garrett0238

EXHIBIT G



November 28, 2007

STANLEY ARMITAGE
409 EDGECREST DRIVE APT #2
HOMEWOOD, AL 35209

STANLEY ARMITAGE:

This letter is to inform you that you have violated the terms and conditions of your probation.  There has been a court date set for you on the 18 day of December, 2007 in the City of Homewood Court at 6:00PM .

**Note that a failure to appear in court on the above date will result in a warrant being issued for your arrest.**

Enclosed is a copy of a petition letter to be signed by the judge. If there are any questions or problems call 205-942-9450, **but keep in mind that the court date can not and will not be reset or rescheduled.**  Thank you!

You owe the City of Homewood $305 in fines and Judicial Correction Services $105 in probation supervision fees. To rescind the scheduled hearing report to the probation office with $200 minium payment, otherwise, attend the scheduled hearing and be prepared to explain why you have failed to comply with the terms of your probation.

Sincerely,

Shanika Lawson

Probation Officer
Judicial Correction Services
121 West Valley Avenue
Homewood, AL 35209

*This is the personalized note that was typed in the "message" box.*

JCS TD:144680-164536-SLAWSON

**4.40**    Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000107

<div style="border:1px solid red;">EXHIBIT H</div>

**Warrants**

**\*\*This should be done on the day of court, not before.**

1. Choose "Reports/Forms" from the menu to the left.
2. Choose "Warrant For Arrest" from the "Court Specific" section of the Forms box.

## REPORTS

| Case Management | Financial |
|---|---|
| ✳ Case Activity Totals | ⇨ Financial Activity by Court by Probationer |
| ✴ Status Changes | ✴ Financial Activity by Office |
| ✴ Case Load by PO | ✴ Financial Activity by Court |
| ✴ Case Load by Judge | ✴ Financial Activity by Day |
| ✴ Expiration Listing | ✴ Financial Activity by PO |
| ✴ COP Expiring Listing | ✴ Financial Activity by PO – Revised (NEW) |
| ✴ Sentence Dates | ✴ Financial Activity by Received By |
| ✴ Cases by Charge | ✴ Financial Activity by Other Category |
| ✴ No Financial Activity 40+ Video | ✴ Write Check |
| ✴ No Activity | ✴ Court Financial EMail |
| ✴ Failure to Report Video | ✴ Court Financials |
| ✴ Appointments Scheduled Video | ✴ Court Financials Restitution |
| ✴ No Appointments Scheduled | ✴ Todays Payments |
| ✴ Hearings Scheduled | |
| ✴ Probationers Started | |
| ✴ Jail Incarcerations | |
| ✴ Court Field Report | |
| ✴ Case File Report | |
| ✴ FTR Hit Report | |
| ✴ Termed Cases Report | |
| ✴ GA/FL Qtr Rpt | |
| ✴ Where They Live | |

## FORMS

| All Offices | Court Specific |
|---|---|
| ✴ Administration Forms | ✴ VOP |
| ✴ Authorization to Release Information | ✴ Petition For Revocation Letter |
| ✴ Community Service Forms | ✴ Revocation Letter |
| ✴ Company Forms | ✴ Order of Modification |
| ✴ Court Hearings Forms | ✴ Tolling Order Affidavit |
| ✴ Logs | ✴ Successful Termination |
| ✴ Mail-In Paperwork | ✴ Successful Termination PT |
| ✴ Office Tools | ✴ Unsuccessful Termination |
| ✴ Probationer Correspondence | ✴ Warrant Dismissal |
| ✴ PTI Recommendation Letter | ✴ Warrant For Arrest ⇐ |
| ✴ Victim Correspondence | ✴ JOBS Letter |
| | ✴ Termination Modified |
| | ✴ Mail-In Violation |

## LISTS

| | |
|---|---|
| ✴ Office List | ✴ Court List |
| | ✴ COP Referrals |

3. Read the information in the "Warrant for Arrest" box and make any corrections needed.
4. Enter the Hearing date.
5. Choose "generate form".

Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

4.53

Garrett0250

HOLLOWAY, KINTE ID: 128905 Started: 4/13/2009 Expires: 1/28/2011 Current Date 4/15/2009

## Warrant for Arrest

The defendant violated CONDITION failed to report as directed on 6/3/2008, 6/6/2008, 7/25/2008, 8/5/2008, 9/8/2008, 8/13/2008, or since. In addition, the defendant has a fine balance of $100.00 and a court cost balance of $205.00, as well as outstanding fees of $245.00 for a total due of $550.00

Case Nums MC07-1165,

Hearing Date

Generate Form

4.54

Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000121

Garrett0251

# Warrant for Arrest of Probationer
# City of Mountain Brook Court

City of Mountain Brook Court
vs.
**KINTE HOLLOWAY**

Offense DV 3rd Degree

Case # MC07-1165,

Warrant # _____

To any Sheriff, Deputy Sheriff, Constable, Coroner, Marshall or other Law Enforcement Officer of Said State
GREETINGS:

Whereas, on the 26th day of June, 2007 the City of Mountain Brook Court sentenced
**KINTE HOLLOWAY** of the following address

**124 MANGROVE DR.
ALABASTER, AL 35007**

to a sentence of probation, and;

Whereas, said Defendant is charged with violating his/her probation, in willful disregard of a Court Order,
specifically as follows:

The defendant violated CONDITION failed to report as directed on 6/3/2008, 6/6/2008, 7/25/2008, 8/5/2008,
9/8/2008, 8/13/2008, or since. In addition, the defendant has a fine balance of $100.00 and a court cost balance of
$205.00, as well as outstanding fees of $245.00 for a total due of $550.00

| DOB: _____ | Height: ___ | Weight: ___ | Hair Color: ___ |
| SSN: ___-__-____ | Sex: _ | Race: ___ | Eye Color: ___ |

You are therefore commanded in the name of the City of Mountain Brook Court to arrest said defendant and
to commit him/her to the common jail of said City, and safely keep him/her until he/she may be returned to this
Court, there to answer a charge of violating the Conditions of Probation as specified above. However, the
defendant may purge himself/herself from custody upon remittance of the 'Total Due' as shown above plus any
applicable jail time, plus any applicable jail cost due to the Sheriff of said county or Chief of Police of said city.
Pursuant to Alabama Code Section 15-22-54

Issued this 15th day of April, 2009.

_____
Judge Turner Williams

_____
Probation Officer

**CERTIFICATE OF EXECUTION**

I executed this warrant by arresting the defendant:
**KINTE HOLLOWAY**
on this date _____ at _____ o'clock ___ a.m. ___ p.m., and as
directed, took him immediately before the Court.

Remarks _____

_____

CLEARED ___ ON _____ BY _____

_____         _____
Date                                              Officer's Signature

JCS ID:139905-524531-AERWIN

Information contained in this document is confidential and not for distribution outside of Judicial Correction
Services.

4.55

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000122

EXHIBIT I

4. Make sure the defendant's physical address is included, complete with zip code. (No po boxes)
5. Make sure to indicate if the defendant had a prior revocation hearing. Check the petition as the conditions may have been altered at the hearing.
6. If fines were converted to community service, make sure to enter the information in probation tracker so it will print out on the tolling order.
7. Make sure the "sentence imposed" date on the tolling order is the same as the date the defendant was physically in court. Verify this date on the court's sentence sheet.
8. Make sure the warrant and tolling order are signed.
Note: Errors in warrants will result in the warrant being returned for corrections, which wastes time and money. Take the extra time on the front end so that time isn't wasted on the back end.

Notes should be made in the appointment notes each time a step of the warrant process is made. Also enter notes as to the whereabouts of the warrant so that it is not lost in the shuffle.

