## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GINA KAY RAY, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:12-CV-02819-RDP** |
| | } | |
| **JUDICIAL  CORRECTIONS  SERVICES,** | } | |
| **INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This case is before the court on Non-Party Larry Ward's Motion to Quash Subpoena and Motion for Protective Order (Doc. # 97), filed May 21, 2014.  The motion presents interesting questions related to the proper application and scope of judicial immunity which should be afforded a former part-time municipal judge.  As discussed in more detail below, this court's Order (Doc. # 119), entered August 22, 2014, narrowed the issues now before the court.  As a threshold matter, Plaintiffs now argue that judicial immunity does not protect Ward at all where "prospective collateral relief" is sought.  (Doc. # 120 at 1).  If judicial immunity does protect Ward, however, the court must determine to what extent discovery may be sought from Ward as to acts and omissions taken in his nonjudicial, administrative capacity.

For the reasons outlined below, the court's August 22, 2014 Order (Doc. # 119) is due to be affirmed, and Ward's Motion (Doc. # 97) is due to be granted in part and denied in part.

## I.    Procedural History

On April 26, 2013, Plaintiffs Gina Kay Ray, Kalus K. Johnson, and Deuante T. Jews (collectively "Plaintiffs") filed their Second Amended and Restated Complaint (Doc. # 50), on

behalf of themselves and those similarly situated, against Defendants Judicial Collection Services ("JCS") and the City of Childersburg ("Childersburg"). Plaintiffs allege various constitutional claims under 42 U.S.C. § 1983 arising out of the contractual relationship between JCS and Childersburg for probation and fee collection services. Plaintiffs seek declaratory and injunctive relief as well as money damages. (Doc. # 50 at 61-63).

On May 14, 2014, Plaintiffs served a subpoena for testimony and production of documents on nonparty Larry Ward ("Ward"). (Doc. # 97, Ex. A-1). Plaintiffs sought various documents from Ward, including (1) any documents relating to JCS whatsoever; (2) procedural manuals or other documents concerning any of the municipal courts at which Ward served; (3) copies of K1 and W-2 forms showing income earned by Ward as a municipal court judge for any municipality in Alabama for the last five years; (4) awards received by Ward for service as a municipal judge; (5) contracts between Ward and any of the municipalities he served; (6) documents showing remuneration from bond activity in any of the municipalities Ward served; (7) documents showing rating adjustments on bonds for any of the municipalities Ward served; and (8) awards received by Ward for participation in bond issues in Alabama for the past five years. (*Id.*). Ward filed a motion opposing the discovery request and asserts that he is protected by judicial immunity. (Doc. # 97).

After the issue was briefed (Docs. # 101 & 105) and the court heard oral argument on the matter, the court entered an Order (Doc. # 119) granting in part and denying in part Ward's Motion (Doc. # 97). The court granted the motion insofar as it sought to limit, but not entirely preclude, Ward's deposition to questions involving his "nonjudicial involvement in negotiating, recommending, and executing the contract for services" between JCS and Childersburg.

To aid the court and the parties in determining the extent of the permissible discovery, the Order (Doc. # 119) also permitted the parties to file supplemental briefs regarding: (1) the distinction between Ward's judicial and administrative responsibilities during his tenure as municipal court judge for Childersburg, and (2) the relevance, if any, of *Pulliam v. Allen*, 466 U.S. 522 (1984), to the issue.  The issues now before the court have been fully briefed.  (Docs. # 120 & 121).

## II.   Facts

Ward is a former part-time municipal court judge for Childersburg and various other municipalities.  (Docs. # 101 at 1-2).  Otherwise, Ward's full-time employment over the relevant time-period is as a municipal bond salesman with Morgan Keegan & Company, now known as Raymond James Financial.  (Docs. # 101 at 1-2).

Under a contract between JCS and Childersburg, JCS provided various probation and fee collecting services to Childersburg.  (*See* Doc. # 50 at ¶¶ 12, 18-19).  Plaintiffs allege that when a probationer was unable to pay a fine, the probationer was assigned to JCS for what Plaintiffs deem "the administrative action of collections."  (Doc. # 120 at 8).  Plaintiffs offer testimony from Childersburg's mayor that suggests JCS was hired by Childersburg upon the recommendation of Ward and a city council member.  (*Id.* at 7).

