# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **GINA KAY RAY,** *et al.*, ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | **Case No.: 2:12-02819-RDP** |
| ) | |
| **JUDICIAL CORRECTION** ) | |
| **SERVICES, INC.,** *et al.*, ) | |
|     Defendants. ) | |

## JOINT STATUS REPORT

### I. BACKGROUND

**A. CCS, LLC's and CHC Cos., Inc.'s Background Statement**

Plaintiffs allege that in 2005, Judicial Correction Services, Inc. ("JCS") contracted with the City of Childersburg ("the City") to provide probation services for the Childersburg Municipal Court. Plaintiffs are individuals who were assigned by the Childersburg Municipal Court to probation under JCS's supervision. The Plaintiffs claim the City and/or JCS violated their constitutional rights by forcing those unable to immediately pay court ordered fines and court costs onto probation with JCS.

Correct Care Solutions, LLC ("CCS, LLC") and CHC Companies, Inc. ("CHC Cos., Inc.") (collectively "Defendants") were brought into this case via Plaintiffs' Third Amended Complaint under a joint employer theory only. (Doc.

256). Plaintiffs allege CHC Cos., Inc. employed, directed, and controlled JCS probation officers from October 2011 to June 2014, and CCS, LLC employed, directed, and controlled JCS probation officers from June 2014 to the termination of the JCS-Childersburg contract in 2015. Plaintiffs' allegations against CHC Cos., Inc. are purportedly based on a 2011 Reverse Merger Agreement. Plaintiffs' allegations against CCS, LLC are based on a June 2014 Securities Exchange Agreement.

On July 24, 2017, Judge Proctor heard oral arguments on the pending dispositive motions. During this discussion, Judge Proctor warned the Plaintiffs they should seriously consider dismissing CCS, LLC as a defendant in this case:

> Correct Care does prison medical services, so I want you all to really explore your heart of hearts and see if you really are trying to get Correct Care in this thing. Your positions will be boat-anchored if you have silly arguments on who should be in when they shouldn't be in.

Transcript p. 109:2-7. The nature of CCS, LLC's business is to provide inmate healthcare services to correctional facilities under contracts with state and local governments. Its business is unrelated to probation services in Childersburg or anywhere in the country.

This discovery dispute relates entirely to the June 2014 Securities Exchange Agreement between CCS Group Holdings, LLC (the parent company of CCS, LLC) and Jessamine Healthcare Holdings, LLC (which owns CHC Cos., Inc.'s

parent company[1]). CCS, LLC produced this agreement without redactions. However, at the time of production, CCS, LLC had not located all of the schedules to the agreement. The Securities Exchange Agreement has no relevancy to Plaintiffs' joint employer theory claims against these Defendants. Instead, the Agreement involved an ownership change where various entities and subsidiaries were placed under common ownership of a newly formed entity. The former owners of each respective entity exchanged their ownership interests for ownership interests in the new entity.

The Securities Exchange Agreement previously produced provides more than enough information for Plaintiffs to realize CCS, LLC is not a proper party in this litigation.

**B. Plaintiffs' Background Statement**

This action began with Judicial Correction Services Inc. ('JCS') and Correctional Healthcare Company Inc. as defendants. The Plaintiffs' discovery of the corporate relationships of JCS revealed that JCS had merged with CHC Companies Inc. ('CHC') on September 30, 2011 when they executed an "Agreement and Plan of Merger."[2]

---

[1] CHC Cos., Inc.'s parent company is Correctional Healthcare Holding Company, Inc.
[2] JCS and CHC were merged into CHCC via a "Reverse Subsidiary Merger" also known as a "Reverse Triangular Merger." This merger technique allows contracts with the target company to remain intact without violating reassignment provisions in contracts. Nasdaq.com lists the definition of Reverse subsidiary merger as "The process by which the acquirer merges its

Further, Correct Care Solutions ('CCS') and CHC combined in July 2014 under a common structure of management and control. It was also discovered that CHC Companies, Inc. did business as Correctional Healthcare Companies. As a named defendant here, Correctional Healthcare Companies has pursued a false litigation strategy of defending this lawsuit as if Plaintiffs sued the sister company rather than the acquiring company of JCS. This strategy was exposed by the 30(b)(6) testimony of CHC Companies, Inc. representative, Don Houston, when he admitted that he knew nothing about Correctional Healthcare Companies, Inc. separate and apart from CHC Companies, Inc. and that he was not the corporate officer of any company other than CHC Companies, Inc. d/b/a Correctional Healthcare Companies, despite prior verified interrogatories to the contrary.[3] Further, public documents show simultaneous name changes executed by CEO Goetz where Correctional Healthcare Companies, Inc. was changed to CHC Companies, Inc. and where CHC Companies, Inc. was changed to Correctional Healthcare Companies, Inc, which appeared to intentionally add another layer of confusion. (See Docs. 500-2, 500-3). After also discovering that employees of JCS were also employees of CHCC and CCS, the *Ray* plaintiffs requested leave of

---

subsidiary into the target company. Thus, both the acquirer and target companies remain in existence after the merger. Also called Reverse triangular merger."
http://www.nasdaq.com/investing/glossary/r/reverse-subsidiary-merger (last visited November 17, 2015)

[3] See Doc. 428-2 pp. 277-294 and Doc. 428-5 pp. 23-47 (Exhibit 336 to his deposition)

the Court to amend the complaint to add CHCC & CCS. This Court rejected JCS's opposition based upon veil piercing and alter ego arguments and allowed the Plaintiffs to amend their complaint by order dated July 6, 2015. *See* (Doc. 237 ¶5).

After the amendment, Plaintiffs issued Requests for Production and Interrogatories on February 15, 2016 to CHCC and CCS.  Those Defendants resisted providing responses for months prompting multiple letters, emails, calls and finally conferences with the Court.  Finally some responses were forthcoming with promises of more.  Many of the documents produced were highly redacted documents with no explanation for the redaction.  This Court has now ordered the majority of those produced to the plaintiffs without redaction.  The remaining issues concern schedules to the Securities Agreement which pertains to the 2014 merger/acquisition of CHC by CSC.  The terms and particulars of that agreement are particularly important concerning the operation, control and ownership of the JCS entity following that transaction.

## II. DOCUMENTS REQUESTED AND PARTIES' CONTENTIONS

### A. Defendants Objections to the Schedules to the 2014 Securities Exchange Agreement

The schedules are not relevant to Plaintiffs' claims and contain protected trade secrets, propriety information, confidential information related individual settlements, and information protected by individual privacy rights. ***Moreover, the information contained in these schedules is unrelated to JCS's Alabama***

*operations.* There are no allegations against CCS Group Holdings, LLC and nothing in the Securities Exchange Agreement even remotely suggests CCS, LLC ever employed the JCS probation officers.

Nonetheless, to expedite resolution of this matter, Defendants will produce certain unredacted schedules to the 2014 Securities Exchange Agreement subject to the Protective Order in this case and the objections raised above. *See* Appendix A.

In addition, Defendants will produce certain other schedules subject to the Protective Order. *See* Appendix B. However, Defendants object to producing irrelevant confidential financial and other sensitive information and have redacted things such as:

- The specific equity interests of the 71 members of CCS Group Holdings, LLC, pp. 05-08;
- Dollar amount information in the balance sheets and summaries of the financial statements, pp. 15, 16, 18, 20, 24, 26-29, 31, 33, 35, 37, 39-40, 45, 47, 49, 51, 54-57, 59, 61, 63, 65, 67-69, 71-73, 77-89, 94-98, 101-108, 178-181, 185, 188-210, 216-219, 223-226, 228-246, 249-251;
- Loan balances, interest rates, letter of credit terms, performance bond amounts, monthly paid/capitalized amounts, and payments in charts, pp. 111-115;
- Information regarding potential federal HIPAA violations at a Florida healthcare facility, p. 123;
- Revenue generated and expenses on Customers and Suppliers schedules, pp. 143-144, 296-297.
- Information related to exposure for workers compensation claims, pp. 146-147;
- Premium amounts, limits of liability, and deductions and retention amounts, pp. 149-158, 338-339;

- Amount of tax distributions to LLC members, amount of expenses for Audax and Frazier, and Monitoring fees, p. 159;
- Number of shares held of each entity, p. 166;
- Number of units of ownership of Jessamine Healthcare Holdings, LLC, pp. 171-172;
- Correctional Healthcare Holding Company, Inc. Balance Sheet amounts;
- Number of shares and options issued, vested, and outstanding pursuant to Jessamine Healthcare, Inc. 2013 Stock Option Plan, p. 253-254;
- Severance obligations to officers and/or employees, pp. 254 and 287;
- Settlement amounts for litigation and claims unrelated to this matter, pp. 256-257, 260;
- Principal amount of debt as of May 31, 2014 on p. 258;
- Total amount of surety bonds on p. 259 and surety report information on pp. 261-265;
- Tax matters related to Physicians Network Association and Colorado audit letter, p. 281;
- Reserve amounts, amount paid, total amounts incurred, etc. pertaining to unrelated claims and litigation, pp. 300-330;
- Other financial information pertaining to pending unrelated litigation, pp. 331-336;
- Information regarding base salary amounts of GEO Group physicians, pp. 340-341; and
- Amount owed by Physicians Network Association to CHC Companies, Inc. in escrow account in connection with acquisition on p. 341.

**B. Plaintiffs' Position regarding the Schedules to the 2014 Securities Exchange Agreement**

Since CHC/CCS has now agreed to produce the unredacted schedules in Appendix A and has identified those schedules to be redacted in Appendix B, plaintiffs request an opportunity to review the schedules now offered in order to determine if any of the remaining redacted areas present further issues in dispute.

7

Without such an opportunity plaintiffs are unable to determine if any remaining dispute exists.

                                            RESPECTFULLY SUBMITTED,

DATED August 8, 2017           /s/ F. Lane Finch, Jr.
                                         F. Lane Finch, Jr. (ASB-0027-I58F)
                                         Brian C. Richardson (ASB-5241-H14U)
                                         *Attorneys for CHC Companies, Inc. and Correct Care Solutions, LLC*

**OF COUNSEL:**
**SWIFT, CURRIE, MCGHEE & HIERS, LLP**
2 North 20th Street, Suite 1405
Birmingham, AL 35203
T: (205) 314-2401
F: (205) 244-1373
lane.finch@swiftcurrie.com
brian.richardson@swiftcurrie.com

DATED August 8, 2017           /s/ G. Daniel Evans
                                         G. Daniel Evans (ASB-1661-N76G)
                                         Alexandria Parrish (ASB-2477-D66P)
                                         D. Patrick Evans (ASB-3209-R67G)
                                         Maurine C. Evans (ASB-4168-P16T)
                                         *Attorneys for the Plaintiffs*

**OF COUNSEL:**
**THE EVANS LAW FIRM, P.C.**
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
T: (205) 870-1970
F: (205) 870-7763
gdevans@evanslawpc.com
ap@evanslawpc.com
dpevans@evanslawpc.com
mevans@evanslawpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2017, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of filing to the following attorneys of record:

Erwin Chmerinsky
echemerinsky@law.uci.edu

William M. Dawson
DAWSON LAW OFFICE
bill@billdawsonlaw.com
*Attorneys for Plaintiffs*

Larry S. Logsdon
Michael L. Jackson
Wesley K. Winborn
WALLACE, JORDAN, RATLIFF
& BRANDT, LLC
llogsdon@wallacejordan.com
mjackson@wallacejordan.com
wwinborn@wallacejordan.com

Wilson F. Green
FLEENOR & GREEN, LLP
wgreen@fleenorgreen.com
*Attorneys for Judicial Correction Services, Inc.*

Will Hill Tankersley
Gregory C. Cook
L. Conrad Anderson, IV
Ginny Willcox Leavens
Christopher K. Friedman
Ed R. Haden
Chase T. Espy
BALCH & BINGHAM, LLP
wht@balch.com
gcook@balch.com
canderson@balch.com
ehaden@balch.com
cespy@balch.com

Timothy P. Donahue
DONAHUE & ASSOCIATES, LLC
timdonahue@donahue-associates.com
*Attorneys for City of Childersburg*

　　　　　　　　　　　　　　　　　*/s/ F. Lane Finch, Jr.*
　　　　　　　　　　　　　　　　　OF COUNSEL

3495894v.2