UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **GINA KAY RAY, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | Case No.: 2:12-cv-02819-RDP |
| } | |
| **JUDICIAL CORRECTION SERVICES,** } | |
| **INC., et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case is before the court on (1) Defendant City of Childersburg's Motion to Exclude Expert Report and Affidavit of Peter Coons[1] (Doc. # 432) and (2) Plaintiffs' Motion to Strike and Exclude Defendants' Class Certification Expert - Brad Bishop (Doc. # 444). The Motions have been fully briefed. (Docs. # 439, 441, 457, 477, 479, 485). After careful review, and for the reasons explained below, the court concludes that Defendants' motion to exclude is due to be denied and Plaintiffs' motion to exclude is due to be granted in part and denied in part.

**I. Background**

This case is a putative class action suit challenging alleged constitutional violations committed by Defendants against individuals placed on probation by Alabama's municipal courts. In their Motion for Class Certification (which has been administratively terminated without prejudice to refiling after summary judgment proceedings), Plaintiffs sought to certify a statewide class of individuals who "were assigned by municipal courts in Alabama to 'probation' with [Defendant Judicial Correction Services, Inc. ("JCS")] for the collection of fines, fees and

---

[1] Defendant Judicial Correction Services, Inc. has joined in this Motion to Exclude. (*See* Doc. # 439). Therefore, the court has considered Childersburg's motion as a motion for multiple Defendants.

costs." (Doc. # 400 at 1). Plaintiffs also sought to certify a class action for individuals "assigned to JCS" that either were incarcerated or subject to incarceration for failure to pay fines, fees, and costs without any consideration of their indigency. (*Id.*).

Plaintiffs have identified Peter R. Coons as their class certification expert. (*See generally* Doc. # 382). Coons has submitted a lengthy report in support of Plaintiffs' efforts to obtain class certification. (*Id.*). Plaintiffs describe Coons and his proposed testimony as follows:

> Coons is Senior Vice President and co-founder of D-4. D-4 offers services in e-discovery, digital forensic and collection, information governance and security, software and training, and technology enhanced deposition solutions. . . .
>
> [Coons's] report and extensive exhibits are the result of his analysis of the data collected in the JCS paperless collection system [Probation Tracker], the underlying SQL database tables, the JCS manual, together with confirming data pertaining to the named plaintiffs. It is from the analysis of this data that his opinions are based showing the highly systemic approach of the JCS collection system with its robust data collection applied throughout Alabama.[2]

(Doc. # 441 at 3-4). In his affidavit filed in support of class certification, Coons states:

> Due to the robust data provided, the individuals assigned to JCS and the payments they made within any time period at any city is easily ascertained. Similarly, the fees, fines, costs paid by each such persons, and their status changes including warrant status and jailed status are documented for each city. This systematic use of codes for arrest, warrant, jail and other matters provide tools for identifying those involved in each status.

(Doc. # 402-1 at 7-8).

Although the court has administratively terminated the motion for class certification in this case, the briefing on that motion is nevertheless instructive. In their responses opposing class certification, Defendants challenged Plaintiffs' requests for statewide classes by highlighting the distinct factual issues at play in deciding each class member's § 1983 claims. (*See, e.g.*, Doc. # 431 at 3-4) (describing the individualized indigency, probation length, and *Rooker-Feldman* factual issues that a court would need to address before granting a probationer

---

[2] Probation Tracker is a proprietary software program used by JCS.

relief on the proposed § 1983 claims). Defendants JCS, Correct Care Solutions, LLC, and CHC Companies, Inc. identified T. Brad Bishop as a class-certification-stage expert. (Docs. # 406 & 407). Defendant JCS described Bishop and his proposed testimony as follows:

> Bishop has been a Professor at Cumberland School of Law since the early 1970s. He has been a municipal judge in Alabama for 30 years. He literally "wrote the book" on municipal court practice in Alabama. See Bishop, *Municipal Courts: Practice and Procedure, Fourth Edition* (2012) (Darby Press). (He wrote the First through Third Editions, too.) He teaches municipal judges in Alabama in regular Continuing Legal Education courses regarding municipal court practice issues. His experience qualifies him to describe – as much from his own personal experience as that of an expert – as to how municipal judges in Alabama conduct, or should conduct, indigency determinations.

(Doc. # 477 at 2).

## II. Standards of Review

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, along with the Supreme Court's *Daubert* decision and its progeny. Rule 702 provides for the admission of expert testimony when "scientific, technical, or other specialized knowledge will help the trier of fact." In *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), the Supreme Court held that scientific expert testimony is admissible only if the proffered testimony is both relevant and reliable. *Id.* at 597. "[A] district court judge is to act as a 'gatekeeper' for expert testimony, only admitting such testimony after receiving satisfactory evidence of its reliability." *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 869 (7th Cir. 2001); *see also United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

3

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Accordingly, under Rule 702, "this [c]ourt has an obligation to screen expert testimony to ensure it stems from a reliable methodology, sufficient factual basis, and reliable application of the methodology to the facts." *Whatley v. Merit Distribution Servs.*, 166 F. Supp. 2d 1350, 1353 (S.D. Ala. 2001) (citations omitted).

Although the inquiry is "a flexible one," the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594-95; *see also McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (recognizing a trial judge "should meticulously focus on the expert's principles and methodology, and not on the conclusions that they generate"). "But conclusions and methodology are not entirely distinct from one another"; neither *Daubert*, nor Federal Rule of Evidence 702, requires a trial judge "to admit opinion evidence that is connected to existing data only by the *ipse dixit*[3] of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

> The Eleventh Circuit applies a three-part approach to *Daubert* motions:
>
> Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted). The expert's proponent must prove each of these elements by a preponderance of the

---

[3] From the Latin, this phrase is translated "he himself said it." An *ipse dixit* statement is one which is unsupported and rests solely on the authority of the individual who makes it. *See United States v. Barnes*, 295 F.3d 1354, 1362 (D.C. Cir. 2002) (quoting *Black's Law Dictionary* 961 (4th ed. 1968)).

4

evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005). And, while "the proponent of the testimony does not have the burden of proving that it is scientifically correct," he must establish "by a preponderance of the evidence [that] it is reliable." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

To aid in determining reliability under Rule 702, courts look to non-exclusive factors set forth in *Daubert*:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community.

*United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013) (citing *Daubert*, 509 U.S. at 593-94); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999) ("[*Daubert's*] list of factors was meant to be helpful, not definitive."). Under *Daubert*, "no single factor is necessarily dispositive of the reliability of a particular expert's testimony." Fed. R. Evid. 702 advisory committee's note to 2000 amendments (citations omitted). The notes to Rule 702 make clear that "[n]othing in [Rule 702] is intended to suggest that experience alone -- or experience in conjunction with other knowledge, skill, training or education -- may not provide a sufficient foundation for expert testimony." *Id.* The Rule "expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id.* But, "[a]s gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in

5

issue.'" *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

The Eleventh Circuit has indicated that, at a minimum, a court must examine a class certification expert's testimony under *Daubert* if the expert's testimony is critical to resolving class certification. *See Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1258 n. 7 (11th Cir. 2014) (citing *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010)); *Sher v. Raytheon Co.*, 419 F. App'x 887, 890-91 (11th Cir. 2011) (adopting, in an unpublished opinion, the Seventh Circuit's *American Honda* rule and vacating a grant of class certification for failure to conduct a *Daubert* analysis). None of the parties have disputed that *Daubert* gatekeeping is appropriate at the class certification stage. That being said, the court emphasizes that its *Daubert* review focuses on the principles and methodologies of the proposed witnesses, not the conclusions they seek to present. *See In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412, 417 (E.D. Pa. 2015). As such, the court can find a class certification expert's testimony admissible but nonetheless deny the class certification that expert's testimony supports. *Id.* Moreover, the court recognizes that the *Daubert* barriers are more relaxed when a judge, rather than a jury, serves as the fact finder. *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005) (discussing the application of *Daubert* to a bench trial). "There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *Id.* at 1269.

Whether a *Daubert* hearing is necessary is a decision committed to the trial court's sound discretion. *Cook v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005). "*Daubert* hearings are not required, but may be helpful in complicated cases involving multiple expert witnesses." *Id.* (internal quotations omitted).

6

## III. Analysis

As already noted, Plaintiffs and Defendants each challenge the other's class certification expert. The court addresses these challenges, in turn, beginning with Defendants' request to exclude Coons.

### A. Peter T. Coons

Defendants contest Coons's testimony pertaining to the commonality of the putative class members because certain status codes Coons relied upon did not appear in JCS's records for individuals sentenced by the Columbiana or Childersburg municipal courts. (Doc. # 432 at 8-9) (discussing jail codes in Probation Tracker). Defendants also insist that Plaintiffs would need to rely on paper records not contained in Probation Tracker to determine arrest dates, jail dates, and the length of incarceration for the named Plaintiffs, as that information does not appear in Probation Tracker. (*Id.* at 9-10). Defendants claim that Probation Tracker does not contain important paper records about the probationers that JCS did not collect. (*Id.* at 14-19). Without reviewing documentary evidence regarding the court proceedings conducted by the municipal courts, Defendants argue that Coons has "no basis to provide an opinion about what was common or typical as regards to what occurred with the courts and police." (*Id.* at 19). Defendants also challenge Coons's testimony supporting the commonality of the putative class members on the ground that Coons has provided no comparative analysis of how Probation Tracker entries differed for probationers at different municipal courts or probationers supervised by different JCS employees. (*Id.* at 19-20).

Defendants claim that Coons did not use a reliable method to formulate his opinion testimony because he relied on multiple sources of information to support his conclusions and conducted no empirical tests or measurements to support the consideration of those combined

7

sources.  (*Id.* at 20-21).  Defendants further argue that Coons's report is irrelevant because it proposes classes besides those described in the Fourth Amended Complaint.  (*Id.* at 22).  Finally, Defendants challenge the ascertainability of any class from Probation Tracker data because: (1) Probation Tracker data contains no useful data for determining indigency; (2) Probation Tracker data contains no useful data for determining whether a probationer received a suspended imprisonment sentence in the underlying municipal court action; (3) the proposed classes in Coons's report contain individuals who did not interact with JCS during the class period; (4) Probation Tracker contains inaccurate data about who was sentenced to community service; and (5) Probation Tracker cannot reliably show the length of a probation sentence.[4]  (*See id.* at 22-25).

The court discerns three categories of arguments against admitting Coons's expert testimony: (1) challenges to the sufficiency of the facts and data used by Coons; (2) challenges to the reliability of his methods; and (3) challenges to the usefulness of the testimony in the pending class certification proceedings.  The court addresses each category below, in turn.

### 1. Coons's Testimony Uses Sufficient Facts and Data

After careful review, the court finds that Plaintiff's opinion testimony is supported by sufficient facts and data.  Coons has testified that JCS utilized a highly systemized form of supervision, during which its employees systemically entered data into Probation Tracker according to the instructions provided in JCS's manuals.  (Doc. # 402-1 at 3).  From this data, Coons states that one can determine (1) the probationers assigned to JCS during the class period, (2) probationers placed on warrant status, (3) probationers placed on arrested status, and (4) individuals given credit for jail time served.  (*Id.* at 3-4).  Coons further explains that Probation

---

[4] Defendant JCS's joinder brief mainly contains explanations about the limited amount of data available from Probation Tracker alone.  (*See generally* Doc. # 439).

Tracker provides certain codes for probation statuses and payment statuses, along with written explanations for certain payments that allow one to determine that a probationer made a certain payment to be released from jail. (*Id.* at 4-8). Coons opines that the Probation Tracker data shows individuals assigned to JCS and amounts paid to JCS, and also "provide[s] tools for identifying those involved in each status." (*Id.* at 7-8).

Defendants insist that the Probation Tracker data is insufficient because certain codes were not used for probationers in Childersburg and Columbiana. But, as Plaintiffs point out, Coons has described the status codes "as a preliminary method to ascertain similarly treated probationers." (Doc. # 382 at 26). And, Coons has stated that other status codes used in Childersburg and Columbiana -- such as the warrant status code -- can be analyzed to ascertain imprisoned probationers by searching the detail notes for references to jail. (*Id.* at 26-27). In his expert report, Coons asserts that documents scanned into Probation Tracker and municipal records can also be referenced to confirm that a probationer was actually imprisoned for non-payment of fines and fees. (*Id.* at 27). Coons has expressly recognized that some document review is needed to find JCS-supervised probationers subjected to imprisonment. The court finds that he had sufficient data to support his opinions.[5]

Defendants also claim that Coons lacks adequate facts and data to support his opinions on the commonality of the proposed classes because he lacks personal knowledge about the relevant municipal courts' procedures and has not reviewed documents that are vital to determining

---

[5] In his expert report, Coons writes that the Probation Tracker data allows one to determine "the status and treatment of the included individuals during the class period without individual inquiry." (Doc. # 382 at 36). It appears that Coons has backed off of his opinion that no individual inquiry will be necessary in the affidavit submitted with Plaintiffs' Motion for Class Certification. (*See* Doc. # 402-1 at 8) (explaining that the status codes in Probation Tracker "provide tools for identifying those involved in each status"). To the extent Coons states that a class of imprisoned probationers can be determined by use of Probation Tracker data without some degree of individualized inquiry, the court is not convinced that opinion is reliable based upon the evidentiary submissions to this point.

commonality. This argument misses the mark. Coons has averred that his review of JCS's manual, Probation Tracker data, and documents scanned into Probation Tracker show highly systemized and substantially similar probation supervision practices by JCS for all individuals assigned to JCS-supervised probation by Alabama courts. (Doc. # 402-1 at 3-4). Coons has not testified that other evidence -- such as the kinds of evidence discussed by Defendants -- support a showing of substantially common probation practices statewide. While the limited universe of evidence reviewed by Coons may affect the weight that can be assigned to his commonality opinion, the court finds that it is still due to be admitted for purposes of the class certification hearing.[6]

### 2. Coons's Testimony Uses Sufficiently Reliable Principles and Methods

Coons has averred that he used SQL software to manipulate the data contained in Probation Tracker's database tables so that information for each personal ID could be joined together and each payment to JCS could be attributed to an individual probationer. (*See* Doc. # 382 at 13-14). Coons has also claimed that SQL software can be used to determine which individuals were sentenced to probation within the class period. (*See id.* at 16). Coons has used the Probation Tracker database tables to identify patterns of probation fees assessed by courts on behalf of JCS and patterns regarding the issuance of warrants and incarcerations, including patterns that can be discerned from changes to the status codes used by JCS. (*See id.* at 18-27). According to Coons, he used an iterative process to determine the queries, and by using those queries produced relevant data. (Doc. # 435-1 at 105, 109, 128).

---

[6] Of course, Defendants are free to rebut Coons's testimony about the commonality of JCS probation practices statewide with evidence that those practices differed in fact from municipal court to municipal court. Indeed, Defendant JCS has discussed several variations in municipal court practices that are not accounted for in Probation Tracker. (Doc. # 439 at 3-6).

Defendants challenge Coons's opinion testimony because it relies on his consideration of multiple sources of information, and he has not used an empirical test or measurement to justify combination of sources he considered. (Doc. # 432 at 20-21). Coons has admitted that he considered both Probation Tracker data and documents scanned into Probation Tracker to form his opinions. (Doc. # 435-1 at 317-18). And, he has conceded that no "scientific test" supports his consideration of both kinds of evidence. (*Id.* at 319). But, other courts have admitted expert testimony based on iterative processes over similar reliability objections. *See Kirksey v. Schindler Elevator Corp.*, 2016 WL 5239874, at *11 (S.D. Ala. Sept. 21, 2016) (admitting expert testimony from an escalator designer based on an iterative process of analyzing probable harms and mitigating measures); *Ziilabs Inc., Ltd. v. Samsung Elecs. Co. Ltd.*, 2015 WL 8274055, at *4-5 (E.D. Tex. Dec. 8, 2015) (admitting expert testimony that organized patents through an iterative process created in relation to a graphics processing unit workflow because a nexus existed between the patents and the steps of the workflow). The court is convinced that Coons's analysis of the documents scanned into Probation Tracker is sufficiently related to his experiences as a digital forensics and e-discovery expert to be reliable for purposes of the class certification stage. Although Coons's expert testimony relies on considering both the Probation Tracker data and documents scanned into Probation Tracker, it is not equivalent to *ipse dixit* testimony that is inadmissible under Rule 702.

Defendants also claim that Coons's commonality opinions are unreliable because he has not performed a statistical comparison of practices at different JCS offices and different municipal courts. (Doc. # 432 at 19-20). Plaintiffs correctly respond that they need to show common questions of law or fact, capable of classwide resolution, that are "apt to drive the resolution of the litigation" -- not statistical comparability between the named Plaintiffs and the

putative class members -- to establish commonality for purposes of class certification. (Doc. # 441 at 13). *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). Defendants cite no authority for the proposition that Coons was required to conduct a statistical comparison between different JCS offices or different municipal courts to offer an expert opinion on commonality. (*See* Doc. # 432 at 19-20). And, in one important respect, Coons did compare the practices between different Alabama municipal courts. That is, he determined that almost all JCS-supervised probationers were charged a monthly probation fee, and that municipal courts in Shelby and Jefferson Counties were actually more likely to not impose a monthly fee than courts in other counties. (Doc. # 382 at 19). As with Defendants' first challenge to Coons's methodology, the court concludes that the lack of statistical comparisons between different JCS offices or municipal courts is not enough to render Coons's opinions unreliable.

### 3. Coons's Expert Testimony is Helpful to the Upcoming Class Certification Proceedings

Coons's expert report contains opinions regarding how the Probation Tracker data can assist with ascertaining a class, determining the commonality of the class, determining the typicality of the named Plaintiffs, and ensuring that the numerosity requirement is met. (*See* Doc. # 382 at 36-37). The court is not convinced by any of Defendants' challenges to the relevance of Coons's testimony. Defendants complain that Coons issued an opinion on a class definition not included in the Fourth Amended Complaint. (Doc. # 432 at 22). However, Coons's opinion related to the class definitions referenced in Plaintiffs' Motion for Class Certification. And, it is well settled that the court can alter or amend class definitions even after certification. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000). Therefore, Defendants cannot dispute the relevancy of Coons's testimony by relying on the discarded class definitions proposed in the Fourth Amended Complaint. Likewise, Defendants' challenges to the

ascertainability of a class of incarcerated indigents, and a class of individuals sentenced to probation despite the lack of a suspended sentence, rely on the class definitions presented in the Fourth Amended Complaint, rather than the class definitions in the Motion for Class Certification. (*Compare* Doc. # 305 at ¶ 79 *with* Doc. # 400 at 1). Coons's testimony is helpful to deciding whether to grant certification of the classes that were presented in the Motion for Class Certification, regardless of whether his testimony would have been helpful to determining certification of the previously proposed classes.[7]

Nor is the court convinced at this time that Coons's testimony is unhelpful merely because of overbreadth concerns. Defendants claim that Coons's report recommended including members in a class who did not interact with JCS during the class period. (Doc. # 432 at 24). The court concludes that this is a more appropriate ground for cross-examining Coons during the class certification hearing than excluding his opinion before that hearing. Coons may (or may not) be able to explain how to exclude such individuals from Probation Tracker database queries. Defendants also argue that Probation Tracker does not contain accurate information about individuals who were sentenced to community service, as two individuals sentenced to community service in Childersburg's municipal court did not have a community service status code in their Probation Tracker records. (Doc. # 432 at 24-25) (referring to records in Doc. # 435-21). Nevertheless, both of the persons identified by Defendants as individuals sentenced to community service fall within one of the classes proposed in the Motion for Class Certification because both were sentenced to probation during the class period. (*See* Doc. # 435-21 at 2, 8).

---

[7] That being said, the court expects Plaintiffs to be prepared to either explain how indigent probationers can be identified in an administratively feasible method or explain why indigency is not a necessary condition for membership in a class in this action. The court is not convinced that the Probation Tracker data alone contains much (if any) useful information about indigency. (*See* Doc. # 382 at 29). While Probation Tracker contains data about the payments probationers made, Plaintiffs have not identified information in Probation Tracker concerning probationers' income.

13

To be clear, although the court is not excluding Coons's expert testimony under Rule 702(a) at this time, the court is open to reconsidering whether Coons's testimony is helpful to ascertaining the class requested by Plaintiffs in connection with any later-filed motion for class certification.

### B. T. Brad Bishop

Plaintiffs present three arguments for excluding Bishop's opinion testimony. First, Plaintiffs claim that Bishop has presented legal opinions that are improper for a Rule 702 expert to present. (Doc. # 444 at 15-16). Second, Plaintiffs claim that Bishop has identified no formal or scientific methodology used to create his opinions. (*Id.* at 16). Third, Plaintiffs assert that Bishop's testimony cannot be admitted under Rule 702 because his personal experiences as a municipal judge in Hoover, Alabama are insufficient to support all of the opinions presented in his expert report. (*Id.* at 17-18).

With regard to the first argument, the court agrees with Defendants that Bishop may discuss the law to explain his own approaches and procedures for deciding issues presented to him as a municipal court judge. (Doc. # 477 at 14-15). (*See also, e.g.*, Doc. # 430-3 at 11-12) (discussing the law for indigency determinations before describing Bishop's practices). In other respects, though, Bishop's report presents testimony on legal issues that are not relevant to the class certification inquiry and are more appropriate for attorneys to argue and the court to decide. (*See, e.g.*, Doc. # 430-3 at 5-6 (discussing the legality of JCS's provision of probation supervision services); 430-3 at 22 (discussing the proper interpretation of Alabama Code § 11-45-9)). *See also United States v. House*, 684 F.3d 1173, 1209 (11th Cir. 2012) (upholding the exclusion of testimony about Georgia law because domestic law is not supposed to be presented through witnesses). Therefore, the court will not exclude Bishop's testimony about law relating to his personal experiences as a municipal court judge (*i.e.*, the standards for determining

14

indigency or the propriety of trying minors for traffic offenses in municipal court), but the court will exclude Bishop's testimony about legal issues unrelated to his experiences as a municipal court judge (*i.e.*, whether a municipal court can lawfully contract with a private probation company).

With regard to the second argument, the court concludes that Bishop's testimony is sufficiently reliable to be admitted at a class certification hearing. Bishop has served as a municipal judge and law school professor for more than 30 years. He has authored a legal treatise on Alabama municipal courts. He may be the foremost authority in Alabama on the subject of municipal court practice. Bishop relies on these professional experiences to testify about the practices and procedures of Alabama municipal courts. Although, unlike Coons, Bishop has not relied on a testable methodology for his opinions, Bishop's professional experiences are in a field where standards of scientific reliability do not apply. *See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338-39 (11th Cir. 2009) (affirming the admission of expert testimony based on the expert's personal experience from a professor who taught classes in risk management and insurance). Accordingly, the lack of a testable methodology does not foreclose the admission of Bishop's testimony.

With regard to Plaintiff's final argument, the court agrees that Bishop has not identified sufficient facts or data to support some of his opinions. Of course, Bishop has sufficient knowledge to testify about his personal experiences with JCS and municipal courts over which he presided. But, Bishop has conceded that he has no personal experience with Probation Tracker and that he has not looked at Probation Tracker outside of the documents he reviewed for this case. (Doc. # 441-4 at 62-63). Accordingly, Bishop lacks sufficient facts or data to testify about Probation Tracker records or the contents of Probation Tracker data at this time.

(*See, e.g.*, Doc. # 430-3 at 20) (discussing the lack of information in Probation Tracker that would be necessary for an indigency determination). Likewise, the court finds, at least at this time, that some of the observations in Bishop's expert report about the practices of municipal courts (such as his discussion of how proceedings were conducted at Arab's and Montgomery's municipal courts) are not supported by Bishop's personal experiences. (*See* Doc. # 441-4 at 134) (Bishop's testimony that he could not determine how municipal court judges conducted their proceedings "unless [he] was in their court to watch them"). Bishop's testimony about the practices of municipal courts other than his own is thus due to be excluded unless supported by his personal observations of those courts.

In conclusion, Bishop is an expert qualified to testify about his practices in conducting municipal court proceedings and his experiences with JCS. If he has personally observed the practices of other municipal courts, he may testify about those courts as well. And, this testimony is helpful to the class certification proceedings because it is being admitted, at a minimum, to challenge Plaintiffs' evidence of the commonality amongst putative class members and the predominance of common factual issues.

## IV. Conclusion

For the reasons explained above, Defendants' Motion to Exclude Expert Report and Affidavit of Peter Coons (Doc. # 432) is due to be denied. Plaintiffs' Motion to Strike and Exclude Defendants' Class Certification Expert - Brad Bishop (Doc. # 444) is due to be granted in part and denied in part. A separate Order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this September 20, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE