FILED

2017 Nov-17  AM 08:56
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATED DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

GINA KAY RAY, *et al.,*       )
        Plaintiffs,       )
                       )     Case No. 2:12-cv-02819-RDP
v.                      )
                       )
JUDICIAL CORRECTION     )
SERVICES, INC., *et al.,*     )
        Defendants.    )

---

## DEFENDANT CHC COMPANIES, INC.'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

F. Lane Finch, Jr.
Brian C. Richardson
**Swift, Currie, McGhee & Hiers, LLP**
2 North 20th Street, Suite 1405
Birmingham, Alabama 35203
Telephone: (205) 314-2401
Facsimile: (205) 244-1373
lane.finch@swiftcurrie.com
brian.richardson@swiftcurrie.com

*Attorneys for Defendants CHC Companies, Inc.*
*and Correct Care Solutions, LLC*

# <u>TABLE OF CONTENTS</u>

I.   Introduction .................................................................................................1

II.  Reply to Plaintiffs' Statement of Additional Undisputed Facts ............................2

III. Argument .................................................................................................11

   1. Plaintiffs' successor liability theory of recovery fails ...................................12

   A. Successor liability is not properly before this Court.................................12

   B. The successor liability claim against CHC Cos. fails ...............................12

      i. There is no express agreement between CHC Cos. and JCS
         transferring JCS's obligations to CHC Cos. ..........................................13

      ii. There was no *de facto* merger between CHC Cos. and JCS ................15

      iii. CHC Cos. is not a mere continuation of JCS .......................................16

   2. No CHC Cos. policy or practice was the moving force of the alleged
      violations .................................................................................................17

   3. Plaintiffs' "integrated enterprise" argument fails .........................................19

IV. Conclusion .................................................................................................24

# I. __INTRODUCTION__

No set of facts exist that exposes CHC Cos. to liability for the alleged constitutional violations of JCS employees.   Plaintiffs oppose the motion for summary judgment with unpled claims that are, at bottom, successor liability, veil piercing, alter ego claims.   Plaintiffs present no evidence that CHC Cos. directed the day-to-day probation services of JCS. For example, there is no evidence that CHC Cos. was involved indigency determinations, determinations regarding appointment of counsel, or a determination to place Plaintiffs in jail. There is no evidence CHC Cos. supervised JCS employees, set schedules, set conditions of employment, or trained any of the JCS probation officers. There is no evidence that the Plaintiffs had any contact whatsoever with a CHC Cos. employee.

Plaintiffs appear to rely heavily on new theories of recovery - conspiracy and successor liability - in their Response in Opposition (Doc. 577).   Neither is properly before this Court because Plaintiffs did not plead either in the Complaint.[1] Moreover, Plaintiffs fail to prove the requisite elements of either theory.[2]   The contract referenced in the conspiracy section appears to be the 2005 JCS-City contract, to which CHC Cos. was not a party.   Plaintiffs further fail to satisfy the requisite elements of a successor liability claim.

---

[1] *Buckentin v. Suntrust Mortg. Corp.*, 928 F.Supp.2d 1273, 1281 (N.D. Ala. 2013).
[2] Doc. 305.

1

## II.   REPLY TO PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS

Plaintiffs' "Statement of Undisputed Facts" 1-44 are similar to the facts in their opposition to JCS's motion for summary judgment (Doc. 567 at CM/ECF pp. 13-25, ¶ 1-44) as to the Fugatts' claims.  CHC Cos. adopts the responses JCS (Doc. 584 at CM/ECF, pp. 3-9) and CCS, LLC's responses and further states:

1.   Disputed in part and immaterial.  Plaintiffs' cited authority does not support the allegations, so those allegations and/or characterizations are disputed.[3]

2.   Disputed in part.  The date of the signing of the contract is wrong, as it was sent from the City to JCS for JCS to sign on June 30, 2005.[4]

3.   The court had judicial discretion to order collection of fees.[5]  The JCS-City contract shows probation fees were not to be charged to probationers the judge found to be indigent.[6]

4-10.      Not disputed and immaterial.

11.   JCS was obligated to follow the court orders.[7] JCS's Lisha Kidd had no knowledge of blank orders that had not been signed and had no adjudication of any kind.[8]   The citation to Doc. 195-3 is immaterial as it does not relate to the named Plaintiffs and Doc. 392-58 is signed by Judge Ward.

12-13.      Not disputed and immaterial.

---

[3] *See, e.g.*, Doc. 392-11 at 192:16 ("[W]e don't actively market anybody.").
[4] Doc. 392-16 at p. 2.
[5] Doc. 392-16, p. 4, ¶ 5; Doc. 406-12; Doc. 431-4, ¶ 13.
[6] Doc. 392-16, p. 4.
[7] Doc. 537-11 at p. 103:12-23, p. 105:2-23, p. 567:16-20; Doc. 537-13 at p. 92:11-17, p. 149:5-14.
[8] Doc. 471-1 at p. 520:2-8.

14.    Disputed and immaterial.  Plaintiffs cite to an email, which was sent after Plaintiffs' claims for alleged constitutional violations against JCS.  Plaintiffs improperly imply that Colleen Ray stated that all JCS probationers are placed on probation for inability to pay fines and costs at the time of adjudication.

15-16.    Not disputed.

17.    Gina Ray and Deunate Jews do not raise any allegations against CHC Cos. for its own misconduct or constitutional violations.  Paragraphs 17-40 of Plaintiffs' Undisputed Facts are largely immaterial as to CHC Cos. because most of these facts pre-date the September 2011 Agreement and Plan of Merger ("2011 Agreement") and January 2013, the date when CHC Cos. assumed certain back office functions for JCS.

18-19.    Not disputed and immaterial.

20.    Disputed and immaterial as CHC Cos. had no control over adjudication of tickets.  The probation orders contradict the cited documents.[9]

21.    The documents do not address the Fugatts' ability to pay.

22.    CHC Cos. does not dispute that Doc. 392-65 at p. 5 shows a clerical error.  These allegations are immaterial because they were not raised by the Fugatts in the Complaint.[10]

23.    Disputed in part.  The cited document says nothing about Mr. Fugatt's

---

[9]  Doc. 537-22;  Doc. 537-21.
[10]  Doc. 305, pp. 14-17.

inability to pay and nothing about who determined the monthly payment amounts.

24.     Disputed in part and immaterial.  The Fugatts' deposition testimony contradicts the cited documents.  Neither Mr. or Mrs. Fugatt could recall receiving any phone calls or threats from JCS.[11] Neither had any reliable recollection of receiving mail from JCS.[12]

25.     Not disputed the City's records show the court costs were paid off.

26.     Disputed in part and immaterial.  The characterization that JCS "inflated" any balance is disputed.  The allegations are immaterial because they were not raised by the Fugatts in their Complaint.[13]

27.     Disputed that the records were "false." The allegations are immaterial because they were not raised by the Fugatts in their Complaint.[14]

28.     Not disputed that JCS sent hearing notices to the Fugatts.

29.     Disputed in part.   The City prosecutor filed the Petition for Revocation of Probation, not JCS.[15]  CHC Cos. admits that the Fugatts did not attend the hearing they were ordered to attend.  The cited document does not support the allegation that JCS was untruthful about the conduct of the Fugatts.

30.     Not disputed.

31.     Disputed that JCS ordered the hearing in August 2011.   Judge Ward,

---

[11] Doc. 551-50 at pp. 101:23-102:3, pp. 286:16-287:1; Doc. 551-47 at p. 157:7-13.
[12] Doc. 551-50 at p. 108:14-22, pp. 109:21-110:4, p. 111:8-11, pp. 112:19-113:2, pp. 200:21-201:10, p. 201:16-19, p. 204:19-20, p. 205:9-13, p. 206:8-9, p. 208:9-15; Doc. 551-47 at pp. 241:16-246:9.
[13] Doc. 305, pp. 14-17.
[14] Doc. 305, pp. 14-17.
[15] Doc. 548-38.

signed the Petition for Revocation of Probation, not JCS.[16]

32.     Disputed in part and immaterial.   The Fugatts have offered no authority indicating that warrant fees are "unauthorized."

33.     Disputed in part and immaterial.   The Fugatts' testified that they were not placed in jail.[17]

34.     Disputed in part.   The documents do not reflect that there was no court order, plea, or adjudication of guilt.   JCS did not put Mr. Fugatt on probation and did not participate in that decision.   Mr. Fugatt was apparently present when the ordered was entered and signed the probation order.

35.     Disputed.   The documents do not support the allegation that JCS "requested" that the Fugatts be arrested or that any charge was not adjudicated. Doc. 392-65 shows a court order signed by the judge and Mr. Fugatt.

36.     Disputed and immaterial.   The Fugatts make no allegations concerning this in their Complaint and the cited testimony does not support the allegations of this paragraph.[18]

37-38.     Disputed and immaterial.   The Fugatts do not plead these allegations in their Complaint.[19]   JCS did not place Mrs. Fugatt on probation and

---

[16] Doc. 548-38.
[17] Doc. 551-50 at pp. 133:9-134:17; Doc. 551-47 at pp. 191:9-192:4.
[18] Doc. 305.
[19] Doc. 305.

the cited document does not reflect that it did.[20]  The probation order for the other person's ticket was put on hold because Mrs. Fugatt was already under another probation order, and she never made payments for the other person's ticket.[21]

39.    Immaterial as these allegations do not relate to the named Plaintiffs.

40.    Since prior to January 2013, the Fugatts have made no payments to JCS and have had no contact with JCS regarding their Childersburg related cases.[22]

41.    The terms of the 2011 Agreement speak for themselves.[23]

42.    Not disputed that Houston testified as stated.[24]

43.    Disputed in part.  JCS was not a division of CHC Cos. and, instead, was a separate entity both legally and operationally.[25]

44.    Disputed. The cited documents do not show JCS employees on CHC Cos. payroll prior to 2013.[26]   JCS employees did not become CHC Cos. employees.[27]

45.    JCS reported financial performance to Houston.[28]  He did not oversee the day-to-day operations of JCS.[29]

46.    Not disputed that Houston participated in planning the integration of

---

[20] Doc. 569 at 6 ("JCS only provided probation services when probation was mandated by a municipal court order." (citing Doc. 392-2 at 107)).
[21] Doc. 537-41, pp. 2-3.
[22] Doc. 551-49; Doc. 551-47 at pp. 327:16-328:7; Doc. 551-50 at pp. 407:17-408:4.
[23] Doc. 551-3.
[24] Doc. 551-5.
[25] Doc. 551-3;  Doc. 551-5;  Doc. 551-4 at p. 124:3-12.
[26] Doc. 551-7;  Exhibit A, January 18, 2013 e-mail;  Doc. 551-4 at p. 36:7-10.
[27] Doc. 551-4 at p. 36:3-6.
[28] Exhibit B, April 9, 2012 and April 16-17, 2012 e-mails.
[29] Doc. 551-4 at p. 90:9-12;  Exhibit C, September 4, 2014 e-mail with JCS Organizational Chart.

JCS and CHC Cos., which was never completed.[30]

47.    Not disputed that certain indemnification provisions were redacted. The 2011 Agreement identifies JCS as the successor to "all assets, rights, privileges, ... liabilities, ... and duties of, the Company and Merger Sub...."[31]

48.    Houston was never responsible for day-to-day operations.[32]   Houston was responsible for the financial performance of JCS.[33]   After the merger, Dennis Moon became COO of JCS.[34]   After Moon, JCS employee Karen Lloyd was the Director of Operations for JCS and was responsible for hiring and firing.[35]   There is no evidence that Houston signed any lease on behalf of JCS prior to 2014.[36]

49.    Houston was not responsible for the operations of JCS.[37]   The "JCS operations" cited to by Plaintiffs were financial performance issues.[38]

50.    The Securities Exchange Agreement is the subject of the June 13, 2014 letter which clearly shows CCS, LLC was not a party to the Agreement.  Not disputed that Houston testified that he is the president of State and Federal division of CCS.  Houston testified that he still had a CHC Cos. title of CEO.[39]

51.    Not disputed and immaterial that CHC Cos., JCS, and CCS, LLC have

---

[30] Doc. 551-4 at pp. 35:16-36:2, p. 88:8-15.
[31] Doc. 551-3.
[32] Doc. 551-4 at p. 90:9-12; Exhibit C.
[33] Doc. 551-4 at pp. 58:10-59:7.
[34] Doc. 551-4 at p. 99:4-12.
[35] Exhibit C; Doc. 551-4 at p. 58:2-4.
[36] Exhibit D, February 26, 2014 e-mails and March 24, 2014 e-mail; Doc. 551-4 at pp. 101:20-102:3.
[37] Doc. 551-4 at p. 90:9-12, p. 124:3-7; Exhibit C.
[38] Doc. 551-4 at p. 116.
[39] Doc. 551-4 at pp. 36:17-37:4.

similar officers.

52.     Disputed and immaterial.  Karen Lloyd and Colleen Ray signed non-compete agreements on February 11, 2015, for employer CCS Intermediate Holdings, LLC.[40]  By that time, the Plaintiffs were not on probation with JCS.

53.     Disputed in part and immaterial.  The cited documents do not support Plaintiffs contention that CCS, LLC controlled CHC Cos. policy after "CHC and CCS came together."[41]

54.     Disputed and immaterial.  While Houston may now be paid by CCS, LLC, from 2013 to 2015, he was paid by CHC Cos.[42]

55.     Not disputed and immaterial.

56.     Disputed in part and immaterial.  CCS, LLC did not control hiring and firing and Plaintiffs' cited no authority supporting this contention.  CHC Cos. and CCS, LLC never "joined."  Not disputed and immaterial that CCS, LLC, JCS, and CHC Cos. shared HR, legal, and compliance company-wide in 2015.[43]

57.     Disputed and immaterial.  The documents cited do not support these allegations.[44]

58.     Disputed.  Houston consulted with the JCS management team, finance

---

[40] Doc. 428-4, pp. 2-11.
[41] Doc. 551-7; Doc. 428-4, pp. 17-19.
[42] Doc. 428-4, pp. 17-19.
[43] Doc. 551-4 at p. 53:4-22.
[44] Doc. 551-4 at p. 88:8-15.

team, legal division, and HR.[45]

59.     Not disputed.

60.     Disputed.   The evidence cited by the Plaintiffs do not support the allegations in this paragraph.   After the merger, Dennis Moon became COO of JCS.[46]   After Moon, JCS employee Karen Lloyd was the Director of Operations for JCS and was responsible for hiring and firing.[47]   JCS employees did not become employees of CHC Cos.[48]

61.     Not disputed.

62.     Not disputed that Don Houston testified as stated.

63.     Plaintiffs' characterization of the transaction is disputed.   The terms of the 2011 Agreement speak for themselves.[49]

64.     Disputed   and   immaterial.     Plaintiffs'   characterization   of   the transaction is disputed.   The document "merging" CHC and CCS is the 2014 Agreement between CCS Group Holdings, LLC and Jessamine Healthcare Holdings, LLC.[50]   CCS, LLC was not a party to this agreement.[51]   None of the organizational charts place JCS or CHC Cos. as a division under CCS, LLC.[52] This   allegation   is   immaterial   as   it   occurred   16   months   after   any   alleged

---

[45] Doc. 551-4 at pp. 189:20-190:18.
[46] Doc. 551-4 at p. 99:4-12.
[47] Exhibit C; Doc. 551-4 at p. 58:2-4.
[48] Doc. 551-4 at p. 36:3-6.
[49] Doc. 551-3.
[50] Doc. 548-8.
[51] Doc. 548-8.
[52] Exhibit E, Organizational Charts.

constitutional violations.

65.     Houston remained responsible for monitoring JCS's financial performance.[53]

***

The following paragraphs are in response to the section titled JCS/CHC Integration Timeline:

**Sept. 30, 2011:**  The documents cited do not support Plaintiffs' allegation as to non-compete agreements.

**Oct. 12, 2011:**     Not disputed that new JCS officers were put in place that were the same as, or similar to, the CHC Cos. officers.

**Dec. 26-27, 2011:**  Disputed.  JCS employees Dennis Moon and then later Karen Lloyd were responsible for terminating JCS employees.[54]

**Jan. 31, 2012:**  The cited document states that they are kicking off the "integration" plan.  There is no mention as to when actual "integration" would commence or be completed, only that they are kicking off the plan.

**June 2, 2012:**  Not disputed that Houston wrote this email as stated.

**Oct. 26, 2012:**  Not disputed that Colleen Ray of JCS asked Kevin Egan of JCS whether the contract has to be sent to CHC.

**Dec. 2012:**  The cited document does not support Plaintiffs' allegation.

---

[53] Doc. 551-4 at p. 58:10-59:7.
[54] Exhibit C; Doc. 551-4 at p. 58:2-4, p. 99:4-12; Exhibit F, February 12, 2014 e-mail.

**Jan. 2013:**   Not disputed that CHC Cos. monitored budgetary items for JCS starting in and around January 2013. Immaterial as all Plaintiffs' alleged contact and dealings with JCS occurred prior to this date.

**Feb. 5, 2013 & Mar. 15, 2013:** Not disputed and immaterial.

**Nov. 6, 2013:**   Disputed and immaterial.  Houston was never responsible for day-to-day operations.[55]   JCS employees Dennis Moon and Karen Lloyd were responsible for hiring and firing JCS employees.[56]

## III.   ARGUMENT

Plaintiffs' opposition to this motion for summary judgment is based on three premises:

1.   CHC is liable as a successor to JCS.[57]

2.   CHC is an integrated enterprise and single employer.[58]

3.   CHC controlled JCS after its acquisition on September 30, 2011.[59]

All premises are disguised alter ego theories against CHC Cos. However, that theory is not pled in the complaint. In fact, plaintiffs disclaimed that theory: Plaintiffs do not seek to pierce the corporate veil and are not asserting an alter ego theory against Correct Care Solutions, LLC or CHC Companies, Inc.[60]

Plaintiffs' inability to prevail under their sole theory against CHC Cos.

---

[55] Doc. 551-4 at p. 90:9-12; Exhibit C; Doc. 551-4 at pp. 58:10-59:7.
[56] Exhibit C; Doc. 551-4 at pp. 58:2-59:7.
[57] Doc. 577, pp. 29-31.
[58] *Id.*, pp. 31-34.
[59] *Id.*, pp. 34-49.
[60] Doc 270, p. 4 ("'Veil piercing' is simply not alleged.").

(respondeat superior) is underscored by their repeated assertion of different legal theories that were not plead.[61]

**1.   Plaintiffs' successor liability theory of recovery fails.**

**A.   Successor liability is not properly before this Court.**

Successor liability was not pled in the Complaint (Doc. 305) and is not properly before this Court.[62]   The "liberal pleading standard for civil complaints does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage."[63]   "[A] district court's consideration of any critical amendment asserted merely as part of the briefing process is disfavored."[64]

Plaintiffs successor liability argument should be stricken as that claim is not properly before the Court. Even if not stricken, the successor liability argument has no merit.

**B.   The successor liability claim against CHC Cos. fails.**

There is no evidence that CHC Cos. is the successor to JCS.  "As a general rule, a purchasing corporation is not liable for the debts and liabilities of the selling

---

[61] *See, e.g.,* CHC Cos.'s Memorandum Brief In Support Of Motion For Summary Judgment, Doc. 550, pp. 2-4 (Plaintiffs affirmatively denied a claim based on piercing the corporate veil and asserted; Plaintiffs claim is "that CHCC and CCS 'employs and/or directs employees in the JCS operations"), citing Doc. 270, p. 2, citing Doc. 256,¶¶ 13, 14.

[62] *See Andrews v. John E. Smith's Sons Co.*, 369 So. 2d 781 (Ala. 1979) (affirming summary judgment for defendants on the theory of recovery for successor liability which was omitted from the complaint).

[63] *Buckentin*, 928 F. Supp. 2d at 1281.

[64] *King v. CVS Caremark Corp.*, 2 F. Supp. 3d 1252, 1272 (N.D. Ala. 2014) ("precedent precludes a plaintiff from amending its complaint "through argument at the summary judgment phase of proceedings.") (quoting *Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227-28 (11th Cir. 2013) (holding that *Flintlock* procedurally foreclosed the plaintiff from belatedly attempting to amend his complaint in any critical manner)).

corporation."[65]  The exceptions are as follows:

> [Where] (1) there is an express agreement to assume the obligations of the transferor, (2) the transaction amounts to a *de facto* merger or consolidation of the two companies, (3) the transaction is a fraudulent attempt to escape liability, or (4) the transferee corporation is a mere continuation of the transferor.[66]

Plaintiffs argue that exceptions (1), (2), and (4) apply and cite *Clardy v. Sanders* as support.  *Clardy* involved a sole proprietorship (Clardy Realty) that ceased to exist after it was incorporated as Clardy Realty, Inc.[67]  There was no business succession in the instant case.  "If there is business succession, then in effect the plaintiff is suing the 'same' business that [committed] the original [culpable conduct]."[68]  It is undisputed that JCS remained a separate existing entity following the 2011 Agreement with CHC Cos. and still operates in Florida and Georgia.  Furthermore, none of the exceptions apply.

### i.     There is no express agreement transferring JCS's obligations to CHC Cos.

Exception (1) does not apply because there is no express agreement between JCS and CHC Cos. for CHC Cos. to assume the obligations of JCS.

Plaintiffs allege that the 2011 Agreement transferred JCS' obligations to CHC Cos., but it did not.  The 2011 Agreement does not "merge" JCS into the

---

[65] *Asher v. KCS Int'l*, 659 So. 2d 598, 599 (Ala. 1995) (citing *Matrix-Churchill v. Springsteen*, 461 So. 2d 782 (Ala. 1984)).
[66] *Id.*
[67] 551 So. 2d 1057, 1059-60 (Ala. 1979).
[68] *Clardy*, 551 So. 2d at 1061.

operations of CHC Co., Inc. and did not subject CHC Cos. to liability for "obligations" of JCS.  Section 2.1 of the 2011 Agreement states as follows:

> From and after the effective time the **Surviving Company** shall succeed to all the assets, rights, privileges, powers and franchises of, and to be subject to all of the liabilities, restrictions, disabilities and duties of the **Company** and **Merger Sub**, all as provided under the Delaware Act.[69]

*CHC Co., Inc. is not the "Surviving Company."* The parties to the 2011 Agreement are defined as follows:

> THIS AGREEMENT AND PLAN OF MERGER (this "Agreement") is made as of September 30, 2011 by and among CHC Companies, Inc., a Delaware corporation ("Purchaser"), Judicial Merger Sub, Inc., a Delaware corporation and a wholly-owned subsidiary of Purchaser ("Merger Sub"), Judicial Correction Services, Inc., a Delaware corporation (the "Company"), Jarrett Gorlin, an individual resident of Georgia ("Seller") and Jarrett Gorlin, an individual resident of Georgia, as agent for the Company Stockholders (the "Stockholder Representative").[70]

Thus, the "Purchaser" is CHC Co., Inc., the "Merger Sub" is Judicial Merger Sub, Inc., and the "Company" is JCS.  The "Surviving Company" is identified in Section 2.1:

> Merger Sub [JCS Merger Sub, Inc.] shall merge with and into the Company [JCS, Inc.] (the "Merger") in accordance with the Delaware General Corporation Law (the "Delaware Act"), whereupon the separate existence

---

[69] Doc. 551-3 at p. 2, emphasis added.
[70] Doc. 551-3 at p. 1.

> of Merger Sub shall cease, and the Company [JCS, Inc.]
> shall be the surviving corporation (the "Surviving
> Corporation")....[71]

As a result, JCS, **not CHC Cos. or CCS, LLC**, succeeded to all the assets,
rights, privileges, powers, liabilities, restrictions, disabilities and duties of JCS and
Judicial Merger Sub, Inc. After the merger, JCS and CHC Co., Inc. remained two
separate entities, both operationally and legally, and both entities still operate
today.  Thus, the first exception is not met.

### ii.    There was no *de facto* merger between CHC Cos. and JCS.

Exception (2) does not apply because the 2011 Agreement does not create a
*de factor* merger.[72]  Under Delaware law:

> A traditional merger ... involves two or more entities
> existing under Delaware law merging into a single
> corporation. Typically, the selling entity is merged into
> the purchasing entity and ceases to exist. The elements
> necessary to create a ***de facto merger*** under Delaware
> law are the following: (1) one corporation transfers all of
> its assets to another corporation; (2) payment is made in
> stock, issued by the transferee directly to the shareholders
> of the transferring corporation; and (3) in exchange for
> their stock in that corporation, the transferee agreeing to
> assume all the debts and liabilities of the transferor.[73]

As discussed above and in the motions for summary judgment, JCS and
CHC Cos. still exist and CHC Cos. did not assume the debts and liabilities of

---

[71] Doc. 551-3 at p. 2.
[72] The 2011 Agreement is subject to Delaware law.  Doc. 551-3, p. 50, Section 14.11.
[73] *Magnolia's at Bethany, LLC v. Artesian Consulting Eng'rs, Inc.*, 2011 Del. Super. LEXIS 435, *7 (Del. Super. Ct. 2011).

JCS.[74]  Thus, there was no *de facto* merger and exception (2) fails.

### iii.   <u>CHC Cos. is not a mere continuation of JCS.</u>

Exception (4) does not apply because CHC Cos. is not a mere continuation of JCS.  Alabama "adopted a four-factor test for determining whether a purchasing corporation is a mere continuation of the selling corporation."[75]   All four factors must be satisfied to hold a successor company liable.[76]

> (1) There was basic continuity of the enterprise of the seller corporation, including, apparently, a retention of key personnel, assets, general business operations and even the [seller's] name.
>
> (2) The seller corporation ceased ordinary business operations, liquidated, and dissolved soon after distribution of consideration received from the buying corporation.
>
> (3) The purchasing corporation assumed those liabilities and obligations of the seller ordinarily necessary for the continuation of the normal business operations of the seller corporation.
>
> (4) The purchasing corporation held itself out to the world as the effective continuation of the seller corporation.[77]

Plaintiffs state that this exception is met but fail to consider the required factors.  There is no evidence that factors (2), (3), and (4) are satisfied. JCS still operates today and continued operating as it did prior to the 2011 Agreement.

---

[74]  Doc. 550, pp. 5-8.
[75] *Asher v. KCS, Int'l*, 659 So. 2d 598, 599 (Ala. 1995).
[76] *Asher*, 659 So. 2d at 599.
[77] *Id.* at 599-600 (citations omitted).

CHC Cos. did not assume JCS's debts and liabilities as a result of the 2011 Agreement. There is no evidence CHC Cos. held itself out as a mere continuation of JCS and JCS probation officers maintained JCS titles. Thus, exception (4) does not apply.

Therefore, Plaintiffs' successor liability argument fails and the claims against CHC Cos. are due to be dismissed.

## 2.    No CHC Cos. policy or practice was the moving force of the alleged violations.

Plaintiffs argue that "[a]fter its purchase of JCS, the transfer of its assets, CHC succeeded to its liabilities and continued control of the entire process. Thus, the requirements for state action are satisfied."[78] As shown above, CHC Cos. did not succeed to JCS's liabilities. Furthermore, CHC Cos. did not "control ... the entire process." Plaintiffs' fail to present admissible evidence to establish that allegation. CHC Cos. did not train JCS employees on how to use Probation Tracker, how to manage the probation cases, how to communicate with the individuals placed on probation by the judge, or how to interact with the court. JCS employees trained its probation officers on these functions and supplied its employees with training material.[79] CHC Cos.'s role was that of any parent company over its subsidiary.

---

[78] Doc. 577, p. 29.
[79] Doc. 537-13 at pp. 54:23-56:2, pp. 61:16-62:9, pp. 64:12-65:2; Doc. 551-12 at pp. 45:20-46:2, pp. 47:12-48:9; Doc. 579-5 at p. 31:2-9, p. 93:3-4.

Plaintiffs fail to show why CHC Cos. should be liable for JCS employees' alleged constitutional violations under Section 1983.[80]  Plaintiffs and CHC Cos. agree that JCS was performing a governmental function.[81]  Yet Plaintiffs have no evidence of a CHC Cos. custom or policy that endorses a constitutional violation.[82] To the extent Plaintiffs claim the 2005 contract between the City and JCS is the policy or custom, CHC Cos. was not a party to that contract and this Court has already determined that the contract did not proximately cause the probation terms, procedures, arrests, or imprisonment of the Plaintiffs.[83] Plaintiffs have pointed to no other policy or contract.

To the extent the Plaintiffs alleged that the 2011 Agreement constituted the custom or policy this argument fails as well.  The Eleventh Circuit held that "a court must carefully test the link between the policymaker's [supposedly] inadequate decision and the particular injury alleged.[84]  In other words, *Monell* liability "cannot depend on the scant likelihood that [a County's] budget decisions would trickle down the administrative facets and deprive a person of his constitutional rights."[85]  Instead, "liability must be premised on a finding that 'this'

---

[80]  Instead, Plaintiffs merely argue that they are not raising a *respondeat superior* claim against CHC Cos.

[81]  All allegations against CHC Cos. are derived from conduct performed by JCS employees.

[82]  *Craig v. Floyd Cnty.*, 643 F. 3d 1306, 1310 (11th Cir. 2011) (quotation omitted).

[83]  Doc. 569, p. 33.

[84]  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (The Court reasoned that such rigorous scrutiny is necessary because, in a sense, every injury suffered at the hands of a public employee can be traced to a budget decision; that thus, "[w]hile it may be true that the ... budget decision would make a violation of ... constitutional rights 'more likely,'" that does not mean that the budgetary decision "produced a specific constitutional violation." *Id.* (quoting *Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 411 (1997)).

[85]  *Id.*

budget decision was 'highly likely to inflict the *particular injury*'" at issue.[86] There is simply nothing in the allegations, the 2011 Agreement, or any CHC Cos. policy or custom that would expose it to liability.  Plaintiffs' opposition brief fails to identify a specific decision by CHC Cos., Inc. that was "highly likely to inflict" a "particular injury." They simply failed to link the chain. They do not show a specific decision highly likely to inflict a specific injury.  Therefore, their claim fails as a matter of law.

### 3.      Plaintiffs' "integrated enterprise" argument fails.

Plaintiffs' reliance on the "integrated enterprise" theory to establish liability for CHC Cos. is misplaced.  The "integrated enterprise" analysis as applied in *Keenan v. Matchmaker International, Inc.* applied to employment discrimination actions for purposes of aggregating employees of related entities to bring the entity within the parameters of the ADEA, ADA, and Title VII.[87]  In the instant case, the alleged liability of CHC Cos. is based on the purported unconstitutional conduct of JCS employees to non-employees.  *United States v. Bestfoods*, 524 U.S. 51

---

[86] *Id.*

[87] 1999 U.S. Dist. LEXIS 795 (S.D. Ala. 1999).  *Keenan* involved an employee's discrimination claim against her employer, MMI Mobile, pursuant to the Age Discrimination in Employment Act.  1999 U.S. Dist. Lexis 795, *13-15.  "The integrated enterprise or single employer theory is a twist on the concept of piercing the corporate veil" and utilized to determine whether parent and subsidiary companies can be treated as one entity for purposes of aggregating employees in employee discrimination cases.  *Id.* The Court applied the integrated enterprise test and held that the plaintiff failed to satisfy the elements of the test in her ADEA claim. *Keenan*, 1999 U.S. Dist. LEXIS 795, *13-15 (holding that the plaintiff failed to establish that the corporate form was a sham).  *See also Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763-64 (5th Cir. 1997).

(1998),[88] and *Johnson Enterprises of Jacksonville v. FPL Group*, 162 F.3d 1290 (11th Cir. 1998), are instructive and identify factors which, when considered, fail to establish CHC Cos.'s exposure for JCS probation activities.

In *Johnson Enterprises of Jacksonville*, FPL Group, Inc. ("Group") acquired all the common stock of Telesat in 1985 and subsequently formed FPL Group Capital, Inc. ("Capital") as a wholly-owned subsidiary and transferred all its shares in Telesat to Capital.[89] Prior to Group's acquisition, Telesat was a private cable company.[90] In August 1986, Telesat and Johnson Enterprise of Jacksonville, Inc. ("JEJ") entered into a contract for an indefinite term and which was subject to cancellation by either party.[91] In July 1988, a dispute arose between Telesat and JEJ due to damage to a sprinkler system on a townhouse development and, in April 1989, Telesat sent JEJ a contract termination letter.[92]

JEJ brought a lawsuit against Telesat, Capital, and Group alleging violations of state and federal RICO claims, tort claims, and contract claims.[93] At trial, the judge entered a judgment as a matter of law as to nine of the claims and the jury returned a verdict in favor of JEJ on the remaining claims.[94] All parties appealed.[95]

---

[88] Although the Court was evaluating a parent-subsidiary relationship in the context of pollution and liability under CERCLA, the general principles of corporate law is applicable.
[89] 162 F.3d at 1296.
[90] *Id.* at 1297.
[91] *Id.*
[92] *Id.* at 1299-1300.
[93] *Id.* at 1295, 1300-1301.
[94] *Id.*
[95] *Id.*

On appeal, JEJ argued that Capital was Telesat's parent company, financed construction, and shared officers with Telesat, Group, or both.[96]   The Eleventh Circuit affirmed the district court's dismissal of the claims against Capital stating that "the evidence JEJ cites merely demonstrated that Capital provided its wholly-owned subsidiary with funding and, as prudence would require, thereafter monitored its subsidiary's use of the funds.   Capital's conduct could hardly be labeled 'wrongful.'"[97]   As to Group, the Eleventh Circuit reversed the judgment for JEJ in its entirety and dismissed the claim noting that:

> Corporations are legal entities by fiction of law.   Their purpose is generally to limit the liability and serve a business convenience.   Courts are reluctant to pierce the corporate veil and only in exceptional cases will they do so.   Such instances are for fraud as where creditors are misled and defrauded or where the corporation is created for some illegal purpose or to commit an illegal act.[98]

While Plaintiffs claim some of JCS's probation activities were wrongful, ***CHC Cos.'s conduct*** could hardly be labeled "wrongful." Thus, under the authority of Johnson Enterprises, Plaintiffs' claims against CHC Cos. fail.

In *Bestfoods*, the U.S. Supreme Court considered whether a parent corporation that actively participated in, and exercised control over, the operations of a subsidiary may, without more, be held liable as an operator of a facility owned

---

[96] *Id.* at 1320.
[97] *Id.*
[98] *Id.*  (Applying these principles, the Eleventh Circuit concluded that the Plaintiff "failed to make out a case for the jury on its claim that [the parent company] should be held liable for [the subsidiary's] actions. (citations omitted)).

or operated by the subsidiary.  The Court held that the parent company was not liable unless the corporate veil was pierced or the parent company was directly liable as an operator of the facility based on its participation and control of the operations of that facility itself.[99]  The Supreme Court stated:

> It is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries. Thus it is hornbook law that "the exercise of the 'control' which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary. That 'control' includes the election of directors, the making of by-laws ... and the doing of all other acts incident to the legal status of stockholders. Nor will a duplication of some or all of the directors or executive officers be fatal."[100]

In the instant case, Plaintiffs assert with scant proof that after the 2011 Agreement, CHC Cos. controlled JCS payroll, handled HR for JCS, controlled hiring and firing, used the same officers and directors, and controlled JCS finances.[101]  In contrast to the argument, Plaintiffs only provide evidence that from October 2011 to December 2012, CHC Cos. purchased the JCS stock, monitored JCS's financial performance, had similar officers as JCS, and had aspirational plans to integrate JCS into CHC Cos. Plaintiffs' evidence further shows that beginning around January 2013, CHC Cos. started acting as JCS's paymaster and

---

[99] *Bestfoods*, 524 U.S. at 55.
[100] *Id.* at 61-62 (internal citations omitted).
[101] Doc. 577, pp. 34-35

handled back office functions for JCS, like payroll and legal.[102]  Such activities are insufficient to expose CHC Cos. to direct or indirect liability for allegedly unconstitutional performance of probation activities by JCS employees.[103]

Plaintiffs assert evidence showing CHC Cos. and JCS maintained common officers somehow proves the control CHC Cos. held over JCS.  At the risk of following this rabbit down the veil piercing/alter ego trail, CHC Cos. points out it is not uncommon for parent and subsidiary corporations to have the same officers and such an arrangement does not establish liability for the parent company.[104] Plaintiffs allege that CHC Cos. is liable for JCS employee conduct because CHC Cos. monitored JCS's performance, finance, and budgetary decisions.  However, they utterly fail to show – legally or factually – how such monitoring is not enough to establish liability for JCS employees' purported constitutional violations.[105]

There is simply no evidence that CHC Cos. controlled the day-to-day JCS probation activities, which is the critical determination.  There is no evidence that

---

[102] Plaintiffs' allegations that CHC Cos. performed JCS employees reviews are unfounded and unsupported by any evidence in this case.  *See Enzo BioChem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence.").

[103] *See, e.g., Bestfoods*, 524 U.S. at 69. ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." (internal citations omitted)).

[104] *See id.* at 69-70 ("This recognition that the corporate personalities remain distinct has its corollary in the "well established principle [of corporate law] that directors and officers holding positions with a *parent* and its *subsidiary* can and do 'change hats' to represent the two corporations separately, despite their common ownership."  Since courts generally presume "that the directors are wearing their '*subsidiary*' hats' and *not* their '*parent* hats' when acting for the *subsidiary* it cannot be enough to establish liability here that dual officers and directors made policy decisions and supervised activities at the facility...." (internal citations omitted)).

[105] *See id.* ("Activities ... consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability.").

CHC Cos. trained the JCS employees on how to perform the probationary practices, duties, and tasks.   CHC Cos. monitored no probationers, had no involvement with making indigency determinations, or setting guidelines for how to handle probation cases.   All the training manuals are JCS materials and all probation-related training was performed by JCS employees.[106]  Furthermore, there are no allegations or evidence that any party was misled into believing it was dealing with CHC Cos., instead of JCS.

There is no causal connection between Plaintiffs' purported injuries and specific activities of CHC Cos.  Furthermore, there are no allegations or evidence that JCS collected any fees, sent any letters, made any phone calls, revoked any probation, threatened the Plaintiffs, prevented the Plaintiffs from obtaining counsel, or did any other activity that somehow violated the Plaintiffs' constitutional rights on or after January 2013.  Thus, the claims against CHC Cos. are due to be dismissed.

## IV.   <u>CONCLUSION</u>

Plaintiffs oppose the motion for summary judgment with unpled claims that are, at bottom, successor liability, veil piercing, alter ego claims.  Plaintiffs failed offer the Court evidence or legal authority sufficient to impose liability on CHC Cos., Inc. for the probation activities of JCS employees-even if those employees

---

[106] JCS employee Karen Lloyd was the Operations Manager for JCS in 2014.  Exhibit C.

were dual employees of CHC Cos. and JCS.  The only thing Plaintiffs have proven is CHC Cos., Inc.'s role as a common paymaster and centralization of certain benefits for its subsidiary JCS.  Under *Peppers v. Cobb County, Georgia*, 835 F.3d 1289 (11th Cir. 2016), that does not constitute employment of the JCS employees by CHC Cos.[107]

Plaintiffs also failed to make a persuasive argument that *Monell* does not defeat their claims against CHC Cos. For example, they utterly failed to show an action or decision by CHC Cos. that was highly likely to inflict any particular injury at issue.

For these reasons stated above and in CHC Cos.'s Motion for Summary Judgment, CHC Cos. respectfully submits that it is entitled to judgment as a matter of law on all the Plaintiffs' claims.

DATED:  November 17, 2017         */s/ F. Lane Finch, Jr.*
　　　　　　　　　　　　　　　　　F. Lane Finch, Jr. (ASB-0027-I58F)
　　　　　　　　　　　　　　　　　Brian C. Richardson (ASB-5241-H14U)
　　　　　　　　　　　　　　　　　*Attorneys for CHC Companies, Inc. and*
　　　　　　　　　　　　　　　　　*Correct Care Solutions, LLC*

**OF COUNSEL:**
**SWIFT, CURRIE, MCGHEE & HIERS, LLP**
2 North 20th Street, Suite 1405
Birmingham, AL 35203
T: (205) 314-2401
F: (205) 244-1373
lane.finch@swiftcurrie.com
brian.richardson@swiftcurrie.com

---

[107] *See*, Doc. 550, pp. 25-29.

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2017, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of filing to the following:

G. Daniel Evans, Esquire
gdevans@evanslawpc.com
Alexandria Parrish, Esquire
ap@evanslawpc.com
D. Patrick Evans, Esquire
dpevans@evanslawpc.com

Erwin Chemerinsky, Esquire
echemerinsky@law.uci.edu

Robert L. Wiggins, Jr., Esquire
rwiggins@wigginschilds.com

Wilson F. Green, Esquire
wgreen@fleenorgreen.com

Michael L. Jackson, Esquire
mjackson@wallacejordan.com
Larry S. Logsdon, Esquire
llogsdon@wallacejordan.com

John N. Bolus, Esquire
jbolus@maynardcooper.com

James W. Porter, II, Esquire
jwporterii@pphlaw.net
R. Warren Kinney, III, Esquire PC
wkinney@pphlaw.net

_____ */s/ F. Lane Finch, Jr.* _____
OF COUNSEL

26