FILED
2017 Nov-17  AM 09:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATED DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| GINA KAY RAY, *et al.,* | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 2:12-cv-02819-RDP |
| v. | ) | |
| | ) | |
| JUDICIAL CORRECTION | ) | |
| SERVICES, INC., *et al.,* | ) | |
| Defendants. | ) | |

---

## DEFENDANT CORRECT CARE SOLUTIONS, LLC'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

F. Lane Finch, Jr.
Brian C. Richardson
**Swift, Currie, McGhee & Hiers, LLP**
2 North 20th Street, Suite 1405
Birmingham, Alabama 35203
Telephone: (205) 314-2401
Facsimile: (205) 244-1373
lane.finch@swiftcurrie.com
brian.richardson@swiftcurrie.com

*Attorneys for Defendants CHC Companies, Inc.*
*and Correct Care Solutions, LLC*

# **TABLE OF CONTENTS**

I.  Introduction ..................................................................................................1

II.  Reply to Plaintiffs' Statement of Additional Undisputed Facts ...........................3

III.  Argument ...................................................................................................12

    1. Plaintiffs' successor liability theory against CCS, LLC fails .........................12

        A. Successor liability is not properly before this Court ...............................12

        B. The successor liability claim against CCS, LLC fails ............................13

            i. There is no express agreement between CCS, LLC and any party transferring JCS's obligations to CCS, LLC ...................................14

            ii. There was no *de facto* merger between CCS, LLC and CHC Cos., Inc. or JCS ...............................................................................16

            iii. CCS, LLC is not a mere continuation of JCS ................................17

    2. No constitutional violations occurred during the time CCS, LLC purportedly controlled and directed the JCS employees ...............................18

    3. No policy or practice of CCS, LLC was the moving force of the alleged violations ...................................................................................19

IV. Conclusion ...............................................................................................20

## I.   <u>INTRODUCTION</u>

Perhaps no party to this action is further removed from any alleged misconduct than Correct Care Solutions, LLC ("CCS, LLC").  In June 2014, CCS, LLC became a sister company to CHC Companies, Inc. ("CHC Cos., Inc.").[1] Previously, CHC Cos., Inc. entered into a reverse merger agreement with JCS in 2011.  JCS is the legal entity that entered into a contract with the City of Childersburg to provide probationary services for the Childersburg Municipal Court in 2005.

Plaintiffs' misinterpretation of the corporate transaction involving CCS, LLC and deliberate indifference to the corporate structure of several separate entities led to the addition of CCS, LLC as a defendant and kept them in this action.  Even after it became clear that Plaintiffs' claims against CCS, LLC were due to be dismissed, Plaintiffs would not voluntarily dismiss CCS, LLC.  Instead, Plaintiffs doubled-down and raised new allegations – Successor Liability – for the first time in their Response in Opposition to Motion for Summary Judgment.  That theory was previously disallowed by this Court and disavowed by Plaintiffs' counsel in a hearing when he sought to amend the complaint to add CCS, LLC.

Plaintiffs fail to identify a CCS, LLC policy or practice that was the moving force behind any alleged violation.  Plaintiffs allege no constitutional violations

---

[1] CCS, LLC is here because its parent company entered into a Securities Exchange Agreement (hereinafter "2014 SE Agreement") with CHC Cos., Inc.'s parent company.  This represents the entire body of evidence against CCS, LLC.

occurred on or after June 2014 (the date of the 2014 Securities Exchange Agreement) and, instead, merely state that Ms. Kidd made an entry into Probation Tracker in December 2014 that terminated each Plaintiffs' probation.  It is unclear how this action gives rise to any claim against CCS, LLC.[2]  Every single additional "Undisputed Fact" relating to the named Plaintiffs pre-dates any ***allegation*** against CCS, LLC, let alone any actual evidence that would subject CCS, LLC to liability.

There is no evidence that JCS collected any fines, fees, or costs from the Plaintiffs during or after June 2014; no evidence that JCS had any contact with the Plaintiffs whatsoever during or after June 2014; no evidence that the Plaintiffs were arrested or not provided counsel for any hearing or failure to attend a hearing relating to JCS at any time since June 2014.  Even if these events did occur, how would any of them relate to CCS, LLC, let alone expose CCS, LLC to liability? Plaintiffs fail to provide any authority to answer that question.  If JCS collected fines or performed some act that violated Plaintiffs' constitutional rights, there is no evidence that CCS, LLC controlled, directed, or employed the JCS employees to a level to create liability for CCS, LLC.

Quite simply, Plaintiffs' claims against CCS, LLC fail and are due to be dismissed.

---

[2] As this Court recognized, the municipal court may suspend a sentence and place a defendant on probation for up to two years.  Doc. 569, p. 22.  Furthermore, a municipal court judge may toll the running of a probationary period. *Young v. State*, 552 So. 2d 879, 882 (Ala. Cr. App. 1989).

## II.   <u>REPLY TO PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS</u>

Plaintiffs' "Statement of Undisputed Facts" 1-44 are similar to the facts in their opposition to JCS's motion for summary judgment (Doc. 567 at CM/ECF pp. 13-25, ¶ 1-44) as to the Fugatts' claims.  CHC Cos., Inc. adopts the responses JCS (Doc. 584 at CM/ECF, pp. 3-9) and CHC Cos., Inc.'s responses and further states:

1.     Disputed in part and immaterial. CCS, LLC admits that JCS had contracts with over 100 cities in Alabama during its tenure in the state and that the cities did not pay JCS for such services. All remaining allegations are disputed. Plaintiffs' cited authority does not support its remaining allegations, so this defendant disputes those allegations and/or characterizations in those allegations.[3]

2.     Disputed in part and immaterial. CCS, LLC was not a party to this agreement.   CCS, LLC admits that the Childersburg Mayor and a JCS representative signed the contract around June or July 2005 and that the Mayor testified as stated. The date of the signing of the contract is wrong, as it was sent from the City to JCS for JCS to sign on June 30, 2005.[4]

3.     The court had judicial discretion to order collection of fees, and in some cases, such fees were not in fact ordered or collected.[5] The totality of the contract between JCS and the City shows probation fees were not required to be

---

[3] *See, e.g.*, Doc. 392-11 at p. 192:16 ("[W]e don't actively market anybody.").
[4] Doc. 392-16 at p. 2.
[5] Doc. 392-16, p. 4, ¶ 5; Doc. 406-12; Doc. 431-4, ¶ 13.

charged to probationers that the judge found to be indigent.[6]

       4-10.       Not disputed and immaterial.

       11.     JCS was obligated to follow the court orders.[7] JCS's Lisha Kidd had no knowledge of blank orders that had not been signed and had no adjudication of any kind.[8] The citation to Doc. 195-3 is immaterial as it does not relate to the named Plaintiffs and Doc. 392-58 is signed by Judge Ward.

       12-13.     Not disputed and immaterial.

       14.     Disputed and immaterial. Plaintiffs cite a September 4, 2014 email, which was sent after Plaintiffs' claims for alleged constitutional violations against JCS. Plaintiffs improperly imply that Colleen Ray stated that all JCS probationers are placed on probation for inability to pay fines and costs at the time of adjudication.

       15-16.     Not disputed.

       17.     Gina Ray and Deunate Jews do not raise any allegations against CCS, LLC for its own misconduct or constitutional violations. Paragraphs 17-40 of Plaintiffs' Undisputed Facts are largely immaterial as to CCS, LLC  because most of these "facts" pre-date the allegations against CCS, LLC.

       18-19.     Not disputed and immaterial.

---

[6] Doc. 392-16, p. 4.
[7] Doc. 537-11 at p. 103:12-23, p. 105:2-23, p. 567:16-20; Doc. 537-13 at p. 92:11-17, p. 149:5-14.
[8] Doc. 471-1 at p. 520:2-8.

20.    Disputed and immaterial as CCS, LLC had no control over adjudication of tickets.  The probation orders contradict the cited documents.[9]

21.    The documents contain no information regarding the Fugatts' ability to pay.

22.    CCS, LLC does not dispute that Doc. 392-65 at p. 5 shows a discrepancy Ms. Kidd characterized as a clerical error. These allegations are immaterial because they are not raised by the Fugatts in their Complaint.[10]

23.    Disputed in part.  The cited document says nothing about Mr. Fugatt's inability to pay and nothing about who determined the monthly payment amounts.

24.    Disputed in part and immaterial. The Fugatts' self-serving statements speak for themselves. The documents do not support the insinuation that JCS owed the Fugatts "assistance." The Fugatts' deposition testimony contradicts the cited documents.  Neither could recall receiving any phone calls or threats from JCS.[11] Neither had any reliable recollection of receiving mail from JCS.[12]

25.    CCS, LLC does not dispute that the City's records reflect Mr. Fugatt's court costs had been paid off.

26.    Disputed in part and immaterial. The characterization that JCS "inflated" any balance is disputed.  The allegations are immaterial because they

---

[9] Doc. 537-22; Doc. 537-21.
[10] Doc. 305, pp. 14-17.
[11] Doc. 551-50 at pp. 101:23-102:3, pp. 286:16-287:1; Doc. 551-47 at p. 157:7-13.
[12] Doc. 551-50 at p. 108:14-22, pp. 109:21-110:4, p. 111:8-11, pp. 112:19-113:2; pp. 200:21-201:10; p. 201:16-19, p. 204:19-20, p. 205:9-13, p. 206:8-9, p. 208:9-15; Doc. 551-47 at pp. 241:16-246:9.

were not raised by the Fugatts in their Complaint.[13]

27.    Disputed that the records were "false." The allegations are immaterial because they were not raised by the Fugatts in their Complaint.[14]

28.    CCS, LLC admits that JCS sent notices to the Fugatts for hearings.

29.    Disputed in part. The City prosecutor filed the Petition for Revocation of Probation, not JCS.[15] CCS, LLC admits that the Fugatts did not attend the hearing they were ordered to attend.  The cited document does not support the allegation that JCS was untruthful about the conduct of the Fugatts.

30.    Not disputed.

31.    Disputed that JCS ordered the hearing in August 2011. Judge Ward, signed the Petition for Revocation of Probation, not JCS.[16] CCS, LLC admits that warrants of arrest were issued for the Fugatts by the magistrate.[17]

32.    Disputed in part and immaterial. The Fugatts offered no authority indicating that warrant fees are "unauthorized." Not disputed that the Fugatts were arrested on February 26, 2012.

33.    Disputed in part and immaterial. Doc. 382-11 does not support the allegations about how the fines were paid. The Fugatts' testified that they were not placed in jail but, instead were sitting on a bench in the police station.[18]

---

[13] Doc. 305, pp. 14-17.
[14] Doc. 305, pp. 14-17.
[15] Doc. 548-38.
[16] Doc. 548-38.
[17] Doc. 548-39.

34.     Disputed in part. The documents do not reflect that there was no court order, plea, or adjudication of guilt.  JCS did not put Mr. Fugatt on probation, and the cited document does not reflect that either entity participated in that decision. Mr. Fugatt was apparently present when the ordered was entered and signed the probation order.

35.     Disputed. The documents do not support the allegation that JCS "requested" that the Fugatts be arrested or that any charge was not adjudicated. Doc. 392-65 shows a court order signed by the judge and Mr. Fugatt.

36.     Disputed and immaterial. The Fugatts make no allegations concerning this in their Complaint and the cited testimony does not support the allegations of this paragraph.[19] The testimony says nothing about whether the charges were adjudicated and JCS had no control over the adjudication of charges.  Further, the cited testimony says nothing about the authorization status of "warrant fees."

37-38.     Disputed and immaterial. The Fugatts do not make any allegations concerning this in their Complaint.[20]  Also, CCS, LLC did not place Mrs. Fugatt on probation, and the cited documents do not reflect that it did.[21]  JCS did not see the tickets in court.[22]  Additionally, the probation order for Mrs. Fugatt for the other individual's ticket was put on hold because she was already under

---

[18] Doc. 551-50 at pp. 133:9-134:17; Doc. 551-47 at pp. 191:9-192:4.
[19] Doc. 305.
[20] Doc. 305.
[21] Doc. 569 at 6 ("JCS only provided probation services when probation was mandated by a municipal court order." (citing Doc. 392-2 at 107)).
[22] Doc. 471-1 at p. 302:7-8.

another probation order, and she never made any payments for the other person's ticket.[23]

39.    Immaterial as these allegations do not relate to the named Plaintiffs.

40.    Since prior to January 2013, the Fugatts have made no payments to JCS and have had no contact with JCS regarding their Childersburg related cases.[24]

41.    The terms of the 2011 Agreement and Plan of Merger ("2011 Agreement") speak for themselves.[25]

42.    Not disputed that Don Houston testified that Doug Goetz and Bruce McDaniel "handled" the transaction for CHC Cos., Inc.[26]

43.    JCS was not a division of CHC Cos., Inc. and, instead, was a separate entity both legally and operationally.[27]   Not disputed that Doug Goetz was the CEO, Don Houston was the COO, and Bruce McDaniel was the CFO of CHC Cos., Inc.

44.    Disputed.  None of the cited documents show JCS employees were on CHC Cos., Inc. payroll prior to 2013.[28]  JCS employees did not become employees of CHC Cos., Inc.[29]

---

[23] Doc. 537-41, pp. 2-3.
[24] Doc. 551-49; Doc. 551-47 at pp. 327:16-328:7; Doc. 551-50 at p. 407:17-408:4.
[25] Doc. 551-3.
[26] Doc. 551-5.
[27] Doc. 551-3; Doc. 551-5; Doc. 551-4 at p. 124:3-12.
[28] Doc. 551-7; Exhibit A, January 18, 2013 e-mail;  Doc.551-4 at p. 36:7-10.
[29] Doc. 551-4 at p. 36:3-6.

45. JCS reported financial performance to Houston.[30]  He did not oversee the day-to-day operations of JCS.[31]

46. Not disputed that Don Houston participated in planning the integration of JCS and CHC Cos., Inc., which was never completed.[32]

47. Not disputed that certain indemnification provisions were redacted for various privileges.  Section 2.1 of the 2011 Agreement identifies JCS as the Surviving Corporation and successor to "all assets, rights, privileges, ... liabilities, restrictions, disabilities and duties of, the Company and Merger Sub...."[33]

48. Disputed and immaterial. Houston was never responsible for day-to-day operations.[34]  Instead, Houston was responsible for the financial performance of JCS.[35]  After the merger, Dennis Moon became COO of JCS.[36]  After Moon, JCS employee Karen Lloyd was the Director of Operations for JCS and was responsible for hiring and firing.[37]  There is no evidence that Houston signed any lease on behalf of JCS prior to 2014.[38]

49. Houston was not responsible for the operations of JCS.[39]  The "JCS operations" cited to by Plaintiffs were related to financial performance.[40]

---

[30] Exhibit B, April 9, 2012 and April 16-17, 2012 e-mails.
[31] Doc. 551-4 at p. 90:9-12; Exhibit C, September 4, 2014 e-mail with JCS Organizational Chart.
[32] Doc. 551-4 at pp. 35:16-36:2, p. 88:8-15.
[33] Doc. 551-3.
[34] Doc. 551-4 at p. 90:9-12; Exhibit C.
[35] Doc. 551-4 at pp. 58:10-59:7.
[36] Doc. 551-4 at p. 99:4-12.
[37] Exhibit C; Doc. 551-4 at p. 58:3-4.
[38] Exhibit D, February 26, 2014 e-mails and March 24, 2014 e-mail; Doc. 551-4 at pp. 101:20-102:3.
[39] Doc. 551-4 at p. 90:9-12, p. 124:3-7; Exhibit C.

50.     The 2014 SE Agreement is the subject of the June 13, 2014 letter which clearly shows CCS, LLC was not a party to the Agreement.

51.     Not disputed that Don Houston testified that he is the president of State and Federal division of CCS, LLC.  Houston also testified that he still had a CHC Cos., Inc. title of CEO at the time.[41]

52.     Immaterial as to whether the separate entities contain the same board members. CCS, LLC does not dispute that CHC Cos., Inc., JCS, and CCS, LLC have similar officers.

53.     Disputed and immaterial.  Karen Lloyd and Colleen Ray signed non-compete agreements on February 11, 2015, for employer CCS Intermediate Holdings, LLC.[42]  By that time, the Plaintiffs were not on probation with JCS.

54.     Disputed in part and immaterial.  The cited documents do not support Plaintiffs contention that CCS, LLC controlled CHC Cos., Inc. policy after "CHC and CCS came together."[43]

55.     Disputed and immaterial.  While Don Houston may now be paid by CCS, LLC, from 2013 to 2015, he was paid by CHC Cos., Inc.[44]

56.     Not disputed and immaterial.

---

[40] Doc. 551-4 at p. 116.
[41] Doc. 551-4 at pp. 36:17-37:4.
[42] Doc. 428-4, pp. 2-11.
[43] Doc. 551-7; Doc. 428-4, pp. 17-19.
[44] Doc. 428-4 at pp. 17-19.

57.     Disputed in part and immaterial.  CCS, LLC did not control hiring and firing and Plaintiffs' cited no authority supporting this assertion.  CHC Cos., Inc. and CCS, LLC never "joined."  Not disputed and immaterial that CCS, LLC, JCS, and CHC Cos., Inc. shared HR, legal, and compliance company-wide in 2015.[45]

58.     Disputed and immaterial.  Plaintiffs' opinions and theories as to the material redacted do not  constitute "fact."[46]

59.      Disputed. Houston consulted with the JCS management team, finance team, legal division, and human resources.[47]

60.     Not disputed.

61.     Disputed. The evidence cited by the Plaintiffs do not support the allegations in this paragraph. After the merger, Dennis Moon became COO of JCS.[48]  After Moon, JCS employee Karen Lloyd was the Director of Operations for JCS and was responsible for hiring and firing.[49]  JCS employees did not become employees of CHC Cos., Inc.[50]

62.     Not disputed.

63.     Not disputed that Don Houston testified as stated.

---

[45] Doc. 551-4 at p. 53:4-22.
[46] Doc. 551-4 at p. 88:8-15.
[47] Doc. 551-4 at pp. 189:20-190:18.
[48] Doc. 551-4 at p. 99:4-12.
[49] Exhibit C; Doc. 551-4 at p. 58:3-4.
[50] Doc. 551-4 at p. 36:3-6.

64.    Plaintiffs' characterization of the transaction is disputed.  The terms of the Agreement and Plan of Merger speak for themselves.[51]

65.    Disputed and immaterial.  Plaintiffs' characterization of the transaction is disputed.  The document "merging" CHC and CCS is the June 12, 2014 SE Agreement between CCS Group Holdings, LLC and Jessamine Healthcare Holdings, LLC.[52]  CCS, LLC was not a party to this agreement.[53]  None of the organizational charts place JCS or CHC Cos., Inc. as a division under CCS, LLC.[54]  This allegation is immaterial as it occurred nearly 16 months after any alleged constitutional violations by JCS.

66.    Houston remained responsible for monitoring the financial performance of JCS.[55]

### III.    ARGUMENT

### 1.    Plaintiffs' successor liability theory against CCS, LLC fails.

### A.    Successor liability is not properly before this Court.

Plaintiffs argue for the first time that CCS, LLC is liable for JCS employee conduct as a "successor to CHC and JCS."[56]  This was not pled in the Complaint

---

[51] Doc. 551-3.
[52] Doc. 548-8.
[53] Doc. 548-8.
[54] Exhibit E, Organizational Charts.
[55] Doc. 551-4 at pp. 58:10-59:7.
[56] Doc. 578 at p. 32.

(Doc. 305) and is not properly before this Court.[57]  The "liberal pleading standard for civil complaints does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage."[58]  Instead, the proper procedure for amending the pleadings at the summary judgment stage to add new claims is in accordance with Rule 15(a) of the *Federal Rules of Civil Procedure.*[59]  "[A] district court's consideration of any critical amendment asserted merely as part of the briefing process is disfavored."[60]

Plaintiffs successor liability argument should be stricken as that claim is not properly before the court. Even if not stricken, the successor liability argument has no merit.

### B.    The successor liability claim against CCS, LLC fails.

Even if Plaintiffs had properly raised a successor liability theory of recovery against CCS, LLC, there is no evidence that CCS, LLC is the successor to JCS or CHC Cos., Inc.  "As a general rule, a purchasing corporation is not liable for the debts and liabilities of the selling corporation."[61]  The exceptions are as follows:

---

[57] *See Andrews v. John E. Smith's Sons Co.*, 369 So. 2d 781 (Ala. 1979) (affirming summary judgment for defendants on the theory of recovery for successor liability which omitted from the complaint).

[58] *Buckentin v. SunTrust Mortg. Corp.*, 928 F.Supp. 2d 1273, 1281 (N.D. Ala. 2013).

[59] *Buckentin*, 928 F.Supp. 2d at 1281 ("a plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

[60] *King v. CVS Caremark Corp.*, 2 F. Supp. 3d 1252, 1272 (N.D. Ala. 2014) ("precedent precludes a plaintiff from amending its complaint "through argument at the summary judgment phase of proceedings.") (quoting *Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227-28 (11th Cir. 2013) (holding that *Gilmour* and *Flintlock* procedurally foreclosed the plaintiff from belatedly attempting to amend his complaint in any critical manner)).

[61] *Asher v. KCS Int'l*, 659 So. 2d 598, 599 (Ala. 1995) (citing *Matrix-Churchill v. Springsteen*, 461 So. 2d 782 (Ala. 1984)).

> [Where] (1) there is an express agreement to assume the obligations of the transferor, (2) the transaction amounts to a *de facto* merger or consolidation of the two companies, (3) the transaction is a fraudulent attempt to escape liability, or (4) the transferee corporation is a mere continuation of the transferor.[62]

Plaintiffs argue that exceptions (1), (2), and (4) apply and cite *Clardy v. Sanders* as support. *Clardy* involved a sole proprietorship (Clardy Realty) that ceased to exist after it was incorporated as Clardy Realty, Inc.[63]  Clardy Realty, Inc. assumed all the liabilities and debts of Clardy Realty.[64]  "If there is business succession, then in effect the plaintiff is suing the 'same' business that [committed] the original [culpable conduct]."[65]  There was no business succession in the instant case.  It is undisputed that JCS remained a separate existing entity following the 2011 Agreement with CHC Cos., Inc. and still operates in Florida and Georgia. Furthermore, none of the exceptions apply.

### i.    There is no express agreement between CCS, LLC and any party transferring JCS's obligations to CCS, LLC.

Exception (1) does not apply because there is no express agreement between JCS and CCS, LLC for CCS, LLC to assume the obligations of JCS.  Plaintiffs point to the 2011 Agreement, a document to which CCS, LLC, as the document that transferred JCS obligations to CCS, LLC.  As an initial matter, there is no

---

[62] *Id.*
[63] 551 So. 2d 1057, 1059-60 (Ala. 1979).
[64] *Id.* at 1059.
[65] *Clardy*, 551 So. 2d at 1061.

evidence of a contract between JCS and CCS, LLC *or* CHC Cos., Inc. and CCS, LLC. Plaintiffs' position that an agreement between CHC Cos., Inc. and JCS somehow assigned obligations and liabilities of JCS to CCS, LLC is not supported by any authority. Moreover, the 2014 SE Agreement was produced without redactions and there is no clause or statement in that contract that assigning JCS obligations to CCS, LLC.

The 2011 Agreement did not "merge" JCS into the operations of CHC Co., Inc. or CCS, LLC and did not subject CHC Cos., Inc. or CCS, LLC to liability for "obligations" of JCS. Section 2.1 of the 2011 Agreement states as follows:

> From and after the effective time the **Surviving Company** shall succeed to all the assets, rights, privileges, powers and franchises of, and to be subject to all of the liabilities, restrictions, disabilities and duties of the **Company** and **Merger Sub**, all as provided under the Delaware Act.[66]

Neither CHC Co., Inc. nor CCS, LLC is the "Surviving Company." The parties are defined as follows:

> THIS AGREEMENT AND PLAN OF MERGER (this "Agreement") is made as of September 30, 2011 by and among CHC Companies, Inc., a Delaware corporation ("Purchaser"), Judicial Merger Sub, Inc., a Delaware corporation and a wholly-owned subsidiary of Purchaser ("Merger Sub"), Judicial Correction Services, Inc., a Delaware corporation (the "Company"), Jarrett Gorlin, an individual resident of Georgia ("Seller") and Jarrett Gorlin, an individual resident of Georgia, as agent for the

---

[66] Doc. 551-3 at p. 2, emphasis added.

Company    Stockholders    (the    "Stockholder
Representative").[67]

Thus, the "Purchaser" is CHC Co., Inc., the "Merger Sub" is Judicial Merger

Sub, Inc., and the "Company" is JCS.  The "Surviving Company" is identified in

Section 2.1:

> Merger Sub [JCS Merger Sub, Inc.] shall merge with and
> into the Company [JCS, Inc.] (the "Merger") in
> accordance with the Delaware General Corporation Law
> (the "Delaware Act"), whereupon the separate existence
> of Merger Sub shall cease, and the Company [JCS, Inc.]
> shall be the surviving corporation (the "Surviving
> Corporation")....[68]

As a result, JCS, **not CHC Cos., Inc. or CCS, LLC**, succeeded to all the

assets, rights, privileges, powers, liabilities, restrictions, disabilities and duties of

JCS and Judicial Merger Sub, Inc. Thus, the first exception is not met as there is no

express agreement between CCS, LLC and another party in which CCS, LLC

assumes the liability of JCS.

### ii.    There was no *de facto* merger between CCS, LLC and CHC Cos., Inc. or JCS.

Exception (2) does not apply because neither the 2011 Agreement nor the

2014 SE Agreement represented a *de factor* merger.[69]  Under Delaware law:

> A traditional merger ... involves two or more entities
> existing under Delaware law merging into a single
> corporation. Typically, the selling entity is merged into

---

[67] Doc. 551-3 at p. 1.
[68] Doc. 551-3 at p. 2.
[69] Both contracts are subject to Delaware law.  Doc. 551-3 at p. 45, Section 10.10.1 and p. 50, Section 14.11.

> the purchasing entity and ceases to exist. The elements necessary to create a ***de facto merger*** under Delaware law are the following: (1) one corporation transfers all of its assets to another corporation; (2) payment is made in stock, issued by the transferee directly to the shareholders of the transferring corporation; and (3) in exchange for their stock in that corporation, the transferee agreeing to assume all the debts and liabilities of the transferor.[70]

As has been discussed in the motions for summary judgment, JCS, CHC Cos., Inc. and CCS, LLC all still exist and CCS, LLC did not assume the debts and liabilities of JCS.[71]  Thus, there was no *de facto* merger.

### iii.    CCS, LLC is not a mere continuation of JCS.

Exception (4) does not apply because CCS, LLC is not a mere continuation of JCS.  Alabama "adopted a four-factor test for determining whether a purchasing corporation is a mere continuation of the selling corporation."[72]  All four factors must be satisfied to hold a successor company liable.[73]  These factors include:

> (1) There was basic continuity of the enterprise of the seller corporation, including, apparently, a retention of key personnel, assets, general business operations and even the [seller's] name.
>
> (2) The seller corporation ceased ordinary business operations, liquidated, and dissolved soon after distribution of consideration received from the buying corporation.

---

[70] *Magnolia's at Bethany, LLC v. Artesian Consulting Eng'rs, Inc.*, 2011 Del. Super. LEXIS 435, *7 (Del. Super. Ct. 2011).
[71]  Doc. 544, pp. 5-6.
[72] *Asher v. KCS, Int'l*, 659 So. 2d 598, 599 (Ala. 1995).
[73] *Asher*, 659 So. 2d at 599.

> (3) The purchasing corporation assumed those liabilities and obligations of the seller ordinarily necessary for the continuation of the normal business operations of the seller corporation.
>
> (4) The purchasing corporation held itself out to the world as the effective continuation of the seller corporation.[74]

Plaintiffs assert that this exception is met but fail to consider the required factors. There is no evidence that factors (2), (3), and (4) are satisfied. JCS still operates today and continued operating as it did prior to the 2011 Agreement and 2014 SE Agreement. There is no evidence that CCS, LLC held itself out as a mere continuation of JCS. Thus, exception (4) does not apply.

Plaintiffs' new theory of successor liability fails and the claims against CCS, LLC are due to be dismissed.

## 2. No constitutional violations occurred during the time CCS, LLC purportedly controlled and directed the JCS employees.

Plaintiffs argue that CCS, LLC was responsible for the JCS 'Probation' operation until JCS left Alabama yet provide no supporting evidence supporting this assertion.[75] There was no contract between CCS, LLC and CHC Cos., Inc. or JCS. However, even if the June 2014 SE Agreement did expose CCS, LLC to liability arising from JCS's alleged constitutional violations, there is no evidence of JCS conduct giving rise to constitutional violations on or after June 12, 2014.

---

[74] *Id.* at 599-600 (citations omitted).
[75] Doc. 578, p. 34.

Plaintiffs argue that in and around November 2014 through January 2015, Lisha Kidd and Wes Ennis made an entries in the Probation Tracker System that JCS was terminating the supervision of the probationers.[76]  It is unclear how JCS's data entry into the Probation Tracker System constituted a constitutional violation. There are no allegations or evidence that JCS collected any fees, sent any letters, made any phone calls, revoked any probation, threatened the Plaintiffs, prevented the Plaintiffs from obtaining counsel, or did any other activity that somehow violated the Plaintiffs' constitutional rights on or after June 12, 2014.  Moreover, as this Court has recognized, a municipal court may suspend a sentence and place a defendant on probation for up to two years.[77]   Furthermore, a municipal court judge may toll the running of a probationary period.[78]  Simply, there is no causal connection between Plaintiffs' purported injuries and CCS, LLC.  Thus, the claims against CCS, LLC are due to be dismissed.

### 3.   No policy or practice of CCS, LLC was the moving force of the alleged violations.

Plaintiffs fail to show how exactly CCS, LLC is liable for JCS employees' alleged constitutional violations under Section 1983.  Plaintiffs point to no CCS, LLC custom or policy as the moving force behind any constitutional violation. Plaintiffs have produced no evidence of any conduct that would expose CCS, LLC

---

[76] Doc. 578, p. 34-37.
[77] Doc. 569, p. 22.
[78] *Young v. State*, 552 So. 2d 879, 882 (Ala. Cr. App. 1989).

to direct liability in this matter.  Plaintiffs vaguely point to some financial interest in JCS that now somehow is the basis for Plaintiffs' claims against JCS.  Plaintiffs present no evidence of how this now creates liability for CCS, LLC nor any law supporting such a position.[79]

## IV.   CONCLUSION

Plaintiffs oppose the motion for summary judgment with unpled claims that are, at bottom, successor liability, veil piercing, alter ego claims.  Plaintiffs failed to offer the Court evidence or legal authority sufficient to impose liability on CCS, LLC for the probation activities of JCS employees. Furthermore, all unconstitutional activities allegedly performed by JCS employees that caused Plaintiffs' damages occurred before Plaintiffs even allege CCS, LLC came together with CHC Cos., Inc.

Plaintiffs also failed to make a persuasive argument that *Monell* does not apply to defeat their claims against CCS, LLC.  For example, they utterly failed to show an action or decision by CCS, LLC that was highly likely to inflict any particular injury at issue.

---

[79] *See United States v. Bestfoods*, 524 U.S. 51, 72 (1998) ("Activities that involve the facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiaries' finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability.").

For these reasons stated above and in CCS, LLC's Motion for Summary Judgment, CCS, LLC respectfully submits that it is entitled to judgment as a matter of law on all the Plaintiffs' claims.

DATED:  November 17, 2017           */s/ F. Lane Finch, Jr.*
                                    F. Lane Finch, Jr. (ASB-0027-I58F)
                                    Brian C. Richardson (ASB-5241-H14U)
                                    *Attorneys for CHC Companies, Inc. and*
                                    *Correct Care Solutions, LLC*

**OF COUNSEL:**
**SWIFT, CURRIE, MCGHEE & HIERS, LLP**
2 North 20th Street, Suite 1405
Birmingham, AL 35203
T: (205) 314-2401
F: (205) 244-1373
lane.finch@swiftcurrie.com
brian.richardson@swiftcurrie.com

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2017, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of filing to the following:

G. Daniel Evans, Esquire
gdevans@evanslawpc.com
Alexandria Parrish, Esquire
ap@evanslawpc.com
D. Patrick Evans, Esquire
dpevans@evanslawpc.com

Erwin Chemerinsky, Esquire
echemerinsky@law.uci.edu

Robert L. Wiggins, Jr., Esquire
rwiggins@wigginschilds.com

Wilson F. Green, Esquire
wgreen@fleenorgreen.com

Michael L. Jackson, Esquire
mjackson@wallacejordan.com
Larry S. Logsdon, Esquire
llogsdon@wallacejordan.com

John N. Bolus, Esquire
jbolus@maynardcooper.com

James W. Porter, II, Esquire
jwporterii@pphlaw.net
R. Warren Kinney, III, Esquire PC
wkinney@pphlaw.net

*/s/ F. Lane Finch, Jr.*
OF COUNSEL

22