FILED
2017 Nov-17  AM 09:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATED DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| GINA KAY RAY, *et al.,* | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 2:12-cv-02819-RDP |
| v. | ) | |
| | ) | |
| JUDICIAL CORRECTION | ) | |
| SERVICES, INC., *et al.*, | ) | |
| Defendants. | ) | |

## DEFENDANT CHC COMPANIES, INC.'S SUPPLEMENT REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The following is CHC Cos.'s supplemental reply to Plaintiffs' supplemental brief that is supposed to be limited to documents produced after the initial round of briefing on CHC Cos.'s motion for summary judgment. *See* arguments in CHC Cos.'s Motion to Strike. Doc. 648. Presuming the Court did not want, and will not allow, the parties to use their supplemental briefs to rehash old evidence and old arguments, this brief is limited to matters in Plaintiffs' supplemental brief that address the newly produced documents.

Another introductory comment worth making is replying to a brief by Plaintiffs has always been difficult for several reasons:

(1)     Plaintiffs do not give up on disproven arguments; and

(2)     Plaintiffs are unconcerned with:

> (a)    citing to record evidence or
>
> (b)    citing record evidence that actually or fully supports their proposition.

Below, CHC Cos. does its best to address arguments that seem to have a valid foundation in logic, law, or fact and that relate to the newly produced discovery. A few of the more absurd arguments are touched upon and the ones closer to the Rule 11 line[1] are ignored.

One final preliminary comment is worth making. All of Plaintiffs' claims against CHC Cos. are derivative in the sense that they are based on the allegation that a JCS probation officer violated a plaintiff's constitutional rights and, despite *Monell*, CHC Cos. is liable for that violation. On September 12, 2017, this Court dismissed all claims against JCS, with the exception of Plaintiffs' due process claim that JCS violated Plaintiffs' procedural due process rights by extending their probation sentences beyond the statutory maximum without affording due process. The Court also allowed an unpled § 1983 conspiracy claims to survive. Doc. 626. p. 86.

## I.    <u>INTRODUCTION</u>

Plaintiffs never identified a single CHC Cos. policy or custom that was the moving force behind the constitutional deprivations Plaintiffs alleged. Not only are

---

[1] An attorney represents "the claims . . . are warranted by existing law or by a nonfrivolous argument for [changing] . . . existing law or for establishing new law; . . . the factual contentions have evidentiary support . . . ; and . . . the denials of factual contentions are warranted on the evidence . . . ." Fed. R. Civ. P. 11(b)(2)-(4).

there no allegations of a CHC Cos. policy or practice related to these claims, but there are no allegations CHC Cos. issued warrants, made arrests, signed probation forms, came in contact with any probationer, or made any indigency determinations. Based on the above, the *Monell* principles apply and Plaintiffs' § 1983 claims against CHC Cos. arising from JCS's conduct are barred.

## II.   PLAINTIFFS' STATEMENT OF "UNDISPUTED" FACTS

As CHC Cos. understood the Court's direction, Plaintiffs were allowed to file up to a 15 page supplemental brief addressing evidence revealed in the newly produced documents. A portion of Plaintiffs' brief does so. There is a statement of "additional undisputed facts" starting at page 3. "Facts" 1-10 relate to resignation of certain officers (Fact No. 1), employment agreements for certain officers (Fact No. 2), noncompete agreements for certain officers (Fact No. 3), bonuses for certain officers (Fact No. 4), cancellation of shares in connection with the merger between JCS and CHC Cos. (Fact No. 5), the total number of outstanding shares of stock (Fact No. 6), the use of stock shares in the acquisition (Fact No. 7), the renaming of the survivor corporation (Fact No. 8), the number of shares issued by the "newly named" company (Fact No. 9), and the acquisition by CHC Cos. of the right to use "the 'Judicial Correction Services' name and marks (Fact No. 10). None of that addresses whether CHC Cos.'s customs or policies violated Plaintiffs' constitutional rights.

Beginning with Fact No. 12, Plaintiffs argue evidence that was previously available to them. *See* Motion to Strike, Doc. 648, pages 7-9. Many of Plaintiffs' "undisputed facts" are recycled from previous motions and filings in this case. CHC Cos. adopts responses and positions of Childersburg, JCS, and CCS, LLC, previously raised to address these "undisputed facts."

The unpled conspiracy claim would apparently be based on allegations "Defendant JCS and the Municipal Court [entered into a conspiracy] to violate their constitutional rights, in violation of § 1983." Doc. 626 p. 78. "In light of the financial incentive to not declare defendants indigent, a juror could view Judge Ward's consistent failure to conduct indigency determinations as circumstantial evidence of an agreement between his court and JCS to not address probationers' indigency before imposing additional probation supervision fees." *Id.* at 79. Plaintiffs have not even pled a conspiracy claim against CHC Cos. CHC Cos. specifically objects to the improper attempt to add a cause of action via a motion brief.

## III.   <u>ARGUMENT</u>

### 1.   **CHC Cos. addressed Plaintiffs' unpled Successor Liability argument in its re-filed Reply Brief.**

The Court is well aware Plaintiffs disclaimed an intention to pierce the corporate veil. Plaintiffs' Response in Opposition to CHC Cos.'s and Correct Care Solutions, LLC's Motion to Dismiss Third Amended Complaint, Doc. 270, p. 2,

citing Doc. 265 p. 5. Instead, Plaintiffs claim "that CHC Cos. and CCS 'employs and/or directs employees in the JCS operations.'" Doc. 270, p. 2, citing Third Am. and Restated Comp., Doc. 256 ¶¶ 13, 14. "Plaintiffs' claims against JCS and CHC are properly directed against CHC Cos. and CCS because those entities employ, train, manage, and control JCS and CHC." Doc. 270, p. 3. Plaintiffs do not seek to pierce the corporate veil and are not asserting an alter ego theory against Correct Care Solutions, LLC or CHC Cos. Doc 270, p. 4 ("'Veil piercing' is simply not alleged.").

Plaintiffs' originally raised this successor liability argument in their Brief in Opposition to CHC Co.'s Motion for Summary Judgment.[2] As stated in CHC Cos.'s Reply Brief, Plaintiffs' successor liability claim was not pled in any of the Plaintiffs' four complaints and, thus, is improper. Even with a second bite at the apple with their supplemental brief, Plaintiffs fail to address the fatal flaws of their successor liability argument. Plaintiffs appear to concede exception (1) is not met and, for exception (2), Plaintiffs do not state how the 2011 Agreement constituted a *de facto* merger. This omission is likely intentional as there are no set of facts supporting that a *de facto* merger occurred between CHC Cos. and JCS. Similarly, Plaintiffs do not address the exception (4) test to determine whether CHC Cos., is a mere continuation of JCS.

---

[2] Doc. 577 and re-filed in Doc. 642.

Additionally, Plaintiffs' statements that "JCS employees became CHC Cos. employees; CHC Cos. made personnel decisions including hiring, firing, and rewarding; CHC Cos.'s COO executed contracts on behalf of JCS; and CHC Cos., controlled the budget of JCS" are just that – statements. Plaintiffs point to no supporting evidence and, instead, expect the Court to take their word for it.

Plaintiffs assert CHC Cos. is liable as a successor to JCS. They then discuss the doctrine of successor liability and try to apply that to the merger between CHC Cos. and JCS. That discussion does not inform the ultimate issue - is there any record evidence of a custom or practice by CHC Cos. which led to the violation of the constitutional rights of any of the plaintiffs. Plaintiffs brief steadfastly avoids identifying a custom or practice by CHC Cos. which led to the violation of the constitutional rights of any of the Plaintiffs. That is to say, Plaintiffs never present record evidence of a custom or practice by CHC Cos. Similarly, Plaintiffs never present record evidence showing a correlation between a custom or practice of CHC Cos. and an actual violation of anyone's constitutional rights.

Instead, Plaintiffs stick to their standard tactic of using statements by their attorney in lieu of record evidence. They even fail to tie those statements to a constitutional violation. For example, Plaintiffs state without citation that CHC Cos. controlled the budget of JCS. They also fail to explain how, even if true, that

constituted a custom or practice by CHC Cos. which led to the violation of the constitutional rights of any plaintiff.

In their quixotic effort to prove actionable liability, they state things such as "Don Houston testified he did not change the [JCS] operations." Doc. 645, p. 7. They do not show that maintaining the status quo constituted a custom or practice by CHC Cos. which led to the violation of the constitutional rights of any plaintiff. Plaintiffs also make the disconnected statement "CHC Cos., Inc. is liable here as a successor in interest to JCS as it continued to do business as JCS using the name and mark after purchasing it." *Id*. How does use of a trade name support a § 1983 claim?

Plaintiffs repeatedly assert statements such as JCS operations were "under the ownership, control and direction of CHC Cos., Inc. officers." *Id*. But they never offer record evidence to show that the "ownership, control and direction of CHC Cos." constituted a custom or practice which led to the violation of the constitutional rights of any plaintiff. The do not even describe any details of the "control" or the "direction." That is to say, Plaintiffs do not bother to link up evidence with the necessary elements of their claims.

CHC Cos. thoroughly briefed these issues in its Reply Brief and, thus, will not revisit these arguments any further here.

7

## 2.     CHC Cos. is not liable for JCS's conduct at any time.

Plaintiffs' statement that the unredacted merger agreement shows CHC Cos. "'directed and controlled' the JCS operations" is false and premised entirely on Plaintiffs' misunderstanding of the transaction.

The 2011 Agreement is a reverse subsidiary merger in which JCS became a subsidiary, not a division of CHC Cos. The agreement clearly provides: "From and after the Effective Time, the Surviving Corporation shall succeed to all assets, rights, privileges, powers and franchises of, and be subject to all of the liabilities, restrictions, disabilities and duties of, the Company and Merger Sub. . . ." Plaintiffs concede that JCS is the Surviving Corporation, (Fact No. 8). *Id.* Meaning, JCS assumed the assets, debts, liabilities, etc., not CHC Cos.

Plaintiffs fail to offer any record evidence to show how CHC Cos. directed or controlled JCS probation officers. The evidence clearly shows CHC Cos. had no input or control over how:

- Used the failure to report list;
- Received and handled voicemails from people calling in;
- Returned phone calls from probationers;
- Used Probation Tracker;
- Sent letters and correspondence to probationers; and
- Used the JCS manuals.[3]

Plaintiffs arguments' disapprove their own claims. The premise of their claims against CHC Cos. is that the customs or policies of CHC Cos. somehow

---

[3] Wes Ennis depo at pp. 58:16-59:15; 63:23-64:7. (Doc. 537-12).

influenced or directed the probation services in such a way that CHC Cos.'s acts

violated any plaintiff's constitutional rights.  Plaintiffs assert in their brief:

- "[T]he probation practice in place in Childersburg and throughout the state did not change after JCS became a division of its new owner CHC Companies, Inc." Doc. 645, p. 6
- "CHC Cos., Inc.'s use of the JCS program was substantially the same as it was prior to September 30, 2011." Doc. 645, pp. 6-7.
- "In fact, Don Houston testified he did not change the operations." Doc. 645, p. 7.
- CHC "continued the JCS operations in essentially the same fashion . . . ." Doc. 645, p. 7.

Plaintiffs' arguments show there was not any custom or policy of CHC Cos.

that led to a constitutional violation. JCS was left to run the same as it always did.

Furthermore, JCS officer managers managed the probation officers, communicated

with the courts, and operated each JCS office, not anyone at CHC Cos.[4]

Plaintiffs' reference to the bonus and employee evaluations cites evidence

dated February 2013 or later.[5] None of Plaintiffs' alleged injuries accrued after

February 2013 and, even if these statements were true, there is no evidence that

these alleged CHC Cos. activities were causally connected with Plaintiffs' alleged

injuries. *Monell* liability "cannot depend on the scant likelihood that [a budgetary]

decision would trickle down the administrative facets and deprive a person of his

constitutional rights."[6]

---

[4] Wes Ennis depo at pp. 57:18-58:15. (Doc. 537-12).
[5] Doc. 428-3 at pp. 134-136. *See also* Don Houston depo. at pp. 109:18-111:18. (Doc. 641-4).
[6] *McDowell v. Brown*, 392 F. 3d 1283, 1289 (11th Cir. 2004).

Plaintiffs misrepresent that Don Houston's testimony regarding what was known to Don Houston about JCS's dealings with probationers. None of the evidence cited by Plaintiffs support their contention. Houston was responsible for overseeing the financial performance, not day to day operations at the JCS offices in Alabama.[7] The "JCS integration plan" had not even been started until January 2013.[8] Plaintiffs cite an email from Colleen Ray to Karen Lloyd dated September 4, 2014, over 20 months after any plaintiff paid a JCS fee, was arrested, or placed in jail for any probation-related offense.

The third section of their brief, by its title, offers to fill in this void of evidence and logic alleging CHC Cos. directed and controlled the people working in the JCS division. *Id.*, pp. 7-9. Alas, it does not.

Plaintiffs assert CHC Cos. had the power to fire those working in the JCS operations; they do not show how exercising that power violated any plaintiff's constitutional rights. They assert CHC Cos. directed JCS employee evaluations; they do not show how exercising that power violated any plaintiff's constitutional rights. They assert CHC Cos. gave JCS employees bonuses; they do not show how exercising that power violated any plaintiff's constitutional rights. They assert CHC Cos. signed JCS contracts; they do not show how exercising that power violated any plaintiff's constitutional rights. They assert CHC Cos. "could" control

---

[7] Don Houston Depo. at p. 58. (Doc. 641-4).
[8] Doc. 428-3 at pp. 113-120. *See also* Don Houston Depo. at p. 88. (Doc. 641-4).

the regional manager of JCS; they do not show how exercising that power violated any plaintiff's constitutional rights. They assert CHC Cos. was "heavily involved in JCS's integration;[9] they do not show how exercising that power violated any plaintiff's constitutional rights. There are further examples, but the Court obviously gets the point.

### 3.  CHC Cos. did not pay JCS employee salaries until 2013.

CHC Cos. did not assume payroll functions for JCS until January 2013, which was after any of the Plaintiffs' alleged injuries. Plaintiffs claim CHC Cos. was not JCS's paymaster because CCS, LLC's corporate representative had never seen the agreement.[10] The point of that is lost. It is also unclear how CHC Cos. can be held liable for Plaintiffs' alleged injuries based on payment of its subsidiaries' employees in 2013 and how this was the moving force behind any injury.

Plaintiffs never identified a single CHC Cos. policy or custom that was the moving force behind the constitutional deprivations Plaintiffs alleged. Not only have there been no allegations of any CHC Cos. policy or practice related to these claims, but no allegations CHC Cos. issued warrants, made arrests, signed probation forms, came in contact with any probationer, or made any indigency determinations. Based on the above, the *Monell* principles apply and Plaintiffs' § 1983 claims against CHC Cos. arising from JCS's conduct are barred.

---

[9] The nature and extent of the "integration" is purposely never discussed; that term is never defined; and Plaintiffs also purposely never show how the "integration" violated plaintiffs' constitutional rights.
[10] David Perry Depo. at pp. 45:23-46:8. (Doc. 638-78).

## IV.   **CONCLUSION**

Plaintiffs cannot prove any set of facts which would expose CHC Cos. to liability for any of the claims in this case. Plaintiffs failed to offer the Court evidence or legal authority sufficient to impose liability on CHC Cos. for the probation activities of JCS employees. For these reasons stated above and in CHC Cos.'s Motion for Summary Judgment, CHC Cos. respectfully submits that it is entitled to judgment as a matter of law on all the Plaintiffs' claims.


DATED: November 17, 2017          */s/ F. Lane Finch, Jr.*          
                                   F. Lane Finch, Jr. (ASB-0027-I58F)
                                   Brian C. Richardson (ASB-5241-H14U)
                                   *Attorneys for CHC Companies, Inc. and*
                                   *Correct Care Solutions, LLC*

**OF COUNSEL:**
**SWIFT, CURRIE, MCGHEE & HIERS, LLP**
2 North 20th Street, Suite 1405
Birmingham, AL 35203
T: (205) 314-2401
F: (205) 244-1373
lane.finch@swiftcurrie.com
brian.richardson@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2017, the foregoing was served on the following attorneys of record by one or more of the following means in accordance with the Federal Rules of Civil Procedure:

[✓]   CM-ECF Electronic Filing
[]    Email
[]    U.S. Mail
[]    Facsimile
[]    Hand Delivery

G. Daniel Evans, Esquire
gdevans@evanslawpc.com
Alexandria Parrish, Esquire
ap@evanslawpc.com
D. Patrick Evans, Esquire
dpevans@evanslawpc.com
Erwin Chemerinsky, Esquire
echemerinsky@law.uci.edu
Robert L. Wiggins, Jr., Esquire
rwiggins@wigginschilds.com
***Attorneys for Plaintiffs***

John N. Bolus, Esquire
jbolus@maynardcooper.com
***Attorney for Larry Ward***

Michael L. Jackson, Esquire
mjackson@wallacejordan.com
Larry S. Logsdon, Esquire
llogsdon@wallacejordan.com
Wilson F. Green, Esquire
wgreen@fleenorgreen.com
***Attorneys for Correctional Healthcare***
***Companies and Judicial Correction***
***Services***

James W. Porter, II, Esquire
jwporterii@pphlaw.net
R. Warren Kinney, III, Esquire
wkinney@pphlaw.net
***Attorneys for Brenda Wyers***

*/s/ F. Lane Finch, Jr.*
OF COUNSEL

13