# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| GINA KAY RAY, et al., | } |
| Plaintiffs, | } |
| v. | } Case No.: 2:12-cv-02819-RDP |
| JUDICIAL CORRECTION SERVICES, INC., | } |
| Defendant. | } |

## MEMORANDUM OPINION

This case is before the court on Plaintiffs' Motion for Reconsideration. (Doc. # 663). In this motion, Plaintiffs request that the court reconsider three claims on which it granted summary judgment to Defendant Judicial Correction Services, Inc. ("JCS"). The parties have fully briefed the motion (Docs. # 663, 668, 671), and it is ripe for decision. The court concludes that the Motion for Reconsideration is due to be granted in part and denied in part.

**I.     Standard of Review**

Although the Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration, they are common enough in practice. However, reconsideration is "an extraordinary remedy which must be used sparingly." *Jackson v. Wesley*, No. 6:11-cv-686-Orl-28GJK, 2011 WL 2144696, at *1 (M.D. Fla. May 31, 2011). Rule 59 allows a party to move to alter or amend a judgment in a civil case. Fed. R. Civ. P. 59(e). *Serrano v. United States*, 411 F. App'x 253, 255 (11th Cir. 2011) (citing Fed. R. Civ. P. 59(e)). Therefore, the court will construe Plaintiffs' motion as one filed pursuant to Rule 59(e).

"Reconsidering the merits of a judgment, absent a manifest error of law or fact, is not the purpose of Rule 59." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010). The moving party must do more than merely ask the court for a reevaluation of an unfavorable ruling. "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (internal citations and quotations omitted).

## II. Analysis

Plaintiffs ask the court to reconsider its rulings on their Fourth Amendment, Eighth Amendment, and Equal Protection Clause claims. The court has thoroughly reviewed their arguments and the earlier summary judgment order, but finds no basis for altering its prior opinion.

### A. Reconsideration of Plaintiffs' Fourth Amendment Claim

Plaintiffs seek reconsideration of the summary judgment granted to JCS on their Fourth Amendment false-arrest claims because they contend JCS employees lacked probable cause to believe the named Plaintiffs committed a crime when they applied for arrest warrants. (Doc. # 663 at 6-14). First, Plaintiffs argue that the JCS employees lacked probable cause to believe that they willfully had failed to pay fines and fees because JCS knew that only defendants unable to pay fines levied by the City of Childersburg's Municipal Court ("Municipal Court") were placed on JCS probation, and JCS failed to provide relevant information to the Municipal Court. (*Id.* at 8-9). Second, Plaintiffs contend that the Municipal Court lacked probable cause to issue arrest warrants for failure to obey a court order because the court order violated was not issued until the date of the warrant. (*Id.* at 10-14). Plaintiffs' arguments do not justify reconsidering the summary judgment granted to Defendant JCS on their Fourth Amendment claim.

The revocation petitions in the Rule 56 record reflect that JCS employees knew of Plaintiffs' failures to appear at scheduled probation appointments and their failures to pay fines and probation fees at the time of filing. (*E.g.*, Docs. # 537-1 at 2; 537-2 at 2). When the Municipal Court's judge sentenced defendants to JCS-supervised probation, he ordered defendants to report to JCS as instructed, pay JCS's supervision fees, and pay fines and costs imposed by the Municipal Court. (*E.g.*, Doc. # 471-12 at 2). As such, JCS employees could have justified their requests to revoke probation on either basis. Plaintiffs argue that the failure-to-report charges are red herrings because JCS did not consistently require probationers to report to a physical office if they made the required payments in a timely manner. (Doc. # 663 at 7 n. 7). That argument does not demonstrate, though, that JCS employees lacked a basis to believe that Plaintiffs failed to report for probation appointments, in violation of their probation orders, when those employees submitted revocation petitions to the Municipal Court including such charges. *Cf. Carter v. Gore*, 557 F. App'x 904, 908-09 (11th Cir. 2014). Because the Rule 56 record reveals a reasonable basis for JCS employees to believe Plaintiffs violated their probation orders by failing to appear at scheduled probation appointments, the court concludes again that Plaintiffs' Fourth Amendment claims against JCS, based on the revocation petitions, fail to present a triable claim.

Plaintiffs' contention that Defendant JCS violated their Fourth Amendment rights when the FTOCO warrants were issued misses the mark for the reasons explained in the court's initial Memorandum Opinion. That is, the Rule 56 record lacks evidence to support Plaintiffs' position that JCS employees requested the issuance of arrest warrants on FTOCO convictions. The timeline of revocation proceedings in the Childersburg Municipal Court helps illustrate this. Generally, JCS employees drafted probation revocation petitions when probationers had failed to

3

comply with the terms of probation. (Doc. # 471-1 at 123-24). A JCS employee would determine whether the Municipal Court should hold a compliance hearing or a revocation hearing, depending on whether the probationer had met his or her obligations. (*Id.* at 129-30). The revocation petitions generated by JCS did not ask the Municipal Court to issue arrest warrants on FTOCO charges, although they requested the issuance of an arrest warrant, if necessary. (*E.g.*, Docs. # 537-1 at 2; 537-2 at 2). Then, JCS would select a date for a hearing and inform the probationer of the hearing by mail. (Doc. # 471-1 at 127). JCS did not file the revocation petitions with the Municipal Court before the scheduled revocation hearings, even though the revocation orders indicated that they had been approved by the Municipal Court prior to the revocation hearing. (*Id.* at 194).

During revocation hearings, JCS employees informed the judge about the probationer's payment history and the number of appointments missed. (*Id.* at 123-24). One JCS employee testified that JCS employees presented the revocation petitions to the Municipal Court on the date of the hearings described in them (*id.* at 581), but she did not testify that JCS employees applied for or sought arrest warrants on FTOCO charges.[1] If a petitioner failed to appear at a revocation hearing, the Municipal Court often would issue a capias warrant signed by a magistrate. (Doc. # 471-26 at 2). Nothing in the Rule 56 record indicates that JCS drafted those capias warrants for the Municipal Court. As the court explained in its earlier Memorandum Opinion, the Rule 56 record also does not reveal (1) how FTOCO charges were initiated, (2) whether the Municipal Court formally convicted defendants of FTOCO violations, (3) the sentences defendants received for FTOCO convictions, and (4) whether those sentences included imprisonment terms.

---

[1] Indeed, that JCS employee denied recommending dispositions to the Municipal Court during revocation hearings. (Doc. # 471-1 at 124).

Thus, in light of the Rule 56 evidence described above, the court concludes that the summary judgment record is silent as to who initiated the FTOCO arrest warrants: JCS employees, Municipal Court employees, or both. This silence is significant given the fact that this case has been in litigation for nearly six years now.

The fact that the court has found triable issues on Plaintiffs' *Bearden* and equal protection claims is of no help here. The distinction comes down to this: JCS certainly could conspire with the Municipal Court and agree to aid that court in violating the rights of probationers. And, the court recognizes that while the Municipal Court and the judge of that court cannot be sued for that conspiracy, JCS can because (unlike the judicial actors) it may not assert judicial immunity. Nevertheless, Plaintiffs cannot pursue a conspiracy claim where the Rule 56 record provides no substantial evidence that shows the issuance of arrest warrants (as opposed to seeking revocation)[2] was within the scope of any conspiratorial agreement between JCS and the Municipal Court. Because of that lack of Rule 56 evidence, Plaintiffs cannot proceed on a Fourth Amendment claim against JCS related to the issuance of the FTOCO arrest warrants.

**B.    Reconsideration of Plaintiffs' Equal Protection Claim**

Plaintiffs argue that the court should reconsider its ruling that the equal protection claims based on JCS's charging of various probation fees falls outside the scope of the Supreme Court's opinions in *Williams v. Illinois*, 399 U.S. 235 (1970), and *Tate v. Short*, 401 U.S. 395 (1971). (Doc. # 663 at 16-19). Plaintiffs rely on the Supreme Court's opinions in *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996), *Mayer v. City of Chicago*, 404 U.S. 189 (1971), and *Boddie v. Connecticut*, 401

---

[2] The court distinguishes JCS's conduct in seeking probation revocation from seeking the issuance of an arrest warrant because issuing an arrest warrant is inherently a judicial function requiring judicial decisionmaking, whereas requesting the revocation of probation is a function commonly performed by probation officers. Under the circumstances presented in these cases, it would have been unclear whether an arrest warrant was needed until the probation revocation hearing occurred and the participants in the hearing discovered that the probationer failed to appear.

U.S. 371 (1971), to argue that equal protection rights for impoverished individuals extend beyond a prohibition on additional imprisonment for inability to pay fines, restitution, bond, or other costs. Plaintiffs' primary arguments fail to convince the court, but their argument that the equal protection claim is on a parallel track with the *Bearden* claim is convincing.

As an initial matter, the court's conclusion that *Williams* and *Tate* prohibit the imposition of additional *imprisonment* because a defendant lacks financial resources is consistent with Eleventh Circuit precedent. *See, e.g.*, *United States v. Plate*, 839 F.3d 950, 955-56 (11th Cir. 2016) ("In [*Williams*, *Tate*, and *Bearden v. Georgia*, 461 U.S. 660 (1983)] the Supreme Court held that it violates equal protection principles to incarcerate a person 'solely because he lacked the resources to pay' a fine or restitution."); *United States v. Vasquez*, 874 F.2d 1515, 1518-19 (11th Cir. 1989) ("Should circumstances change, however, and [the defendant] then be unable to pay the fine, it would be unconstitutional to require him to stand committed until the fine is paid."); *Crowden v. Bowen*, 734 F.2d 641, 642 (11th Cir. 1984) ("The equal protection clause does not allow a state to extend a prisoner's sentence beyond the maximum period prescribed by law by refusing to give the prisoner credit for presentencing detention occasioned by the prisoner's financial inability to make bail."). Additionally, the court's summation of *Williams* and *Tate* is consistent with the persuasive authority it has found through its independent research. *See, e.g.*, *United States v. Burgum*, 633 F.3d 810, 814-15 (9th Cir. 2011) (citing *Williams*, *Tate*, and *Bearden* for the proposition that "the Constitution forbids imposing a longer term of imprisonment based on a defendant's inability to pay restitution"); *Johnson v. Bredesen*, 624 F.3d 742, 749 (6th Cir. 2010) ("And while the *Williams* Court similarly failed to articulate a precise standard of review, the fact that the case involved the denial of an indigent defendant's physical liberty appeared dispositive."); *Doyle v. Elsea*, 658 F.2d 512, 518 (7th Cir. 1981) ("[The

6

petitioner's] reliance on Tate and Williams is misplaced. Those cases stand for the proposition that no person may be incarcerated, upon conviction of a crime, for a period longer than the maximum sentence set by statute solely on the basis of his or her inability to pay a criminal fine.").[3] These authorities support limiting the holdings of *Williams* and *Tate* to cases where an individual is subjected to a term of imprisonment or a longer period of imprisonment due solely to indigency or an inability to pay certain amounts.

Notably, Plaintiffs have not presented an analogous case where a court has extended equal protection rights against wealth-based disparate treatment to prohibit sentencing an individual to probation for his or her inability to pay a fine. The cases Plaintiffs rely upon are distinguishable. The Supreme Court's rulings in *M.L.B.* and *Mayer* concern indigents' access to appellate review of criminal convictions and terminations of parental rights. *See M.L.B.*, 519 U.S. at 128 (holding that the state could not withhold a sufficiently complete record to permit appellate review from a parent whose parental rights had been terminated by the trial court due to that parent's inability to pay for the record's preparation); *Mayer*, 404 U.S. 198-99 (holding that a sufficiently complete record for appellate review must be provided to an indigent defendant appealing a non-felony conviction and a fine). The Supreme Court's ruling in *Boddie* concerned indigents' due process right to access trial courts without paying court fees in order to obtain a divorce, which cannot be obtained without access to the courts. 401 U.S. at 382-83. Because

---

[3] *See also Madison v. State*, 163 P.3d 757, 768 (Wash. 2007) (*en banc*) ("The dissent cites *Williams v. Illinois* and *Bearden v. Georgia* for the proposition that 'once all of the assigned punishment has been imposed, except for the payment of financial obligations, failure to pay those financial obligations cannot be used to continue depriving felons of their freedom.' However, contrary to the dissent's assertion, *Williams* and *Bearden* do not stand for such a broad principle.") (citation omitted); *Noel v. State*, 191 So. 3d 370, 379 (Fla. 2016) (applying *Bearden* and *Burgum* to hold that a trial court violated a defendant's due process rights by expressly conditioning a two-year reduction of his imprisonment sentence on payment of restitution); *Williams v. City of Montgomery*, 739 So. 2d 515, 519 (Ala. Civ. App. 1999) ("*Williams* specifically deals with a defendant who, solely because of his indigency, had been incarcerated for a period in excess of the maximum penalty for the crime that he was convicted of. *Tate* concerns a fine converted into a jail sentence solely because the defendant was indigent and unable to pay it. The holdings go no further.").

Plaintiffs have not supported their argument for extending *Williams* and *Tate* to the probation context, reconsideration on that ground is not warranted.

Alternatively, Plaintiffs insist that the equal protection claims should proceed past summary judgment because JCS's practices against probationers unable to pay the fines imposed by the Municipal Court lack any rational relationship to a legitimate governmental interest. (Doc. # 663 at 19-20). Plaintiffs acknowledge that the City of Childersburg had a legitimate interest in collecting fines for violations of municipal ordinances (*id.* at 20), but argue that JCS's methods of supervising probationers bore no rational relationship to that legitimate interest. (*Id.*). State action "that does not impinge on fundamental rights or employ suspect classifications is presumed to be valid and will be upheld if it is rationally related to a legitimate state interest." *Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth.*, 825 F.2d 367, 370 (11th Cir. 1987) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). Even under rational-basis review, state action can violate the Equal Protection Clause if the justifications for it "[makes] no sense in light of how the [state actor] treated other groups similarly situated in relevant respects." *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 366 n. 4 (2001) (discussing *City of Cleburne*). As the parties raising an equal protection challenge under the rational basis standard, Plaintiffs face the burden of negating "every conceivable basis" for Defendants' conduct, "even if that basis has no foundation in the record." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009)

In *City of Cleburne*, the Supreme Court held that legislative classifications based on mental disability are subject to rational-basis review. 473 U.S. at 442-47. Nevertheless, it held that a municipality's zoning ordinance that required a special use permit for housing of the mentally disabled violated the Equal Protection Clause because the municipality did not require

special use permits for other multiple-dwelling facilities and medical-care facilities, such as "apartment houses, multiple dwellings, boarding and lodging houses, fraternity or sorority houses, dormitories, apartment hotels, hospitals, sanitariums, nursing homes for convalescents or the aged (other than for the insane or feebleminded or alcoholics or drug addicts), private clubs or fraternal orders, and other specified uses." *Id.* at 447. The Supreme Court explained that the negative attitudes of adjoining property owners towards the mentally disabled, standing alone, could not justify the differential treatment. *Id.* at 448. And, it disregarded the other justifications for the zoning ordinance because the identified issues with the proposed home applied to other types of housing that did not require special use permits. *Id.* at 449-50 (rejecting the municipality's arguments that the zoning ordinance was justified by flooding concerns, the size of the proposed home, the number of occupants, the desire to avoid population concentrations and congestion, fire hazards, neighborhood serenity, and the avoidance of danger to other residents because those concerns would apply to other types of housing that did not require a special use permit).

Here, Plaintiffs' equal protection claim fails under rational-basis review. As Plaintiffs concede, the City had a legitimate interest in collecting fines for violations of its municipal ordinances. Additionally, the City (and the Municipal Court) had a legitimate interest in encouraging citizens to pay their outstanding fines. *See O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413, 429 (S.D.N.Y. 2004) (dismissing an equal protection claim based on disparate treatment of citizens denied parking permits for outstanding parking tickets because of the city's legitimate interest in encouraging payment of fines). The Municipal Court and JCS treated offenders unable to pay the fines instituted by the Municipal Court differently from those able to pay the fines at the time of issuance or within a week of issuance. But, it is both clear and

9

beyond debate that Municipal Court defendants unable to pay their fines immediately (including the named Plaintiffs) were not similarly situated to those able to pay their fines immediately. Municipal court defendants who paid the issued fines upon issuance did not need encouragement; defendants who failed to pay did. The government's interest in encouraging the payment of fines cannot justify imprisonment, following *Williams* and *Tate*, but it can justify other alternative means of punishment. For this reason, Plaintiffs have failed to negate every conceivable legitimate basis for the differential treatment afforded to them, and their equal protection claims cannot proceed under rational-basis review.

Finally, Plaintiffs argue that the court should reconsider its grant of summary judgment on the equal protection claim because there is evidence from which a jury could find that JCS employees conspired with Municipal Court officials to imprison them solely because of their failures to pay fines and fees to JCS. (Doc. # 663 at 20-21). They assert that such a claim is consistent with the claim that these individuals conspired to violate Plaintiffs' due process rights in violation of *Bearden*. (*Id.* at 21). As to this argument, the court agrees. As explained in the court's earlier opinion, the Rule 56 record contains substantial evidence that the Municipal Court failed to consider indigency when determining whether to revoke defendants' probation terms. (*See* Doc. # 626 at 81-82). Similarly, unlike their claim based upon the Fourth Amendment, a reasonable fact-finder could conclude from the Rule 56 evidence that Plaintiffs' probation terms were revoked solely due to their failures to pay, and that the Municipal Court's revocations on that sole ground were within the scope of the conspiracy between Defendant JCS and Municipal Court officials. Accordingly, Plaintiffs' equal protection claim against JCS under *Williams* and *Tate* is due to go forward on a § 1983 conspiracy theory.[4]

---

[4] At oral argument, Defendant JCS argued that Plaintiffs cannot receive relief on reconsideration based upon arguments that could have been raised earlier or evidence that could have been presented earlier. *See Arthur*,

## C. Reconsideration of Plaintiffs' Eighth Amendment Claim

Plaintiffs request that the court reconsider its summary judgment on their Excessive Fines Clause claim because other courts have applied the Eighth Amendment's prohibition against excessive fines to fees paid to private corporations. (Doc. # 663 at 24-25). Plaintiffs merely offer non-binding authority from other courts to support their position that fees paid to private corporations can be considered "fines" for purposes of the Excessive Fines Clause. (*See id.* at 24). And, although Plaintiffs have proffered these decisions as persuasive authority, the court is not persuaded, particularly in light of the Supreme Court's ruling that the Excessive Fines Clause "was intended to limit only those fines directly imposed by, *and payable to*, the government." *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 268 (1989) (emphasis added). Moreover, Plaintiffs' assertion that persuasive authority "uniformly" supports applying the Excessive Fines Clause to JCS's fees is simply wrong. *See, e.g.*, *Jackson v. Whitworth*, No. 1:04-CV-3181-JOF, 2006 WL 8431536, at *6 (N.D. Ga. Mar. 23, 2006) (declining to apply the Excessive Fines Clause to electronic monitoring fees incurred as a condition of parole because "there is no allegation in the complaint that any portion of the fee is paid to the government"); *Glob. Relief Found., Inc. v. O'Neill*, 207 F. Supp. 2d 779, 806-07 (N.D. Ill. 2002) (refusing to apply the Excessive Fines Clause to the freezing of bank accounts by the Office of Foreign Asset Control because the plaintiff had "not been required to make any sort of payment in cash, or in kind, to the government"), *aff'd on other grounds*, 315 F.3d 748 (7th Cir. 2002), *cert. denied*, 540 U.S. 1003 (2003); *Parsons v. Pond*, 126 F. Supp. 2d 205, 221-22 (D. Conn. 2000)

---

500 F.3d at 1343. First, the court's partial grant of reconsideration does not violate this principle because Plaintiffs essentially present an inconsistency in the court's summary judgment order (allowing the *Bearden* claim to go forward while precluding the equal protection claim from going forward), which could not have been presented before the court entered the summary judgment order. Second, while the court recognizes the heightened standard Plaintiffs must meet in order to justify reconsideration of the summary judgment order, this case has lasted for nearly six years, and it is time to get the meritorious and triable issues in this case moving towards disposition.

(concluding that a claim against a defendant for requiring a plaintiff to attend psychiatric sessions at his own expense failed to state an Eighth Amendment claim because "the money appears to have been paid to [the psychiatrist] and not the government"), *aff'd*, 25 F. App'x 77 (2d Cir.), *cert. denied*, 537 U.S. 881 (2002).

In addition, the court concludes that its summary judgment to Defendants on the Eighth Amendment claim was appropriate because the fees charged by JCS were not grossly disproportionate to the offenses at issue.[5] To determine whether a fine is grossly disproportionate, the court examines "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant." *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007). Plaintiffs argue that the fees they paid to JCS were grossly disproportionate to their offenses because probationers charged such fees "were no more culpable than individuals who were *not* charged fees," some probationers were charged fees on dismissed charges, and some probationers were charged fees far in excess of the statutory maximum fine. (Doc. # 663 at 26-27). The difficulty in analyzing Plaintiffs' excessive fines claim is that JCS charged Plaintiffs a large amount of money in smaller monthly payments, which combined, for certain probationers, to exceed the $500 threshold for municipal court fines.

---

[5] The parties have not addressed -- and the court need not decide -- whether the Excessive Fines Clause of the Eighth Amendment has been incorporated to apply to the states under the Fourteenth Amendment's Due Process Clause. In *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court noted that it had not fully incorporated "the Eighth Amendment's prohibition on excessive fines" into the Fourteenth Amendment's Due Process Clause. *Id.* at 765 n. 13. The Fifth Circuit relied, in part, on the lack of incorporation to affirm a summary judgment on an Eighth Amendment claim against Louisiana statutes requiring certain bail-related fees. *Broussard v. Parish of Orleans*, 318 F.3d 644, 652 (5th Cir.), *cert. denied sub nom.*, *Dazet v. Foster*, 539 U.S. 915 (2003). Of course, if the Excessive Fines Clause is not incorporated into the Fourteenth Amendment, Plaintiffs' excessive fine claim fails because the alleged Eighth Amendment violations stem from the enforcement of state-court orders and judgments. But, the Supreme Court authority on that matter is unclear, as the Court stated in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), that the Fourteenth Amendment "makes the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishments applicable to the States." *Id.* at 433-34 (citing *Furman v. Georgia*, 408 U.S. 238 (1972)). While the court observes this possible flaw in Plaintiffs' excessive fines claim, it declines to address it more fully here because the parties have not raised it.

Other courts have addressed whether certain periodic payments, when considered in the aggregate, constitute grossly disproportionate fines for purposes of the Eighth Amendment. In *Wemhoff v. City of Baltimore*, 591 F. Supp. 2d 804 (D. Md. 2008), the court considered an Eighth Amendment claim against a $16 monthly late payment penalty applied to a $23 civil fine. *Id.* at 808-09. The court concluded that the initial penalty could not be considered excessive because the penalty and the civil fine, when combined, was less than many civil fines issued for parking violations. *Id.* at 809. Additionally, it concluded that the rate of accrual was not excessive because the accrual rate diminished over time as the city applied the same monthly charge against the plaintiff for "the underlying offense of nonpayment." *Id.* The court rejected the plaintiff's argument that the continuing nature of the late penalties made them grossly disproportionate fines because the plaintiff received notice from the city about the late fees and took no steps to pay what he owed or arrange payment. *Id.*

In *Waters v. Bass*, 304 F. Supp. 2d 802 (E.D. Va. 2004), the plaintiff presented an Eighth Amendment challenge to a $1.00 per day room and board fee charged by the Virginia Beach City Jail to non-federal prisoners. *Id.* at 806-07. The court determined that the fee was not excessive because it provided "partial reimbursement" for state expenses that a prisoner would be responsible for if he or she were not incarcerated. *Id.* at 809 (quoting *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 420 (3d Cir. 2000)). Moreover, the $1.00 per day fee was lower than that charged by other governments. *Id.* at 809 & n. 13. Indeed, the federal government permits deductions from a prisoner's wages for room and board fees. *Id.* at 806. Finally, the *Waters* court recognized that "fees and fines to cover costs of incarceration are part and parcel of what a criminal defendant may expect to pay upon conviction and imprisonment." *Id.* at 809.

Here, Plaintiffs have failed to show that the probation supervision fees charged by JCS were grossly disproportionate to the offenses at issue. Plaintiffs have not disputed that they were within the classes of individuals at whom the relevant municipal ordinances were aimed. (*See* Doc. # 663 at 26-27). *See also Browne*, 505 F.3d at 1281. In addition, the $35 to $45 per month probation supervision fee charged by JCS is comparable to the fee charged by Alabama's Board of Pardons and Paroles, indicating that the fee is not grossly excessive. Ala. Code § 15-22-2(a)(1) (requiring a $40 per month supervision fee for probationers or parolees who have an income). *See also Browne*, 505 F.3d at 1281. Individuals placed on probation should expect to pay some form of supervision fee to cover the costs of supervision. *See Waters*, 304 F. Supp. 2d at 809 (explaining that prisoners should expect to pay some amount to cover room and board expenses). While the supervision fees and other charges certainly accrued over time to exceed the $500 statutory limit for municipal court misdemeanor fines, the continuing nature of the supervision fees is not a basis for declaring them to be grossly disproportionate, especially in light of the work that JCS employees performed. *Cf. Wemhoff*, 591 F. Supp. 2d at 809 (denying excessive fines claim based on accrual of late fees because the plaintiff failed to make efforts to pay off the fine and late fees owed to the defendant). For these reasons, even if the Excessive Fines Clause applied to the probation supervision fees payable to JCS (and, as explained earlier, the court concludes that it does not), Defendants would be entitled to summary judgment on the Excessive Fines Claim because JCS's fees were not grossly disproportionate to the offenses at issue.

## III. Conclusion

For the reasons explained above, Plaintiffs' Motion for Reconsideration (Doc. # 663) is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this June 15, 2018.

                                                        _____
                                                        **R. DAVID PROCTOR**
                                                        UNITED STATES DISTRICT JUDGE