**Warrant Dismissal**
This form is required to have a warrant dismissed. In the event a warrant should be lifted, generate this form and state why the warrant is being lifted (i.e. the defendant appeared in court for a revocation hearing, the defendant has come into compliance with the terms of probation, the defendant has been incarcerated for _____ length of time, etc.) **Warrant dismissals are to be created, signed by a Judge, filed with the court clerk within 48 business hours.** This is extremely important because until the warrant dismissal is filed with the clerk and distributed to the appropriate agencies, the defendant can still be picked up on the warrant, causing a huge potential liability for JCS.

If a defendant is in the office when the determination is made to lift the warrant, give the defendant a copy of the dismissal so that if he/she is stopped by the authorities before the dismissal is complete they will have proof of the dismissal. Make sure to stamp the defendant's copy with the "copy" stamp.

In the event the warrant dismissal is the last action taken on a defendant's case, it is possible to have the case closed within the warrant dismissal. Ask for the case to be closed and specify how it is to be closed, i.e. administratively (terminated modified) or successfully.

If it is determined that a warrant is to be dismissed, be aware that any tolled time in the case instantly goes away. Any case that should remain opened upon the dismissal of a warrant with the tolled time preserved should be reinstated with the approval of the Judge at a revocation hearing.

Information contained in this document is confidential and not for distribution outside of Judicial Correction Services.

4.63

Last Revision May 23, 2012
JCS Resp to 30(b)(5) 0000130

EXHIBIT J

## Case Management Reports

**FTR (Fail to Report):** This report shows the defendant's who failed to report for their last scheduled appointment. This report should be run everyday and defendant's called to set another appointment. These numbers should always be kept under 10%.

**No Financial Activity 40+:** This report lists defendant's who have not made a payment for 40+ days. This report is to help P.O.'s stay on top of defendants, so they do not get too far behind on their scheduled payments. This report should be run twice per month, on the 1st and 15th.

**Expiration Listing:** This report tells which defendant's cases will be expiring and when. This report is to help a P.O. keep on top of their defendant's so their case does not expire without meeting the court ordered conditions. This report should be run monthly, on the 1st of each month (using a calendar year).

**No Appointment Scheduled:** This report is used to help P.O.'s who might have accidentally forgotten to place a defendant's next appointment in the scheduled appointment slot. This report should be run daily, no less than weekly.

**Jail Incarcerations:** This report is used to check jail statuses and should be run monthly. ALL jail/jail hold, medical holds and mail in's should be done once a month on the 15th/20th.

4.2

EXHIBIT K

**CHILDERSBURG POLICE DEPARTMENT**
CHILDERBURG, ALABAMA 35044

7226

RECEIVED OF ~Timothy W. Fugatt~   2-26-   20 12

~Four Hundred dollars~ 00/100   $ 400.00   DOLLARS

FOR

Amt. of Acct.  $

Amount Paid  $ 400.00

Balance Due  $ 457.00

CHILDERSBURG POLICE DEPARTMENT

By ~Bill Doug~ 312

---

**CHILDERSBURG POLICE DEPARTMENT**
CHILDERBURG, ALABAMA 35044

7227

RECEIVED OF ~Kristy G. Fugatt~   2-26-   20 12

~Five Hundred dollars~ 00/100   $ 500.00   DOLLARS

FOR

Amt. of Acct.  $

Amount Paid  $ 500.00

Balance Due  $ 505.00

CHILDERSBURG POLICE DEPARTMENT

By ~Bill Doug~ 312



**JUDICIAL CORRECTION SERVICES, INC.**

105 Coosa Pines Dr
Childersburg, AL 35044
Phone: 256-378-0965;  Fax: 888-377-5908
Probation Officer: Sheree Fomby
Office Manager: Lisha Kidd

# RECEIPT

KRISTY FUGATT

Probation Start Date: 1/13/2011;  Probation End Date: 1/13/2013

## City of Childersburg

### RECORD OF COURT ASSESSMENTS AND PAYMENTS

|  | Insurance | Fines | Restitution | Court Costs | Warrant Fee | Other | TOTALS |
|---|---|---|---|---|---|---|---|
| Assessed | 0.00 | 396.00 | 126.00 | 0.00 | 0.00 | 10.00 | 532.00 |
| Amount Paid | 0.00 | 250.00 | 0.00 | 0.00 | 0.00 | 10.00 | 260.00 |
| Balance Due | 0.00 | 146.00 | 126.00 | 0.00 | 0.00 | 0.00 | 272.00 |

## PAYMENT DETAILS

| Date | Payment Category | Amount Received | Type | Received By | Notes: |
|---|---|---|---|---|---|
| 7/10/2012 | Fine | 25.00 | Cash | Sheree Fomby | CASH |
| 7/10/2012 | Probation Fee | 25.00 | Cash | Sheree Fomby | CASH |
|  | **TOTAL:** | 50.00 |  |  |  |

Fees in arrears = $240.00
Pay off not including Probation fees: $272.00
Monthly Probation Fees: $45

Payoff balance as of 7/13/2012= $512

KRISTY FUGATT ID #: 425271; Case Numbers: TR10-1053, TR10-1054

**The assessments on this receipt are based on your court order at the time and date, shown below, when this receipt was issued.  The court reserves the right to change these assessments at any time.**

## PRINT DATE & TIME: Jul 13 2012  9:23AM

JCS ID:425271-3119597-SFOMBY



**JUDICIAL CORRECTION SERVICES, INC.**

105 Coosa Pines Dr
Childersburg, AL 35044
Phone: 256-378-0965;  Fax: 888-377-5908
Probation Officer: Sheree Fomby
Office Manager: Lisha Kidd

## RECEIPT

TIMOTHY W. FUGATT

Probation Start Date: 5/1/2012;  Probation End Date: 5/1/2014

# City of Childersburg

## RECORD OF COURT ASSESSMENTS AND PAYMENTS

|  | Insurance | Fines | Resti-tution | Court Costs | Warrant Fee | Other | TOTALS |
|---|---|---|---|---|---|---|---|
| Assessed | 0.00 | 248.00 | 234.00 | 0.00 | 0.00 | 10.00 | 492.00 |
| Amount Paid | 0.00 | 248.00 | 0.00 | 0.00 | 0.00 | 10.00 | 258.00 |
| Balance Due | 0.00 | 0.00 | 234.00 | 0.00 | 0.00 | 0.00 | 234.00 |

## PAYMENT  DETAILS

| Date | Payment Category | Amount Received | Type | Received By | Notes: |
|---|---|---|---|---|---|
| 7/10/2012 | Fine | 23.00 | Cash | Sheree Fomby | CASH |
| 7/10/2012 | Probation Fee | 27.00 | Cash | Sheree Fomby | CASH |
|  | **TOTAL:** | 50.00 |  |  |  |

Fees in arrears = $193.00
Pay off not including Probation fees: $234.00
Monthly Probation Fees: $45

Payoff as of 7/13/2012 = $427

TIMOTHY W. FUGATT ID #: 425275; Case Numbers: TR10-1113
**The assessments on this receipt are based on your court order at the time and date, shown below, when
this receipt was issued.  The court reserves the right to change these assessments at any time.**

## PRINT DATE & TIME: Jul 13 2012  8:45AM

JCS ID:425275-3119187-SFOMBY

\



EXHIBIT L

## JUDICIAL CORRECTION SERVICES, INC.

105 Coosa Pines Dr
Childersburg, AL 35044
Phone: 256-378-0965; Fax: 888-377-5908
Probation Officer: Sheree Fomby
Office Manager: Lisha Kidd

# RECEIPT

DEUANTE JEWS

Probation Start Date: 3/9/2012;  Probation End Date: 3/9/2014

## City of Childersburg

### RECORD OF COURT ASSESSMENTS AND PAYMENTS

| | Insurance | Fines | Resti- tution | Court Costs | Warrant Fee | Other | TOTALS |
|---|---|---|---|---|---|---|---|
| Assessed | 0.00 | 166.00 | 317.00 | 0.00 | 0.00 | 10.00 | 493.00 |
| Amount Paid | 0.00 | 0.00 | 140.00 | 0.00 | 0.00 | 10.00 | 150.00 |
| Balance Due | 0.00 | 166.00 | 177.00 | 0.00 | 0.00 | 0.00 | 343.00 |

### PAYMENT DETAILS

| Date | Payment Category | Amount Received | Type | Received By | Notes: |
|---|---|---|---|---|---|
| 5/25/2012 | Restitution | 15.00 | Cash | Sheree Fomby | CASH |
| 5/25/2012 | Probation Fee | 10.00 | Cash | Sheree Fomby | CASH |
| | TOTAL: | 25.00 | | | |

## Your next appointment is on Wednesday, May 30 2012 at 3:00PM.

Fees in arrears = $295.00
Pay off not including Probation fees: $343.00
Monthly Probation Fees: $45
Court Money Due from other Probations: Fines: $1807;

DEUANTE JEWS ID #: 222999; Case Numbers: MC08-394
**The assessments on this receipt are based on your court order at the time and date, shown below, when
this receipt was issued.  The court reserves the right to change these assessments at any time.**
## PRINT DATE & TIME: May 25 2012 10:56AM



EXHIBIT M



## JUDICIAL CORRECTION SERVICES, INC.

105 Coosa Pines Dr
Childersburg, AL 35044
Phone: 256-378-0965;  Fax: 888-377-5908
Probation Officer: Sheree Fomby
Office Manager: Lisha Kidd

## RECEIPT

TIMOTHY W. FUGATT

Probation Start Date: 5/1/2012;  Probation End Date: 5/1/2014

# City of Childersburg

## RECORD OF COURT ASSESSMENTS AND PAYMENTS

|  | Insurance | Fines | Resti-tution | Court Costs | Warrant Fee | Other | TOTALS |
|---|---|---|---|---|---|---|---|
| Assessed | 0.00 | 248.00 | 234.00 | 0.00 | 0.00 | 10.00 | 492.00 |
| Amount Paid | 0.00 | 248.00 | 0.00 | 0.00 | 0.00 | 10.00 | 258.00 |
| Balance Due | 0.00 | 0.00 | 234.00 | 0.00 | 0.00 | 0.00 | 234.00 |

## PAYMENT  DETAILS

| Date | Payment Category | Amount Received | Type | Received By | Notes: |
|---|---|---|---|---|---|
| 7/10/2012 | Fine | 23.00 | Cash | Sheree Fomby | CASH |
| 7/10/2012 | Probation Fee | 27.00 | Cash | Sheree Fomby | CASH |
|  | **TOTAL:** | 50.00 |  |  |  |

Fees in arrears = $193.00
Pay off not including Probation fees: $234.00
Monthly Probation Fees: $45

Payoff as of 7/13/2012 = $427

TIMOTHY W. FUGATT ID #: 425275; Case Numbers: TR10-1113

The assessments on this receipt are based on your court order at the time and date, shown below, when this receipt was issued.  The court reserves the right to change these assessments at any time.

## PRINT DATE & TIME: Jul 13 2012  8:45AM

JCS ID:425275-3119187-SFOMBY

### Judicial Correction Services



Physical Address:
105 Coosa Pines Dr
Childersburg, AL 35044
256-378-0965

Mailing Address:
105 Coosa Pines Dr
Childersburg, AL 35044

August 14, 2012

Dear KRISTY FUGATT,

You failed to report to me on 08/13/2012 at 3:00PM.  Another appointment has been set for you on 08/20/2012 at 3:00PM.  If you fail to report on this date you may be in violation of your probation which could result in a warrant for your arrest or a hearing being set by the court.  Fines due are $272.00 and fees are $240.00.

If you have any questions or concerns, please do not hesitate to contact this office.

Respectfully,

Sheree Fomby
Probation Officer
On Behalf of City of Childersburg

PL0004