The record is unclear regarding the full extent of Ward's involvement with JCS.  Childersburg was responsible for the hiring of Ward as its municipal court judge.  (Doc. # 50 at ¶ 19).  Plaintiffs allege that

> [Ward] signed separate blank JCS 'probation' order forms which were later filled out by JCS employees. Many of these were filled in to retroactively include fines levied years earlier.  These 'orders are not filed in the court, are not kept by Childersburg and ultimately are shredded after being scanned to the JCS Probation Tracker system.

3

(Doc. # 120 at 8).  Furthermore, JCS may have sent out all notices of hearings and violations of probation establishing hearing dates.  (*Id.*).  Plaintiffs argue that these facts, taken together, establish Ward is beyond the protection of judicial immunity and should be subjected to discovery.

## III.   Discussion

Ward attempts to quash Plaintiffs' outstanding subpoena claiming the protection of judicial immunity.  (Doc. # 97).  Although Ward is a nonparty, "[t]he policy behind immunity does not merely extend to suits, it also extends to protection against discovery."  *In re Lickman*, 304 B.R. 897, 903 (Bankr. M.D. Fla. 2004).  Accordingly, "[u]ntil [the] threshold immunity question is resolved, discovery should not be allowed."  *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982).[1]

Ward's Motion requires this court to address several issues: (A) whether judicial immunity protects Ward; (B) if immunity does provide Ward with protection, to what extent does it shield him from discovery; and (C) to what extent, if any, has Ward waived his immunity. For the reasons outlined below, the court finds judicial immunity shields Ward with one exception:  he is subject to discovery related to his nonjudicial involvement in negotiating, recommending, and executing the contract for services between JCS and Childersburg.[2]

---

[1] *See also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("*Harlow* emphasizes that even such pretrial matters as discovery are to be avoided if possible, as '[i]nquiries of this kind can be peculiarly disruptive of effective government.'" (quoting *Harlow*, 457 U.S. at 817)); *Williamson v. U.S. Dep't of Agriculture*, 815 F.2d 368, 382-83 (5th Cir. 1987) ("[T]he Supreme Court noted that the protection afforded government officials by the doctrines of absolute and qualified immunity would be greatly depreciated if it did not include protection from discovery. . . . [C]lose control of discovery is essential to the preservation of meaningful official immunity."); *Lickman*, 304 B.R. at 903; *LeClerc v. Webb*, 2003 WL 21026709 (E.D. La. May 2, 2003) (court granted stay of discovery pending determination of immunity).

[2] Because the court concludes that Ward is entitled to judicial immunity as to certain of his judicial actions, the court need not address Ward's argument under Rule 45(c).  Furthermore, Plaintiffs' request is not overly broad, unduly burdensome, cumulative, or unlikely to lead to the discovery of admissible evidence with regard to Ward's nonjudicial role in negotiating, recommending, and executing the contract between JCS and Childersburg.

4

**A.     Judicial Immunity Provides Some Protection to Ward in This Case, Notwithstanding Plaintiffs' Claims Against Defendants for Injunctive and Declaratory Relief.**

Plaintiffs argue judges only have immunity from damage claims for acts or omissions taken in their judicial capacity, but *no judicial immunity* exists in cases claiming prospective collateral relief.  (Doc. # 120 at 1-2).[3]  As such, Plaintiffs suggest that "[b]ecause Judge Ward would have no judicial immunity from those forms of prospective declaratory or injunctive relief *even if he had been sued for such relief personally*, he also has no such immunity from being deposed as a witness on the claims for such prospective relief against Childersburg and JCS."  (*Id.* at 2) (emphasis added).  For the reasons outlined below, Plaintiffs' argument is off the mark.

**1.     Plaintiffs' Premise, That Judicial Immunity Is Inapplicable in Cases Seeking Prospective Collateral Relief, Rests on Questionable Precedent.**

The premise of Plaintiffs' argument relies on the validity of *Pulliam v. Allen*, 466 U.S. 522 (1984), which held that judicial immunity does not bar prospective injunctive relief against judicial officers for acts or omissions taken in a judicial capacity.  Congress, however, responded to *Pulliam* by amending 42 U.S.C. § 1983 in an attempt to abrogate *Pulliam*'s holding regarding the scope of judicial immunity.  After the Federal Courts Improvement Act of 1996 ("FCIA") amendments, § 1983 now reads in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, *suit in equity*, or other proper proceeding for redress, except that *in any action brought against a judicial officer for an act or omission*

---

[3] "The distinction between 'judicial' and 'administrative' acts does not apply to claims for prospective relief rather than damages.  Not even acts or omissions performed in a judicial capacity are immune from prospective declaratory relief and certain forms of prospective injunctive relief under *Pulliam v. Allen*, and the subsequent amendment of § 1983 . . . .  For this reason, the initial question before the Court must be whether judicial immunity exists for the type of prospective relief pled in the *Amended Complaint*."  (Doc. # 120 at 1) (citations omitted).

> *taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.*

42 U.S.C. § 1983 (emphasis added); *see also* Pub. L. No. 104-317, § 309(c), 110 Stat. 3847 (codified at 42 U.S.C. § 1983).[4]

It cannot be seriously disputed that, after the FCIA, judicial immunity typically bars claims for prospective injunctive relief against judicial officials acting in their judicial capacity. Only when a declaratory decree is violated or declaratory relief is unavailable would plaintiffs have an end-run around judicial immunity — and neither is true here.  This abrogation of *Pulliam* has been widely recognized.  *See Guerin v. Higgins*, 8 F. App'x 31, 32 (2d Cir. 2001); *Haas v. Wisconsin*, 109 F. App'x 107, 114 (7th Cir. 2004); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (per curiam) (discussing amendment's purpose and effect); *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1335 (M.D. Ala. 2004); *Nollet v. Justices of Trial Court of Com. of Mass.*, 83 F. Supp. 2d 204, 210 (D. Mass.), *aff'd*, 248 F.3d 1127 (1st Cir. 2000); *Kampfer v. Scullin*, 989 F. Supp. 194, 201-02 (N.D.N.Y. 1997); *see also Esensoy v. McMillan*, No. 06-12580, 2007 WL 257342, at *1 n.5 (11th Cir. Jan. 31, 2007).[5]

Plaintiffs neither allege that Defendants have violated a declaratory decree nor that declaratory relief is unavailable.  On the contrary, the very nature of their claims, which seek both declaratory and injunctive relief, indicates that declaratory relief is available. *See, e.g.*,

---

[4] Defendants also note that *Pulliam*'s holding was further abrogated by the FCIA to the extent that it permitted plaintiffs to obtain attorneys' fees from judicial officers who are enjoined under its exemption to judicial immunity.  Pub. L. 104-317, § 309(a), 110 Stat. 3847 ("Notwithstanding any other provision of law, no judicial officer shall be held liable for any costs, including attorney's fees, in any action brought against such officer for an act or omission taken in such officer's judicial capacity, unless such action was clearly in excess of such officer's jurisdiction.")).

[5] For example, in *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1335 (M.D. Ala. 2004), Alabama voters brought suit against the members of Alabama's Court of the Judiciary for certain alleged constitutional violations. *Id.* at 1318-21.  The court stated, "Congress amended Section 1983 to reverse *Pulliam*, and restore judicial immunity . . . ." *Id.* at 1323.  The district court held that judicial immunity protected a judicial officer from a suit claiming prospective injunctive relief. *Id.* at 1322-23.

*Kuhn*, 304 *Id.* at 1335 n.11 ("Plaintiffs seem to acknowledge the availability of declaratory relief by seeking it in this very action."); *see also Nollet*, 83 F. Supp. 2d at 210; *Finn v. County of Albany,* No. 98–CV–844, 1999 WL 291820, at *5 (N.D.N.Y. May 5, 1999). Accordingly, judicial immunity is available for Plaintiffs claims which seek injunctive relief.

Notwithstanding § 1983's clarity regarding injunctive relief, that statute fails to address the availability of prospective declaratory relief to defeat judicial immunity. Plaintiffs contend the FCIA amendment to § 1983 still permits suits against judges for such declaratory relief. (Doc. # 120 at 4).[6] Plaintiffs argue that the amendments merely created a "procedural condition precedent to an injunction" without otherwise broadening the coverage of judicial immunity. (Doc. # 120 at 3). Plaintiffs' arguments are not wholly lacking in support. Courts have gone both ways on the issue.

The Eleventh Circuit has provided some guidance. Our circuit has taught us that, in *Pulliam*,

> the Supreme Court concluded that judicial immunity is not a bar to demands for injunctive relief against state judges. Congress abrogated *Pulliam*, however, by passing the [FCIA], which amended § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Because Appellant specifically requests declarative relief, judicial immunity protects the Defendants only from Appellant's request for injunctive relief. *But § 1983 does not explicitly bar Appellant's request for declaratory relief.*

*Esensoy*, 2007 WL 257342, at *1 n.5 (11th Cir. Jan. 31, 2007) (emphasis added). On the one hand, *Esensoy* supports Plaintiffs' argument. In that decision, the Eleventh Circuit seems to have permitted an exemption from judicial immunity where plaintiffs requested declaratory, and not

_____

[6] Plaintiffs suggest the Eleventh Circuit approved this argument in *Bolin v. Story*. 225 F.3d at 1242. In *Bolin*, however, the court addressed *Bivens* claims against federal judicial officers, not § 1983 claims.

merely, injunctive relief against a judge.[7]  On the other hand, *Esensoy* is an unpublished opinion and even it acknowledges that Congress abrogated *Pulliam*, at least in part, by passing the FCIA. Moreover, the guidance as to *Pulliam*'s validity is also dicta — and, to be sure, dicta buried in a footnote.[8]  *Id.* at 2.

There is really no question that in passing the FCIA, Congress was responding to *Pulliam*.  The *Pulliam* decision only exempted prospective injunctive relief from the application of judicial immunity.  *See* 466 U.S. at 527-28.  Addressing the issue in *Esensoy*, the Eleventh Circuit noted that "§ 1983 does not explicitly bar Appellant's request for declaratory relief." 2007 WL 257342, at *1 n.5.  But one might argue Congress did not feel the need to explicitly bar claims for declaratory relief because no such exemption from judicial immunity had ever previously been recognized.  Plaintiffs' response to that point is that "[w]e never had a rule of absolute judicial immunity from prospective relief" (Doc. # 120 at 4), and therefore, when Congress amended § 1983, it did so against a common law backdrop which permitted declaratory relief against officers in their judicial capacity.  No authority supports this argument, and the court concludes that it is far wide of the mark.  Other courts have wrestled with the issue and have held that *Pulliam* has been effectively overruled.  *See, e.g.*, *Guerin*, 8 F. App'x at 32 ("We also reject plaintiff's contention that he is entitled to declaratory relief based on *Pulliam v. Allen*, . . . given that the *Pulliam* holding with respect to such relief has been effectively overruled by Congress.").

---

[7] Here, as in *Esensoy*, Plaintiffs explicitly seek both injunctive and declaratory relief.  (Doc. # 50 at 57-63 (Count Eleven)).  Unlike *Esensoy*, however, Plaintiffs also seek an award of "such damages as this Court shall find the Plaintiffs have sustained, together with punitive, or exemplary damages as the law shall permit."  (*Id.* at 61).

[8] The circuit court ultimately dismissed appellant's § 1983 claim on other grounds, notwithstanding the fact that the defendant in that case was not awarded immunity.  *Esensoy*, 2007 WL 257342, at *2.

Although *Pulliam* has been abrogated by the FCIA -- that is, it has been abrogated to the extent that a plaintiff seeks prospective injunctive relief -- it is unnecessary for this court to make any finding with respect to Plaintiffs' assertion that the FCIA still permits suits against judges for prospective declaratory relief.  Indeed, for the reasons stated below, even if *Pulliam* exempted claims for prospective declaratory relief from the bar of judicial immunity, this court would find *Pulliam* inapplicable in the instant case.[9]

### 2. *Pulliam* Would Not Apply in Because Plaintiff Seeks No Relief from Ward.

Even if the court were to accept Plaintiffs' premise that *Pulliam* has not been abrogated to the extent that it permits prospective declaratory relief, Plaintiffs' argument still necessarily fails.  First, by its plain language, *Pulliam* does not control the instant case.  Specifically, *Pulliam* held that "[j]udicial immunity is not a bar to *prospective injunctive relief against a judicial officer* acting in her judicial capacity." *Pulliam*, 466 U.S. at 1981.  Here, Plaintiff seeks injunctive, declaratory, and monetary relief (both prospectively and retrospectively) against JCS and Childersburg.  Those parties are not judicial officers and at no point in this case have Plaintiffs sought any relief against Ward.[10]  Therefore, regardless of *Pulliam's* continued viability, this case is simply not the type contemplated by the plain language of that decision's

---

[9] Perhaps because it would be an exceedingly weak argument, Plaintiffs do not suggest that the amendments to § 1983, which create the "condition precedent to injunctive relief," are inapplicable in this instance because this case does not involve an "action brought *against a judicial officer for an act or omission taken in such officer's judicial capacity*."  42 U.S.C. § 1983 (emphasis added).  This case involves an action brought against Defendants JCS and Childersburg only.  Therefore, nothing in the text of § 1983 itself requires violation of a declaratory decree or declaratory relief to be unavailable before injunctive relief is sought from Ward — a nonparty.  Were Plaintiffs' to adopt this textual stance, however, they would be forced to confront the issue that *Pulliam* only purports to exempt from immunity claims for "prospective injunctive relief *against a judicial officer acting in her judicial capacity*." *Pulliam*, 466 U.S. at 1981 (emphasis added).  The court addresses that particular argument *supra*.

[10] Ward has retired from his judgeship and, as both parties recognize, any claim against him for prospective injunctive or declaratory relief would be moot.

holding, which provides only for an exemption from immunity where prospective relief against a party (who is a judge) is sought.

Furthermore, Plaintiffs' theory calls upon the court to engage in rank speculation. Federal courts are limited to addressing only actual cases and controversies, not hypotheticals. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937). Plaintiffs argue that as Ward would not have immunity from prospective relief "if he had been sued for such relief personally," he also has no immunity from being deposed as a witness on the claims for such relief against Childersburg and JCS. (Doc. # 120 at 2). To accept Plaintiffs' theory, the court would be required to assume that *if* Ward still served in a judicial capacity (because that would be a required showing to subject him to a claim for prospective relief), and in that event if Plaintiffs had brought an appropriate claim against him, that could potentially exempt him from judicial immunity. And, as their argument continues, if the court made a finding that Ward would not be protected by judicial immunity in that hypothetical case, the court would then be free to conclude Ward also should not be protected in this (different) case.

The court declines Plaintiffs' invitation to speculate as to the exact mix of hypothetical claims against nonparties that would have existed under a wholly different set of facts to justify subjecting Ward to Plaintiffs' discovery request.[11] In this case, Ward is a nonparty witness and a retired municipal court judge, and Plaintiffs brought suit against only JCS and Childersburg for money damages, injunctive relief, and declaratory relief. The court will not offer a guess or

---

[11] Plaintiffs suggest that, as the "masters of their Complaint," their entire complaint should be considered — not just Plaintiff's damages claim against Defendants JCS and Childersburg. (Doc. # 120 at 6). But that argument also is without merit. The court has searched through Plaintiffs' complaint to find any prospective relief sought against Ward in his judicial capacity. There is none.

opinion as to what discovery would be permitted had Plaintiffs brought a claim against Ward for declaratory relief while he was still serving in a judicial capacity.[12]

3. **The Policy Underlying Judicial Immunity Favors Limiting Discovery of Nonparty Judicial Officers with Respect to Actions Taken in Their Judicial Capacity.**

Finally, the policy supporting judicial immunity weighs against subjecting nonparty judicial officers (or in this case, former judicial officers) to discovery for actions taken in their judicial capacity where prospective injunctive relief is sought.  Plaintiffs' argue that nonparty judicial officers lose immunity from discovery for acts and omissions taken in their judicial capacity where prospective declaratory relief is claimed.  But as Ward has indicated in his Reply (Doc. # 97 at 7), courts in this circuit have denied similar arguments.   In *Lickman*, the court quashed a subpoena directed to a judge and his judicial assistant noting "the policy behind immunity does not merely extend to suits, it also extends to protection against discovery."  304 B.R. at 903.  The court further noted that "inquiries of this kind can be particularly disruptive of effective government." *Id.*   "The purpose of judicial immunity is for benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences. . . . His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption."  *In re Lickman*, 304 B.R. 897, 902 (Bankr. M.D. Fla. 2004) (citing *Oliva v. Heller,* 839 F.2d 37, 39 (2d Cir. 1988) (quoting *Pierson v. Ray,* 386 U.S. 547, 554 (1967))).

In a somewhat different context, the Supreme Court has acknowledged that "the 'consequences' with which we were concerned in *Harlow* are *not limited to liability for money*

---

[12] Again, the problems outlined here are only compounded by *Pulliam*'s shaky precedential value in light of the FCIA amendments to § 1983. In any event, to the extent it remains good law, *Pulliam*'s exemption from judicial immunity is inapplicable here.

*damages*; they also include 'the general costs of subjecting officials to the risks of trial— distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (quoting *Harlow*, 457 U.S. at 816).[13]   As *Mitchell* acknowledges, protection from money damages is not the sole rationale for judicial immunity, and the other consequences of litigation apply equally to judges subjected to discovery in any case, seeking any form of relief.

Furthermore, a contrary holding would have absurd results.  This judicial overreach would subject every former state judge in the country to the threat of discovery in any proceeding where the judge's inside knowledge (gained in from actions taken in her judicial capacity) could have plausibly led to relevant information in a collateral matter.  There is not a conceivable limitation that could reasonably be placed on Plaintiffs' proposed rule.  And for this reason (among others) the court refuses to create any broader exemption to the time honored and well-established doctrine of judicial immunity.  The actions of judicial officers taken in their judicial capacity must be as stringently protected when those officers are attacked indirectly as

---

[13] Justice Field articulated three policy considerations underlying the doctrine of judicial immunity in *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1871).  Because the nature of the adversarial system leaves one party to litigation invariably dissatisfied, if left unchecked, lawsuits attacking judges would abound.  *Id.* at 348.  The consequences of these attacks could be serious.  First, the practice would facilitate relitigation on every matter in perpetuity as each judge would be called before another to justify a prior decision.  *Id.*  Second, judges would be incentivized to redirect their attention away from their judicial functions, instead being forced to preserve exhaustive records justifying their decisions.  *Id.* at 349.  Finally, independence requires judges be free from constant fear of the personal consequences that might ensue from an erroneous decision.  *Id.* ("The public are deeply interested in this rule, which indeed exists for their benefit, and was established in order to secure the independence of the judges, and prevent them being harassed by vexatious actions"); *see also* Thomas J. Noto, III, Pulliam v. Allen*: Delineating the Immunity of Judges from Prospective Relief*, 34 Cath. U. L. Rev. 829, 837 (1985).  It is this final consideration that primarily concerns the court in this case.

Of course, it is simply irrelevant that Ward is no longer serving in a judicial capacity.  Retired judicial officers are protected by judicial immunity to the same extent and for the same reasons that sitting judges are.  *See, e.g.*, *Sparks v. Duval Cnty. Ranch Co., Inc.*, 588 F.2d 124 (5th Cir. 1979) (former state judge still cloaked with judicial immunity from bribery charge after being removed from the bench and incarcerated on income tax charges); *Grove v. Rizzolo*, 441 F.2d 1153 (3d Cir. 1971) (summarily finding former county judge still protected by judicial immunity); *Flanagan v. Shamo*, 111 F. Supp. 2d 892 (E.D. Mich. 2000) (same); *Lickman*, 304 B.R. at 902 ("Judicial immunity is still accorded a former sitting judge if the complaints against him arise from the judicial acts taken when he was a judge.").

nonparties, just as they are when they are attacked directly as defendants. To hold otherwise would permit plaintiffs an end-run around judicial immunity, leading to deleterious collateral litigation.

**B.      Judicial Immunity Does Not Protect Ward from Discovery into His Involvement in Negotiating, Recommending, and Executing the Contract for Services Between JCS and Childersburg.**

Having concluded Ward is entitled to judicial immunity, the court must next determine the extent to which Ward is protected. As a general rule, judicial immunity applies only with respect to those acts taken while judges are acting in their judicial capacity unless they act in the clear absence of all jurisdiction. *See Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (citations omitted). This court has previously concluded that Ward is subject to discovery for his "nonjudicial involvement in negotiating, recommending, and executing the contract for services" between Defendants JCS and Childersburg. (Doc. # 119). In this light, the court now addresses the distinction between Ward's judicial and nonjudicial roles.

Plaintiffs argue that the "delegation of authority to JCS for its collections efforts is all administrative and void of any other function." (Doc. # 120 at 9). Thus, Plaintiffs suggest that Ward is subject to discovery as to "the city contract, recommendation, approval and implementation of the contract," (Doc. # 120 at 7), and Plaintiffs specifically request documents that would show "how this probation process administratively works." (Doc. # 129 at 13).

The court takes a functional approach in determining whether a judge's actions are taken in judicial capacity, so as to entitle a judge to judicial immunity from suit, finding that the relevant inquiry "is the 'nature' and 'function' of the act, not the act itself." *Mireles v. Waco*, 502 U.S. 9, 13 (1991) (noting courts must looks to "the particular act's relation to the general function performed by a judge"); *see also Stump v. Sparkman*, 435 U.S. 349, 362 (1978) (finding "whether an act by a judge is a 'judicial' one relates to the nature of the act itself, *i.e.*, whether it

is a function normally performed by a judge, and to the expectation of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity").[14]

1. **Ward's Role in Negotiating, Recommending, and Executing Any Contract Between JCS and Childersburg Is Nonjudicial and Subject to Plaintiffs' Discovery.**

At the outset, the court agrees with Plaintiff that Ward's judicial functions could not encompass his role in "negotiating, recommending, and executing" any contract for probation services between JCS and Childersburg. At its heart, these acts are nonjudicial, administrative services. This conclusion merely reaffirms the court's August 22, 2014 Order (Doc. # 119), and Ward no longer disputes this point. (*See* Doc. # 121 at 7). The court finds, however, that Ward's involvement beyond the negotiating, recommending, and executing of JCS-Childersburg contract was generally judicial in nature.

2. **Ward's Exercise of Control over Post-Conviction Probation Matters Are Judicial in Nature and Protected from Discovery.**

The court concludes that Ward's exercise of control over post-conviction probation matters was judicial in nature and, therefore, he is protected against discovery in that area by way of his judicial immunity. Ward's actions at issue here are of the same nature and function as probation revocation hearings, sentencing, and indigency hearings, which have commonly been held to constitute normal judicial functions. *See, e.g.*, *Mitchell v. Owens*, CV513-022, 2013 WL 1898175 (S.D. Ga. Apr. 8, 2013) ("Actions associated with Plaintiff's probation revocation hearing and sentencing are activities taken within the judge's judicial capacity because such actions constitute normal judicial functions."), *adopted by* CV513-022, 2013 WL 1898172 (S.D.

---

[14] The Eleventh Circuit has further clarified that whether a judge's actions are made while acting in her judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity. *Scott v. Hayes*, 719 F.2d 1562, 1565 (11th Cir. 1983).

Ga. May 7, 2013); *Lee v. Wood*, CIV.A.04-00710BHB, 2007 WL 2460756 (S.D. Ala. Aug. 27, 2007) (handling parole revocation proceedings are judicial functions).

Furthermore, the Probation Tracker-generated documents used by Ward, which include Notices to Show Cause, Petitions for Revocation, and Probation Orders are clearly judicial in nature and function, not administrative.  Plaintiff argues these documents are "post conviction, administrative tools for strong arm collection."  (Doc. # 120 at 8).  These documents, however, are of the same character as any judicial action or order.  Each of the documents essentially altered the rights and liabilities of the parties in those cases that were pending before Ward.  Judges routinely communicate with parties and court officials with regard to cases, both on and off the record, through text orders and other informal communications.

To the extent procedural errors can be found in his orders, Ward was nevertheless exercising judicial functions, and such errors do not remove his decisions from the category of protected judicial actions.  In their attempts to validate their subpoena to Ward, Plaintiffs allege that Ward signed numerous blank JCS probation orders that were later filled out by JCS employees and also allege many of the forms were filled in years later.  (Doc. # 120 at 8).  Here, the court makes no finding as to the propriety of Ward's actions, but that is not the key issue.  It is well-settled that judicial immunity applies even when a judge's acts are alleged to have been done maliciously or corruptly. *See Stump v. Sparkman*, 435 U.S. 349, 356, 359 (1978).  Indeed, "[i]f judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or [even] in excess of his authority." *Mireles*, 502 U.S. at 13 (quoting *Stump*, 435 U.S. at 356).  Thus, Plaintiffs' assertions that Ward's hearings and probation revocation orders were marred with grave procedural errors are of no moment; he is still protected by judicial immunity.  *See Stump*, 435 U.S. at 359.

Similarly, neither does the frequency or efficiency of Ward's probation practices alter their inherently judicial nature or function. Plaintiffs allege that Ward has reduced the probation procedures to "automatic" administrative procedures. (Doc. # 101 at 7). The Sixth Circuit has recognized that "the fact that a judge's orders follow a certain pattern does not automatically convert those orders into [administrative] 'rules.'" *Mann v. Conlin*, 22 F.3d 100, 104-05 (6th Cir. 1994). The court finds *Mann*'s holding persuasive.[15] Obviously, if a process cannot be sufficiently flawed to remove it from the protection of judicial immunity, neither can it be too routinized.[16]

### C.    Ward Has Not Waived His Judicial Immunity by Choosing To Testify in Another Case.

Finally, Plaintiffs argue that even if Ward is otherwise protected by judicial immunity, Ward has waived that protection. (Doc. # 101 at 8-9). Waiver is a voluntary and intentional relinquishment of a known right, claim, or privilege. *See, e.g.*, *Edwards v. Kia Motors of Am., Inc.*, 486 F.3d 1229, 1233 n.6 (11th Cir. 2007). Plaintiffs have failed to show any waiver occurred here. Ward has timely and properly raised his immunity defense *in this case*. That Ward testified as a nonparty in a separate case against the Town of Harpersville does not constitute a waiver here. By sitting for deposition in the case against Harpersville, Ward did not knowingly and voluntarily open himself up to discovery or suit in each and every case in which

---

[15] Plaintiffs argue Ward's actions in "implementing" the City's contract were administrative, and point particularly to his actions related to the collection of fines and certain post-conviction forms generated by JCS's Probation Tracker database. (Doc. # 120 at 8). The court notes that the record is largely ambiguous as to the specific interaction Ward had with respect to JCS beyond issuing probation orders and establishing various probation procedures. To be clear, this ambiguity will not be clarified through discovery, because discovery will not be allowed until the immunity issue is decided. *See Harlow*, 457 U.S. at 817 ("inquiries of this kind can be particularly disruptive of effective government").

[16] To be clear, nothing in this Memorandum Opinion should be read to stop Plaintiffs from pursuing Probation-Tracker-documents from other sources. Plaintiffs should generally be able to retrieve this subject of discovery from JCS or Childersburg. The court remains skeptical that a retired municipal court judge would retain any of the documents regarding post-conviction of various probationers that would be useful to Plaintiffs.

16

he presided as a municipal court judge, or each case arising from the use of the JCS Probation Tracker system.  *Cf. Diaz v. Glen Plaid, LLC*, 7:13-cv-853-TMP, 2013 WL 5603944, at *5 (N.D. Ala. Oct. 11, 2013) (holding that sovereigns entitled to immunity "may 'pick and choose' the cases to which they are willing to consent").  Ward has not waived his right to judicial immunity to which he is otherwise entitled.

## IV.  <u>Conclusion</u>

For the reasons discussed above, the court affirms and clarifies the August 22, 2014 Order.  (Doc. # 119).  Ward's Motion to Quash Subpoena and Protective Order (Doc. # 97) is due to be granted in part and denied in part.  The Motion is denied to the extent that it would prohibit nonparty Ward from being deposed.  The Motion is granted insofar as it seeks to limit Ward's deposition to questions involving his involvement in negotiating, recommending, and executing the contract for services between JCS and Childersburg.  Ward is not subject to discovery for his interactions with JCS in his judicial capacity, including Ward's handling of various post-conviction probation procedures, probation revocation hearings, and the issuance of various probation orders, along with issuance of other Probation Tracker documents.

An Order will be entered contemporaneously with this Memorandum Opinion.

**DONE** and **ORDERED** this October 9, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE